MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
J. THOMAS MCCARTHY (CA SBN 034728)
TMcCarthy@mofo.com
DAVID E. MELAUGH (CA SBN 219477)
DMelaugh@mofo.com
LYNN M. HUMPHREYS (CA SBN 168062)
LHumphreys@mofo.com
JACQUELINE BOS (CA SBN 243938)
JBos@mofo.com
NATHAN B. SABRI (CA SBN 252216)
NSabri@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Plaintiff
AUTODESK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DASSAULT SYSTÈMES SOLIDWORKS CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No.   3:08-cv-04397-WHA<br><br>**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:     **December 3, 2009**<br>Time:    **8:00 a.m.**<br>Place:   **Courtroom 9, 19th Floor**<br>Judge:  **Hon. William H. Alsup**<br><br>**REDACTED VERSION** |

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 3, 2009, at 8:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable William H. Alsup, United States District Court, 450 Golden Gate Avenue, Courtroom 9, 19th Floor, San Francisco, Plaintiff Autodesk, Inc. shall and hereby does move the Court for an order granting summary judgment as to Defendant Dassault Systèmes SolidWorks Corporation's counterclaims pursuant to Rule 56 of the Federal Rules of Civil Procedure. This motion is based on this notice of motion and supporting memorandum of points and authorities; the supporting declaration of Jacqueline Bos; and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

Dated: October 29, 2009

MICHAEL A. JACOBS
J. THOMAS MCCARTHY
DAVID E. MELAUGH
LYNN M. HUMPHREYS
JACQUELINE BOS
NATHAN B. SABRI
MORRISON & FOERSTER LLP

By: /s/ *Michael A. Jacobs*
MICHAEL A. JACOBS

Attorneys for Plaintiff
AUTODESK, INC.

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................ iii

INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED .................................. 1

LEGAL STANDARD ............................................................................................................................ 1

ARGUMENT .......................................................................................................................................... 2

I. DWG IS NOT FUNCTIONAL. .................................................................................. 2

    A. The Word Mark DWG is Not Functional. ........................................................ 2

    B. Autodesk Asserts No Claim Against Functional Uses of "DWG" by SolidWorks. ............................................................................................ 3

II. DWG IS A PARTICULAR, PROPRIETARY AUTODESK FILE FORMAT AND IS THEREFORE NOT A GENERIC NAME OF A GENUS of FILE FORMATS. .................................................................................... 4

    A. DWG Refers to a Proprietary File Format Defined by Autodesk. ................................................................................................................. 5

    B. DWG is not a Generic Name for any Genus of File Formats. ....................... 7

III. SOLIDWORKS' LACHES DEFENSE HAS NO MERIT ............................................ 8

    A. The Earliest Possible Date Laches Might Attach is Three Years from Notice. ............................................................................................. 9

    B. Autodesk's TTAB Filing Tolls Any Laches Period. .......................................... 9

    C. SolidWorks Was Not Prejudiced. ...................................................................... 11

CONCLUSION ................................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................................. 1

*Beaty v. Selinger*,
    306 F.3d 914 (9th Cir. 2002) ................................................................................................... 11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................................................. 1

*Citibank, N.A. v. Citytrust*,
    644 F. Supp. 1011 (E.D.N.Y. 1986) .......................................................................................... 9

*Coca-Cola Co. v. Overland, Inc.*,
    692 F.2d 1250 (9th Cir. 1982) ................................................................................................... 2

*Compaq Computer Corp. v. Procom Technology, Inc.*,
    908 F. Supp. 1409 (S.D. Tex. 1995) .......................................................................................... 3

*Danjaq LLC v. Sony Corp.*,
    263 F.3d 942 (9th Cir. 2001) ..................................................................................................... 9

*Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*,
    198 F.3d 1143 (9th Cir. 1999) ................................................................................................... 7

*Gaudreau v. Am. Promotional Events, Inc.*,
    511 F. Supp. 2d 152 (D.D.C. 2007) .................................................................................... 9, 10

*In re Armament Systems and Procedures, Inc.*,
     Serial No. 75107678, 2005 TTAB LEXIS 384 (Sept. 12, 2005) ............................................. 3

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) ..................................................................................................... 9

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
    408 F.3d 596 (9th Cir. 2005) ..................................................................................................... 1

*Nautilus Group, Inc. v. Icon Health & Fitness, Inc.*,
    372 F.3d 1330 (Fed. Cir. 2004) ................................................................................................. 8

*Perini Corp. v. Perini Constr., Inc.*,
    715 F. Supp. 719 (D. Md. 1989) .............................................................................................. 11

*Playboy Enters. v. Netscape Comm'ns Corp.*,
    354 F.3d 1020 (9th Cir. 2004) ................................................................................................... 3

*Premier Nutrition, Inc. v. Organic Food Bar, Inc.*,
 327 Fed. Appx. 723 (9th Cir. 2009) .................................................................................... 7

*Qualitex Co. v. Jacobson Products Co. Inc.*,
 514 U.S. 159 (1995) ............................................................................................................ 2

*Reno Air Racing Ass'n v. McCord*,
 452 F.3d 1126 (9th Cir. 2006) ............................................................................................ 9

*Sega Enters. v. Accolade, Inc.*,
 977 F.2d 1510 (9th Cir. 1992) ........................................................................................ 3, 4

*Stoller v. Sutech U.S.A., Inc.*,
 199 Fed. Appx. 954 (Fed. Cir. 2006) .................................................................................. 2

*Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*,
 419 F.3d 925 (9th Cir. 2005) ........................................................................................... 4, 8

**RULES**

Fed. R. Civ. P. 56(c) ..................................................................................................................... 1

## INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

In this lawsuit, Autodesk claims that SolidWorks has misappropriated Autodesk's mark "DWG." SolidWorks responds that, for various reasons, DWG is not a valid mark and that Autodesk's claims are barred. Autodesk brings this motion to present three issues, each of which presents no genuine issue of disputed material fact:

**Issue 1:** Is DWG *functional*, and hence not entitled to trademark protection?

<u>No</u>. DWG is a word mark and is therefore not functional. Moreover, Autodesk does not assert any claim against any purportedly functional use of DWG by SolidWorks.

**Issue 2:** Is DWG a *generic* name, and therefore not entitled to trademark protection?

<u>No</u>. DWG identifies a particular file format defined and controlled by Autodesk. It is not the name of any "genus" of file formats and is therefore not a generic name free for all to use.

**Issue 3:** Does *laches* bar Autodesk from bringing suit against SolidWorks?

<u>No</u>. Within two years of SolidWorks' release of the relevant products, Autodesk initiated TTAB proceedings addressing the marks at issue. Under applicable law, Autodesk's actions were sufficient to toll laches. Moreover, SolidWorks cannot show any prejudice from any delay in bringing this lawsuit.

Because there are no genuine issues of disputed material fact with respect to the above issues, the Court should grant Autodesk's Motion for Partial Summary Judgment and hold that a) the DWG word mark at issue in this lawsuit is not functional; b) DWG is not a generic name for a genus of file formats; and c) the present case is not barred by the doctrine of laches.

## LEGAL STANDARD

Summary judgment should be granted if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party cannot avoid summary judgment by resting upon the denials or allegations in its pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Rather, once the moving party has met its initial burden of showing that there is no genuine issue of material fact, the non-moving party must produce affirmative evidence setting forth "specific facts" showing that there is a genuine issue for trial. *Id.* at 256-57; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also KP Permanent Make-Up, Inc. v.*

1  *Lasting Impression I, Inc.*, 408 F.3d 596, 606 (9th Cir. 2005) (granting summary adjudication to
2  trademark holder on genericness where "reasonably minded jury could not conclude from the
3  evidence produced that 'micro colors' is a generic term" for micropigmentation process); *Coca-Cola
4  Co. v. Overland, Inc.*, 692 F.2d 1250, 1258 (9th Cir. 1982) (affirming grant of summary judgment to
5  trademark holder on Lanham Act claims).

**ARGUMENT**

**I.  DWG IS NOT FUNCTIONAL.**

Noting that the Lanham Act "does not protect essentially functional or utilitarian product features," SolidWorks alleges that DWG is "functional," and claims that if Autodesk prevails it would grant Autodesk "a monopoly over this feature." (Defendant's Notice of Motion and Motion to Dismiss Plaintiff's Complaint and to Strike; Memorandum of Points and Authorities in Support Thereof at 8-9) (Dkt. No. 13) ("Def's Mot. to Dismiss").) It is unclear whether SolidWorks claims that DWG is entirely unprotectable because it is supposedly "functional," or whether SolidWorks simply claims that its uses of DWG are functional and therefore immunized in some fashion. In either event, SolidWorks' "functional" argument is not a viable defense as a matter of law, and it is appropriate to render summary judgment on this issue.

**A.  The Word Mark DWG is Not Functional.**

Applied against the mark DWG in general, SolidWorks' "functional" argument makes no sense. The doctrine of functionality is typically applied to trade dress or product design. *Qualitex Co. v. Jacobson Products Co. Inc.*, 514 U.S. 159, 164-65 (1995). A feature of trade dress or product design is functional if it is "essential to the use or purpose of the article" or "affects the cost or quality of the article." *Id*. (internal quotation & citation omitted).

But DWG is neither trade dress nor product design; it is a word mark—a name—that denominates a particular feature of Autodesk's AutoCAD product, specifically its computer-aided design software (or "CAD") file format. Standing alone, or as applied to product marketing literature or packaging, "DWG" serves no functional purpose within the meaning of trademark law. Thus, SolidWorks' supposed "functional" defense has no application here. *See, e.g.*, *Stoller v. Sutech U.S.A., Inc.*, 199 Fed. Appx. 954, 958 (Fed. Cir. 2006) (evaluating "Stealth" as applied to

lawnmowers shaped like stealth bombers; holding that even if design itself was functional, "that principle has no bearing on an application to register a word mark"); *In re Armament Systems and Procedures, Inc.*, Serial No. 75107678, 2005 TTAB LEXIS 384, at *8 (Sept. 12, 2005) (functionality pertains to "the configuration of a product or its trade dress and is inapplicable to a mere word mark"); *Stoller v. Sutech U.S.A., Inc.*, Opp'n No. 91117894, 2005 TTAB LEXIS 464, at *7 (Oct. 26, 2005) ("[The] allegation of functionality is completely irrelevant because the subject matter in this case is a word mark shown in standard character form.").

### B. Autodesk Asserts No Claim Against Functional Uses of "DWG" by SolidWorks.

When SolidWorks saves AutoCAD-compatible files in the DWG format, it appends ".dwg" to the file extension to signal to the operating system what format the file is in. In asserting its functionality defense, SolidWorks may mean that this *use* of DWG is functional in nature and therefore cannot give rise to Lanham Act liability. This is what SolidWorks appears to be driving at when it raises the specter that if Autodesk succeeds here it will have a "monopoly" on the use of DWG and have the right to prevent any product from opening or saving files in the DWG format. But Autodesk has never made such claims against any party. More to the point, because Autodesk does not assert any claim against any even arguably functional use of DWG by SolidWorks, this argument is irrelevant here.

As Autodesk's complaint makes clear, Autodesk does not claim that the fact that SolidWorks products save files with the suffix ".dwg" gives rise to any Lanham Act liability. (Amended Complaint (Dkt. No. 37) ("Am. Compl.") at ¶¶ 20-23, 25, 30-32, 42, 48.) The lack of such claims distinguishes this case from cases such as *Compaq Computer Corp. v. Procom Technology, Inc.*, 908 F. Supp. 1409 (S.D. Tex. 1995). In *Compaq*, the mark at issue was "Compaq," used by the defendant in the "VENDOR_ID" line of firmware programming code to ensure compatibility. That functional use was held not actionable as trademark infringement — Compaq could not use trademark law to prevent a competitor from using its mark in a functional fashion in its firmware programming code. *Id*. at 1423; *see also Playboy Enters. v. Netscape Comm'ns Corp.*, 354 F.3d 1020, 1030 n.47 (9th Cir. 2004) (citing *Compaq* as an example of the "rare instance[]" where words may have functional use). The court in *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1528 (9th Cir.

1992), faced a similar issue: a trademark that automatically displayed on a videogame system whenever a cartridge with a necessary authentication code was used. Any rival cartridge maker needed to include the authentication code to get their game to run on the Sega system, which would in turn automatically prompt the display of the Sega trademark, which Sega then claimed was infringement. The court found such automatic display functional and non-actionable. *Id.*

As Autodesk's complaint makes clear, Autodesk's claims against SolidWorks are nothing like the claims at issue in the *Compaq* or *Sega* cases. Autodesk claims SolidWorks misuses the DWG mark by *naming its products* with DWG as part of the name and by overusing DWG in describing SolidWorks products. (Am. Compl. ¶¶ 20-23, 25, 30-32, 42, 48.) SolidWorks could have named its products anything and advertised them in any manner; they would function the same, and SolidWorks therefore has no viable "functional" defense.

## II. DWG IS A PARTICULAR, PROPRIETARY AUTODESK FILE FORMAT AND IS THEREFORE NOT A GENERIC NAME OF A GENUS OF FILE FORMATS.

SolidWorks also claims that DWG is a generic name and that therefore it is not entitled to trademark protection. (Def.'s Mot. to Dismiss at 6.) The Ninth Circuit has explained that where "buyers understand the term as being identified with a particular producer's goods or services, it is not generic. But if the word is identified with all such goods or services, regardless of their suppliers, it is generic." *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 929 (9th Cir. 2005) (internal quotations & citations omitted). Dispensing with SolidWorks' genericness argument is straightforward, does not require resolution of any issue of disputed fact, and is therefore ripe for adjudication on summary judgment.

DWG identifies a particular file format. It is indisputable that this file format is defined and controlled by Autodesk; SolidWorks and third-party witnesses and documents so acknowledge. "DWG" therefore does not describe a genus — the genus here is CAD file formats — and instead describes a particular species within a genus: Autodesk's proprietary file format. There are many such file formats, each unique and separately named. REDACTED

. (Bos. Decl., Ex. 1 (Kelly

AUTODESK'S SUMMARY JUDGMENT MOTION  4
CASE NO. 3:08-CV-04397-WHA
sf-2752712

1  6/25/2009 Tr.) at 93:2-14 and Ex. 2 (Kelly 9/25/2009 Tr.) at 19:21-20:16, 21:19 -24:16, 29:21-
2  30:16.)

3        To be sure, other companies, using reverse-engineered technology, offer products capable of
4  reading and writing DWG files without Autodesk's approval or endorsement. SolidWorks is one
5  such company. In doing so they are not rendering DWG generic, however. They are not creating
6  distinct file formats such that "DWG" then refers to a class encompassing multiple file formats. They
7  are, to the contrary, REDACTED
8  . (Bos. Decl., Ex. 3 (Zuffante Tr.) at 82:11-
9  18., Ex. 4 (Van Der Weide Tr.) at 221:22-222:8) (admitting when ODA refers to "DWG" in
10 communications to members, it means the AutoCAD file format). Such use does not give rise to a
11 claim of genericness.[1]

12     **A.**    **DWG Refers to a Proprietary File Format Defined by Autodesk.**

13       The DWG mark refers specifically to, and is used to identify and distinguish, Autodesk's
14 proprietary technology, realized in a particular file format. (Bos. Decl., Ex. 5 (Autodesk - Legal
15 Notices & Trademarks – Guidelines for Use) at ADSK0007156 ("DWG is the name of Autodesk's
16 proprietary file format and technology used in AutoCAD® software and related products").)
17 Publications in the industry demonstrate that the consumer perception of DWG is not as a generic
18 term, but as a proprietary format defined by Autodesk. (Bos. Decl., Ex. 6 (Sept. 1, 2000 CADalyst
19 article, "Perils of electronic exchange beyond AutoCAD") at ADSK-SLOT0000296 ("Autodesk has
20 kept the DWG file format proprietary"); Ex. 7 (Feb. 10, 1998 OpenDWG Alliance Press Release,
21 "OpenDWG Alliance Formed to Make CAD Files Widely Accessible") at ADSK-SLOT0000353
22 ("DWG, to date a proprietary undocumented format . . . . Autodesk's DWG file format is the CAD
23 industry's most popular format"); Ex. 8 (8/24/05 e-mail from M. Strassman forwarding MCADonline

---

[1] Indeed, Autodesk's trademark guidelines do not bar such use. (Bos. Decl., Ex. 5 (Autodesk - Legal Notices & Trademarks – Guidelines for Use) at ADSK0007156 ("You may cite to DWG as a file name in a referential phrase such as 'works with DWG' . . . or 'compatible with DWG.' . . . . You should not adopt or use product, service, or company names that could cause confusion . . . . Do not, for example, cite to the DWG name . . . at the beginning of, or otherwise as the most prominent part of, your product, service, or company name.").)

1  article) at ADSK0000123 ("DWG is a proprietary file format, owned, controlled, and updated by
2  Autodesk").)

3      SolidWorks acknowledges that DWG refers to a proprietary file format defined by Autodesk.
4  SolidWorks' 30(b)(6) witness acknowledged that REDACTED
5  REDACTED. (Bos. Decl., Ex. 1 (6/25/2009 Kelly
6  Tr.) at 24:5-9.)  SolidWorks further acknowledged that REDACTED
7  REDACTED.[2] (*Id.* at 25: 4-7.)  SolidWorks' internal and public documents
8  make the same admissions.  At the SolidWorks User Conference in 2005, SolidWorks' CEO and its
9  Director of Product Management gave a presentation titled "REDACTED."  In it, they
10 acknowledge that REDACTED
11 REDACTED" (Bos Decl. Ex. 9 (SW0036500-525) at 506.)

12     The Open Design Alliance ("ODA") — the entity from whom SolidWorks licenses the
13 reverse-engineered libraries that run its DWGseries products — makes similar admissions.  The
14 ODA's 30(b)(6) witness acknowledged that the DWG file format is proprietary to Autodesk.  (Bos
15 Decl. Ex. 4 (Van Der Weide Tr.) at 62:12-16, 118:19-21.)  ODA's published statements say the
16 same.  An ODA White Paper, published on its website since at least 1999 through today, makes clear
17 that DWG is Autodesk's technology, noting that "DWG is the extension appended to the names of
18 drawing files created by AutoCAD" and is an "undocumented, proprietary format."  (Bos Decl.
19 Ex. 10 (ODA White Paper) at ADSK0022994-997.)  The ODA's frequently asked questions sheet, on
20 its website since at least 2004, also makes clear that the industry recognizes that DWG is Autodesk's
21 proprietary technology, stating that "the vast majority of CAD drawings are stored in proprietary
22 formats.  The best-known of these is Autodesk's DWG file format . . . Autodesk offers DWG, and it
23 controls that format."  (Bos Decl. Ex. 11 (ODA 2004 FAQs) at ADSK0072129-133.)

---

[2] SolidWorks witnesses have, however, emphasized that the DWG format changed over time under Autodesk's control, a point SolidWorks may raise in opposition by making the claim that such variance renders DWG generic.  Though it is true Autodesk has updated the format over time, this is true of any software product (and many non-software products), and does not detract from the fact that DWG refers to a file format defined by Autodesk.

AUTODESK'S SUMMARY JUDGMENT MOTION      6
CASE NO. 3:08-CV-04397-WHA
sf-2752712

### B. DWG is not a Generic Name for any Genus of File Formats.

Because DWG is a particular technology proprietary to and defined by Autodesk, and not a class of such technologies, it is not generic. The relevant class or genus here, instead, is "CAD file format," with particular formats being species within that genus. For example, Robert Zuffante, one of the founders of SolidWorks, testified that REDACTED. (Bos Decl. Ex. 3 (Zuffante Tr.) at 18:21-19:1.) Zuffante later testified that REDACTED. *Id.* at 82:24-83:4.) SolidWorks' 30(b)(6) witness Aaron Kelly, when speaking generally of the file formats used in the industry, referred to REDACTED" and "REDACTED." (Bos. Decl., Ex. 1 (Kelly Tr.) at 296:21-297:10.) Kelly also admitted that DWG is "REDACTED." (*Id.* at 18:10-17.) Analogously, SolidWorks' Strategic Brand Manager was clear that Autodesk, SolidWorks, and other companies providing CAD software are "REDACTED," not "REDACTED." (Bos. Decl. Ex. 12 (Kozikowski Tr.) at 203:10-205:1.)

SolidWorks and third-party witnesses acknowledge that REDACTED. *See, e.g.*, Bos Decl. Exs. 2 (Kelly 9/25/2009 Tr.) at 19:21-20:16, 21:19-24:16, 29:21-30:16 (REDACTED); Ex. 13 (TurboCAD) at SW0000315 (noting existence of at least 25 CAD file formats, specifically identifying five such formats). The ODA's 30(b)(6) witness likewise acknowledged that not all CAD files are called DWG files, and that drawing files do not have to be DWG files. (Bos Decl. Ex. 4 (Van Der Weide Tr.) at 200:23-25, 197:16-198:13.

The facts here are therefore distinct from the typical circumstance in which courts have found marks generic. For example, in *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 327 Fed. Appx. 723, 724 (9th Cir. 2009), the court found "Organic Food Bar" generic, because it simply sought to trademark the genus of food bars made with organic ingredients. In *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999), the court found "Filipino Yellow Pages" generic because it sought coverage of the genus of Filipino yellow pages. Compare

that with, for example, *Yellow Cab*, 419 F.3d at 929, in which the court held that "Yellow Cab" was more properly a species within the genus "cab company," and *Nautilus Group, Inc. v. Icon Health & Fitness, Inc.*, 372 F.3d 1330, 1342 (Fed. Cir. 2004), in which the court held that "Bow" was not used to describe "the genus of which a particular product is a species" and thus was not a generic name for exercise machines (internal quotation & citation omitted).

Because there is no genuine dispute of fact that DWG is the name of a particular species of CAD technology proprietary to and defined by Autodesk, rather than a class or genus of technologies, summary adjudication should be granted on SolidWorks' genericness defense.[3]

### III. SOLIDWORKS' LACHES DEFENSE HAS NO MERIT

SolidWorks' Fourth Affirmative Defense asserts that Autodesk's claims are barred by laches. This defense should be summarily rejected. The first SolidWorks products incorporating the DWG mark in their names were released in late 2004. In 2006, Autodesk filed opposition and cancellation proceedings against SolidWorks before the TTAB. These proceedings toll any running of the "laches" period. Courts hold that laches does not attach if a claim is brought within the statute of limitations, which is typically found to be three years for Lanham Act claims. Because Autodesk filed TTAB proceedings within two years, no defense of laches lies here. Moreover, SolidWorks can claim no prejudice. Autodesk has been in constant litigation with SolidWorks regarding the DWG mark since two years after the release of SolidWorks' first DWGseries product. SolidWorks has therefore long been on notice that any investment it makes in infringing activities is at its peril.

---

[3] SolidWorks may rely, in opposition, on a purported genericness survey by one of its experts, Howard Marylander. Autodesk will address any such argument in full on reply, but notes preliminarily that Marylander's survey first gave a thoroughly confusing set of definitions, then asked the wrong question. Marylander asked whether DWG refers to a common *product or service* or a branded *product or service*, not whether it refers to a species of *file format* defined by one company or genus defined by many. His survey is therefore inapposite. Respondents' reactions to the "control" brand and common names Marylander used illustrate this crippling deficiency. Marylander showed respondents three "common" controls, each of which were file formats, and three "brand" controls, each of which were products. Even with that biased division of the controls, only 2 of 300 respondents correctly identified each of Marylander's controls as common or branded. 83% of respondents missed at least half of the controls. 61% of respondents missed at least four of the six controls.

### A.   The Earliest Possible Date Laches Might Attach is Three Years from Notice.

There is a strong presumption that the doctrine of laches is inapplicable if the proceeding is brought within the statute of limitations. *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1138-39 (9th Cir. 2006). The Lanham Act has no statute of limitations, so courts borrow from state law claims when addressing laches defenses. *Id*. Most courts in the Ninth Circuit analogize Lanham Act cases to fraud cases, for which the statute of limitations in California is three years. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002).

### B.   Autodesk's TTAB Filing Tolls Any Laches Period.

The filing of a trademark opposition proceeding tolls laches. An opposition constitutes sufficient reason for waiting to file an infringement suit in federal court because it puts the defendant on notice. District courts throughout the United States have consistently so held. *See, e.g.*, *Gaudreau v. Am. Promotional Events, Inc.*, 511 F. Supp. 2d 152, 159 (D.D.C. 2007) ("Numerous courts have recognized that pursuing an opposition in the USPTO excuses delay in filing suit on a Lanham Act claim."); *Citibank, N.A. v. Citytrust*, 644 F. Supp. 1011, 1014 (E.D.N.Y. 1986) (holding that filing of opposition to defendant's attempt to federally register its mark tolls running of laches as to litigation to stop defendant's use of the mark).

The holdings and opinions above are consistent with the policy underlying laches: a plaintiff should not be allowed to "sleep[] on his rights" to the detriment of an unaware defendant. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-51 (9th Cir. 2001) (internal quotation omitted). If a defendant is involved in proceedings before the TTAB addressing marks at issue in the lawsuit, the defendant can hardly argue that the plaintiff was "sleeping on his rights" or that the defendant was unaware of the plaintiff's claim.

*Gaudreau* is particularly on point. The defendant filed an application to register a mark in 2000. The plaintiffs initiated an opposition proceeding before the TTAB two years later, in 2002. The TTAB proceeding progressed to a decision against the plaintiff in 2007, and the plaintiffs filed an action in federal court appealing the TTAB decision and adding Lanham Act claims later in 2007. *Gaudreau*, 511 F. Supp. 2d at 154-55. The district court noted that not a day had gone by since the initiation of the TTAB proceedings in 2002 without the parties being engaged in litigation concerning

the mark. *Id*. at 159. The court went on to cite a case from the Northern District of Illinois for the proposition that a notice of opposition in the TTAB "renders unreasonable any detriment [the other party] may suffer in reliance on the plaintiff's delay in filing suit." *Id*. (quoting *Floralife, Inc. v. Floraline Int'l*, 633 F. Supp. 108, 113 (N.D. Ill. 1985)). The court then held that the plaintiffs' filing of an opposition before the TTAB "put defendant on notice that plaintiffs contested its use of [the mark] and the doctrine of laches is therefore inapplicable to this case." *Id*.

In the present case, SolidWorks released the first of its DWGseries products in 2004 or 2005. (Bos Decl. Ex. 1 (6/25/2009 Kelly Tr.) 199:13-15 (DWGeditor released in 2005); Ex. 2 (Kelly Vol. 2 Tr.) 63:10-65:7 (DWGgateway released in 2005); Ex. 14 ("SolidWorks 2005, What's New" (copyright 2004)) at SW0048418 (the "new SolidWorks DWGeditor").) Autodesk initiated an opposition proceeding before the TTAB two years later in the fall of 2006, addressing SolidWorks' application to register DWGGATEWAY. (Bos Decl. Ex. 15 (Notice of Opp'n to DWGGATEWAY filed before Trademark Trial and Appeal Board) at ADSK0000451.) Just as in *Gaudreau*, not a day has gone by since the initiation of the TTAB proceeding in 2006 without Autodesk and SolidWorks being engaged in litigation concerning the DWG mark. In fact, the TTAB proceedings progressively expanded. On September 2, 2006, Autodesk filed a petition to cancel SolidWorks' registration of DWGEDITOR, which had just matured to registration the month before on August 22, 2006. (Bos Decl. Ex. 16 (Excerpt from Dassault Systèmes SolidWorks Corporation's Responses to Autodesk, Inc.'s First Set of Requests for Admission), Response to Request for Admission No. 100).) In January 2007, SolidWorks filed its own oppositions to Autodesk's applications to register the marks REALDWG and DWGX. (Bos Decl. Ex. 17 (Notice of Opp'n before Trademark Trial and Board, Opposition No. 91175197) at ADSK0012486; and Ex. 18 (Notice of Opposition before Trademark Trial and Appeal Board, Opposition No. 91174972) at ADSK0013162.) These proceedings were consolidated and the parties took extensive discovery from each other, including numerous depositions on both sides, many of which were of the same individuals whose depositions have been taken in the present lawsuit. The consolidated proceedings are now suspended pending this case.[4]

---

[4] *See, e.g.*, Bos Decl. Ex. 19 (Gilmour 10:7-17) (Autodesk 30(b)(6) witness confirming that his deposition was taken for related TTAB proceedings); Bos Decl. Ex. 2 (Kelly 9/25/2009 Tr.) at

1    With respect to the notice given to SolidWorks, there was no ambiguity in Autodesk's initial filing before the TTAB. Autodesk clearly stated in its notice of opposition that it claimed rights in DWG and that SolidWorks' incorporation of DWG into product names such as DWGGATEWAY was likely to cause confusion. (Bos Decl. Ex. 15 at ADSK0000453-455.) Plainly, SolidWorks was on notice of Autodesk's legal position, and Autodesk was pursuing vindication of its rights in an appropriate forum. Accordingly, SolidWorks' laches defense should be rejected.

**C.    SolidWorks Was Not Prejudiced.**

In addition, SolidWorks has not been prejudiced by any delay on Autodesk's part. *See Beaty v. Selinger*, 306 F.3d 914, 924 (9th Cir. 2002) ("laches . . . is primarily concerned with prejudice"). Where a defendant is on notice that a plaintiff considers the defendant to be an infringer, the defendant knows that any continued investment in promotional and advertising activities is potentially at its peril and cannot be heard to claim prejudice later. *See, e.g.*, *Perini Corp. v. Perini Constr., Inc.*, 715 F. Supp. 719 (D. Md. 1989) (reversed on other grounds) (defendant's knowledge upon adoption of its mark of plaintiff's prior use precludes prejudicial reliance resulting from delay of plaintiff).

As set forth above, Autodesk and SolidWorks were involved in proceedings before the Trademark Trial and Appeal Board addressing the DWG marks well before the analogous statute of limitations had run. SolidWorks knew from those proceedings that Autodesk claimed rights in DWG and that Autodesk protested SolidWorks' incorporation of DWG into product names.

In fact, even before the initiation of TTAB proceedings, SolidWorks was aware of possible litigation with Autodesk regarding these marks. As early as May 11, 2005, an internal SolidWorks e-mail discussing DWGgateway read, "REDACTED" (Bos Decl. Ex. 20 (5/11/05 e-mail from M. Volpe) at SW0037325.) On January 4, 2004, internal SolidWorks e-mails circulating before the first of the DWGseries products was even released REDACTED. (Bos Decl. Ex. 21 (1/4/04 e-mail from D. Corcoran) at SW0037314 (partially redacted for privilege).) 9:24-10:8.) (SolidWorks 30(b)(6) witness REDACTED).

Given the undisputed facts above, SolidWorks cannot meet the elements of its laches defense. Autodesk could not have known of SolidWorks' infringing activities earlier than 2004. In 2004 and 2005, SolidWorks was aware that Autodesk might take legal action addressing SolidWorks' DWGseries products. In 2006, well within the three year analogous statute of limitations and thus giving rise to a strong presumption against the application of laches, Autodesk initiated TTAB proceedings against SolidWorks, tolling its need to initiate a federal lawsuit and putting SolidWorks on notice that Autodesk protested its use of marks confusingly similar to Autodesk's DWG mark. In 2008, while the TTAB proceedings were still pending, Autodesk initiated the present lawsuit. There are no facts to support undue delay on Autodesk's part, nor can SolidWorks reasonably claim that it was prejudiced.

## CONCLUSION

For the reasons stated above, Autodesk's Motion for Partial Summary Judgment should be granted.

Dated: October 29, 2009

MICHAEL A. JACOBS
J. THOMAS MCCARTHY
DAVID E. MELAUGH
LYNN M. HUMPHREYS
JACQUELINE BOS
NATHAN B. SABRI
MORRISON & FOERSTER LLP


By: /s/ *Michael A. Jacobs*
MICHAEL A. JACOBS

Attorneys for Plaintiff
AUTODESK, INC.