1    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
       Claude M. Stern (Bar No. 96737)
2      Evette D. Pennypacker (Bar No. 203515)
       Andrea Pallios Roberts (Bar No. 228128)
3      Zachary M. Fabish (Bar No. 247535)
     555 Twin Dolphin Drive, Suite 560
4    Redwood Shores, California  94065
     Telephone:  (650) 801-5000
5    Facsimile:  (650) 801-5100

6    Attorneys for Defendant Dassault Systèmes
     SolidWorks Corporation

7
                     UNITED STATES DISTRICT COURT
8
                   NORTHERN DISTRICT OF CALIFORNIA
9

10   | AUTODESK, INC.,                          | CASE NO. 3:08-cv-04397-WHA |
     |------------------------------------------|----------------------------|
11   |             Plaintiff,                   |                            |
     |                                          |                            |
     |        vs.                               | **DEFENDANT DASSAULT SYSTÈMES** |
12   |                                          | **SOLIDWORKS CORPORATION'S** |
     | DASSAULT SYSTÈMES SOLIDWORKS             | **MOTION FOR SUMMARY** |
13   | CORPORATION                              | **JUDGMENT, OR, IN THE** |
     |                                          | **ALTERNATIVE, SUMMARY** |
14   |             Defendant.                   | **ADJUDICATION** |
     |                                          |                            |
15   |                                          | Date:  December 3, 2009 |
     |                                          | Time: 8:00 a.m. |
16   |                                          | Courtroom:    9, 19th Floor |
     |                                          | Judge:  Judge Alsup |
17   |                                          | Trial Date:  January 11, 2010 |

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................ 1

Statement of Material Undisputed Facts ................................................................... 2

Argument ................................................................................................................... 6

I.    "DWG" IS NOT PROTECTIBLE AS A TRADEMARK. .................................. 7

    A.    "DWG" is Generic. ................................................................................ 7

    B.    "DWG" is Functional. ......................................................................... 11

    C.    If DWG were Protectible, Autodesk is not the Senior User of DWG as a Mark. ................................................................................................... 15

II.    AUTODESK'S "REAL ORANGE FRAME DESIGN" IS NOT PROTECTIBLE ........... 16

    A.    "Real" Is Not Separately Protectable As a Trademark. ........................ 17

    B.    Autodesk's Frame Orange Frame Is Not Separately Protectible. .......... 18

III.    SOLIDWORKS' USE OF "AUTOCAD" AND "AUTODESK" ON ITS WEBPAGES TO DESCRIBE ITS PRODUCTS' OPERATION IS NOT LIKELY TO CONFUSE AND QUALIFIES AS NOMINATIVE FAIR USE .............................. 19

    A.    AutoCAD Is Not Readily Identifiable Except Through Use of AUTOCAD .......... 21

    B.    AUTOCAD Does Not Appear on SolidWorks' Web Pages More Than Is Reasonably Necessary. ......................................................................... 22

    C.    SolidWorks' Web Pages Do Not Suggest Sponsorship or Endorsement by Autodesk. ............................................................................................. 23

IV.    AUTOCAD'S FALSE ADVERTISING CLAIMS FAIL AS A MATTER OF LAW ....... 25

    A.    None of the Three Statements Are False or Misleading or Material. .......... 26

    B.    Autodesk has Failed to Produce Evidence of Damages .......................... 28

    C.    Statements One and Three Are Non-actionable Puffery .......................... 28

Conclusion ................................................................................................................ 30

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*In re A La Vieille Russie, Inc.*,
  2001 WL 862510 (T.T.A.B. 2001) ..................................................................................12

*AMF Inc. v. Sleekcraft Boats*,
  599 F.3d 341 (9th Cir. 1979) ..............................................................................14, 15, 16

*Application of David Crystal, Inc.*,
  296 F.2d 771 (C.C.P.A. 1961) ..........................................................................................13

*Application of E.J. Brach & Sons*,
  256 F.2d 325 (C.C.P.A. 1958) ..........................................................................................13

*Big Island Candies, Inc. v. The Cookie Corner*,
  269 F. Supp. 2d 1236 (D. Haw. 2003) ............................................................................21

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ..........................................................................................10

*Brunswick Corp. v. British Seagull Ltd.*,
  35 F.3d 1527 (Fed. Cir. 1994) ..........................................................................................14

*CG Roxane LLC v. Fiji Water Co. LLC*,
  569 F. Supp. 2d 1019 (N.D. Cal. 2008) ..........................................................................11

*Cairns v. Franklin Mint Co.*,
  292 F.3d 1139 (9th Cir. 2002) ....................................................................................18, 19

*Capcom Co., Ltd. v. MKR Group, Inc., No. C 08-0904 RS*,
  2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) ................................................................19

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................................1

*In re Century 21/Re-Max Real Estate Advertising Claims Litigation*,
  882 F. Supp. 915 (N.D. Cal. 1994) ............................................................................22, 23

*Classic Foods*,
  468 F. Supp. 2d at 11809-94 ..............................................................................................3

*Closed Loop Marketing v. Closed Loop Marketing, LLC*,
  589 F. Supp. 2d 1211 (E.D. Cal. 2008) ........................................................................3, 6

*Compaq Computer Corp. v. Packard Bell Electronics, Inc.*,
  163 F.R.D. 329 (N.D. Cal. 1995) ..............................................................................8, 9, 21

*Compaq Computer Corp. v. Procom Technology, Inc.*,
  908 F. Supp. 1409 (S.D. Tex. 1995) ..............................................................................7, 8

*Department of Parks and Recreation for State of California v. Bazaar Del Mundo Inc.*,
   448 F.3d 1118 (9th Cir. 2006) .............................................................................................12

*Designer Skin, LLC v. S & L Vitamins, Inc.*,
   560 F. Supp. 2d 811 (D. Ariz. 2008) ...................................................................................20

*Disc Golf Ass'n v. Champion Discs, Inc.*,
   158 F.3d 1002 (9th Cir.1998) .........................................................................................7, 14

*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d 1135 (9th Cir. 2002) .............................................................................................16

*Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*,
   198 F.3d 1143 (9th Cir. 1999) .......................................................................................2, 3, 6

*Freedom Card, Inc. v. JPMorgan Chase & Co.*,
   432 F.3d 463 (3d Cir. 2005) ................................................................................................10

*Frontrange Solutions USA Inc. v. NewRoad Software, Inc.*,
   505 F. Supp. 2d 821 (D. Colo. 2007) ..................................................................................19

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
   826 F.2d 837 (9th Cir. 1987) .................................................................................................2

*Gimix, Inc. v. JS&A Group, Inc.*,
   699 F.2d 901 (7th Cir. 1983) ...............................................................................................11

*Image Online Design, Inc. v. Cor. Ass'n*,
   120 F. Supp. 2d 870 (C.D. Cal. 2000) ...............................................................................3, 4

*Instant Media, Inc. v. Microsoft Corp.*,
   2007 WL 2318948 (N.D. Cal. 2007) ...................................................................................10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   756 F. Supp. 1292 (N.D. Cal. 1991) .....................................................................................4

*J.K. Harris & Company, LLC v. Kassel*,
   253 F. Supp. 2d 1120 (N.D. Cal. 2003) ..............................................................................18

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   543 U.S. 111 (2004) ...............................................................................................................2

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
   150 F.3d 1042 (9th Cir. 1998) .............................................................................................15

*King-Seeley Thermos Co. v. Aladdin Indus., Inc.*,
   321 F.2d 577 (2d Cir. 1963) ..................................................................................................4

*Momentum Luggage & Leisure Bags v. Jansport, Inc.*,
   2001 WL 830667 (S.D.N.Y. 2001) ......................................................................................12

*In re Morganroth*,
   208 U.S.P.Q. 284, 1980 WL 30167 (T.T.A.B. 1980) ..........................................................11

1    *Nartron Corp. v. STMicroelectronics, Inc.,*
     305 F.3d 397 (6th Cir. 2002) ..............................................................................4

2

3    *New Kids on the Block v. News America Pub., Inc.,*
     971 F.2d 302 (9th Cir. 1992) ................................................................2, 16, 17, 19

4    *Oestreicher v. Alienware Corp.,*
     544 F. Supp. 2d 964 (N.D. Cal. 2008) ..............................................................25

5

6    *One Industries, LLC v. Jim O'Neal Distributing, Inc.,*
     578 F.3d 1154 (9th Cir. 2009) ...........................................................................15

7    *Paramount Pictures Corp. v. White,*
     31 U.S.P.Q. 2d 1768 (T.T.A.B. 1994) ..............................................................12

8

9    *Patmont Motor Werks, Inc. v. Gateway Marine, Inc., No. C 96-2703 TEH,*
     1997 WL 811770 (N.D. Cal. Dec. 18, 1997) .....................................................19

10    *Petro Stopping Centers, L.P. v. James River Petroleum, Inc.,*
     130 F.3d 88 (4th Cir. 1997) ................................................................................10

11

12    *Qualitex Co. v. Jacobson Products Co.,*
     514 U.S. 159 (1995)) (emphasis added ...........................................6, 7, 10, 13

13    *Rehrig Pacific  Co. v. Norseman Plastics Ltd. Inc., No. SACV 03-00470-JVS (AJWx),*
     2003 WL 25667625 (C.D. Cal. Sept. 30, 2003) ...........................................17, 18

14

15    *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.,*
     568 F.2d 1342 (C.C.P.A. 1977) .........................................................................13

16    *Sega Enterprises Ltd. v. Accolade, Inc.,*
     977 F.2d 1510 (9th Cir. 1993) ..................................................................2, 6, 7, 8, 9

17

18    *Self-Realization Fellowship Church, v. Ananda Church of Self-Realization,*
     59 F.3d 902 (9th Cir. 1995) ................................................................................12

19    *Soilworks, LLC v. Midwest Indus. Supply, Inc.,*
     575 F. Supp. 2d 1118 (D.Ariz. 2008) ...............................................................25

20

21    *Southland Sod Farms v. Stover Seed Co.,*
     108 F.3d 1134 (9th Cir. 1997) ......................................................2, 21, 22, 23, 25

22    *Stulbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,*
     240 F.3d 832 (9th Cir. 2001) ...............................................................................4

23

24    *Talking Rain Beverage Co. Inc. v. South Beach Beverage Company LLC,*
     349 F.3d 601 (9th Cir. 2003) .........................................................................7, 14

25    *Traffix Devices, Inc. v. Marketing Displays, Inc.,*
     532 U.S. 23 (2001) ............................................................................................6, 9

26

27    *Two Pesos, Inc. v. Taco Cabana, Inc.,*
     505 U.S. 763 (1992) ..........................................................................................2, 6

28

*Valu Engineering, Inc. v. Rexnord Corp.*,
    278 F.3d 1268 (Fed. Cir. 2002)............................................................................7

*Volkswagenwerk Aktiengesellschaft v. Church*,
    411 F.2d 350 (9th Cir. 1969)..............................................................................17

*W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.*,
    984 F.2d 567 (2d Cir. 1993)................................................................................15

*Western Duplicating, Inc. v. Riso Kagaku Corp.*,
    2000 WL 1780288................................................................................................24

*Wiley v. American Greetings Corp.*,
    762 F.2d 139 (1st Cir. 1985)..............................................................................13

*William H. Morris Co. v. Group W, Inc.*,
    66 F.3d 255 (9th Cir. 1995)................................................................................23

*Yellow Cab Company of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
    419 F.3d 925 (9th Cir. 2005).........................................................................2, 4

### Statutes

15 U.S.C. 1125(a)................................................................................................21

15 U.S.C. § 1125(a)(3)..........................................................................................2

15 U.S.C. § 1127...................................................................................................6

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 3, 2009, at 8:00 a.m. in Courtroom 9, 19th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Judge William Alsup presiding, Defendant Dessault Systemes SolidWorks Corporation ("SolidWorks") will, and hereby does, move the Court for summary judgment, or, in the alternative, summary adjudication pursuant to Federal Rule of Civil Procedure 56 and Civil Local Rules 7 and 56.  SolidWorks makes this motion on the grounds that there can be no material dispute that:

(1)      "DWG" is generic and functional and therefore not protectable under the Lanham Act, and therefore all of Autodesk's claims based on claimed infringement of the alleged "DWG" trademark fail;

(2)      Autodesk has no legally adequate proof that there is any likelihood of confusion between SolidWorks' use of its Real Logo (the yellow-orange square frame containing the word "Real") and Autodesk's simultaneous use of (i) its alleged "orange frame design" on product packaging and in advertising and (ii) its corporate message "Experience Before It's Real", and in any event, Autodesk has no legally protectable interest, in whole or in part, in the theoretically cobbled together combination of the alleged "orange frame design" and the alleged Autodesk corporate message of "Experience Before It's Real";

(3)      SolidWorks' use of the words "AUTOCAD" and "Autodesk" on its DWGseries web pages is fair use; and

(4)      SolidWorks' statements regarding the capability of its DWGseries products are true or, at most and in the alternative, constitute mere puffery.

Accordingly, by this motion, SolidWorks seeks the following relief:

1.      That the Court issue an order entering summary judgment against Autodesk on all claims for relief set forth in Autodesk's First Amended Complaint and dismissing this action, or, in the alternative,

2.      That the Court issue an order summarily adjudicating Autodesk's First claim for

1   relief for Unfair Competition and False Designation of Origin;

2       3.      That the Court issue an order summarily adjudicating Autodesk's Second claim for

3   relief for Unfair Competition and False Advertising;

4       4.      That the Court issue an order summarily adjudicating Autodesk's Third claim for

5   relief for Trademark Infringement;

6       5.      That the Court issue an order summarily adjudicating Autodesk's Fourth claim for

7   relief for False Designation of Origin;

8       6.      That the Court issue an order summarily adjudicating the following facts, and

9   dismissing Autodesk's Fifth claim for relief for Cancellation of SolidWorks' DWGeditor mark.

10      This motion is based on this Notice of Motion, Motion and Memorandum of Points and

11  Authorities; the Declarations of Andrea Pallios Roberts, Charles Weinstein, Howard Marylander,

12  Dr. Joel Orr, Donna L. Hoffman, and Vajrang Parvate, and supporting exhibits, and the pleadings,

13  transcripts and other materials on file in this action.

14  DATED:  October 29, 2009            Respectfully submitted,

15                                      QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
16

17                                      By   /s/
                                        _____
18                                          Claude M. Stern
                                            Attorney for Defendant Dassault Systèmes
19                                          SolidWorks Corporation

20

21

22

23

24

25

26

27

28

**Preliminary Statement**

This lawsuit concerns Autodesk's efforts to prevent competitors, like SolidWorks, from marketing products that interoperate with Autodesk's flagship product, AutoCAD.  Since 1982, when Autodesk licensed technology that used the file format .dwg (referred to by everyone as "DWG") for saving drawings, the DWG file format has become ubiquitous in the CAD (computer aided design or "drawing") industry.  Although Autodesk does not document the DWG file format, numerous companies have made and continue to make software that works with DWG files.  The Open Design Alliance (ODA, formerly called Open*DWG* Alliance) makes available software libraries by reverse engineering AutoCAD's DWG format that offer a different "DWG" file format, although also called "DWG."  Some of the companies that have utilized these libraries have even included DWG as part of their company or product name.  By contrast, prior to 2006, Autodesk never identified DWG as a trademark, never had a product called DWG, never consistently mentioned or emphasized DWG in its marketing, and actually *disclaimed*  DWG its own trademark applications.  Thus, in 2005, when SolidWorks came out with its DWG series products – a set of tools that allows users to open, edit and maintain legacy DWG data – it had no reason to believe that naming its products with descriptive names such as "DWGedtior" and "DWGgateway" would in any way be problematic.  SolidWorks did not anticipate that Autodesk would try to use the Lanham Act to prevent it from marketing lawfully created interoperable products, but that is exactly what Autodesk seeks to do here.

Autodesk asserts that SolidWorks (1) cannot have product names with the letters "DWG" in them, (2) cannot use the word AutoCAD to advertise its dwg-based products, and (3) makes false statements about the capabilities of its dwg-based products.  (Autodesk also asserts a false designation suit, which was previously plead as a trade dress claim and dismissed.)  The material undisputed facts demonstrate that Autodesk has completely failed to meet its burden and (1) DWG is generic, functional and not protectable, (2) SolidWorks' use of AutoCAD in advertising is fair use, (3) SolidWorks' ads for its dwg-based products are not actionable, and (4) there is no Autodesk orange frame design to mimic, let alone protect.  SolidWorks' motion should be granted.

1

**Statement of Material Undisputed Facts**

2       **The Parties.**  Autodesk makes AutoCAD, the dominant 2D CAD software program, which

3   creates 2D drawing files in the .dwg file format.[1]  SolidWorks' focus is on 3D software, called

4   SolidWorks; it does not make a product that competes with Autodesk's AutoCAD software.[2]  To

5   enable its 3D customers to utilize their legacy 2D data, SolidWorks makes a series of free software

6   products that allow its customers to open, save and make minor edits to their DWG files.[3]

7       **The Proliferation of the DWG File Format.**  Mike Riddle, not Autodesk, invented the

8   first CAD program for microcomputers, called Interact.[4]  Interact stored files in a collection of

9   mathematical coordinates and binary data that Mr. Riddle assigned the file extension ".dwg."[5]  Mr.

10  Riddle selected the letters "dwg" as the file extension because "dwg" was an abbreviation for

11  "drawing."[6]  DWG has been an abbreviation for "drawing" since at least 1946.[7]

12      In 1982, Mr. Riddle gave Autodesk a *non-exclusive* license to the Interact source code,

13  which Autodesk used to create AutoCAD.[8]  Autodesk did not ask permission to use DWG, and

14  Mr. Riddle did not believe any such permission was necessary because DWG "served the

15  functionality requirements of the operating system."[9]

16      Since 1982, Autodesk, Mr. Riddle's company and many other companies have used and

17  continue to use .dwg as a file extension for files containing drawing data.[10]  Since 1998, the ODA

18  lawfully reverse-engineered Autodesk's DWG file format and made available a non-proprietary

19

---

20   [1]  First Amended Complaint (FAC) ¶ 10; Roberts Dec., Ex. 46.
21   [2]  Answer, Dkt. No. 32.
     [3]  *Id.*
22   [4]  Roberts Dec., Ex. 2 - Riddle Depo., 17:17-22, 30:2-9.
23   [5]  *Id.*, at 30:17-32:21, 33:3-34:4, 36:15-20.
     [6]  *Id.*, 37:16-23, 40:8-12, 41:2-8.
24   [7]  Declaration of Charles Weinstein Ex. 1.
     [8]  Roberts Dec., Ex. 2 - Riddle Depo., 57:15-58:17.
25   [9]  Roberts Dec., Ex. 2  61:15-62:2.
26   [10]  *Id.*, 89:3-7 Ex. 1141-43, 1145-46, 1149-53, 1154-57; Roberts Dec., Ex. 3 - Van Der Weide
     Depo., 32:22-33:12, 63:10-64:7 134:22-135:3, 141:14-142:10, Ex. 3; *id.*, Ex. 4 - Reilly Depo.,
27   77:14-18, 158:5-18, 316:3-326:16; *id.*, Ex. 5 -  Bradshaw Depo., 201:7-23; *id.*, Ex. 6 - Gilmour
     Depo., 55:6-62:2, 123:3-12, 167:8-177:25; *id.*, Ex. 7 - Hurley Depo., 58:8-24 & Ex. 1261, 1262,
28   1263, 1273, 1276; *see e.g.* Roberts Dec., Exs. 8-10; Weinstein Dec., Ex. 3.

and "open" version of the DWG file extension, which allowed companies to develop products that could interoperate with Autodesk's DWG files and DWG files created by others.[11]  The files created by these products are not the same as those created in AutoCAD, but for more than 11 years they have been publicly called "DWG files."[12]  Autodesk has done nothing to stop the ODA from reverse-engineering its DWG file format or developing competing DWG-based products.

**Autodesk's Historic Failure to Treat DWG as a Trademark.**  For twenty-three years, Autodesk used and referred to "DWG" in the same way as its competitors: a file format.[13]  If they mentioned DWG at all, Autodesk's product packages, manuals and ads referred only to DWG *files*.[14]  Autodesk did not use "DWG" in product names and did not use the term, by itself, in any logos until 2005 or 2006.[15]  From 1996 to 2006, Autodesk never listed DWG as a trademark in its comprehensive, multipage website list of claimed trademarks.[16]  Autodesk did apply to register the terms "DWG Unplugged" and "Max DWG" as trademarks in 1996, but ***disclaimed "DWG"*** from both applications before abandoning them altogether.[17]  Prior to 2006, Autodesk  did not have ad campaigns emphasizing DWG or products or services associated with DWG as a brand.[18] Even today, Autodesk has no branding guidelines for DWG.[19]

---

[11]   *Id.*, Ex. 3 - Van Der Weide Depo., 47:12-48:6, Ex. 3, 4.

[12]   *Id.*, Ex. 3 - Van Der Weide Depo., 34:10-13; *id.*, Ex. 2 - Riddle Depo., 90:7-21; *id.*, Ex. 7 - Hurley Dec., Ex. 1261.

[13]   Roberts Dec., Exs. 8-20; *id.*, Ex. 2 - Riddle Depo., Exs. 1141-43, 1145-46, 1149-53, 1154-57; Weinstein Dec., Ex. 2, 4.

[14]   Roberts Dec., Exs. 10-20; *id.*, Ex. 2 - Riddle Depo., Exs. 1145-46, 1149-53.

[15]   Roberts Dec., Ex. 21.

[16]   Roberts Dec., Ex. 25; *id.*, Ex. 6 – Gilmour Depo., Ex. 1003.

[17]   Roberts Dec., Ex. 23 - Autodesk's Response to RFA Nos. 5-6; *id.*, Ex. 5 - Bradshaw Depo., 75:6-12.

[18] Roberts Dec., Ex. 4 - Reilly Depo., , 85:5-16, 133:3-20, 279:19-280:4; *see also id.*, Ex. 5 - Bradshaw Depo., 130:9-138:7.  Autodesk will likely point the Court to a handful of Autodesk ads or programs in which it used the term "DWG" in a logo or tagline *along with other words*.  These few purported uses of DWG do not create an issue of fact for trial because they do not establish that Autodesk used "DWG," *standing alone*, other than to refer to a file format.

[19]   Roberts Dec., Ex. 1 - White Depo., Exs. 1031, 1063-1069, Exs. 1072-1073; *id.*, Ex. 24 - Schriever Depo., 48:18-49:11, 117-18; *id.*, Ex. 4 - Reilly Depo., 92: 25-93:18, 279:19-281:1; *id.*, Ex. 5 - Bradshaw Depo., 53:2-54:22, 109:13-20; *id.*, Ex. 6 - Gilmour Depo., 109:18-112:24, 239:8-18.

In 2006, in direct response to SolidWorks' release of its DWGseries products, Autodesk finally began to take steps to "reclaim" (its words) DWG as its own.  For example, Autodesk began to list DWG as a trademark on its website, inconsistently refer to DWG as a trademark in ads and packaging,[20] and seek to register DWG and other combination marks.[21]  These efforts began *24 years* after Autodesk licensed the Interact source code from Mr. Riddle.  The PTO refused Autodesk's registration, even though Autodesk submitted *the same "secondary meaning" survey that Autodesk relies on in this case*, explaining:  "**DWG is type [sic] of format used in CAD design software. . . . As such, applicant cannot have exclusive rights to it**." . . .  **1. DWG is a file format.  2. Autodesk is not the exclusive source of files with the format name DWG. 3. Autodesk does not control the use of DWG by others, either as a trademark or as a file format name.   4. The submitted survey does not reflect recognition of DWG as a trademark, since no distinction was made between use as a trademark and use as a file format."[22]**

Until SolidWorks launched its DWGseries products, Autodesk also did nothing to limit or prevent other companies, including competitors, from using DWG in any way.[23]  Autodesk has ignored CAD software companies called Dr. DWG, AutoDWG and AnyDWG, and has not contested the ODA's more-than-decade-old use of "DWG" in marks, such as OpenDWG and DWGdirect.[24]  In its RealDWG licensing program (which was not branded with the DWG name until 2005), Autodesk does not monitor the quality of licensees' applications or  the licensees' use of "DWG" consistent with Autodesk's trademark guidelines.[25]

---

[20]   Roberts Dec., Exs. 13-17; *id.*, Ex. 4 - Reilly Depo., 91:1-20; Ex. 6 Gilmour Depo., Ex. 1003.

[21]   Roberts Dec., Ex. 26-30 (emphasis added).

[22]   Roberts Dec., Exs. 26-30.

[23]   Roberts Dec., Ex. 4 - Reilly Depo., 105:7-106:5; *id.*, Ex. 5 - Bradshaw Depo., 82:8-83:19, 99:14-100:7, 103:9-19, 105:19-106:24; *id.*, Ex. 6 - Gilmour Depo., 169:3-171:19; *id.*, Ex. 23 - Autodesk Response to RFA Nos. 51-53.

[24]   Roberts Dec., Ex. 6 - Gilmour Depo., 169:3-11, 172:17-23; *id.*, Ex. 23 - Autodesk Response to RFA Nos. 50-51.  Autodesk did contest the ODA's registration of the "OpenDWG" mark.  Roberts Dec., Ex. 3 - Van Der Weide, Depo., 32:22-33:12, 99:23-23, 230:8-231:12.

[25]   Roberts Dec., Ex. 31 - Bittner Depo., 88:2-13, 89:25-91:6, 95:11-96:13, 97:2-4, 104:21-105:10, 110:2-6, 128:23-25.

**DWG Product Categories.**  Because of the CAD industry's widespread use of DWG for more than 20 years, CAD software programs that create, open, edit, save, or otherwise work with DWG files are called DWG products or DWG software.[26]  Many CAD companies still use the term "DWG" in product or company names.[27]  Shawn Gilmour, Autodesk's Rule 30(b)(6) corporate designee, conceded that there is a "class" of non-Autodesk products called "DWG viewers (the precise name of one of SolidWorks' downloads)."[28]  Other Autodesk witnesses conceded that merely knowing that a CAD software program works with DWG files does not indicate the source of that program.[29]  Thus, DWG has become a category, or genre, of products.[30]

**SolidWorks' Advertising of its DWG Products.**  SolidWorks' focus is selling 3D CAD software, but its audience for new sales are 2D CAD users – most of whom use AutoCAD.[31]  Potential customers often have a large amount of 2D files they wish to maintain.[32]  SolidWorks therefore created and began releasing in late 2004 a set of tools to help 2D customers maintain 2D data.  SolidWorks advertises these products at: www.dwggateway.com, www.dwgeditor.com, www.dwgnavigator.com, and www.dwgseries.com ("the DWGseries webpages").

The DWGseries products allow users to work with DWG files created in AutoCAD.  The webpages convey that message, using the words "AutoCAD," "Autodesk" and "DWG" in the body content and in the meta data. [33]  The DWGseries webpages display the SolidWorks logo;  displays the product logo which includes the words "from SolidWorks;" states that the software tools are offered by SolidWorks; includes SolidWorks' contact information; and each page that references

---

[26]  Roberts Dec., Ex. 6 - Gilmour Depo., Ex. 1025.
[27]  Roberts Dec., Exs. 9-10; *id.*, Ex. 23 - Autodesk Response to RFA Nos. 14, 16, and 17.
[28]  *Id.*, Ex. 6 Gilmour Depo., 122:19-123:12.
[29]  Roberts Dec., Ex. 5 - Bradshaw Depo., 79:20-80:1.
[30]  *Id.*, Ex. 32 - Farrell Depo., 43:3-13; *id.*, Ex. 6 - Gilmour Depo., 177:13-16, 295:20-24 & ex. 1025; *id.*, Ex. 333 - Oak 10/27 Depo., 72:16-73:3; Declaration of Howard Marylander, ¶ 45-47.
[31]  Answer, docket no. 38.
[32]  *Id.*
[33]  FAC, Ex. B.

CASE NO. 3:08-cv-04397-WHA

MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1   "AutoCAD" has disclaimer stating that the term is an Autodesk trademark.[34]  The DWGseries

2   webpages differentiate the company offering the products – SolidWorks – from Autodesk by

3   noting that users can avoid expensive AutoCAD upgrades by using the DWGseries products.[35]

4   **The "Orange Frame" and "Real Logo."**  Autodesk also alleges SolidWorks' use of an

5   orange square and the word "real" (shown below) in a single logo since 2007 constitutes false

6   designation of origin.  FAC at ¶¶ 61-68.

7   **SolidWorks' Logo**                    **Orange Frame on Autodesk**
                                           **Inventor Package**

8

9

10                                      

11

12

13   Autodesk does not allege that it has ***any*** mark that is even similar to the SolidWorks' Real logo.[36]

14   Instead, Autodesk alleges that a combination of three separate design elements (1) an orange

15   *rectangular* frame Autodesk claims its uses on Inventor packaging (shown above), (2) Autodesk's

16   RealDWG licensing program, and (3) the phrase, "Experience It Before It's Real," Autodesk

17   claims it uses as a "corporate maxim" somehow make-up a distinctive logo entitled to protection

18   under § 43 of the Lanham Act.  ***These three separate and distinct elements have never once been***

19   ***combined on any product packaging or marketing material used in commerce***.[37]

20                              <u>**Argument**</u>

21          Summary judgment for SolidWorks should be granted where, as here, SolidWorks meets

22   its burden of showing that there is an absence of evidence to support Autodesk's case.  *Celotex*

23   *Corp. v. Catrett*, 477 U.S. 317, 325 (1986); Fed. R. Civ. Proc. 56(c).  Because none of Autodesk's

24   alleged "marks" are registered, Autodesk has the burden to establish that it has a valid, protectable

25

26   ───────────────

27   [34]  *Id.*
       [35]  *Id.*
28   [36]  FAC ¶ 34-38, 61-68.

1   trademark in "DWG," and in an orange frame and the word "real."  *Two Pesos, Inc. v. Taco*

2   *Cabana, Inc.*, 505 U.S. 763, 768 (1992); *Filipino Yellow Pages, Inc. v. Asian Journal*

3   *Publications, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999); *Fuddruckers, Inc. v. Doc's B.R. Others,*

4   *Inc.*, 826 F.2d 837, 841 (9th Cir. 1987).

5       It is also Autodesk's burden to establish that SolidWorks' use of "AutoCAD" and "DWG"

6   on its DWGseries webpages create a likelihood of consumer confusion, *KP Permanent Make-Up,*

7   *Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 114 (2004); *New Kids on the Block v. News*

8   *America Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992), and to establish its false advertising claim.

9   *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  Autodesk has not

10  met and cannot meet these burdens.  The Court should enter summary judgment for SolidWorks.

11  **I.    "DWG" IS NOT PROTECTIBLE AS A TRADEMARK.**

12       The threshold question with respect to Autodesk's DWG claim is the validity of "DWG,"

13  standing alone, as a trademark.  *Vallavista Corp. v. Amazon.com, Inc.*, WL 5210949 (N.D. Cal.

14  2008).  It is undisputed that DWG is not registered as a trademark in the United States.[38]  Thus, it

15  is Autodesk's burden to prove that DWG is both not generic and not functional.  *Filipino Yellow*

16  *Pages*, 198 F.3d at 1146; *Yellow Cab Company of Sacramento v. Yellow Cab of Elk Grove, Inc.*,

17  419 F.3d 925, 927(9th Cir. 2005); 15 U.S.C. § 1125(a)(3) (in absence of registered mark, plaintiff

18  has burden of proving nonfunctionality); *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510,

19  1531 (9th Cir. 1993).  Autodesk has failed to offer any evidence to carry this burden, and the Court

20  should find that DWG is generic, functional and unprotectible as a matter of law.

21       **A.    "DWG" is Generic.**

22       Although section 43(a) of the Lanham Act protects unregistered marks, it only protects

23  those that "qualify" for protection, which is determined by the standard under Lanham Act Section

24  2.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  "DWG" is not protectable

---

[37]   FAC at ¶¶ 63.

[38]   SolidWorks' Answer, (Docket no. 38); Roberts Decl., Ex. 26; *id.*, Ex. 5 - Bradshaw Depo., at 56:3-57:5.

1   because "DWG" is and has become a generic term for a file type.  "A 'generic' term is one that

2   refers, or has come to be understood as referring, to the genus of which the particular product or

3   service is a species."  *Filipino Yellow Pages*, 198 F.3d at 1147.  The Ninth Circuit determines

4   whether a term is generic by applying the "who-are-you/what-are-you" test  *Id.*

5         Courts look at several elements to evaluate whether a term is generic: common meanings

6   and dictionary definitions, use by the party opposing genericness, evidence of how the public and

7   media use the term, other companies' use of the term, opinions of leaders in the industry, and

8   consumer surveys.  *Vallavista*, 2008 WL 5210949 at *3; *Image Online Design, Inc. v. Cor. Ass'n*,

9   120 F. Supp. 2d 870, 879-880 (C.D. Cal. 2000); *Premier Nutrition*, 2008 WL 1913163 at * 4;

10  *Classic Foods*, 468 F.Supp.2d at 11809-94; 2 McCarthy § 12:14 ("Consumer surveys have

11  become almost de rigeur in litigation over genericness.  Judges . . . often expect to receive

12  evidentiary assistance by surveys in resolving generic disputes").  Courts may also consider the

13  Patent & Trademark Office's determinations regarding the claimed mark.  *Premier Nutrition*, 2008

14  WL 1913163 at * 4.  Courts do not have to consider all of these elements to find a term to be

15  generic.

16        In *Hotels.com*, for example, the Federal Circuit concluded "hotels.com" was generic, even

17  in the face of survey evidence saying 76% of respondents thought "hotels.com" was a brand name,

18  based upon references to dictionaries, encyclopedia, and thesauri definitions of "hotel, "temporary

19  lodging," and ".com", as well as printouts from other websites that provided information about

20  hotels and reservations.  573 F.3d at 1303-05; *see also Filipino Yellow Pages*, 198 F.3d at 1150-51

21  (relying on dictionary definitions and generic use of the term).

22        Similarly, in *Premier Nutrition*, the court concluded as a matter of law that "organic food

23  bar" was generic based on common dictionary definitions, generic uses by the claimant and others,

24  and the respective weight of the parties' consumer surveys.  2008 WL 1913163, at *4-11.  The

25  court also found the PTO's statement that "organic food bar" appeared to be generic to be strong

26  evidence because the PTO's refusal to register a trademark "is entitled to 'great weight.'"  *Premier*

27  *Nutrition*, 2008 WL 1913163 at *8; *see also Closed Loop Marketing v. Closed Loop Marketing,*

28  *LLC*, 589 F. Supp. 2d 1211, 1217 (E.D. Cal. 2008).

The *Image Online* court granted summary judgment that a technical term similar to "DWG" was generic. 120 F. Supp. 2d at 880. There, plaintiff claimed it had trademark rights to ".web." *Id*. at 872. Plaintiff alleged defendant infringed its mark by providing computer network addresses and domain name registry services using ".web." *Id.* The court first concluded ".web" was not a valid trademark because it does not indicate source to a potential registrant or a potential website visitor, but instead indicates a type of website and is therefore generic. *Id.* at 875-878; *see also* ("Filipino Yellow Pages" generic); *Stulbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 840 (9th Cir. 2001) ("fire safe" generic for a type or category of safe); *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397 (6th Cir. 2002) (affirming summary judgment of genericness of "smart power" despite federal registration); *Intel Corp. v. Advanced Micro Devices, Inc.*, 756 F.Supp. 1292, 1297-98 (N.D. Cal. 1991) ("386" generic).

DWG is not a trademark because it does not indicate source. It indicates a type of file – a drawing file – much like ".web" indicates a type of website. Autodesk's witnesses admitted that DWG does not denote source, but rather a file format.[39] This makes sense, since all non-Autodesk products that use the ODA's DWG file format – "Open DWG" – are also "DWG" products.[40] *Yellow Cab*, 419 F.3d at 929 ("if the word is identified with all such goods and services, regardless of their suppliers, it is generic") (*citing King-Seeley Thermos Co. v. Aladdin Indus., Inc.*, 321 F.2d 577, 579 (2d Cir. 1963) (major purpose of the word "thermos" is generic)). Even Autodesk refers to DWG as "AutoCAD DWG" in internal and external materials.[41] If DWG standing alone always meant that DWG is sourced from Autodesk or AutoCAD, why would anyone need to call DWG "AutoCAD DWG?" The answer is because DWG alone is generic.

Evidence supporting this conclusion, both before and after the advent of the ODA's competing DWG technology, is overwhelming. As noted above, dictionaries dating back to 1946

---

[39] Roberts Dec., Ex. 33 - Oak 10/27 Depo., 68:14-17, 72:16-73:3; *id.*, Ex. 5 - Bradshaw Depo., 79:20-80:1; *id.*, Ex. 7 - Hurley Depo., 277:15-279:4; *see also* Roberts Dec., Ex. 3 – Van der Weide Depo., 262:12-19; *id*, Ex. 39 – 56:10-58:5, 61:21-62:21, 64:1-9.

[40] *See* Roberts Dec., Ex. 3 - Van Der Weide Depo., 47:12-48:6, Ex. 3, 4.

1   define "dwg" as an abbreviation for drawing; for decades, Autodesk treated "DWG" as simply a

2   type of file or file format and in a completely non-trademark sense; and many third party CAD

3   companies use "DWG" in reference to files and in product or company names.  Indeed, Autodesk

4   30(b)(6) witnesses admitted that there is a class of DWG products or DWG software, such as

5   DWG viewers.[42]  The fact that Autodesk advertises "100% DWG compatibility" or "authentic

6   DWG" shows that Autodesk tries to distinguish the "DWG technology" in its programs from the

7   "DWG technology" in other DWG-based software programs.[43]

8          Industry experts, such as Mike Riddle and Dr. Joel Orr, agree "DWG" does not identify

9   source and is therefore a generic term.[44]  Autodesk's own designated expert also acknowledges

10  that "DWG" alone does not identify the source of a file.[45]  Based upon a fraction of this evidence,

11  when faced with the very question before this Court, whether Autodesk owns "DWG" -- the PTO

12  said no: "DWG is a file format" and Autodesk is neither the exclusive source of files with that

13  name nor controls the use of "DWG" by others.[46]  These findings are entitled to "great weight."

14  *Premier Nutrition*, 2008 WL 1913163, at *8.

15         SolidWorks' *Teflon* survey evidence – though not required – establishes that "DWG" is not

16  a brand name.  Mr. Howard Marylander contacted businesses that purchased or will purchase

17  CAD software in the last 18 months or the next 18 months and asked the person most responsible

18  for selecting the types and brands of software for their company whether "DWG" was a common

19  name or brand name -- 72% of respondents did *not* consider "DWG" to be a brand name.[47]

20  Despite the fact that it is Autodesk's burden to prove non-genericness, ***Autodesk has no***

21

22

---

23     [41]   Roberts Dec., Ex. 5 – Bradshaw Depo., 59:1-19; *id.*, Ex. 6 – Gilmour Depo., 57:4-12; *id.*,
       Exs. 12, 18, 33 – Oak 10/27 Depo., 72:16-73:3; *id.*, Ex. 2 - Riddle Depo., Exs. 1149, 1151.
24     [42]   Roberts Dec., Ex. 6 - Gilmour Depo., 122:19-123:12.
       [43]   Roberts Dec., Ex. 33 – Oak 10/27 Depo., 72:16-73:3.
25     [44]   *Id.*, Ex. 2 - Riddle Depo., 194:24-195:10; *id.*, Ex. 36 – ODA Letter of Protest; Declaration
26  of Dr. Joel Orr, ¶23.
       [45]   Roberts Dec., Ex. 33 - Oak 10/27 Depo., 99:8-100:18.
27     [46]   Roberts Dec., Exs. 26-29.
       [47]   Marylander Dec.,¶ 45-47.
28

1   *competent survey evidence contradicting these results*.[48]  Nor does Autodesk's alleged "branding

2   expert" contradict these results.[49]  In fact, Dr. Hanssens claims DWG should not be analyzed in

3   isolation at all, but as an element of "the overall Autodesk brand," *conceding that DWG is not a*

4   *brand name.*[50]  As "DWG" is a generic term for a type of file format or file extension that

5   indicates what the file is, not its source, Autodesk's unfair competition claim fails.

6        **B.      "DWG" is Functional.**

7        "DWG" is also not protectable as a trademark because it is a functional.  The Lanham Act

8   "does not protect essentially functional or utilitarian product features." *Sega*, 977 F.2d at 1531.  "A

9   product feature is functional and cannot serve as a trademark if it is *essential to the use or*

10  *purpose of the article or if it affects the cost or quality of the article*."  *Traffix Devices, Inc. v.*

11  *Marketing Displays, Inc.*, 532 U.S. 23, 33 (2001) (quoting *Qualitex Co. v. Jacobson Products Co.*,

12  514 U.S. 159, 165 (1995)) (emphasis added).  A functional feature is one the "exclusive use of

13  which would put competitors at a significant non-reputation related disadvantage." 514 U.S. at

14  164-165.  Put another way, "the effect upon competition is really the crux of the functionality

15  inquiry . . . the functionality doctrine preserves competition by ensuring competitors the right to

16  _____

17      [48]   With respect to DWG, Autodesk may point to a survey conducted by Deborah Jay and

18  previously submitted to the PTO as establishing secondary meaning.  This survey was criticized
    by and held no weight with the PTO.  Roberts Dec., Ex. 26-29.  But, more importantly, this survey

19  is irrelevant to the question of whether "DWG" is protectible.  A generic term "cannot be the
    subject of trademark protection under any circumstances, *even with a showing of secondary*

20  *meaning*."  *Filipino Yellow Pages*, 198 F.3d at 1146 (emphasis added).  Thus, once the Court
    finds "DWG" is generic, that term is ineligible for protection regardless of any evidence of

21  secondary meaning.  *Closed Loop Marketing*, 589 F. Supp. 2d at 1220.  Similarly, once
    functionality is established, whether a term acquired secondary meaning need not be considered.

22  *Traffix*, 532 U.S. at 33.

23      [49]   Roberts Dec., Ex. 39 – Hanssens Depo. 39:13-19, 40:7-13.

        [50]   *Id.*, 62:17-21, 244:10-23.  Dr. Hanssens' opinion has no support in the law.  False

24  designation of origin claims under the Lanham Act based upon unregistered marks require the
    same analysis as trademark infringement claims.  That is, the mark at issue is evaluated, not its

25  role in the "overall" branding scheme of the claimed owner.  15 U.S.C. § 1127 ("trademark" is any
    "word, name, symbol or device" which identifies goods of one person and distinguishes them

26  from goods sold by others); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (The
    general principles qualifying a mark for registration under the Lanham Act are for the most part

27  applicable in determining whether an unregistered mark is entitled to protection).

28

1   compete effectively." *Valu Engineering, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1277 (Fed. Cir.

2   2002) (citing *Qualitex*, 514 U.S. at 165).

3        To determine whether a product feature is functional, courts consider: whether

4   advertising touts the utilitarian advantages of the design, whether the design results from a

5   comparatively simple or inexpensive method of manufacture, whether the design yields a

6   utilitarian advantage, and whether alternative designs are available. *Talking Rain Beverage Co.*

7   *Inc. v. South Beach Beverage Company LLC*, 349 F.3d 601, 603 (9th Cir. 2003); *See Disc Golf*

8   *Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006-09 (9th Cir.1998); *Sega*, 977 F.2d at 1531

9   (following same test).  Some cases even suggest that to establish non-functionality, the party

10  with the burden, in this case Autodesk, must demonstrate that the product feature "serves no

11  purpose other than identification." *Sega*, 977 F.2d at 1531 (citing *Keene Corp. v. Paraflex*

12  *Industries, Inc.*, 653 F.2d 822, 824 (3d Cir. 1981)).  Courts may also consider the existence of

13  utility patents disclosing the utilitarian advantages of the design.  *Valu Engineering,* 278 F.3d at

14  1277.  These factors do not all need to be present for a claimed mark to be functional.  *See*

15  *Talking Rain*, 349 F.3d at 603-04; *Sega*, 977 F.2d at 1530-32.

16        Thus, for example, in *Talking Rain*, the Ninth Circuit considered Talking Rain's

17  advertising touting its bottle's utilitarian features in reaching the conclusion that the shape of the

18  bottle was functional.  *Talking Rain*, 349 F.3d at 603-04.  The company used a "Get a Grip"

19  slogan, which the court said touted the functional features of the bottle.  *Id.*  In *Interactive*

20  *Network, Inc. v. NTN Communications, Inc.*, 875 F. Sup. 1398 (N.D. Cal. 1995), the court focused

21  on *the actual benefit* the customer wishes to purchase in an interactive football game.  *Id.* at 1407.

22  The court granted summary judgment that the claimed trade dress was functional because the basic

23  rules and prediction schemes in the game were so intimately related to the purpose of the game

24  that they could not be labeled non-functional.  *Id.*

25        *Sega*  and *Compaq Computer Corp. v. Procom Technology, Inc.*, 908 F. Supp. 1409 (S.D.

26  Tex. 1995) provide further guidance.  In both cases, there, like here, ***the actual benefit to the***

27  ***customer was claimed compatibility***.  In *Sega*, defendant Accolade used Sega's trademarked

28  initialization sequence in its video games so they could operate on Sega's video game console.

977 F.2d at 1530.  Because part of the actual benefit the consumer wished to purchase was compatibility with Sega's game console, the initialization code was the key that provided compatibility, and a means to access the console without the initialization code was not known to competitors, the initialization sequence was functional.  *Id.* at 1531-32.  Similarly, in *Compaq*, defendant Procom's customers valued features offered by plaintiff Compaq's Insight Manager program ("CIM").  908 F. Supp. at 1416.  Procom developed hard drives compatible with CIM by changing the vendor ID on its hard drives to "Compaq."  *Id.*  Because part of the actual benefit a hard drive purchaser wishes to buy is compatibility with CIM, and the use of the word "Compaq" in the vendor ID position provided this compatibility, the court concluded the term was functional and not protectable as a trademark.  *Id.* at 1423.

In derogation of its burden, ***Autodesk has presented no expert testimony that "DWG" is non-functional***.  Autodesk cannot dispute that ".dwg," the file extension, is functional.[51]  It is undisputed that file extensions tell the operating system what program to use to open a particular file.[52]  Autodesk attempts to differentiate between its "DWG technology" and the file extension, claiming that the former is a trademark.  This is a red herring.  DWG technology *is* the .dwg file extension and the file format associated with it.  And, DWG – whether called "DWG technology" or .dwg -- is the feature Autodesk's AutoCAD customers purportedly value and seek.  Indeed, when asked to define these terms, Autodesk responded:

> DWG technology consists of files with a DWG extension that are used to store and share design data.  Other components include programs and libraries that allow reading and writing data in a particular manner in the DWG file. . . .  "Autodesk's DWG file format" and "Autodesk's DWG format" are a component of Autodesk's DWG proprietary technology. The Autodesk DWG file format serves as a way to organize information and relationships within a computer file and is structured for reliability and optimal read and write performance.[53]

Autodesk's "DWG technology" is simply the file extension and ability to work with DWG files.

---

[51]   Roberts Dec., Ex. 33 - Oak 10/27 Depo., 78:21-81:13, Ex. 39, Hanssens Depo., 61:21-62:16, 72:14-73:5.

[52]   Orr Dec., ¶ 25-31; Roberts Dec., Ex. 2 - Riddle Depo., 36:15-39:5; *id.*, Ex. 33 - Oak 10/27 Depo., 96:11-97:18.

1   Autodesk's own flawed survey revealed that a significant number of respondents who associated

2   "DWG" with Autodesk did so because "DWG" is the file format used in AutoCAD.[54]

3        Autodesk's marketing materials and testimony further confirm that DWG is functional.

4   Autodesk claims "With billions of DWG files circulating throughout the entire design industry,

5   *it's* the world's most commonly used design data format."[55]   Autodesk boasts that its RealDWG

6   software toolkit allows users to create applications with 100 percent DWG read/write

7   capability."[56]   Autodesk's advertising makes it clear that ".dwg" and "DWG" are one and the

8   same, and DWG is a feature of Autodesk CAD software products.

9        As in *Sega* and *Compaq*, the actual benefit offered by Autodesk to the customer of using

10  "DWG" file format is interoperability among software programs.   Autodesk boasts 100%

11  compatibility; SolidWorks' DWGseries products offer users the ability to interoperate with DWG

12  files.   DWG is a feature essential to the use or purpose of CAD software programs and affects the

13  cost or quality of the program.   *Traffix,* 532 U.S. at 33.[57]

14       Based on Autodesk's claims that there are "billions of DWG files circulating throughout

15  the entire design industry,"[58] were Autodesk to have exclusive use of this functional feature,

16  SolidWorks and every other company in the CAD software industry would be at "a significant

17  non-reputation related disadvantage." *Traffix,* 532 U.S. at 33.  To the extent Autodesk does not

18  already have a monopoly in the 2D CAD market, if it is permitted exclusive control over "DWG"

19  and can stifle others from conveying that their products work with "DWG" files, Autodesk will be

20  granted the very monopoly the functionality doctrine is intended to prevent.   To give Autodesk a

21  monopoly over the term "DWG" forever – as trademark law does – will shut down any CAD

22

23

24

25   [53]   Roberts Dec., Ex. 37 - Autodesk's Response to Interrogatory No. 20.
     [54]   Roberts Dec., Ex. 38; *id.*, Ex. 39 - Hanssens Depo., 63:4-7, 73:14-18, 237:6-18.

26   [55]   Roberts Dec., Ex. 30 (emphasis added).
     [56]   *Id.*, Ex. 30; *see also id.*, Ex. 5 - Bradshaw Depo., 59.

27   [57]   Roberts Dec., Ex. 33 - Oak 10/27 Depo., 78:21-82:10.
     [58]   Roberts Dec., Ex. 30.

28

1   competitor's efforts to describe interoperability.  This is precisely what the functionality doctrine is

2   intended to avoid.[59]   *Qualitex*,514 U.S. at 165.  "DWG" is functional and cannot be protected.

3   **C.      If DWG were Protectible, Autodesk is not the Senior User of DWG as a Mark.**

4           Even if DWG were protectable, Autodesk does not own the mark because it is not the

5   senior user.  *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036,

6   1047 (9th Cir. 1999) (party can rebut validity presumption of registered mark by showing it used

7   the mark in commerce first).  SolidWorks' applications to register DWGEDITOR and

8   DWGGATEWAY were filed on June 16, 2005.[60]  The first use in commerce of DWGEDITOR

9   was on August 26, 2004.[61]  The ODA registered several trademarks for the OpenDWG mark, and

10  the earliest first use in commerce was in February *1998*.[62]  There was also an applications to

11  register DR. DWG, which had an even earlier first use in commerce date.[63]

12          In Autodesk's several submissions to the PTO attempting to register DWG as a trademark,

13  the earliest first use in commerce it claimed was "at least as early as" November 28, *2005*.[64]  This

14  Court should hold Autodesk to that date.  *Instant Media, Inc. v. Microsoft Corp.*, 2007 WL

15  2318948, *8 (N.D. Cal. 2007) (holding plaintiff to statements made to PTO regarding distinctions

16  between its mark and numerous other marks); *see also Freedom Card, Inc. v. JPMorgan Chase &*

17  *Co.*, 432 F.3d 463, 476 (3d Cir. 2005); *Petro Stopping Centers, L.P. v. James River Petroleum,*

18  *Inc.*, 130 F.3d 88, 94 (4th Cir. 1997) (plaintiff's prior inconsistent statements to the PTO undercut

19  its arguments to the court).  Even if it does not, however, Autodesk has no evidence that it used

20  DWG, standing alone, as a mark in commerce prior to DR. DWG, OPENDWG, DWGEDITOR,

21  or DWGGATEWAY.

22  _____

23      [59] Autodesk is not barred from obtaining patents relating to its "DWG technology."  Indeed, it
        already has such patents, including patented methods for working with "DWG" files.  *See e.g.*,
24      Roberts Dec., Ex. 40.  This further supports the conclusion that "DWG" is a functional feature that
        may be protected under patent law, but cannot be protected under trademark law.
25      [60]  Roberts Dec., Exs. 41-42.
26      [61]  *Id.*
        [62]  *Id.*, Ex. 34.
27      [63]  Roberts Dec., Ex. 35.
        [64]  Roberts Dec., Ex. 26.
28

1      DWG is not a protectable mark and Autodesk does not own it.  Summary judgment of all

2  Autodesk's claims based on SolidWorks' use of DWG should be granted .  *Talking Rain*, 349 F.3d

3  605 (dismissing state and federal claims where alleged mark was functional); *Gimix, Inc. v. JS&A*

4  *Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983); *CG Roxane LLC v. Fiji Water Co. LLC*, 569

5  F.Supp.2d 1019, 1034-35 (N.D. Cal. 2008).

6  **II.      AUTODESK'S "REAL ORANGE FRAME DESIGN" IS NOT PROTECTIBLE**

7      Autodesk bears the burden of showing that it has a protectable mark, and it indisputably

8  cannot meet this burden.  *Rudolph*, 842 F.3d at 1198.  Autodesk has not even specifically

9  identified a particular logo or mark that is arguably similar to SolidWorks' Real/Square logo.[65]

10 This Court has already rejected Autodesk's attempt to combine RealDWG, "Experience It Before

11 It's Real," and an orange frame as trade dress.[66]  No new facts have been alleged and summary

12 adjudication should be entered.  McCarthy 3:3, *citing In re Morganroth,* 208 U.S.P.Q. 284, 287-

13 88, 1980 WL 30167 (T.T.A.B. 1980)).

14     Autodesk may point to a video it displayed to a limited invitation only "TED" Conference

15 in 2007 or early 2008 and also shown at a press day that included an orange box with the word

16 real as evidence of a mark that SolidWorks copied.[67]  This gets Autodesk nowhere.  First, it is

17 undisputed that SolidWorks never saw this video and the video was played to a limited audience

18 only *after* SolidWorks began using an orange box with the word "real" inside.[68]  Next, the video

19 presentation,[69] which scrolls through approximately 24 different backgrounds, and almost as many

20 frame/word/color combinations, with only a brief *4 second clip* showing the word "real" inside a

21

22

---

23   [65]  FAC ¶ 34-38 and 61-68; Roberts Dec., Ex. 39 – Hanssens Depo., 49:18-48:25, 49:25-50:21, 139:8-140:2.

24   [66]  *See* Docket No. 29 at 8:15.
     [67]  *See* FAC ¶ 37; Roberts Dec., Ex. 1 - White Depo., 83:18-84:19, 98:22-24, Ex. 1034

25 (DVD).
     [68]  SolidWorks anticipates that Autodesk will claim SolidWorks intended to copy Autodesk's

26 orange rectangular frame (docket no. 65), which is unsupported by the factual history.
     [69]  Autodesk's witness Michal Schreiver admitted that the video was not an advertisement.

27 Roberts Dec., Ex. 24; Schreiver Depo., 86-87.

28

1   rectangular frame was never used in commerce and cannot, as a matter of law, qualify as a mark.[70]

2   *See also Paramount Pictures Corp. v. White*, 31 U.S.P.Q.2d 1768, 1774 (T.T.A.B. 1994) (where a

3   game was distributed on a less-than-commercial scale at a *de minimis* volume to promote a

4   musical group, the mark was not registerable); *Momentum Luggage & Leisure Bags v. Jansport,*

5   *Inc.*, 2001 WL 830667, *6 (S.D.N.Y. 2001) (unpublished).

6          The Court should grant summary adjudication in favor of SolidWorks that Autodesk's

7   combination of the frame with the term "real" inside is entitled to trademark protection.

8          **A.    "Real" Is Not Separately Protectable As a Trademark.**

9          The word "real" similarly is not protectable as a trademark of Autodesk's.  Autodesk does

10  not even use "real" as a stand-alone element in any product packaging or advertising in commerce.

11  Instead, Autodesk uses the corporate maxim -- sometimes in a tag line like fashion and other times

12  just in the text of its ads --  "experience it before its real."  Because "real" is not even an element of

13  Autodesk's advertising, there should be no dispute that it cannot have protection for that term.

14  "Not every single word, phrase, design or picture that appears on a label or in an advertisement

15  qualifies as a protectable mark or trade dress.  Rather, to create trademark or trade dress rights, a

16  designation must be proven to perform the job of identification: to identify one source and

17  distinguish it from other sources."  McCarthy at 3:3; *see also Department of Parks and Recreation*

18  *for State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1128 (9th Cir. 2006); *In re A La*

19  *Vieille Russie, Inc.*, 2001 WL 862510, *7 (T.T.A.B. 2001).  However, even if the Court finds that

20  Autodesk has clearly articulated its right to use "Real" as a mark, such a mark is simply generic, or

21  at most descriptive of what CAD products do – i.e., allow users to see and experience their ideas

22  before they are made real.[71]  *Self-Realization Fellowship Church, v. Ananda Church of Self-*

23  *Realization*, 59 F.3d 902, 904 (9th Cir. 1995)

24          "Real" is generic because it is used in the context of an entire CAD software industry

25

26

27  ───────────────

28  [70]   Roberts Dec., Ex. 1 - White Depo., 83:18-84:19, 98:22-24.

1    who's entire purpose is to allow users to get a "real" world visual image of how an idea is going to

2    work when ultimately created.[72]  "Real" is also, at best, descriptive with regards to Autodesk's

3    RealDWG licensing program because no mental leap is required to conclude that "real" refers to

4    the purported "real" and authentic DWG files created by Autodesk's AutoCAD product.  Autodesk

5    has offered no evidence to the contrary.  It submits no expert testimony, no survey, no percipient

6    testimony and no documents of any kind that even suggest that "real" has acquired any meaning.

7    Indeed, Autodesk's purported branding expert all but admits that "real" is *not* Autodesk's

8    trademark, instead opining that it is merely an element of Autodesk's overall brand.[73]  Summary

9    adjudication must be entered in favor of SolidWorks.

10          **B.      Autodesk's Frame Orange Frame Is Not Separately Protectible.**

11          "Ordinary geometric shapes such as circles, ovals, squares, etc., even when not used as a

12   background for other marks, are regarded as non-distinctive and protectable only upon proof of

13   secondary meaning."  McCarthy § 7:33.  Courts refuse to grant protection to such marks, because

14   "[n]o one seller should be allowed to appropriate such commonplace shapes as circles, squares,

15   and ovals and claim only he can use such a shape as a background for his word mark."

16   McCarthy § 7:29.  Colors can similarly only be protected as a trademark upon a showing of

17   secondary meaning.[74]  *Qualitex v. Jacobson Products, Co.*, 514 U.S. 159, 163 (1995).

18          Autodesk has produced no survey evidence, no expert testimony and no percipient

19

20

---

21   [71]   *See* Roberts Dec., Ex. 1 - White Depo., 119:17-121:25, 288:10-289:13; *id.*, Ex. 24 -
     Schreiver Depo., 169:9-171:22; *id.*, Ex. 4 - Reilly Depo., 309:20-23, 310:19-313:1; *id.*, Ex. 44, *id.*
22   Ex. 39 – Hanssens Depo., 141:4-10.
     [72]   *See* Roberts Dec., Ex. 1 - White Depo., 119:17-121:25, 288:10-289:13; *id.*, Ex. 24 -
23   Schreiver Depo., 169:9-171:22; *id.*, Ex. 4 - Reilly Depo., 309:20-23, 310:19-313:1; *id.*, Ex. 44.
     [73]   Roberts Dec., Ex. 39 – Hanssens Depo., 41:6-42:7.
24   [74]   Decisions declining to afford trademark protection to decorative shapes are legion.  *See,
     e.g., Application of E.J. Brach & Sons*, 256 F.2d 325, 328 (C.C.P.A. 1958); *Wiley v. American*
25   *Greetings Corp.*, 762 F.2d 139 141 (1st Cir. 1985) (summary judgment for defendant granted
     because heart on left side of teddy bear was not distinctive and where there was no proof of
26   secondary meaning)*; Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342, 1345-46
27   (C.C.P.A. 1977) (affirming decision denying registration for an oval the was akin to a decorative
           (footnote continued)
28

1   testimony of any kind that even remotely suggests that its orange frame has acquired secondary

2   meaning.  Indeed, Autodesk's percipient witnesses and purported branding expert admit that no

3   such evidence exists.[75]   The Court should find that the Autodesk's orange frame is not inherently

4   distinctive and not entitled to protection under Lanham Act § 43.

5          The Court should also find that the orange frame is functional.  As explained above, a

6   feature is functional if the design results from a comparatively simple or inexpensive method of

7   manufacture, yields a utilitarian advantage or alternative designs are available.  *Talking Rain*, 349

8   F.3d at 603; *Disc Golf Ass'n*, 158 F.3d at 1006-09.  Autodesk indisputably cannot meet this test.

9          Autodesk repeatedly admits that the purpose of its frames is "to establish hero product

10  brands with a strong focal point."[76]  In other words, the frame functions to bring the eye to a

11  particular point of focus.[77]  The frame is functional as a matter of law, and summary adjudication

12  is proper.  *Brunswick Corp. v. British Seagull Ltd.*, 35 F.3d 1527, 1532-33 (Fed. Cir. 1994).[78]

13  **III.    SOLIDWORKS' USE OF "AUTOCAD" AND "AUTODESK" ON ITS WEBPAGES**
         **TO DESCRIBE ITS PRODUCTS' OPERATION IS NOT LIKELY TO CONFUSE**
14       **AND QUALIFIES AS NOMINATIVE FAIR USE**

15         Autodesk alleges that SolidWorks "misuses and overemphasizes Autodesk's registered

16  

_____

17  panel where there was not showing of secondary meaning); *Application of David Crystal, Inc.*,
    296 F.2d 771, 778-780 (C.C.P.A. 1961).

18   [75]   Roberts Dec., Ex. 24 - Shreiver Depo., 77:4-8, 150:6-11; *id.*, Ex. 7 – Hurley Depo., 284:11-
19  286:5; *id.*, Ex. 39 – Hanssens Depo., 39:13-19, 40:7-13, 134:23-135:4, 135:10-136:12..

     [76]   Roberts Dec., Ex. 1 – White Depo., 299:1-8, Ex. 1069 at META0005371_015, Ex. 1068 at
20  META0001020_009; *see also id.*, Ex. 24 - Schriever Depo., 165:18-166:9.  The frame is used to:
21  (1) "Promote visibility of content within it,"; (2) "Be suggestive of on-screen interface elements"
    and (3) "Be a focal point in dynamic layouts."  *Id.*, Ex. 1 - White Depo., Ex. 1073 at
22  META0005441_015.

     [77]   *See id.*, Ex. 24 - Schriever Depo., 275:1-21.
23   [78]   In apparent recognition that none of Autodesk's claimed "marks" are at all distinctive or
24  identify the source of Autodesk's products, Autodesk's purported branding expert muddles his
    analysis of these elements.  For example, rather than opining that there is a likelihood of confusion
25  between DWG and SolidWorks' DWGseries products under *AMF Inc. v. Sleekcraft Boats*, 599
    F.3d 341 (9th Cir. 1979) – there is not – Dr. Hanssens analyzes all of the claimed marks in
26  Autodesk's FAC together as elements of Autodesk's overall brand, not as individual trademarks
    like an amorphous trade dress.  Roberts Dec., Ex. 39 – Hanssens Depo., 41:6-42:7. This does not
27  match Autodesk's allegations in this case, and this Court already dismissed Autodesk's attempted
    trade dress claim because Autodesk had not articulated what it was.  *See* Docket no. 29.

28

trademark, AutoCAD, throughout the DS SolidWorks websites." (FAC ¶ 26.)  Autodesk has no evidence that any such alleged excessive use has caused any confusion at all; Autodesk has not produced any expert survey on the evidence of confusion resulting from such alleged "excessive use" at all.  Nor can Autodesk dispute that customers in the CAD market are cautious and make their purchases carefully.[79]

Autodesk may claim that, since SolidWorks presumably knew that Autodesk and AutoCAD were Autodesk's trademarks when it placed them on its websites, this knowledge is sufficient to satisfy the "intent" element of the *Sleekcraft* multi-factor test.  The "intent" under the *Sleekcraft* test is the "intent *to cause confusion." See Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1052, n. 11 (9th Cir. 1998) (noting that while proof of *intent to cause confusion* is entitled to weight, it is "*not that it creates a presumption of confusion* that shifts the burden of proof to the other party.") (*emphasis added*).   The Ninth Circuit has made clear that SolidWorks' mere knowledge of Autodesk's trademarks is not equivalent to an "intent to confuse." *See One Industries, LLC v. Jim O'Neal Distributing, Inc.*, 578 F.3d 1154, 1163-64 (9th Cir. 2009) (finding as a matter of law no intent to deceive and no likelihood of confusion despite the fact that defendant was aware of plaintiff's mark when adopting its mark); *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1052, n.11 (9th Cir. 1998) (noting that while "proof of <u>*intent to cause confusion*</u>" is entitled to weight, it is "<u>*not that it creates a presumption of confusion*</u> that shifts the burden of proof to the other party.") (emphasis added)*; see also W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.*, 984 F.2d 567, 575 (2d Cir. 1993) (prior knowledge of another's mark "does not necessarily give rise to an inference of bad faith, because adoption of a trademark with actual knowledge of another's prior registration of a very similar mark may be consistent with good faith"; affirming judgment of noninfringement where plaintiff failed to produce evidence that defendant "intended to promote confusion between the products or appropriate plaintiff's good

---

[79]   Roberts Dec., Ex. 6 – Gilmour Depo. 221-223.

CASE NO. 3:08-cv-04397-WHA
MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

will.") (distinguished on other grounds).[80]  Autodesk has no evidence that SolidWorks intended to cause confusion or appropriate Autodesk's goodwill by the use and development of its DWGseries webpages.  Autodesk cannot satisfy the intent factor of the *Sleekcraft* likelihood of confusion test.

This claim also fails as a matter of law because SolidWorks' uses of AUTOCAD are nominative fair use.  The nominative fair use standard is available where, like here, "the defendant uses a trademark to describe the plaintiff's product, rather than its own."  *New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992) (affirming grant of summary judgment in favor of newspaper defendant who published features incorporating plaintiff's mark).  In such situations, no infringement is found where three conditions are met:

> First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*Id.* at 308.  All three conditions are met here, and summary judgment is properly granted.[81]

### A.   AutoCAD Is Not Readily Identifiable Except Through Use of AUTOCAD.

The first prong of the nominative fair use test is satisfied here because there is no way to refer to AutoCAD other than by the name "AutoCAD."  As the Ninth Circuit has observed,

> Sometimes there is no descriptive substitute, and a problem closely related to

---

[80]  Indeed, since intent is relevant to the *Sleekcraft* analysis not because "intent to confuse is relevant as some measure of culpability but rather, the alleged infringer's judgment as to what is likely to be confusing is relevant because it may well be accurate," evidence of intent to confuse here with respect to SolidWorks use of Autodesk marks in the metatags of its webpages is of no import.  *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002).  Both sides agree that use of keywords in metatags does not impact search results.  *See* Roberts Dec., Ex. 45 – Ginty Depo., 35:12-15; Hoffman Dec. at ¶¶ 16-17 ("Google does not appear to use these meta tags to generate rankings. . . . The idea that . . . the meta keyword and meta description tags, represent important factors in those calculations is just plain wrong.")

[81]  This issue has, in fact, been before this Court once before already.  In ruling on SolidWorks' motion to dismiss, which also argued nominative fair use, this Court noted "all of the uses alleged would seem to be fair use," but declined to order dismissal on the grounds that "analysis of nominative fair use is premature on a motion to dismiss."  Order on Motion to Dismiss, Docket No. 29, at 7.  Despite ten months of intervening discovery, Autodesk has failed to gather any evidence even suggesting that the doctrine of nominative fair use should not preclude Autodesk's causes of action.  Summary judgment is appropriate now.

genericity and descriptiveness is presented when many goods and services are effectively identifiable only by their trademarks. . . . In such cases, use of the trademark does not imply sponsorship or endorsement of the product because the mark is used only to describe the thing, rather than to identify its source.  Indeed, it is often virtually impossible to refer to a particular product for purposes of comparison, criticism, point of reference or any other such purpose without using the mark.

*New Kids on the Block*, 971 F.2d at 306.  In such situations, use of the mark to identify the underlying product is not an infringement.  *Id.* at 308 ("It is no more reasonably possible, however, to refer to the New Kids as an entity than it is to refer to the Chicago Bulls, Volkswagens or the Boston Marathon without using the trademark" associated with those entities); *see also Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir. 1969) (repair shop could use the term Volkswagen to explain it repaired Volkswagen vehicles).

For example, in *Playboy v. Enters., Inc. v. Welles*, defendant referred to herself on her website through reference to the "playmate" title previously bestowed upon her by plaintiff.  279 F.3d 796 (9th Cir. 2002).  Affirming its grant of summary judgment of noninfringement, the Ninth Circuit noted that there "is no other way that Ms. Welles can identify or describe herself and her services without venturing into absurd descriptive phrases . . . which would be impractical as well as ineffectual in identifying Terri Welles to the public."  *Id.* at 802.

This is precisely the situation here.  There is no practical way to refer to AutoCAD except by use of the term "Autodesk" or "AutoCAD," as SolidWorks must in order to convey the fact that its DWGseries products are interoperable with Autodesk's AutoCAD software.  Indeed, Autodesk has neither alleged nor proffered evidence suggesting how SolidWorks could advertise its DWGseries products as being interoperable with Autodesk's AutoCAD software without using the words "Autodesk" or AUTOCAD.

**B.      AUTOCAD Does Not Appear on SolidWorks' Web Pages More Than Is Reasonably Necessary.**

Parties are permitted to make nominative fair use of a mark so long as they do not use more than is necessary "to identify the product or service." *New Kids on the Block*, 971 F.2d at 308; *id.* at n. 7 ("a soft drink competitor would be entitled to compare its product to Coca-Cola or Coke, but would not be entitled to use Coca-Cola's distinctive lettering"); *see also Rehrig Pacific*

1   *Co. v. Norseman Plastics Ltd. Inc.*, No. SACV 03-00470-JVS (AJWx), 2003 WL 25667625, at

2   *33 (C.D. Cal. Sept. 30, 2003) (summary judgment of noninfringement where defendant's "usage

3   of the marks is stripped to the basics, not reflected with capital letters, stylized lettering, or any

4   image intimately associated with" plaintiff).  For example, in *Welles*, the Ninth Circuit affirmed a

5   grant of summary judgment where banner ads and headlines on defendant's website used "only the

6   trademarked words, not the font or symbols associated with the trademarks."  279 F.3d at 802; *id.*

7   at 804 (the presence of trademarked terms in the metatags for defendant's website satisfied this

8   prong, because "metatags use only so much of the marks as reasonably necessary").

9        The facts are identical here.  AUTOCAD is presented in exactly the same font, font size,

10  and color as the surrounding text on the SolidWorks web pages.[82]  Thus, there is no evidence that

11  SolidWorks uses more of AUTOCAD than is reasonably necessary.  *See, e.g.*, *J.K. Harris &*

12  *Company, LLC v. Kassel*, 253 F. Supp. 2d 1120, 1127 (N.D. Cal. 2003) (despite defendant's

13  placement of plaintiff's mark "at the beginning of a web page or underlining it" nominative fair

14  use applied).

15       Nor do the SolidWorks web pages make excessive use of the AutoCAD mark.  Autodesk

16  has argued that the occurrences of the term "AutoCAD" on the SolidWorks web pages are

17  "numerous," but Autodesk has no evidence that such use is more than necessary to demonstrate

18  the interoperability of the advertised SolidWorks products.  *See Rehrig Pacific Co.*, 2003 WL

19  25667625, at *33; *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1154 (9th Cir. 2002).

20       **C.     SolidWorks' Web Pages Do Not Suggest Sponsorship or Endorsement by Autodesk.**

21       The third prong of the nominative fair use test is also plainly met.  The web pages

22  Autodesk complains of all prominently display the brightly colored and distinctive SolidWorks

23  logo.[83]  These pages also include the logos for the individual product advertised (DWGgateway,

24

25

---

26  [82]  FAC, Ex. B

27  [83]  FAC, Ex. B  Notably, this logo appears prominently in the upper left-hand corner of the web pages, where can be easily identified by users.

28

1   DWGeditor, etc.) which contain the legend "From SolidWorks."[84]  Each page also contains an

2   explicit waiver stating "Autodesk and AutoCAD are either registered trademarks or trademarks of

3   Autodesk, Inc., in the USA and/or other countries."  *Id.*  There is nothing about the pages that

4   suggests sponsorship or endorsement by Autodesk.  *See Welles*, 279 F.3d at 803 (third prong was

5   satisfied where defendant "affirmatively disavows any sponsorship or endorsement" through "a

6   clear statement disclaiming any connection to plaintiff");[85] *Capcom Co., Ltd. v. MKR Group, Inc.*,

7   No. C 08-0904 RS, 2008 WL 4661479, at *13 (N.D. Cal. Oct. 20, 2008) ("nothing about using a

8   mark in a disclaimer denying affiliation gives rise to confusion."); *see also Frontrange Solutions*

9   *USA Inc. v. NewRoad Software, Inc.*, 505 F. Supp. 2d 821, 835 (D. Colo. 2007) (no implication of

10  endorsement where defendant's use of its own mark was prominent).

11      SolidWorks' web pages also advertise products that "eliminate the need to upgrade

12  AutoCAD licenses" or "reduce the need to upgrade AutoCAD licenses.[86]  These statements negate

13  any argument that the pages suggest sponsorship or endorsement by Autodesk—what consumer

14  would understand Autodesk to be endorsing a product that reduces the consumer's reliance on

15  Autodesk products?  *See Patmont Motor Werks, Inc. v. Gateway Marine, Inc.*, No. C 96-2703

16  TEH, 1997 WL 811770, at *4 (N.D. Cal. Dec. 18, 1997) ("The third and final requirement is met

17  because nothing in Anthony DeBartolo's website could possibly be construed to indicate

18  Patmont's sponsorship or endorsement.  Indeed, the Court would find incredible any argument to

19  the contrary given the website's disparagement of" plaintiff's product).

20      There is no dispute that CAD software purchasers are sophisticated and take great care

21  when purchasing their products.[87]  Given the information that is indisputably provided on

22  SolidWorks' website, it is not surprising that Autodesk has failed to come forward with a single

23  piece of evidence to show that consumers mistakenly believe that SolidWorks' DWGseries

---

24

25      [84]  *Id.*

26      [85]  Importantly, the Ninth Circuit in *Welles* reaffirmed that no "affirmative actions" to disclaim
    sponsorship or endorsement "are necessary to establish nominative use.  *New Kids* sets forth no
27  such requirement, and we do not impose one here."  279 F.3d at 803, n. 26.

28      [86]  FAC, Ex. B p. 7, 16, 1.

1   webpages are sponsored or endorsed by Autodesk.

2       Nor is there any triable issue concerning Autodesk's allegation that SolidWorks' use of the

3   term "AutoCAD" in the metadata or otherwise on its web pages "manipulates

4   internet search engines" or causes SolidWorks websites to "appear more prominently in the list of

5   search results."[88]  As thoroughly explained by Professor Hoffman, the idea that keyword density

6   affects search rankings is a well-known "myth."[89]  Instead, search engines employ "algorithms that

7   rely on more sophisticated and complex set of variables that rank pages on the basis of relevance"

8   to determine search rankings, not keyword density.[90]  ***Autodesk fails to offer any evidence to the***

9   ***contrary.***[91]  There is thus no support for Autodesk's allegations, and summary judgment is proper.

10  *See Designer Skin, LLC v. S & L Vitamins, Inc.*, 560 F. Supp. 2d 811, 821 (D. Ariz. 2008).

11  **IV.    AUTOCAD'S FALSE ADVERTISING CLAIMS FAIL AS A MATTER OF LAW**

12      Autodesk alleges that SolidWorks engages in false advertising by making the following

13  three statements:  (1) "DWGgateway is the first free data translation plug-in that lets AutoCAD

14  users work easily with DWG files created by any version of AutoCAD software";[92] (2) "save

15  DWG files to any version of AutoCAD software";[93]  and (3) "open, edit and share DWG data

16  more effectively with others".[94]  Autodesk claims that these statements are false because "the DS

17  SolidWorks translation product does not accurately capture or translate all of the complexities and

18  relationships stored in an authentic Autodesk DWG file….instead, some of the data is lost in

19  translation,"and that SolidWorks is representing that its products are "fully compatible and

---

87   Roberts Dec., Ex. 6 – Gilmour Depo. 221-223.

88   FAC ¶ 72.

89   Hoffman Dec., ¶ 11.

90   *Id.* ¶ 18 (noting that of 96 distinct page ranking factors, the top three were related to link popularity, and that "the frequency of times a keyword is used, whether on the page or in the meta keyword or meta description tags, has little if any influence on search engine rankings" and may even "negatively impact rankings.").

91   Roberts Dec., Ex. 39 - Hanssens Depo., 257:17-22 (admitting that Dr. Hoffman has greater experience in search engine optimization than does Dr. Hanssens).

92   FAC ¶ 24.

93   FAC ¶¶ 24, 48.

94   FAC ¶48.

1   operational with Autodesk's AutoCAD programs".[95]

2        Autodesk's claim fail as a matter of law for at least the following reasons:  (1) Autodesk

3   has failed to present evidence supporting its claim that the three statements are false or misleading,

4   (2) Autodesk has failed meet its burden to produce evidence showing that the challenged

5   statements are material, (3) Autodesk has failed to prove it was damaged by the accused

6   statements, and (4) two of the statements are non-actionable puffery.

7        **A.    None of the Three Statements Are False or Misleading or Material.**

8        SolidWorks is entitled to summary judgment on the false advertising claim because not

9   one of the three accused statements is false or misleading.  False advertising involves either (1) a

10  literally false statement, which is either false on its face or by necessary implication; or (2) a

11  statement that is literally true, but misleading.  *Southland Sod Co.*, 108 F.3d at 1139.  Autodesk, as

12  the plaintiff, has the burden of proving that the defendant made a false or misleading description

13  or representation of fact in commerce, and that the use of that false or misleading description or

14  representation of fact was (1) likely to cause confusion, (2) cause a mistake, or (3) deceive a

15  consumer as to the origin of the defendant's goods or services, the affiliation of the defendant with

16  another person, or the sponsorship of defendant's goods or services by another person.  15 U.S.C.

17  1125(a); *Big Island Candies, Inc. v. The Cookie Corner*, 269 F.Supp.2d 1236, 1238 (D. Haw.

18  2003) (stating that "summary judgment must be granted against a party that fails to demonstrate

19  facts to establish what will be an essential element at trial").

20       When determining whether a statement is literally false, it must always be analyzed in its

21  full factual context.  *Southland Sod Co.*, 108 F.3d at 1139.  Literal falsity is generally measured by

22  reference to objective industry standards.  *See Compaq Computer Corp. v. Packard Bell*

23  *Electronics, Inc.*, 163 F.R.D. 329, 336 (N.D. Cal. 1995).  If a claim is literally false by implication

24  or if it is misleading, the plaintiff must provide extrinsic evidence showing that the claim tends to

25  mislead or deceive consumers.  *Id.* at 922-3 (literally false by implication); *Southland Sod Co.*,

26  108 F.3d at 1140 (misleading).  Whether a claim tends to deceive consumers is usually proven

27  ─────────────────────

28  [95]  FAC ¶ 24, 24.

1   through surveys.  *Southland Sod Co.*, 108 F.3d at 1140.

2   Here, Autodesk does not allege in its Complaint that the statements are literally false.[96]

3   Instead, Autodesk *characterizes* them as making claims about compatibility, which is to say, it

4   treats them as either implicitly false or misleading.  (FAC ¶¶ 24, 48).  Thus, it was Autodesk's

5   burden to come forward with evidence showing how the ads were interpreted by customers and

6   that the ads were likely to deceive consumers.  *Southland Sod Co.*, 108 F.3d at 1140; *Compaq,* 168

7   F.R.D. at 336.  It came forward with no such evidence.

8   In fact, Autodesk has failed to produce any evidence of any kind to show what consumers

9   are even likely to understand these statements to mean.[97]  Instead, Autodesk *assumes* the

10  statements mean something about compatibility, then sets an impossibly high and undocumented

11  standard for what comp ability might mean – 100% error free all of the time.[98]  Autodesk takes

12  this position even though there is no evidence that anyone in the consuming public would have

13  this definition – in fact, the evidence of record demonstrates the opposite;[99] its own 30(b)(6) and

14  employee-expert designee testified that bug-free software is the unattainable "holy grail",[100] and

15  the record is clear that Autodesk's own DWG software sometimes has bugs.[101]

16  In any event, Autodesk cannot make SolidWorks advertising claims false by redefining

17  them to encompass perfection.  McCarthy notes, "the plaintiff in a false advertising case cannot re-

18  define the usual meaning of terms in a competitor's advertising message in order to make it false

19

20  ───────────────────

21  [96]  If Autodesk argues on summary judgment that the three statements are literally false, this
    argument should fail for three reasons.  First, the complaint makes no mention of literal falsity,

22  depriving SolidWorks of the opportunity to address that claim.  Second, these statements should
    be evaluated as of the date of the lawsuit, as SolidWorks has not altered its webpages since the

23  lawsuit was filed to avoid destroying evidence.  Third, to the extent Autodesk and SolidWorks are
    offering different interpretations of the meanings of the three statements, they are ambiguous and

24  therefore cannot be literally false.  *In re Century 21*, 882 F.Supp. at 923 (citation omitted) (stating
    an ambiguous claim cannot be literally false).

25  [97]  Roberts Dec., Ex. 33 - Oak 10/27 Depo., 3:6-5:25, 6:24-9:21.

    [98]  *Id.*, Ex. 33 - Oak 10/27 Depo., 13:7-18:1.
26
    [99]  *Id.*, Ex. 33 - Oak 10/27 Depo., 76:21-77:6; Orr Dec., ¶ 33.

27  [100]  *Id.,* Ex. 47 - Oak Depo. I, 175:16-176:3, 177:14-17.
    [101]  Roberts Dec., Ex. 33 - Oak 10/27 Depo. 75:14-20; *Id.* Ex. 47-Oak Depo.

28

and misleading." McCarthy s 27:53. This is exactly what Autodesk is attempting to do, by redefining vague and subjective claims that the software allows users to "work easily" with DWG files or share DWG data "more effectively," into claims that SolidWorks software is claiming flawless compatibility, an achievement that Autodesk admits is the "holy grail" of software.

Moreover, Autodesk has completely failed to prove that the advertising statements have misled or could mislead or are material to *anyone*. The only expert they provide to address the falsity of the advertisements, Mr. Oak, has no knowledge of any studies or surveys or consumer reactions suggesting that these advertisements are misleading.[102] Because the statements are not literally false, the burden was on Autodesk to produce evidence sufficient to support its claim. *In re Century 21*, 882 F.Supp. at 922-23; *Southland Sod Co.*, 108 F.3d at 1140. It has failed to do so. Autodesk has produced no surveys and no other evidence regarding consumer reaction to these advertising claims, and its claims fail as a matter of law for this additional reason. *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 257 (9th Cir. 1995).

**B.      Autodesk has Failed to Produce Evidence of Damages**

To survive summary judgment, Autodesk "must demonstrate that '[it] has been or is likely to be injured as a result' of the false advertising." *In re Century 21/Re-Max Real Estate Advertising Claims Litigation*, 882 F.Supp. 915, 924 (N.D. Cal. 1994) (quoting *Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 244. There must be a reasonable basis for Autodesk's injury allegation, and Autodesk must prove a "'logical causal connection between the alleged false advertising and its own sales position.'" *Id.* (quoting *Johnson & Johnson v. Carter Wallace, Inc.*, 631 F.2d 186, 190 (2d Cir. 1989)). Autodesk must show a causal nexus between the allegedly false statements and consumers choosing to download DWGseries products or purchase SolidWorks to obtain DWGeditor *in lieu of* purchasing Autodesk products. Autodesk has produced *no* such evidence, and its claims fail.

**C.      Statements One and Three Are Non-actionable Puffery**

---

[102] *Id.*, 6:21-9:21.

1   This is the second time this Court is addressing whether statements one and three, above,

2   are actionable.  The Court earlier declined to find that these statements were puffery in the context

3   of SolidWorks' motion to dismiss, ruling: "***Subject to proof***, this order accepts Autodesk's

4   allegation that the advertisement implies compatibility."[103] The Court further noted that these

5   statements "seem to describe specific characteristics of SolidWorks' products that could be

6   tested."[104]  Thus, the order appears to require that Autodesk supply proof of two independent facts

7   (1) that the advertisement implies compatibility and (2) that the DWGseries products do not

8   permit users to "work easily" with DWG files and "open, edit, and share DWG data."  Autodesk

9   supplies neither.  We therefore ask the Court to reconsider whether the statements are puffing.

10   Autodesk's summary judgment motion on SolidWorks' false advertising claims

11   demonstrate that at least statements one and three are non-actionable puffery.[105]  The basis of

12   SolidWorks' claims are two Autodesk ads that use cartoons and associated text to claim that

13   unsubstantiated deficiencies in SolidWorks' software (which is thinly disguised as "Won'tWorks")

14   will lead to catastrophic product failures and physical harm.[106]  Despite the fact that ads addressing

15   the dimensioning capabilities and use of data translators seem to misdescribe "specific or absolute

16   characteristics of a product" which is an actionable statement of fact, Autodesk claims that these

17   statements are mere puffery.  *Western Duplicating, Inc. v. Riso Kagaku Corp.*, 2000 WL 1780288,

18   No. S98-208, at *9 (E.D. Cal. Nov. 21, 2000).  In contrast, SolidWorks' first and third advertising

19   statements make no such specific claims.  Instead, they state that AutoCAD users can "work

20   easily" with files and open, edit and share data "more effectively."  Similarly vague statements

21   were found to be puffery in the cases cited by Autodesk in its summary judgment motion.

22   In *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, the defendant claimed

23   that, among other things, plaintiff Coastal Abstract was "too small" to provide certain services to a

24   third party.  173 F.3d 725, 729-31.  The Ninth Circuit ruled that although "the statement in context

---

[103]   Dkt. 29 at 5 (emphasis added).

[104]   *Id*.

[105]   Dkt. 77 at 4-5.

1    implied other facts that could be proved or disproved, in light of evidence concerning how many

2    persons were required to service Shearson's account . . . whether Coastal was too small . . . is too

3    much a matter of opinion for the evidence to prove or disprove it."

4         Here, even if the challenged statements imply compatibility (which can be proved or

5    disproved), whether the DWGseries products work easily with the files and allow data to be shared

6    more effectively is a matter of opinion.  *See also Coastal Abstract*, 911 F.2d at 246 (*quoting*

7    *Smith-Victor Corp. v. Sylvania Electric Products, Inc.*, 242 F.Supp. 302, 308-09 (N.D. Ill. 1965))

8    ("far brighter than any lamp ever before offered for home movies" ruled puffery).

9         Autodesk also cites *Oestreicher v. Alienware Corp.*, 544 F.Supp.2d 964, 973 (N.D. Cal.

10   2008).  There, Alienware made a string of claims about the superiority of its laptops including that

11   they were of "superb, uncompromising quality," "faster, more powerful, and more innovative than

12   competing machines," "higher performance," "longer battery life," "richer multimedia experience,"

13   and "faster access to data"—all of which the court found to be puffery.  *Id.*  If Alienware's claim

14   that its computers are faster and more powerful than competing machines is puffery, it follows that

15   SolidWorks' claims that its products permit users to "work easily" or share data "more effectively"

16   without a comparison to competing products are as well.

17        SolidWorks' claims that their software permits users to "work easily" with DWG files or

18   share DWG data "more effectively" are highly subjective statements of opinion.[107]  Courts have

19   granted summary judgment on puffery where the statements are subjective.  *See, e.g., Southland*

20   *Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997); *Soilworks, LLC v. Midwest*

21   *Indus. Supply, Inc.*, 575 F.Supp.2d 1118, 1123, 1133 (D.Ariz. 2008).

22                                   **Conclusion**

23        For the foregoing reasons, this Court should grant this motion for summary judgment, or,

24   in the alternative, summary adjudication.

25

26   _____

27   [106]  Dkt No. 38 at 23-24; Roberts Dec., Ex. 1 - White Depo., Exs. 1052, 1054.

28   [107]  Roberts Dec., Ex. 33 - Oak 10/27 Depo., 76:21-77:6.

1   DATED:  October 29, 2009          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
2

3                                     By   /s/
                                          Claude M. Stern
4                                         Attorneys for Defendant Dassault Systèmes
                                          SolidWorks Corporation.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I am employed in the County of San Mateo, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065-2139.

On **October 5, 2009**, I served true copies of the following document(s) described as

on the parties in this action

Michael A. Jacobs
John Thomas McCarthy
Lynn M. Humphreys
David Melaugh
Jacqueline Bos
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
San Francisco, CA 94105-2482
Telephone: 415-268-7000
Facsimile: 415-268-7522
email: MJacobs@mofo.com
TMcCarthy@mofo.com
LHumphreys@mofo.com
DMelaugh@mofo.com
JBos@mofo.com

as follows:

**BY ELECTRONIC MAIL TRANSMISSION:**  By electronic mail transmission from andreaproberts@quinnemanuel.com on **October 5, 2009**, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es).  The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on **October 5, 2009**, at Redwood Shores, California.

<u>   /s/ Andrea Pallios Roberts                </u>
Andrea Pallios Roberts

-32-                    CASE NO. 3:08-CV-04397-WHA

MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION