**United States District Court**
For the Northern District of California

1
2
3
4
5
6              IN THE UNITED STATES DISTRICT COURT
7
8            FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10   AUTODESK, INC., a Delaware                  No. C 08-04397 WHA
     corporation,
11
                    Plaintiff,
12
                                                 **ORDER GRANTING**
     v.                                          **IN PART AND DENYING**
13                                               **IN PART PLAINTIFF'S AND**
     DASSAULT SYSTÈMES SOLIDWORKS                **DEFENDANT'S MOTIONS**
14   CORPORATION, a Delaware corporation,        **FOR SUMMARY JUDGMENT**
15                  Defendant.
16   _____/
17
                        **INTRODUCTION**
18
     In this trademark action, plaintiff Autodesk, Inc. and defendant Dassault Systèmes
19
     SolidWorks Corporation both move for summary judgment.  After considering massive briefing
20
     and oral argument, plaintiff's October 19 motion is **GRANTED** and both defendant's and
21
     plaintiff's October 29 motions are **GRANTED IN PART AND DENIED IN PART**.
22
                         **STATEMENT**
23
     Plaintiff Autodesk, Inc. commenced this action against defendant SolidWorks for unfair
24
     competition, false designation of origin, false advertising, trademark infringement and trade-dress
25
     infringement under the Lanham Act, as well as unfair business practices, deceptive business
26
     practices, unlawful business practices, and deceptive, false, and misleading advertising under
27
     California law.
28

Plaintiff is a leader in the field of computer-aided design ("CAD") software.  This is used in design applications by architects, engineers, manufacturers, and others.  AutoCAD software is used to create and document designs and visualize, simulate, and analyze real-world performance early in the design process by creating prototypes in digital format.  AutoCAD and other Autodesk applications allow users to create and store user files in the DWG format, which bear a ".dwg" file extension.  Plaintiff introduced its AutoCAD program in 1982.

Apart from its use as a file extension (".dwg"), plaintiff says has used the DWG name as a *word mark* since the introduction of AutoCAD in 1982.  Plaintiff has used a logo with the word mark DWG on its website, product packaging and as a computer file icon.  For example, plaintiff says its DWG Unplugged has been available since 1995.  In addition, plaintiff has created the RealDWG software library, and similar predecessor tools allegedly available at least as far back as 1996, that allow competitors to license the use of plaintiff's DWG technology (*i.e.* proprietary file format).

Since 2006, plaintiff has promoted itself with the tagline "Experience It Before It's Real."  Since March 2007, plaintiff has used an orange frame outline on its software DVD cases and marketing materials for its Autodesk Inventor product.

\*            \*            \*

Defendant is also a CAD software company.  Defendant's software incorporates a reverse-engineered form of plaintiff's DWG file format.  According to plaintiff, defendant has engaged in misleading marketing to confuse design professionals about the compatibility of defendant's programs with plaintiff's AutoCAD software.  Defendant has released products named DWGeditor, DWGgateway, DWGseries, DWGviewer, and DWGnavigator.  These product names are also incorporated in the domain names of defendant's websites (*e.g.* www.dwgeditor.com is owned and operated by defendant).  Defendant has sought federal registrations for the DWGeditor and DWGgateway products.  (Related proceedings are pending but currently stayed before the Trademark Trial and Appeal Board in which plaintiff seeks to cancel the DWGeditor registration and opposes the DWGgateway application.)  Defendant also uses plaintiff's AutoCAD word mark on its own websites.  Finally, defendant's websites and

United States District Court

For the Northern District of California

1   marketing materials feature a logo design that allegedly combines the "real" element of plaintiff's

2   RealDWG mark and tagline with the trade dress found on the Autodesk Inventor packaging.

3                               *                    *                    *

4         Earlier in this action, defendant filed a motion to dismiss the complaint or,

5   alternatively, moved to strike extraneous allegations. As to the unfair competition and

6   false-designation-of-origin claims, the motion was denied. So was the motion to dismiss

7   plaintiff's trademark infringement claim concerning defendant's use of the word AutoCAD. As

8   to the state law claims, they were denied to the extent that those claims were properly pled under

9   federal law. As to the false advertising claim, the motion was denied in part and granted in part.

10   A marketing statement made by defendant that its product's "unique capability helps you

11   maintain file and design process compatibility, win business, and save time — all while avoiding

12   expensive AutoCAD upgrade costs or subscription fees" was held to be nonactionable puffery.

13   Finally, plaintiff's claim concerning trade dress infringement was dismissed with leave to amend.

14         Plaintiff then filed a first amended complaint alleging unfair competition and false

15   designation of origin, false advertising, trademark infringement, and cancellation of a trademark,

16   all under federal law. Under state law, plaintiff alleged unfair business practices, deceptive

17   business practices, unlawful business practices, and deceptive, false, and misleading advertising.

18   Defendant responded and filed counterclaims under federal law for false advertising and for

19   declaratory judgment on the ownership of the DWG mark. Under state law, defendant filed

20   counterclaims based on unfair competition and false advertising. Defendant also raised the

21   affirmative defense of laches, among others.

22                               *                    *                    *

23         Both parties have now filed motions for summary judgment. While these were pending,

24   the parties stipulated to dismiss all state law claims. Thus, plaintiff's summary judgment motions

25   now boil down to the following: an October 13 motion for summary judgment in plaintiff's favor

26   with regard to defendant's counterclaim for false advertising because plaintiff alleges that the

27   advertisements in dispute, the Jonnie Real comic strips, are nonactionable puffery; and an

28   October 29 motion for summary judgment on the grounds that (1) DWG is protectable because

it is not functional or generic and (2) defendant's defense of laches has no merit.  Defendant's

October 29 motion reduces to:  (1) DWG is not protectable as a trademark on the grounds that it

is functional, generic or, in the alternative, because plaintiff is not the senior user; (2) plaintiff's

real/orange frame design is not protectable as trade dress; (3) defendant's use of the AutoCAD

and Autodesk marks qualify as nominative fair use; and (4) plaintiff's false advertising claims fail

as a matter of law.

Due to the massive number of documents submitted by the parties, the undersigned

requested that counsel each choose one or two claims or defenses to address at oral argument,

with all other issues to be submitted on the briefing.  Plaintiff chose to argue that the DWG mark

is not generic and not functional.  Defendant chose to argue that the DWG mark is generic and

functional.  In addition, defendant chose to argue the issue of false designation of origin/trade

dress infringement.  Both sides addressed all of these selected questions at the hearing.

For the following reasons, plaintiff's October 19 motion is **GRANTED** and both

defendant's and plaintiff's October 29 motions are **GRANTED IN PART AND DENIED IN PART**.

**ANALYSIS**

Summary judgment is granted under Rule 56 when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  A district court must

determine, viewing the evidence in the light most favorable to the nonmoving party, whether

there is any genuine issue of material fact.  *Giles v. General Motors Acceptance Corp.*, 494 F.3d

865, 872 (9th Cir. 2007).  A genuine issue of fact is one that could reasonably be resolved, based

on the factual record, in favor of either party.  A dispute is "material" only if it could affect the

outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248–49 (1986).

Contrary to popular belief, even a very strong case is, standing alone, insufficient to win

summary judgment.  Seemingly overwhelmingly one-sided summary judgments have been

reversed by the court of appeals.  *See, e.g., Rivera v. Allstate,* 100 Fed. Appx. 641 (9th Cir. 2004).

To win summary judgment, counsel need not have an overwhelming case, but it must eliminate any vestige of contrary material fact.

### 1.    VALIDITY OF THE DWG TRADEMARK.

To successfully maintain an action for trademark infringement, false designation of origin, and unfair competition under the Lanham Act, plaintiff must show that it has a valid trademark. *See Thane Int'l v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002). A trademark is a word, name, symbol, or device that is intended to identify and distinguish the mark holder's goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods. 15 U.S.C 1127. Defendant argues that DWG is not a valid trademark because it is generic and/or functional, and because plaintiff is not the senior user of the mark. Thus, defendant contends that it is entitled to judgment as a matter of law that DWG is not a valid trademark and cannot be asserted against defendant. Plaintiff conversely contends that it is entitled to judgment as a matter of law that the DWG mark is not generic or functional. Not in play on these motions is the question of infringement.

### A.    Is DWG Generic?

DWG is not a registered mark in the United States. "If a supposedly valid mark is not federally registered . . . the plaintiff has the burden of proving nongenericness once the defendant asserts genericness as a defense." *Filipino Yellow v. Pages*, 198 F.3d 1143, 1146 (9th Cir. 1999).

Marks are classified as generic, descriptive, and arbitrary or fanciful. "A generic term is one that refers, or has come to be understood as referring, to the genus of which the particular product or service is a species. It cannot become a trademark under any circumstances." *Id.* at 1147 (internal citations omitted). As explained by the Ninth Circuit, "[t]he question of genericness is often answered by reference to the "who-are-you/what-are-you" test: a valid trademark answers the former question, whereas a generic product name or adjective answers the latter. If the primary significance of the trademark is to describe the type of product rather than the producer, the trademark is a generic term and cannot be a valid trademark." *Rudolph Int'l Inc. v. Realys, Inc.*, 482 F.3d 1195, 1198 (9th Cir. 2007) (internal citations omitted). Genericness is a question of fact. *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 929 (9th Cir.

*United States District Court*
For the Northern District of California

5

2005). Additionally, courts also consider factors such as whether competitors use the mark, use by the media, and plaintiff's own use of the mark to gauge genericness. *Vallavista Corp. v. Amazon.com, Inc.*, No. C07-05360WHA, 2008 WL 5210949 at *3 (N.D. Cal. Dec. 11, 2008).

DWG is opposed herein to be generic in two ways. *First*, defendant argues that DWG was generic prior to plaintiff ever adopting it inasmuch as it was a generic term referring to drawings. *Second*, defendant argues that even if plaintiff ever had any rights to DWG, genericide has occurred because plaintiff allegedly chose to let others use DWG without interference. *See Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 905 (9th Cir. 2007) (noting that genericide occurs as a result of a trademark owner's failure to police the mark resulting in widespread usage by competitors). Defendant submits that DWG now denotes a particular file type or format and does not identify or distinguish the source of a particular product. Plaintiff replies that DWG is not generic. Users associate the mark with plaintiff, it counters.

The evidence is mixed as to whether the "primary significance of the trademark" is to describe the type of product rather than the producer. There are genuine issues of material fact as to whether DWG is generic. Both sides will have to try and convince a jury. Both motions are **DENIED**.[1]

## B.   Is DWG Functional?

Defendant moves for summary judgment on the ground that the DWG word mark is functional and therefore unprotectable as a trademark. Plaintiff argues that DWG is not functional and that summary judgment in its favor is appropriate.

The Supreme Court has explained that "[t]he functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." Allowing trademark protection for a functional feature that could otherwise be protected by a patent would allow perpetual protection, something not obtainable with a patent. *Qualitex Co. v. Jacobsen Prods. Co., Inc.*, 514 U.S. 159, 165 (1995) (internal citations omitted).

---

[1] It should be noted that at the hearing, a number of further decisions in reference to the issue of genericness were mentioned. There is no point, however, in addressing those further decisions because so many genuine issues of material fact exist.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Building upon the Supreme Court holdings in *Qualitex* and *Inwood Laboratories v. Ives Laboratories*, 456 U.S. 822 (1982), the Ninth Circuit has adopted the following test for functionality.  If the alleged significant non-trademark function satisfies the *Inwood Laboratories* definition of functionality — essential to the use or purpose of the article or affects its cost or quality — the feature is functional and not protected.  *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006) (internal citations and quotations omitted).  The Ninth Circuit also considers the following factors:  "(1) whether advertising touts the utilitarian advantages of the design, (2) whether the particular design results from a comparatively simple or inexpensive method of manufacture, (3) whether the design yields a utilitarian advantage and (4) whether alternative designs are available."  *Id.* at 1072 n.8.

Plaintiff contends the functionality rule is generally only applied to trade dress or product designs, *not to word marks*.  A word mark — standing alone or as applied to product marketing literature or packaging — serves no "function" as contemplated by *Qualitex* and *Au-Tomotive Gold*, plaintiff says.  Indeed, it is not apparent how a word mark could be essential to the use or purpose of an article or affect its cost or quality.  *See Playboy Enterprises v. Netscape Commc'n Corp.*, 354 F.3d 1020, 1031 (9th Cir. 2004) (holding that the trademarks used to identify plaintiff's products were not functional because plaintiff could have called its magazine and its models entirely different things without losing any of the product's intended function); *Stoller v. Sutech U.S.A., Inc.*, Opp'n No. 91117894, 2005 TTAB LEXIS 464, at *7 (Oct. 26, 2005) (stating that "opposers' allegation of functionality is completely irrelevant because the subject matter in this case is a word mark shown in standard character form").  Thus, this order holds that the DWG word mark, unlike cases involving trade dress or product design, cannot be deemed functional for all uses.

Defendant stresses that the use of DWG as part of the ".dwg" file extension is a functional use, and therefore unprotectable under trademark law.  Plaintiff, however, expressly disavows any ownership of "any even arguably functional use of DWG" (Br. 3), including the use of DWG as a file extension.  Put differently, anyone is the world is free to use ".dwg" as a file extension as far

7

United States District Court

For the Northern District of California

1   as Autodesk is concerned.  Thus, there is no concern that plaintiff will obtain a monopoly over the

2   ".dwg" extension and prevent its use in the industry.

3        Defendant's trade dress decisions miss the point.  For example, in *Talking Rain Beverage

4   *Co. Inc. v. South Beach Beverage Co.*, 349 F.3d 601, 604 (9th Cir. 2003), a bottle design was held

5   to be functional because the only feature shared between the design and the alleged infringing

6   product was the grip area that was motivated by manufacturing efficiencies, that offered

7   utilitarian advantages, and that was touted in advertising as being easy to grip thereby indicating

8   functionality.  By contrast, a *word* mark, unlike a physical product design, has no functionality

9   dictated by manufacturing efficiencies or utilitarian advantages.

10       To be sure, two decisions cited by defendant involved word marks, *Sega Enterprises*,

11  977 F.2d 1510 (9th Cir. 1992), and *Compaq Computer Corp. v. Procom Technology*, 908 F. Supp.

12  1409 (S.D. Tex. 1995).  *Compaq* merely held that a specific use of a word mark was functional

13  because it was the *only* commercially viable way for the defendant to make its product compatible

14  with the plaintiff's computer program.  *Compaq*, 908 F. Supp. at 1423.  Similarly, in *Sega*, the

15  Ninth Circuit held the use of an initialization sequence that caused plaintiff's trademark to be

16  displayed on the screen was held to be a functional display of the trademark because using the

17  initialization sequence was the *only* feasible means for providing compatibility with plaintiff's

18  product.  *Sega*, 977 F.2d at 1532.  Here, by contrast, the particular uses of the DWG mark

19  targeted by plaintiff are not essential to product compatibility, and are not essential to enabling

20  defendant's products to function.  Defendant has failed to show that preventing the asserted uses

21  of the DWG mark would affect compatibility of its products.

22       Defendant's further argument that DWG is the actual benefit consumers wish to purchase

23  is unavailing.  "Functional features of a product are features which constitute the actual benefit

24  that the consumer wishes to purchase, as distinguished from an assurance that a particular entity

25  made, sponsored, or endorsed a product."  *Leatherman Tool Group v. Cooper Industries Inc.*,

26  199 F.3d 1009, 1011–12 (9th Cir. 1999) (internal quotations omitted).  Consumers, however,

27  desire interoperability from defendant's product, and plaintiff is not attempting to prevent

28  defendant from making interoperable products.  Plaintiff only wants the prevent the use of the

United States District Court

For the Northern District of California

1   *word* mark DWG in a way that improperly associates defendant's products with plaintiff's.

2   Thus, consumers would not be denied any benefit of defendant's product.

3       *America Online Inc. v. AT&T Corp.*, 243 F.3d 812 (4th Cir. 2001), is inapposite.

4   Defendant argues that in *America Online*, the plaintiff's spoken phrase, "You Got Mail" was held

5   to be functional because this was an actual benefit sold to consumers, providing a notice that they

6   have mail, and this same benefit was sold by other competing entities. In that decision, however,

7   the court noted that the plaintiff only used the phrase in the functional sense, to tell a user if the

8   user had mail, and not in a way to identify the plaintiff. *America Online*, 243 F.3d at 820

9   (holding that the plaintiff's use does not describe plaintiff's service but merely employs common

10  words to express their commonly used meaning). By contrast, in this action, plaintiff has used

11  DWG in a nonfunctional way, *e.g.*, as part of *its* product names. While it is true that plaintiff has

12  also referred to DWG is some documents in its functional sense, as a file extension, this is not the

13  only way DWG has been used. Moreover, once again, the actual benefit consumers want is

14  interoperability. Defendant has failed to explain how consumers would be denied any benefit

15  of its product if plaintiff were to have exclusive nonfunctional use of DWG as a word mark.

16      Finally, defendant argues that giving plaintiff a monopoly over the term DWG would

17  forever shut down competitors' efforts to describe interoperability. This argument, however, has

18  nothing to do with the trademark doctrine of functionality. Even if plaintiff holds a lawful mark,

19  the DWG mark could still be used by competitors under the doctrine of fair use. Defendant's

20  attempt to extend the doctrine of functionality over more applicable doctrines of trademark law is

21  improper. The asserted uses that plaintiff is attempting to protect are better addressed under fair

22  use.[2]

23

24      [2] It should be noted that in *Au-Tomotive Gold*, the Ninth Circuit also held that "[i]n the case of a claim
    of aesthetic functionality, an alternative test inquires whether protection of the feature as a trademark would
25  impose a significant non-reputation-related competitive disadvantage." 457 F.3d at 1072. In this action, a claim
    of aesthetic functionality would not make sense as aesthetic functionality is used to find visually attractive and
26  aesthetically pleasing designs as functional when goods are largely bought for those aesthetic values.
    2 MCCARTHY, J. THOMAS, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, FOURTH EDITION, §7:79
27  (2009). Moreover, defendant does not appear to be making a claim of aesethetic functionality. Defendant's
    entire opening brief discusses traditional utilitarian functionality, that the use of DWG affects use of its product,
28  inasmuch as defendant's whole argument focuses on compatibility and the need to use the ".dwg" extension for
    proper computer operation. Thus, any attempt to rely on *Kendall-Jackson Winery v. E&J Gallo Winery*,

United States District Court

For the Northern District of California

1    In sum, defendant's motion concerning functionality is **DENIED**. Plaintiff's motion

2  concerning functionality is **GRANTED**. This, however, does not mean the mark is valid, only that

3  it is not invalid due to functionality. Again, no questions on trademark infringement are tendered

4  on summary judgment.

5    **C.    Senior User of DWG.**

6    Defendant argues that even if DWG were protectable, plaintiff does not own the mark

7  because it is not the senior user. Thus, defendant argues that plaintiff has no right to the mark and

8  that summary judgment on all plaintiff's claims regarding the use of DWG should be granted.

9    "It is axiomatic in trademark law that the standard test of ownership is priority of use. To

10  acquire ownership of a trademark it is not enough to have invented the mark first or even to have

11  registered it first; the party claiming ownership must have been the first to actually use the mark

12  in the sale of goods or services." *Sengoku Works Ltd. v. RMC Intern., Ltd.***,** 96 F.3d 1217, 1219

13  (9th Cir. 1996) (internal citations omitted). Both parties have submitted evidence in support of

14  their argument that they are the senior user. There are, however, genuine issues of material fact

15  as to whether plaintiff or defendant has first made a trademark use of DWG.

16    Defendant also raises the argument that because the Open Design Alliance, a third party,

17  allegedly registered several trademarks for the OpenDWG mark and used it in commerce prior to

18  plaintiff, plaintiff is not the senior user of the mark. This defense of raising a third party's rights

19  is referred to as jus tertii. The Ninth Circuit has held that "a third party's prior use of a trademark

20  is not a defense in an infringement action." *Committee for Idaho's High Desert v. Yost,* 92 F.3d

21  814, 820 (9th Cir. 1996) (quoting a decision holding that "even if, for some purposes and in some

22  territory, a [third party] may have a right in the trade-mark superior to that of the plaintiff, the

23

24  _____

25  150 F.3d 1042, (9th Cir. 1998), for the purposes of functionality, is unavailing because that decision involved aesthetic functionality of trade dress. In that decision, the Ninth Circuit affirmed a denial of summary judgment

26  on the grounds that a jury could find that an exposed cork, rounded flange, and a neck label constitute a combination of features who exclusive use by plaintiff would put competitors at a significant non-reputation based advantage because that is a look consumers expect from a California wine. By contrast, the only need

27  defendant has to use DWG on its product can be addressed via fair use. Plaintiff is not attempting to prevent any use that would prevent defendant's product from functioning, and defendant could still advertise

28  compatibility to consumers. Defendant does not present any significant non-reputation related competitive disadvantage.

10

United States District Court
For the Northern District of California

1   defendant is not thereby exonerated from responsibility for an attempt to appropriate to itself a

2   good will created by the plaintiff during a long course of business").

3          In light of the above, defendant's motion for summary adjudication on all of plaintiff's

4   claims regarding DWG is **DENIED**.

5          **2.      PROTECTABILITY OF PLAINTIFF'S REAL/ORANGE FRAME DESIGN.**

6          Plaintiff challenges that defendant's use of its "real" logo design used in connection with

7   its software falsely suggests an association or affiliation with plaintiff and plaintiff's software,

8   DWG technology, and RealDWG licensing program.  Defendant responds that plaintiff's claim

9   has no merits because plaintiff's attempts to combine its orange frame design, corporate slogan

10  trademark "Experience It Before It's Real," and RealDWG trademark does not produce

11  protectable trade dress.

12

13  **Orange Frame on Plaintiff's Packaging**                **Defendant's Logo**



21          Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition

22  and prohibits the sale of goods by use of:

23              [a]ny person who, on or in connection with any goods or services,
               or any container for goods, uses in commerce any word, term,
24              name, symbol, or device, or any combination thereof, or any false
               designation of origin, false or misleading description of fact, or
25              false or misleading representation of fact, which —

26                  (A) is likely to cause confusion, or to cause mistake, or to
               deceive as to the affiliation, connection, or association of such
27              person with another person, or as to the origin, sponsorship, or
               approval of his or her goods, services, or commercial activities by
28              another person, or

                                          11

United States District Court

For the Northern District of California

1

2

3

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

4  15 U.S.C 1125(a).  The definition of the actionable elements in Section 43(a) has been held to

5  include trade dress.  *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 210 (2000) (holding that

6  trade dress constitutes a "symbol" or "device").  "Trade dress generally refers to the total image,

7  design, and appearance of a product and may include features such as size, shape, color

8  combinations, texture, or graphics."  *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252,

9  1257–58 (9th Cir. 2001) (internal citations omitted).  If a seller uses a trade dress that is

10  confusingly similar to a competitor's, that conduct is actionable as unfair competition under

11  Section 43(a) of the Lanham Act.  *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613 (9th

12  Cir. 1989) (internal citations omitted).

13  <center>**A.     Defining the Protectable Trade Dress**.</center>

14         Defendant first argues that plaintiff has insufficiently defined the asserted trade dress.

15  It is true that an order herein previously dismissed plaintiff's trade dress infringement claim as

16  unclear.  There was insufficient detail.  Plaintiff has simply renamed its claim from trade dress

17  infringement to false designation of origin and alleged no new facts, according to defendant.

18  The amended complaint, however, provides sufficient detail.  It has stated the orange frame,

19  alone, is "inherently distinctive and serves to identify the source of [plaintiff's products]" (Opp.

20  ¶ 14; First Amd. Comp. ¶ 62).  It also states that plaintiff uses a video marketing campaign which

21  combines its "distinctive orange frame design with the 'real' element of its RealDWG and

22  [corporate slogan] trademarks" (First Amd. Comp. ¶ 37).  Furthermore, plaintiff alleges that

23  defendant's logo, consisting of the word real enclosed is an orange frame, is allegedly an attempt

24  to "trade off of [plaintiff's] goodwill and cause confusion regarding [plaintiff's] orange frame

25  design, its RealDWG program, and its [corporate slogan]" (First Amd. Compl. ¶ 38).  In sum, it

26  appears that plaintiff is asserting that its orange frame alone and in combination with the "real"

27  element is protectable trade dress.

28

<center>12</center>

United States District Court

For the Northern District of California

### B.    Trade Dress Infringement.

To state a claim for trade dress infringement under Section 43(a), a plaintiff has the burden to prove:  (1) that its trade dress is inherently distinctive or has acquired secondary meaning, (2) that its trade dress is nonfunctional, and (3) that the defendant's product creates a likelihood of consumer confusion.  *Clicks Billiards.*, 251 F.3d at 1258; *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987).

### *(1)    Distinctiveness — Generally*.

Defendant argues that the asserted trade dress is not distinctive and that there is no secondary meaning associated with the dress.  Trade dress is distinctive when it identifies the particular source of the product or distinguishes it from other products.  On the other hand, secondary meaning is acquired "when the purchasing public associates the mark or dress with a single producer or source rather than with the product itself."  *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir. 1993).

### *(2)    Distinctiveness — Inherent Distinctiveness*.

Plaintiff contends that its orange frame is inherently distinctive.  It is not apparent, however, that the use of such a common place shape — a rectangle of ordinary shape — would be associated only with plaintiff.  "Most common geometric shapes are regarded as not being inherently distinctive, in view of the common use of such shapes in all areas of advertising.  Thus, such ordinary shapes as circles, ovals, squares, etc., either when used alone *or as a background for a word mark*, cannot function as a separate mark unless . . . the shape is likely to create a commercial impression on the buyer separate from the word mark or any indicia . . . ."  1 MCCARTHY, J. THOMAS, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, FOURTH EDITION, §7:29 (2009).  It is not apparent why the combination of an ordinary geometric shape, a rectangle, and a primary color, orange, would be inherently distinctive of plaintiff.  In fact, the evidence submitted by plaintiff shows that plaintiff has used a rectangular frame in different colors, white and orange, and different sizes and proportions (*see, e.g.,* Bradshaw Decl. in Support of Opp. Exh. 14; Exh. 15; Exh. 16).  Plaintiff is surely not contending that all those variations are inherently distinctive of plaintiff.  Moreover, the fact that plaintiff may have

United States District Court

For the Northern District of California

1    consistently used one particular size and color on its product packaging does not convert an

2    ordinary orange rectangle from a common geometric element to one inherently indicative of

3    plaintiff. Plaintiff must prove that the trade dress has acquired secondary meaning, as analysed

4    below.

5          It is also not apparent why the addition of the "real" element in ordinary text would

6    somehow be inherently indicative of plaintiff. Plaintiff's asserted dress is not a combination of

7    arbitrary elements but is making use of common elements. "Real" is a common place term in the

8    CAD context. It refers to a user's ability to get a real-world visual image of a design, the whole

9    point of CAD technology. Moreover, plaintiff has only used this combination only twice, both

10   times for a few seconds in video clips (Opp. at 17). This is not enough to allow the combination

11   to be monopolized by one competitor and denied to all others. *See Brookfield Commc'n. v. West*

12   *Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999) (holding that "[t]he Lanham Act grants

13   trademark protection only to marks that are used to identify and to distinguish goods or services

14   in commerce — which typically occurs when a mark is used in conjunction with the actual sale of

15   goods or services").

16         In sum, the asserted dress does not inherently identify the particular source of the product

17   or distinguish it from other products. "[N]o one seller should be allowed to appropriate . . .

18   commonplace shapes . . . and claim only he can use such a shape as a background for his word

19   mark.." 1 MCCARTHY at §7:29. Thus, defendant is correct that plaintiff must make a showing of

20   secondary meaning.

21         *(3)    Distinctiveness — Secondary Meaning.*

22         Defendant argues that plaintiff has put forth no evidence of secondary meaning — that the

23   purchasing public associates the mark or dress with a single producer or source rather than with

24   the product itself. Plaintiff has not presented any survey evidence or testimony. But, plaintiff

25   contends that evidence of use and advertising over a period of time and evidence of intentional

26   copying is sufficient to establish secondary meaning.

27         Concerning the sufficiency of advertising evidence, plaintiff cites to *Clamp Mfg. Co. v.*

28   *Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir.1989), holding that evidence of use and advertising

over a substantial period of time is enough to establish secondary meaning.  In that decision, however, the asserted dress was *prominently* featured in the advertising and promotional efforts. *Clamp Mfg.*, 870 F.2d at 517.  Moreover, in *First Brands v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987), to which *Clamp Mfg.* cites, the earlier court elaborated that "the advertising and promotional activities must involve 'image advertising,' that is, the ads must *feature* in some way the trade dress itself."  *First Brands*, 809 F.2d at 1383.  In finding no clear error with the lower court's holding that secondary meaning was not established, the *First Brand's* court noted that the lower court had found that the "advertising campaign ha[d] not *stressed* the color and shape of the antifreeze jug[, the asserted trade dress,] so as to support an inference of secondary meaning."  *Ibid.*  The advertising must be of a "nature and extent to create an association with the advertiser's goods."  *Art Attacks Ink, LLC v. MGA Enter. Inc.*, 581 F.3d 1138, 1146 (9th Cir. 2009) (internal quotations omitted).

By contrast, plaintiff's advertising does not stress or feature the orange frame or orange frame in combination with the real element in any way that could establish secondary meaning. As stated above, plaintiff can dredge up only two instances where the orange frame is used in combination with the real element.  Plaintiff also provides examples of various of orange frames in various sizes.  None of the advertising featured the consistent use of an orange frame in a manner that would support an inference of secondary meaning.  Plaintiff also provides no data on how extensive the advertising was using these elements.  Plaintiff merely cites to various examples of advertising without explaining how often these advertisements were used or explaining the context in which they were presented to the consuming market (Opp. at 17). As presented, the orange frame simply looks like a graphical feature of the product packaging or computer presentation and would not establish secondary meaning with the relevant market. Especially since plaintiff has also used many different colored rectangles and many different geometric designs.  Plaintiff has failed to put forth evidence establishing that the nature and extent of the advertising creates consumer association with its goods.

Concerning plaintiff's contention that evidence of intentional copying establishes secondary meaning, plaintiff has not put forth sufficient evidence.  Evidence of intentional

United States District Court

For the Northern District of California

1   copying may support an inference of secondary meaning. *Clicks Billiards*, 251 F.3d at 1264.

2   Plaintiff, however, at best, has established that defendant knew there was a similarity between

3   plaintiff's and defendant's dress. None of the cited evidence is sufficient to prove that defendant

4   intentionally copied plaintiff's design. In fact, the evidence seems to indicate the contrary, that

5   defendant examined plaintiff's trade dress and found its dress to be sufficiently different (*see,*

6   *e.g.,* Bos Decl. Exh. 37 at 145: 18–20) (wherein defendant actually states that it found its design

7   to be different from plaintiff's and thus decided to move forward with its design thereby

8   potentially showing a good faith attempt to ensure its design was not identical to plaintiff's). In

9   addition, the evidence also shows that defendant was discussing plaintiff's copying of its graphics

10  — the reverse situation (Bos Decl. Exh. 42) (stating that "we . . . are not concerned about

11  [plaintiff's] attempt to copy our graphics"). That defendant may have known about plaintiff's

12  mark is insufficient to establish intentional copying. *See One Industries, LLC v. Jim O'Neal*

13  *Distributing Inc.*, 578 F.3d 1154, 1163–64 (9th Cir. 2009) (affirming a holding that defendant's

14  knowledge of a competitor's mark when creating its own was not sufficient to establish an intent

15  to deceive consumers). At oral argument, counsel significantly overstated the record on supposed

16  "copying." On appeal, please be more candid in presenting the record.

17          In light of the above, defendant has shown that plaintiff cannot meet its burden of proving

18  distinctiveness of the asserted trade dress. Defendant's motion for summary judgment on the

19  issue of trade dress infringement is **GRANTED**.[3]

20          **3.      FAIR USE.**

21          Even if a valid trademark exists, a competitor may make "fair use" of it. There are two

22  types of fair use. The classic fair-use defense, a statutory defense, "in essence, forbids a

23  trademark registrant to appropriate a descriptive term for his exclusive use and so prevents others

24  from accurately describing a characteristic of their goods." *New Kids on the Block v. News*

25  *America Pub., Inc.*, 971 F.2d 302, 306 (9th Cir. 1992); *see also* 15 U.S.C. § 1115(b)(4).

26  Nominative fair use, on the other hand, governs where the defendant uses a trademark to describe

27

28          [3] Since defendant has shown that plaintiff cannot meet its burden concerning distinctiveness, arguments
    concerning functionality and likelihood of confusion need not be addressed.

the plaintiff's product, rather than its own. *Id.* at 308.  In explaining nominative fair use, the

Ninth Circuit has held:

> [w]e may generalize a class of cases where the use of the trademark
> does not attempt to capitalize on consumer confusion or to
> appropriate the cachet of one product for a different one.  Such
> nominative use of a mark-where the only word reasonably available
> to describe a particular thing is pressed into service-lies outside the
> strictures of trademark law:  Because it does not implicate the
> source-identification function that is the purpose of trademark, it
> does not constitute unfair competition; such use is fair because it
> does not imply sponsorship or endorsement by the trademark
> holder.

*New Kids,* 971 F.2d at 307–308.

Plaintiff accuses defendant of overemphasizing plaintiff's AutoCAD and Autodesk

trademarks in its advertising.  In response, defendant has moved for summary judgment on the

ground that the likelihood-of-confusion test for trademark infringement is unsatisfied.  *See AMF,*

*Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) (defining the likelihood-of-confusion test).

Moreover, defendant also asserts that regardless of the *Sleekcraft* analysis, plaintiff's claim fails

because its uses qualify as nominative fair use.

When a nominative fair use is raised, however, the fair-use analysis replaces the

likelihood-of-consumer confusion analysis set forth in *Sleekcraft.  Playboy Enters., Inc. v. Welles*,

279 F.3d 796, 801 (9th Cir. 2002) (stating that "[i]n cases in which the defendant raises a

nominative [fair] use defense, the [nominative fair use] test should be applied instead of the test

for likelihood of confusion set forth in Sleekcraft" because it "better evaluates the likelihood of

confusion in nominative [fair] use cases").  Thus, as plaintiff contends, the *Sleekcraft* analysis is

not applicable in this context.

To establish a nominative fair-use defense, a defendant must prove the following three

elements:

> [f]irst, the [plaintiff's] product or service in question must be one
> not readily identifiable without use of the trademark; second, only
> so much of the mark or marks may be used as is reasonably
> necessary to identify the [plaintiff's] product or service; and third,
> the user must do nothing that would, in conjunction with the mark,
> suggest sponsorship or endorsement by the trademark holder.

United States District Court

For the Northern District of California

1   *New Kids*, 971 F.2d at 308.  This analysis involves questions of fact.  *See KP Permanent*

2   *Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 609 (9th Cir. 2005) (holding that there

3   were genuine issues of fact that are appropriate for the fact-finder to determine in order to find

4   that the defense of fair use has been established).

5        Concerning the first prong, defendant argues that there is no way to refer to plaintiff's

6   marks other than by referring to them by name.  Plaintiff does not dispute this.  Plaintiff only

7   states that defendant "fails to carry its burden as to at least two" of these elements of the *New*

8   *Kids* test and proceeds to dispute the second and third prongs of the fair use analysis.  Concerning

9   the second and third prongs, both parties' arguments have been considered.  There are genuine

10  issues of material fact as to whether defendant has used plaintiff's marks more than necessary to

11  identify plaintiff's products, and whether such use suggests sponsorship or endorsement.

12  Consequently, defendant's motion for summary judgment on its nominative fair use of plaintiff's

13  marks is **GRANTED** with regard to the first prong and **DENIED** with regard to the second and third

14  prongs.

15       **4.**    **FALSE ADVERTISING — DEFENDANT'S MOTION.**

16       Plaintiff alleges that defendant engages in false advertising, in violation of the Lanham

17  Act, by making the following three statements:  (1) "DWGgateway is the first free data translation

18  plug-in that lets AutoCAD users work easily with DWG files created by any version of AutoCAD

19  software," (2) "save DWG files to any version of AutoCAD software," and (3) "open, edit, and

20  share DWG data more effectively with others."  Defendant moves for summary judgment on the

21  grounds that: (a) plaintiff has not presented evidence to support its claim that the three statements

22  are false or misleading; (b) plaintiff has failed to meet its burden to produce evidence showing

23  that the challenged statements are material; (c) plaintiff has failed to prove it was damaged by the

24  accused statements; and (d) statements one and three are non-actionable puffery.

25       **A.**    **Non-Actionable Puffery — Statements One and Three.**

26       Are statements one and three nonactionable puffery?  A prior order held that these

27  statements *seem* to describe specific characteristics of defendant's product that could be tested

28  (Dkt. No. 29 at 5).  Unlike the earlier motion to dismiss, however, in this motion for summary

1    judgment, counsel, and the undersigned are no longer limited to the pleadings.  A more thorough

2    analysis is now in order.

3          Statements that constitute puffery escape false advertising liability.  *Cook, Perkiss &*

4    *Liehe, Inc. v. Northern Cal. Collection Serv. Inc*., 911 F.2d 242, 245 (9th Cir. 1990).  A statement

5    is puffery if the claim is extremely unlikely to induce consumer reliance.  "[A] statement that is

6    quantifiable, that makes a claim as to the specific or absolute characteristics of a product, may be

7    an actionable statement of fact while a general, subjective claim about a product is non-actionable

8    puffery." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008)

9    (internal citation and quotation omitted).  "Puffing is exaggerated advertising, blustering, and

10   boasting upon which no reasonable buyer would rely."  *Southland Sod Farms v. Stover Seed Co.*,

11   108 F.3d 1134, 1145 (9th Cir. 1997).  The determination of whether an alleged misrepresentation

12   is a statement of fact or is instead mere puffery is a legal question.  *Newcal Indus., Inc. v. IKON*

13   *Office Solutions*, 513 F.3d 1038, 1053 (9th Cir. 2008).

14         Statement one describes that defendant's "free data translation plug-in for AutoCAD

15   users" can "work easily with DWG files created by *any version* of AutoCAD software."  While it

16   may well be true that the phrase "work easily" is subjective and not measurable in isolation, when

17   viewed as a whole, statement one can be viewed as referring to specific and testable

18   characteristics of a product — specifically, that a consumer can work with files produced by "*any*

19   *version*" of AutoCAD.  Whether defendant's product does in fact work with "*any version*" of

20   AutoCAD is a measurable claim that does not appear to constitute puffery.  *See Southland Sod*

21   *Farms*, 108 F.3d at 1145 (holding that "[a] specific and measurable advertisement claim of

22   product superiority based on product testing is not puffery").  Indeed, there is at least some proof,

23   if credited, that defendant's product does not work with *every* version of AutoCAD (*see* Oak

24   Decl. in Support of Opp. ¶¶ 19–22) (alleging compatibility issues between defendant's product

25   and 2004 and 2007 AutoCAD DWG formats).  Because such a measurable statement could

26   induce customer reliance when evaluating defendant's product, it cannot be deemed puffery, at

27   least on summary judgment.  The record is insufficient with regard to the statement, and this issue

28   will be tried.

United States District Court

For the Northern District of California

1    *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725 (9th Cir.

2    1999), is no help here. *Coastal Abstract* held that the defendant's statement that the competitor's

3    charge that a company was "too small" to handle the business of a third party was held as puffery

4    because it was not a specific and measurable claim. 173 F.3d at 731. Whether a company is "too

5    small" is not easily measurable because such a benchmark may hinge on the speed at which work

6    is completed, the number of employees, or other measures that are not apparent. That is a

7    subjective standard. By contrast, whether something works with "*any version*" of AutoCAD is a

8    measurable and testable claim upon which a reasonable consumer could rely.

9         Other decisions cited by defendant are similarly inapposite. For example, in *Smith-Victor

10    Corp. v. Sylvania Electric Products, Inc.*, 242 F. Supp. 302, 308–309 (N.D. Ill. 1965), the

11    statement "far brighter than any lamp ever before offered for home movies" was held to be

12    puffery. It is true that the Ninth Circuit, in *Coastal Abstracts*, agreed with that holding. That

13    statement is distinguishable from this action, however, because whether a light is "far brighter" is

14    a general claim and not a claim making allegations concerning the absolute qualities of a product.

15    Similarly, in *Oestricher v. Alienware Corp.*, 544 F.2d 964, 973 (N.D. Cal. 2008), the defendant's

16    general claims of superiority included "superb, uncompromising quality" and "faster, more

17    powerful, and more innovative than competing machines." In this action, however, defendant is

18    alleging that one of its products is compatible with "*any version*" of plaintiff's AutoCAD data.

19    Despite the presence of the unmeasurable phrase "work easily," it is possible that the claim of

20    compatibility with "*any version*" of AutoCAD would induce consumer reliance. Statement one,

21    taken as a whole, does not appear to be puffery. Again, the record is insufficient with regard to

22    the statement, and this issue will be tried.

23         Statement three, however, is too generalized and vague to be actionable. Statement three

24    claims that defendant's "DWGseries is a set of FREE software tools created for current and

25    former AutoCAD users to open, edit, and share DWG data more effectively with others" (Compl.

26    Exh. B at 2). Plaintiff argues that this is not puffery because, in context, the statement implies to

27    consumers that they can switch to defendant's products and "gain efficiency in opening, editing,

28    and sharing DWG data, maintaining all compatibility and ease of use while not spending any

money on plaintiff's products" (Opp. 30).  While it may be true that the advertisement, when one looks beyond the content of statement three, may imply that effectiveness means compatibility with "*any version*" of AutoCAD, statement three itself makes no such claim.  Rather, the heart of statement three is effectiveness, a highly subjective standard that may refer to the integrity of the data, speed of processing, or whatever a particular user deems important to effective use.  Such a claim is a vague and unmeasurable claim of superiority that constitutes non-actionable puffery.

In light of the above, defendant's motion for summary judgment on the ground that statements one and three are non-actionable puffery is **DENIED** with respect to statement one and **GRANTED** with respect to statement three.  Therefore, statement three is immune from false advertising liability and need not be addressed in that analysis.  Statement two, which defendant did not assert as nonactionable puffery, and statement one are discussed under False Advertising.

### B.     False Advertising — Statements One and Two.

The elements of a Lanham Act § 43(a) false advertising claim are:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (internal citations omitted).  Defendant challenges statements one and two by arguing that the statements are not false or material and by arguing that plaintiff has not proven any damages.  Both parties' arguments have been considered.  There are, however, genuine issues of material fact regarding a multitude of these issues.  Consequently, defendant's motion for summary judgment is **DENIED**.

### 5.     FALSE ADVERTISING — PLAINTIFF'S MOTION.

The shoe is on the other foot here.  Plaintiff has a cartoon advertisement that defendant assails as false advertising.  It is now plaintiff, however, that alleges "mere puffery," saying the cartoons contain only vague claims of superiority upon which no reasonable consumer would rely.  Defendant, in response, contends that consumers would find that the advertisements refer to

1   SolidWorks and that the advertisements convey the message that using defendant's product will

2   produce dangerous defects.  To support this argument, defendant argues that the advertisements

3   refer to a company "Won'tWorks," an alleged reference to defendant's name, and involve a roller

4   coaster and bicycle, allegedly two recent components in defendant's advertisements.

**Jonnie Real Roller Coaster Advertisement**



United States District Court
For the Northern District of California

**Jonnie Real Bicycle Advertisement**



The ultimate issue is whether these advertisements "make[] a claim as to the specific or absolute characteristics of a product . . . ." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) (citation and quotation omitted). Both advertisements allegedly suggest a defect with defendant's product. In the bicycle advertisement, the premise of the entire advertisement is: "Isn't real Interoperability Important?" The roller coaster advertisement is headed with the statement: "A real risk you shouldn't take." These statements and the message from the advertisements, however, are not claims based on the absolute or specific characteristics of a product but are general claims of superiority.

23

United States District Court

For the Northern District of California

1    In the advertisements, plaintiff is touting the general superiority of its dimensioning

2    capabilities.  Plaintiff does not make specific verifiable allegations regarding what may occur

3    with a competitor's dimensioning.  For example, plaintiff does not allege specific statistics or

4    factors that prove its product is better than a competitor's.  Morever, plaintiff does not claim to

5    have verified its allegation by any form of testing.  By contrast, in *Southland Sod Farms*, 108

6    F.3d at 1145, the claim of "50% less mowing" was not held to be puffery because the

7    advertisement indicated that the claim was based on research and testing.  The claim that "less is

8    more," however, was held to be generalized boasting.  Similarly, the claims of generalized

9    dimensioning errors are more akin to generalized boasting than any claim based on research and

10   testing.

11   The Ninth Circuit has held that:

12          [u]ltimately, the difference between a statement of fact and mere
            puffery rests in the specificity or generality of the claim.  The
13          common theme that seems to run through cases considering puffery
            in a variety of contexts is that consumer reliance will be induced by
14          specific rather than general assertions.  Thus, a statement that is
            quantifiable, that makes a claim as to the specific or absolute
15          characteristics of a product, may be an actionable statement of fact
            while a general, subjective claim about a product is non-actionable
16          puffery.

17   *Newcal*, 13 F.3d at 1054 (internal quotations omitted).  A claim based on "*real* interoperability"

18   and a "*real* risk" conveys a subjective rather than objective message.  Whether something is a

19   "real" risk or provides "real" interoperability depends on what the consumer thinks "real" means

20   in that context.  Moreover, the entire message from these cartoons is that plaintiff's product is

21   generally better and that competing products may produce defective designs.  These are cartoons

22   with no quantifiable statements.  In fact, the advertisements make no specific allegations

23   concerning defendant's products.  Consumers would not rely on such advertisements.[4]

24

25

26          [4] This order need not address plaintiff's contentions with defendant's survey evidence since a decision
     was reached without relying upon that evidence.  Moreover, to the extent that plaintiff argues that defendant's
27   claims were only based on the comic strips and not the text surrounding the comic strip in the advertisement,
     this order disagrees.  As defendant has pointed out, the record points to defendant referring to the
28   advertisements and not to the comic strips.  Furthermore, in its reply, plaintiff has addressed the statements
     outside the comic strip in the lower part of the advertisements.

Defendant invokes *Western Duplicating, Inc. v. Riso Kagaku Corp.*, No. Civ. S98-208 FCD GGH, 2000 WL 1780288 (E.D. Cal. Nov. 21, 2000), to argue that the advertisements are puffery. In that decision, the defendant had specific warnings regarding the use of generic replacement ink, including plaintiff's product. For example, defendant warned that such use would "create a toxic environment," "result in fire," or "cause serious damage." Those statements, however, are statements of a specific consequence that were presented on a warning sticker to be placed inside a machine. *Western Duplicating*, 2000 WL 1780288, at *8. Morever, there was no less than eleven specific consequences that the consumer was warned about. *Id.* at *9. By contrast, the advertisements in dispute present exaggerated claims in the context of a cartoon and only warn of one general problem, dimensioning problems. The way in which a consumer would view a warning sticker and its message is much different from the way in which a consumer would view an exaggerated cartoon. A consumer would not rely upon a cartoon with an implicit message of hyperbole. The only specific statement made by plaintiff is that its program is the only one that does not need to use a translator and that plaintiff's product allows for accurate communication using the DWG format. These statements alone, however, are not sufficient to convert what is otherwise nonactionable puffery to puffery.

None of the other decisions cited by defendant are binding or availing. Consequently, both advertisements present specific general statements in a context that would not lead a reasonable consumer to rely on plaintiff's assertions. They are nonactionable puffery under the Lanham Act. Plaintiff's motion, therefore, is **GRANTED**.

**5.     LACHES.**

Plaintiff contends that defendant's fourth affirmative defense — that plaintiff's claims are barred by laches — should be rejected. Defendant has chosen not to oppose that portion of plaintiff's motion and continues to advance its other defenses (Opp. 1 n.1). Consequently, plaintiff's motion is **GRANTED**.

**CONCLUSION**

In light of the above, plaintiff's October 13 motion for summary judgment that its Jonnie Real advertisements constitute nonactionable puffery is **GRANTED**. This order holds, as a matter

25

of law, that those advertisements are nonactionable puffery.  With regards to the October 29

cross motions for summary judgment, this order holds that all motions are **DENIED** except:

(1) plaintiff's motion regarding the assertion that the uses of DWG it seeks to prevent are

nonfunctional is **GRANTED**; (2) defendant's motion regarding plaintiff's trade dress being

unprotectable is **GRANTED**; (3) defendant's motion concerning nominative fair use is **GRANTED**

with regards to the first prong of the *New Kids* test and **DENIED** with regards to the second and

third prong; and (4) defendant's motion that its advertisements are non-actionable puffery is

**GRANTED** with respect to statement three and **DENIED** with respect to statement one; and

(5) plaintiff's motion concerning defendant's defense of laches is **GRANTED**.  All other claims

and allegations, excluding the state law claims that the parties stipulated to dismiss, remain for

trial.


      **IT IS SO ORDERED.**


Dated:  December 8, 2009.

                          WILLIAM ALSUP
                          UNITED STATES DISTRICT JUDGE