QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Claude M. Stern (Bar No. 96737)
  Evette D. Pennypacker (Bar No. 203515)
  Andrea Pallios Roberts (Bar No. 228128)
  Zachary M. Fabish (Bar No. 247535)
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California  94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

Attorneys for Defendant Dassault Systèmes
SolidWorks Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>DASSAULT SYSTÈMES SOLIDWORKS CORPORATION,  a Delaware corporation,<br><br>    Defendant. | CASE NO. 3:08-cv-04397-WHA<br><br>**DEFENDANT SOLIDWORKS' OPPOSITION TO AUTODESK'S MOTION *IN LIMINE* 2 TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING AUTODESK'S APPLICATIONS TO REGISTER DWG AND DWG-BASED MARKS** |

**Issue to be decided: Admissibility of Autodesk's Trademark Applications and Other PTO Filings**

1  Plaintiff Autodesk, Inc. ("Autodesk") moved *in limine* for an order excluding evidence or
2  argument "regarding the prosecution histories of Autodesk's applications to register the marks
3  DWG, MAX DWG, and DWG UNPLUGGED" on the ground that such prosecution histories are
4  more prejudicial than probative.  Autodesk does not contend that this evidence is not relevant.  It
5  cannot.  Rather, the PTO's repeated rejections of Autodesk's application to register DWG is
6  evidence, among other things, that SolidWorks' conduct is not willful.  Notably, Autodesk does
7  not argue that *all* PTO prosecution histories should be excluded.  In particular, Autodesk does not
8  take issue with admission of the prosecution histories for SolidWorks' DWGeditor and
9  DWGgateway marks, or Autodesk's applications to register DWG EXTREME, DWG
10 TRUEVIEW, and DWG TRUECONVERT.  This Court should deny Autodesk's Motion *In Limine*
11 2 because the evidence it seeks to preclude is highly relevant and its probative value outweighs
12 any potential prejudice.

## I.    PRELIMINARY STATEMENT OF RELEVANT FACTS

14  *Autodesk's attempts to register DWG.*  Autodesk alleges the names of SolidWorks'
15 DWGseries software tools are likely to cause confusion with Autodesk's purported "DWG" mark.
16 SolidWorks released DWGeditor in August 2004 and DWGgateway in early 2005.  Prior to the
17 release of these products, SolidWorks searched the PTO's online database to determine if there
18 were any registered trademarks for "DWG."  (Roberts Dec., Ex. 6, 162:25-163:6, 164:18-22,
19 177:9-178:15.)  There were not.  SolidWorks discovered Autodesk had two 1996 applications to
20 register DWG UNPLUGGED and MAX DWG, but disclaimed exclusive rights to the term
21 "DWG."  (*Id.*; *see* Bos. Decl. to MIL 2, Exs. 8-9.)  Autodesk subsequently abandoned the
22 applications.  (*Id.*)  Thus, in August 2004, Autodesk did not have any registered trademarks
23 containing "DWG."

SolidWorks applied to register as trademarks DWGEDITOR and DWGGATEWAY in June 2005.[1]  Almost a year later, in April 2006, Autodesk filed applications to register DWG, DWG EXTREME, DWG TRUECONVERT, and DWG TRUEVIEW.[2]  Autodesk's application to register DWG claimed a date of first use in commerce of at least as early as November 28, 2005, well after the release of DWGeditor and DWGgateway.  (Bos. Dec. to MIL 2, Ex. 1.)

The PTO issued an office action, refusing Autodesk's application to register DWG on September 14, 2006, saying that the term was merely descriptive and as such, evidence of secondary meaning was required.  (Bos MIL 2 Dec., Ex. 3.)  Autodesk responded by submitting a secondary meaning survey by Dr. Deborah Jay, who later submitted the very same survey in this litigation. (Roberts Dec. Ex. 11).  On May 19, 2007, the PTO issued another office action, again refusing to register DWG.  The PTO stated that the Jay survey could be given little weight because association with Autodesk "could well be with the file format use of '.dwg' and not with the trademark use thereof."  Bos MIL 2 Dec., Ex. 4.  The PTO also dismissed the submitted declaration testimony of Autodesk's vice-president of marketing, which claimed Autodesk used "DWG" continuously since the 1980s, saying "***[Autodesk] has claimed a first use dates [sic] of November 28, 2005, which directly contradicts the declaration***."  *Id.* (emphasis added). Autodesk responded but the PTO rejected its additional arguments too.  (Roberts Dec. Ex. 12, Bos MIL 2 Dec., Ex. 5).

In June 2008, the PTO suspended action on Autodesk's application pending disposition of the cancellation proceedings for OPENDWG, DWGEDITOR, and DWGGATEWAY.  The PTO commented that the Jay survey "is simply irrelevant in establishing whether DWG is a recognized trademark," and "the facts are that: 1. DWG is a file format. 2. Applicant is not the exclusive source of files with the format name DWG. 3. Applicant does not control the use of DWG by others, either as a trademark or as a file format name. 4. The submitted survey does not reflect

---

[1]  Autodesk later filed an opposition to SolidWorks' application to register DWGGATEWAY and a cancellation petition the DWGEDITOR registered mark.  It did not do so, however, until May 12, 2006 and September 2, 2006, respectively.  Roberts Dec. Exs. 9-10.

[2]  Again, Autodesk only seeks to exclude the prosecution history for DWG.

recognition of DWG as a trademark, since no distinction was made between use as a trademark and use as the name of a file format." Bos MIL 2, Ex. 6.[3]

*Autodesk's attempts to reclaim DWG in litigation.*  Autodesk then filed this lawsuit alleging unfair competition and false designation of origin based upon SolidWorks' use of the term "DWG" in the names of its DWGseries software tools.  Autodesk claims ownership of "DWG" based, in part, upon claimed use of DWG since the 1980s; a story from its Senior Vice President and Chief Marketing Officer, Chris Bradshaw, that Autodesk recognized the importance of "DWG" in the early 1990s and developed it as a brand thereafter; its purported use of "DWG Unplugged" in the mid-1990s; and the very same Jay survey that was rejected by the PTO. Autodesk now seeks to exclude the PTO prosecution histories that contradict this very evidence.

## II. ARGUMENT

### A. Autodesk's 1996 Disclaimers of DWG are Relevant and Probative.

Autodesk seeks to exclude evidence showing that it disclaimed "DWG" in two trademark applications it subsequently abandoned.  This evidence is relevant and probative for at least five reasons: (1) they are the *only* trademark applications from Autodesk on file with the PTO at the time DWGeditor was named which included the term "DWG"–and "DWG" was disclaimed; (2) SolidWorks considered these applications before settling on DWGeditor as a name, showing non-willfulness, and a lack of intent to confuse consumers or to copy, (3) it suggests Autodesk was *not* treating "DWG" as a brand or trademark as of 1996, (4) it contradicts Mr. Bradshaw's testimony that Autodesk was branding DWG as of the early 1990s, and (5) Autodesk seeks to rely on these products to bolster its claim that it consistently used "DWG" as a trademark in commerce, but is trying to withhold the full story as to those terms from the jury.

Autodesk argues that the disclaimers should be excluded because disclaimers do not destroy a party's common-law rights in a mark.  "[I]t has long been held that the disclaimer of a

---

[3] The PTO's multiple rejections of Autodesk's applications to register DWG EXTREME, DWG TRUECONVERT, and DWG TRUEVIEW–which Autodesk did not move to exclude–are nearly identical to its office actions with respect to DWG.  The exception is that with respect to these composite marks, the PTO required Autodesk to disclaim DWG. (Roberts Dec., Exs. 14-16.)

term *constitutes an admission* of the *merely descriptive nature* of that term, as applied to the goods or services in connection with which it is registered, and an acknowledgment of the *lack of an exclusive right therein at the time of the disclaimer.*" *In re DNI Holdings*, 77 U.S.P.Q.2d 1435, at *8, (T.T.A.B. 2005) (emphasis added); *see also* 3 McCarthy § 19:65.  They constitute admissions regarding the strength and character of the claimed mark.  A disclaimer, however, "does not preclude a registrant . . . *later demonstrating* in another application . . . rights in the disclaimed matter *if it can show* that the disclaimed words have, *with time and use, become distinctive* of such goods or services."  (emphasis added).  *In re DNI Holdings*, 77 U.S.P.Q.2d 1435, at *8.  In other words, Autodesk's disclaimers should be admitted and then Autodesk can try to show that "DWG" has with time and use become distinctive.  Autodesk provides no compelling reason why the jury should be given only half of the story and not a full and fair understanding of the facts.[4]

### B. Autodesk's Sworn Statement Regarding the First Use in Commerce is Relevant and Probative.

Autodesk next seeks to exclude evidence that its application to register "DWG" with the PTO states it first used the term as a trademark in commerce on November 28, 2005 *after the release of DWGeditor and DWGgateway*.  This is relevant to the question of Autodesk's claimed priority of use, which is a gating issue to Autodesk establishing ownership of a mark.  In the pleadings, Autodesk claimed it used "DWG" since the 1980s, and Mr. Bradshaw will testify Autodesk developed it as a brand in the early 1990s.  Thus, in this lawsuit, Autodesk *directly contradicts* the date provided to the PTO.  Autodesk now wants to hide this from the jury by preventing SolidWorks from being able to cross-examine Autodesk witnesses about that contradiction, the precise date on which Autodesk started using "DWG" as a trademark, *why* it

---

[4] Autodesk also argues its 1996 disclaimer is not probative of SolidWorks' alleged infringement in 2004.  However, as explained above, Autodesk's DWG UNPLUGGED and DWG MAX applications were the only DWG-based trademark applications on file with the PTO when DWGeditor was named.  SolidWorks reviewed those applications and noted "DWG" was disclaimed before DWGeditor was launched.  It is therefore highly probative of both SolidWorks' intent and Autodesk's use of "DWG" prior to release of the DWGseries software tools.

1  submitted the November 2005 date to the PTO, and *why* it did not identify any other dates to the
2  PTO.[5] The jury is entitled to hear the answers to these questions.
3        Autodesk argues this evidence should be excluded because these prior claims only mean
4  Autodesk asserted that it used the mark *at least as early as* November 28, 2005.  But this does not
5  support exclusion.  Instead, it suggests Autodesk should be permitted to explain its submission to
6  the jury.  Furthermore, Autodesk implicitly admits it did not use "DWG" as a trademark earlier
7  than November 28, 2005 because in its reply to the office action in which the examiner noted that
8  any earlier uses of "DWG" appeared to be as a *file format*, Autodesk acknowledged  its first dates
9  of "technical trademark use" were in 2005, **and did not offer any date earlier than the previous**
10 **date of November 28, 2005.**  This is an outright admission by Autodesk as to the date of first use
11 and therefore its probative value outweighs any prejudice.
12       **C.**     **The Prior Office Actions are Relevant to Pending Issues**
13       Autodesk also seeks to exclude the prosecution history, and indeed, the very fact that it
14 applied to register "DWG" as a trademark.  This file history, however, is relevant to several issues.
15 First, Autodesk's delay in filing an application to register "DWG" until 2006 is probative of the
16 fact that it did not view "DWG" as a trademark, but as a type of file format.  This is relevant to
17 establishing that the term was generic and not protectable as a trademark when SolidWorks'
18 DWGseries tools were released.  Indeed, Autodesk waited over a year and a half after
19 DWGeditor's release before applying to register "DWG," indicating that even after SolidWorks'
20 released its products, Autodesk did not consider "DWG" to be its trademark.
21       Second, the prosecution history negates bad faith, which is relevant to damages, which are
22 not available unless Autodesk proves willful infringement.  *See Adray v. Adry-Mart, Inc.*, 76 F.3d
23 984, 988 (9th Cir. 1995), *Vallavista Corp. v. Amazon.com, Inc.*, 2008 WL 5210949, at *6 (N.D.
24 Cal. Dec. 11, 2008).  The fact that Autodesk had not applied to register "DWG" before
25 SolidWorks named its products is relevant to show that SolidWorks did not intend to cause

---

[5] Again, Autodesk did the very same thing before the PTO.  At some point, Autodesk should have to explain this contradiction.

consumer confusion or to copy Autodesk, because **no entity claimed "DWG" as a trademark.** *See One Industries, LLC v. Jim O'Neal Distributing, Inc.*, 578 F.3d 1154, 1163 (9th Cir. 2009) (stating that intent to confuse, while not necessary, is strong evidence of likelihood of confusion). This is true even if SolidWorks' good faith belief it was not infringing a valid mark was incorrect. Even a *knowing* use of a mark does not constitute bad faith if the user believes it will not cause confusion. *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993) (discussing cases).[6] Further, the fact that the PTO rejected Autodesk's applications–even if the rejections were non-final–supports a finding of non-willfulness. *Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*, 2005 WL 701599, *14 (N.D. Cal. 2005).

Third, the PTO considered **and rejected** the very same Jay survey submitted in this case. Autodesk was notified in the May 17, 2007 Office Action that the survey was flawed because it does not distinguish between DWG as a file format and DWG as an alleged trademark. Bos Dec. to MIL 2, Ex. 4. Autodesk did not correct that flaw in either the PTO or this case. Autodesk has now disavowed any rights to DWG as a file format. *See* Dkt. No. 195 at p. 7.[7]

Autodesk contends the PTO office actions should be excluded because they are non-final. SolidWorks is offering them, however, to show Autodesk's delay in trying to protect "DWG," a lack of intent to confuse or copy and non-willfulness by SolidWorks, and Autodesk's awareness of the flaws in the Jay survey—none of which is dependent on the action being final. Further, courts have ruled that non-final office actions are both admissible and persuasive. *See Closed Loop Marketing, Inc. v. Closed Loop Marketing, LLC*, 589 F.Supp.2d 1211, 1217-18 (E.D. Cal. 2008) (PTO's non-final office action refusing to register mark was relevant); (Roberts Dec., Ex. 17); *see*

---

[6] SolidWorks was unable to locate any authority discussing the relevant time frame with regard to good faith; based on *Sleekcraft*, it is logical to measure good faith at the time the allegedly infringing mark was first used in commerce.

[7] Even Autodesk recognizes the relevance of the PTO and TTAB proceedings, responding in an Interrogatory that it learned of third parties using "DWG" in product or company names during those proceedings. (Roberts Dec., Ex. 19 - Interrogatory Response No. 5.) Not only does this illustrate the relevance of these proceedings, but it also reveals that Autodesk was doing *nothing* to police use of "DWG" before that.

*also Nat'l Customer Engineering, Inc. v. Lockheed Martin Corp.*, 43 U.S.P.Q.2d 1036, 1039-40 (C.D. Cal. 1997) (same); (Roberts Dec. Ex. 18).

Autodesk's cited cases are distinguishable.  In *Everest Capital Ltd. v. Everest Funds Management, LLC*, 393 F.3d 755, 764 (8th Cir. 2005), the court ruled "[t]he Trademark Office suspension notice had little probative value because it stated a ***tentative opinion***, not an administrative finding of fact based upon an adequate record." *Id.* (emphasis added).  An office action, unlike a notice of suspension, is not tentative.  And even if SolidWorks seeks to introduce notices of suspension, this will be in the context of the entire record, which will prevent juror confusion.

Autodesk also cites patent reexamination cases.  The result of a patent reexamination proceeding may be prejudicial and improper because it may erroneously be viewed by the jury as militating against the patent's statutory presumption of validity.  35 U.S.C. § 282.  Here, however, Autodesk has no such presumption for an unregistered mark.  The jury should understand the history of its delayed and then failed attempts to register that mark.[8]

### D.  Autodesk is Proffering Evidence in its Own Case in Chief that Includes PTO Filings.

Finally, Autodesk's motion is inconsistent with its own proffered evidence in this case.  For example, Autodesk's Rule 30(b)(6) designee, Shawn Gilmour, testified that Autodesk petitioned to cancel a third party's "DWGcruiser" mark.  That petition for cancellation is on Autodesk's trial exhibit list.  In short, Autodesk seeks to be able to use PTO file histories and actions where they suit it, but not those that hurt its case.  There is simply no grounds for doing so.

### III.  CONCLUSION

For all the reasons stated above, SolidWorks respectfully requests that the Court deny this motion *in limine*.

---

[8]   Autodesk also argues that one office action is factually inaccurate.  If true, this goes to the weight, not admissibility.  Autodesk may introduce evidence to correct the claimed inaccuracy.

1 DATED: December 23, 2009      QUINN EMANUEL URQUHART OLIVER &
2                                                   HEDGES, LLP

                                                  By /s/
                                                       Claude M. Stern
                                                       Attorney for Defendant Dassault Systèmes
                                                       SolidWorks Corporation.