QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Claude M. Stern (Bar No. 96737)
  Evette D. Pennypacker (Bar No. 203515)
  Andrea Pallios Roberts (Bar No. 228128)
  Zachary M. Fabish (Bar No. 247535)
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California  94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

Attorneys for Defendant Dassault Systèmes SolidWorks Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>      vs.<br><br>DASSAULT SYSTÈMES SOLIDWORKS CORPORATION, a Delaware corporation,<br><br>              Defendant. | CASE NO. 3:08-cv-04397-WHA<br><br>**DEFENDANT SOLIDWORKS' RESPONSE TO PLAINTIFF AUTODESK INC.'S MOTION IN LIMINE # 3 TO EXCLUDE EVIDENCE OR ARGUMENT THAT AUTODESK IS A PURPORTED MONOPOLIST OR RELATING ANTITRUST ISSUES** |

**Issue to be decided:  Whether Defendant SolidWorks can refer to Plaintiff Autodesk's market share and as a monopolist, as well as the FTC/Autodesk settlement agreement.**

## I. PRELIMINARY STATEMENT OF RELEVANT FACTS

Autodesk is seeking by this motion *in limine* to force SolidWorks to defend itself with one arm tied behind its back. The Court should deny the motion because Autodesk's overwhelming dominance in the CAD field is a highly relevant fact to support SolidWorks' defenses relating to DWG's purported secondary meaning survey, nominative fair use, and to put SolidWorks' marketing statements into context.

In addition, the FTC/Autodesk consent decree is relevant to show Autodesk's continued use of its monopoly power to stifle competition. A brief summary of the facts puts Autodesk's action of bringing this lawsuit and SolidWorks' unclean hands affirmative defense into context: Autodesk publishes AutoCAD, a CAD program employed by the overwhelming majority of all 2D CAD users. The widespread use of this program over the past two decades has ensured that, in the overall market for 2D CAD software, Autodesk is by far the most dominant player. Millions of valuable 2D CAD drawings exist and are saved in Autodesk's version of the DWG file format.

Today, as well as in the past, a key hurdle for potential Autodesk competitors is compatibility and transferability with AutoCAD and Autodesk's version of the DWG file format. Yet, Autodesk has sought to use its monopoly on the market to erect barriers and stifle any potential challenger to its position.

The FTC action that makes-up this motion *in limine* from the mid-1990's is one such example. The action came about because Autodesk sought to acquire a company by the name of Softdesk, whose product, IntelliCADD, offered (and still to this day offers) users file compatibility and transferability with AutoCAD—which was a first for the industry. (*See* Bos Decl. ISO MIL #3, Ex. 3 at 26.) The FTC intervened because it believed that the acquisition would have substantially lessened competition in the development and sale of CAD software engines since Autodesk controlled "nearly 70% of the market" at the time, and IntelliCADD "would have provided substantial direct competition to AutoCAD." (*Id.*) As a result, the consent agreement between the FTC and AutoCAD barred Autodesk from reacquiring IntelliCADD or any entity that owned or controlled the technology without prior notice to the FTC for ten years. (*Id.*)

1    During that ten year period, the evidence at trial will show that Autodesk did virtually
2 nothing to protect DWG or interfere with companies who provided interoperability with
3 AutoCAD despite Autodesk's explicit knowledge.  Almost immediately after the ten-year period
4 elapsed, the gloves came off and Autodesk filed this suit, attempting to use its now 71% market
5 share to stifle competition and erect barriers to entry.  (*See* Ex. 22.[1])

6    The key hurdle today for designers contemplating making the move to a 3D CAD product,
7 such as SolidWorks' 3D software, is what to do with their legacy of 2D drawings.  The vast
8 majority of potential 3D CAD customers have, over the years, amassed individual libraries of 2D
9 drawings, often saved in the DWG format, created using the dominant AutoCAD software from
10 Autodesk or other products that also use the DWG format.  These libraries are extremely valuable,
11 and if designers cannot reliably port their 2D drawings into a 3D CAD software environment, they
12 are much less likely to be able to make the transition to 3D CAD software.

13    SolidWorks and other CAD software companies have developed software applications to
14 help designers manage, manipulate, translate, and share their legacy DWG and AutoCAD-
15 produced files—four of which by SolidWorks are being specifically attacked by Autodesk in this
16 action.  The intent of these offerings is to make it easier for those designers to both break the hold
17 imposed by Autodesk via its control of the DWG file format it uses in its dominant AutoCAD
18 product, as well as helping ease the switch for these designers from 2D to 3D CAD without losing
19 the ability to make use of their valuable legacy libraries.  Like before, compatibility and
20 transferability with AutoCAD is still necessary to be an effective competitor in this market.

21    Autodesk is using this lawsuit to "reclaim"—the word used by Autodesk in internal
22 documents—DWG, a generic term to describe a file format used by thousands of people
23 throughout the world.  Autodesk's attempts to reclaim "DWG" from the public domain threatens
24 an incipient violation of the antitrust laws because, similar to the FTC's concern a decade prior,
25 such "reclaiming" would substantially lessen competition since so many companies and users
26 have come to rely on the DWG file format for their products and drawing files.  A successful

---

[1] Unless otherwise indicated, all simple exhibit citations are to the Declaration of Andrea
28 Pallios Roberts submitted in support of SolidWorks' Oppositions to Autodesk's MILs 1-5.

1  Autodesk in this suit will likely cause a severe disruption in the CAD industry, restrict
2  interoperability between software applications and operating systems, increase software costs, and
3  diminish competition.  (*See* Ex. 20 at 18-19 [CAD industry expert Joel N. Orr, Ph.D].)
4       Finally, Judge Alsup's recent order permitting the functional use of DWG is no help
5  because Autodesk has since taken the position that it still has the right to stop competitors from
6  using the letters DWG to refer to a file format that Autodesk contends is not compatible with the
7  AutoCAD DWG file format.
8       Autodesk's motion *in limine* must be denied.

## II. ARGUMENT

10       In order for a piece of evidence to be relevant, it must only have "any tendency to make the
11  existence of any fact that is of consequence to the determination of the action more probable or
12  less probable."  Fed. R. Evid. 401.  The Supreme Court has noted that this standard is a "liberal
13  one."  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993).

### A. SolidWorks Must Be Permitted to Refer to Autodesk's Position In the CAD Industry

16       As this Court has recently seen in Autodesk's summary judgment papers, and will see as a
17  consistent theme throughout trial, Autodesk accuses SolidWorks of having a single minded
18  obsession with taking Autodesk down, attacking it, and desiring to kill it.  (*See* Autodesk's
19  Opposition to SolidWorks' Motion for Summary Judgment, Dkt. No. 175 at 1.)  Autodesk's
20  motion *in limine* seeks to ensure that the jury is presented with this one-sided and distorted view of
21  how SolidWorks seeks to compete with Autodesk in the market place.  However, it cannot be
22  disputed that Autodesk is the number one CAD software provider who enjoys 71% of the 2D
23  CAD market.  (*See* Ex. 22.[2])  Autodesk itself recognizes its dominance in the CAD market.  (*See*
24  *e.g.,* Ex. 12 to the Bos Decl. ISO Autodesk's Motion In Limine No. 2 at 2 "[Autodesk's]
25  customers include 100 percent of *Fortune 100* companies and approximately 98 percent of

---

[2] While Autodesk protests the accuracy of the 71% market share numbering its motion *in limine*, the statistic is provided by an independent third party survey and was produced by Autodesk through discovery.

1  *Fortune* 500 companies".) Of course SolidWorks intends to compete against the market leader for
2  customers. Thus, without the ability to put SolidWorks' marketing personnel's statements in the
3  context of Autodesk's overwhelming dominate position in the CAD market, SolidWorks will be
4  greatly prejudiced. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170-71 (1988) (remanding
5  a case because the failure to read an entire statement in context could mislead the jury).

6  Second, Autodesk accuses SolidWorks of overusing DWG and Autodesk's AutoCAD
7  mark on its website. (*See* First Amended Complaint, Dkt. No. 37 at 11-13.) Yet, it is precisely
8  because of Autodesk's 71% share of the market as the de facto 2D standard that, *inter alia*,
9  SolidWorks can take the benefit of its affirmative defense of nominative fair use when referring to
10 how its products work. *See New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302, 308
11 (9th Cir. 1992)(one of the elements of nominative fair use is where "the product or service in
12 question must be one not readily identifiable without use of the trademark").

13 Third, Autodesk intends to submit a secondary meaning survey for DWG conducted by E.
14 Deborah Jay. SolidWorks contends that the survey is nothing more than a popularity contest
15 whereby the respondents simply identified the market leader when asked who they associated with
16 the letter string, "DWG." SolidWorks would be greatly prejudiced if it is precluded from arguing
17 to the jury why the survey should not be given any weight. *See Eastern Air Lines, Inc. v. New*
18 *York Air Lines, Inc.*, 559 F.Supp. 1270, 1275 (S.D.N.Y. 1983) (all survey shows is that
19 respondents identified the best known producer of product).

20 Finally, the cases upon which Autodesk relies are distinguishable or irrelevant.
21 *Ticketmaster Corp. v. Tickets.Com,* 2003 WL 2139770 (C.D. Cal. 2003) did not involve motions
22 *in limine*, and is further distinguishable because Autodesk has the power to severely disrupt the
23 market if it prevails in this action by usurping the use of DWG (*see infra.*). Both *Jamesbury Corp.*
24 *v. Litton Indus. Prods., Inc.* 756 F.2d 1556, 1559 (Fed. Cir. 1985) and *Carl Schenk, A.G. v.*
25 *Nortron Corp.*, 713 F.2d 782, 784 (Fed. Cir. 1983) are patent cases where the court in *Jamesbury*
26 found fault with a jury instruction and counsel's statements about a patentee's monopoly because
27 the patent laws did not contain such language, and where the court in *Carl Schenk* stated that there
28 was no evidence in the record to support the monopolist statement. Both situations are not present

here.  Finally, *S.H. Leggitt Co. v. Fairview Fittings & Mfg.*, 2005 WL 6003549 (W.D. Mich. 2005), contains no discussion of the facts and legal issues involved in the case, and because of that, the decision should be ignored.  Autodesk has not cited a single trademark case with similar facts to support its position.

**B.      The FTC/Autodesk Settlement Agreement is Relevant Evidence of Autodesk's Motive, Intent and Design to Monopolize the CAD Market**

The admission of prior instances of anticompetitive behavior "requires a balancing of probative value against prejudicial impact."  *Greyhound Computer corp., Inc. v. IBM Corp.*, 559 F.2d 488, 508 (9th Cir. 1977); *see also Sullivan v. Nat'l Football League*, 34 F.3d 1091, 1113 (1st Cir. 1994)(prior judgments must have a direct, logical relationship to the conduct at issue in the present case).  Evidence of prior anticompetitive conduct can be used to "to show things like market power, intent to monopolize, motive, or method of conspiracy." *Id.* at 1113.

The FTC consent decree here deals specifically with Autodesk's market power in the CAD field, as well as its continued motive, intent and design to use its dominant position in the 2D CAD market to prevent users from migrating from 2D to 3D CAD.

The prior conduct by Autodesk the FTC found objectionable was Autodesk's attempt to acquire one of the only CAD companies that could provide substantial and direct competition to Autodesk's AutoCAD because that company's product, IntelliCADD, offered compatibility and transferability with AutoCAD's DWG files.  (*See* Bos Decl. ISO MIL #3, Ex. 3 at 26.)  The FTC's suit dealt with some of the same issues relevant to this case:

> The large installed base of AutoCAD users [nearly 70%] necessitates that any new CAD engine developed and offered in the market offer file compatibility and transferability with AutoCAD in order to be an effective competitor, the complaint alleges.  Users of many users must share files they create with others who must be able to read and edit those files using their CAD software.  This situation creates barriers to entry to CAD engines that cannot read AutoCAD files without losing data or information.

(*Id.* at 27.)  Autodesk agreed as part of the settlement that it would not attempt to re-acquire the InteliCADD technology or any entity that owns or controls it, without prior notice to the Commission, for a ten year period.  (*Id.*)

1   Fast forward ten years, after Autodesk recently lost its attempt to register DWG at the PTO
2   and after the mandated waiting period imposed by the settlement (SolidWorks submits this was no
3   coincidence), and Autodesk has refocused its dominant position in the CAD industry to raise
4   barriers to entry by bringing this lawsuit to "reclaim" DWG, a generic term to describe a file
5   format used by thousands of people throughout the world.  As is more fully explained in
6   SolidWorks' Response to Autodesk Interrogatory No. 10 (*see* Ex. 21), SolidWorks asserts as its
7   unclean hands affirmative defense that Autodesk has engaged in conduct that threatens an
8   incipient violation of the antitrust laws.  Autodesk's attempts to reclaim generic "DWG" from the
9   public domain, after decades of knowingly letting it proliferate throughout the CAD industry, are
10  comparable to the conduct the FTC found objectionable, and significantly threaten or harm
11  competition for the following reasons.

12  Millions of valuable 2D CAD drawings exist; many saved in the DWG format.  With
13  Autodesk's full knowledge, SolidWorks and other CAD software companies have developed
14  software applications to help designers manage, manipulate, translate, and share their legacy
15  DWG and AutoCAD-produced files.  If Autodesk can use this lawsuit to prevent competitors from
16  conveying to customers that they can use their legacy DWG files in programs other than
17  Autodesk's, Autodesk can further extend its monopoly power and eliminate competition,
18  including by reserving to itself programs that translate its dominant AutoCAD 2D DWG files into
19  3D or which allow forwards or backwards compatibility with its DWG files, with which no
20  competitor can compete.  Further, Autodesk's successful attempt to "reclaim" DWG will likely
21  cause a severe disruption in the CAD industry, restrict interoperability between software
22  applications and operating systems, increase software costs, and diminish competition.  (See Ex.
23  20 at 18-19.)  Thus, the FTC complaint is highly relevant to Autodesk's continued intent to
24  monopolize and SolidWorks' affirmative defense of unclean hands.

25  Judge Alsup's recent order holding that Autodesk has disavowed the right to limit third
26  party use of DWG as a file format does not change matters.  Autodesk has since informed
27  SolidWorks that Autodesk does not read Judge Alsup's order to mean what it says.  In particular,
28  Autodesk now contends that it only disavowed the right to prevent third parties from using or

creating a .dwg file format that was compatible with AutoCAD's .dwg file format. It insists it still has the right to stop competitors from using the letters DWG to refer to a file format that Autodesk contends is not compatible with AutoCAD .dwg file format.

We all see where this is heading. Despite Judge Alsup's clear order, Autodesk will sue competitors who use the DWG file format if Autodesk contends the compatibility of that format does not meet Autodesk's unilateral compatibility standards. This invariably means that Autodesk will use the trademark laws to sue and seek injunctions against competitors, like the Open Design Alliance (ODA), that provide an alternative DWG file format, arguing that the ODA's OpenDWG DWG file format infringes Autodesk's trademarks. This will result in Autodesk being able to shut down alternative DWG file formats, precisely the result that the FTC/Autodesk settlement agreement was guarding against.

Autodesk's cases are again distinguishable. In both *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1246 (3rd Cir. 1963) and *Int'l Shoe Mach. Corp. v. United Shoe Mach. Corp.*, 315 F.2d 449 (1st Cir. 1963), the *plaintiffs* sought to introduce prior anticompetitive decrees in its case in chief against the defendants for *alleged violations* of the Clayton and Sherman Acts. Here, on the other hand, plaintiff Autodesk is not being sued for anticompetitive conduct, and defendant SolidWorks needs this information to defend itself against Autodesk's continued overreaching. Thus, the potential prejudice that may result from introducing prior anticompetitive conduct against a defendant in an antitrust suit is not a concern in this case.

## III. CONCLUSION

In light of the above, SolidWorks respectfully requests that the Court deny Autodesk's motion *in limine* #3.

DATED: December 22, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By    /s/
     Claude M. Stern
     Attorneys for Defendant Dassault Systèmes
     SolidWorks Corporation.