QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Claude M. Stern (Bar No. 96737)
  Evette D. Pennypacker (Bar No. 203515)
  Andrea Pallios Roberts (Bar No. 228128)
  Zachary M. Fabish (Bar No. 247535)
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California  94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

Attorneys for Defendant Dassault Systèmes SolidWorks Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation, | CASE NO. 3:08-cv-04397-WHA |
| Plaintiff, | **DEFENDANT SOLIDWORKS' OPPOSITION TO PLAINTIFF AUTODESK'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING POST-2005 AND FOREIGN USE OF "DWG"** |
| vs. | |
| DASSAULT SYSTÈMES SOLIDWORKS CORPORATION, a Delaware corporation, | |
| Defendant. | |

**Issues to be decided: Whether post-2005 and "foreign" usage of DWG is relevant and admissible.**

## I. PRELIMINARY STATEMENT OF RELEVANT FACTS

Autodesk's motion *in limine* to exclude evidence of post-2005 and foreign use of DWG strikes at straw men. The motion first argues that evidence of post-2005 use of DWG is irrelevant to one issue and thus entirely irrelevant. But that argument should be rejected, as evidence of post-2005 use of DWG is relevant to several of the issues that must be decided here. The motion then argues that evidence regarding foreign use of DWG is irrelevant to public perception of the term in the United States. But that argument should also be rejected, as the "foreign" websites that Autodesk's references are English-language websites accessible to web users in the United States and therefore relevant to public perception in the United States.  Indeed, the Internet sites at issue in both of Autodesk's requests are highly probative of material issues in this case: This is, after all, an Internet source confusion case.

## II. ARGUMENT

### A. Evidence of Post-2005 Third-Party Usage of DWG in Company or Product Names Is Relevant

Autodesk's motion notes that a crucial date for determining the distinctiveness of DWG is the date on which SolidWorks' DWGseries tools entered the market. That is true.[1] But it is not dispositive of the question whether post-2005 third-party usage of DWG is relevant to the claims to be tried. Evidence that is irrelevant to one issue may be relevant to others.  *See* Fed. R. Evid. 401 (stating that evidence is relevant if it makes the existence of "*any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence*" (emphasis added)). Here, evidence of post-2005 third-party usage of DWG is relevant to (1) whether consumers are likely to be confused by SolidWorks' use of DWG and  (2) whether

---

[1]   The date SolidWorks introduced its DWGseries tools is crucial because if Autodesk did not own a protectable DWG mark on that date its claim necessarily fails.  *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) ("It is axiomatic in trademark law that the standard test of ownership is priority of use."); *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 799, 804 (9th Cir. 1970) (affirming judgment "in all respects" when district court concluded that marks were "not protectable as trademarks since there was no proof of secondary meaning prior to" the defendant's use).

Autodesk has lost any protectable trademark interest in DWG subsequent to SolidWorks' introduction of its DWGseries tools.

### 1. Evidence of Post-2005 Third-Party Usage of DWG Is Relevant To Whether Consumers Are Likely to Be Confused By SolidWorks' Use of DWG

*First*, it is well-established that third-party usage weakens a mark and is thus relevant to determining whether an alleged infringer's use is likely to cause confusion. As the Ninth Circuit has noted, that "the marketplace is replete with products using a particular trademarked word indicates . . . the likelihood that consumers will *not* be confused by its use." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1143-44 (9th Cir. 2002); *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1164 (9th Cir. 2009).

This makes sense, as the "overall market context" in which an allegedly infringing mark is being used influences prospective customers and thus also influences whether they will be confused by use of the allegedly infringing mark. *See, e.g.*, Restatement (Third) of Unfair Competition § 21 (1995) ("Whether the use of a particular designation causes a likelihood of confusion must be evaluated in light of the overall market context in which the designation is used."); 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:83 (4th ed. 2006) (noting trademarks are evaluated in terms of "the marketplace strength of the mark at the time of litigation"); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, (9th Cir. 2000) (noting trademarks are evaluated in terms of "commercial strength" ); *Nat'l Cable Television Ass'n, Inc. v. Am. Cinema Editors, Inc.*, 937 F.2d 1572, 1579 (Fed. Cir. 1991) (noting that trademarks are evaluated in relation to "what happens in a real world setting").

Because the overall market context in which a mark is being used is relevant to whether confusion is likely, evidence of concurrent third-party usage is admissible and relevant to show that confusion is unlikely. *See* 2 McCarthy, *supra*, § 11:88 ("Evidence of third party use of similar marks on similar goods is admissible and relevant to show that the mark is relatively weak and entitled to only a narrow scope of protection."). Indeed, Ninth Circuit district courts routinely admit evidence of concurrent third-party usage to determine whether an alleged infringer's use is likely to cause confusion. *See, e.g.*, *PostX Corp. v. The docSpace Co.*, 80 F. Supp. 2d 1056, 1061

(N.D. Cal. 1999) (finding that the mark was weak because of extensive, concurrent third-party use and that confusion was therefore unlikely); *Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1225 (C.D. Cal. 2004) (same); *Matrix Motor Co., Inc. v. Toyota Jidosha Kabuskiki Kaisha*, 290 F. Supp. 2d 1083, 1091 (C.D. Cal. 2003) (same). And the Ninth Circuit has blessed this practice. In *M2 Software, Inc. v. Madacy Entertainment*, the Ninth Circuit held that a district court properly admitted evidence of "existing third party marks" offered by the defendant to demonstrate that confusion was unlikely. 421 F.3d 1073, 1087-88 (9th Cir. 2005) (noting that "[u]se of similar marks by third-party companies in the relevant industry weakens the mark at issue").

Accordingly, it is beyond dispute that concurrent third-party usage of DWG is relevant and admissible to determine whether confusion is likely, and Autodesk's motion to exclude such evidence therefore should be denied.

### 2. Evidence of Post-2005 Third-Party Use of DWG Is Also Relevant to Whether DWG Remains Protectable

*Second*, it is also well established that a distinctive mark can be rendered generic by a change in consumer's perception of it. Indeed, "[i]t matters not whether the mark was descriptive or generic when the plaintiff adopted it, or was originally a valid trademark. If the word subsequently acquired a new significance, its original meaning is no longer of any importance." 3 Louis Altman & Malla Pollack, *Callmann on Unfair Competition, Trademark & Monopoly* § 18:27 (4th ed.); 2 McCarthy, *supra*, § 12:17.50 (noting that a mark's distinctiveness is not "fixed forever thereafter, regardless of changes in customer perception"); *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 905 (9th Cir. 2007) ("Where the majority of the relevant public appropriates a trademark term as the name of a product (or service), the mark is a victim of 'genericide' and trademark rights generally cease.").

Because a distinctive mark can be rendered generic by a change in consumer's perception of it, current third-party usage of DWG is relevant to whether DWG is currently protectable. *See* 3 Altman & Pollack, *supra*, § 18:27 (noting that "genericness or descriptiveness of the mark at the

time of the trial is the decisive factor upon which the decision should be based"); 2 McCarthy, *surpa*, § 12:17.50 (noting that the distinctiveness of a term should be tested at "the date of trial").

Accordingly, it is beyond dispute that concurrent third-party usage of DWG is relevant and admissible to determine whether DWG remains protectabla, and Autodesk's motion to exclude such evidence therefore should be denied.[2]

### B. Evidence of "Foreign" Websites Use of DWG is Relevant to Public Perception in the United States

Autodesk's motion asserts that evidence of "foreign" use of DWG is irrelevant to determining public perception in the United States. That is not true, of course, when the assertedly "foreign" use is an English-language website accessible to web users in the United States. Here, the evidence Autodesk seeks to exclude is accessible to the relevant public and is therefore relevant to their perception of DWG.

#### 1. Autodesk Cite No Authority for the Proposition that English-Language Websites Accessible to Web Users in the United States Are Irrelevant to The Public's Perception of DWG, and the Authorities Are Overwhelmingly to the Contrary

*First*, Autodesk cites no authority in support of its motion to exclude evidence of English-language websites which are accessible to web users in the United States.[3] Nor could it. The authorities are overwhelmingly to the contrary. *See Trademark Manual of Examination Procedures*, § 710.01(b) (6th ed. 2009) ("As long as it is written in the English language, information originating on foreign websites or in foreign news publications that are accessible to

---

[2] *Arguendo,* if the Court excludes evidence of post-2005 third-party usage of DWG as irrelevant to the issues to be decided in this case, SolidWorks respectfully requests that the order be extended to exclude all evidence of post-2005 usage of DWG. If post-2005 third-party usage of DWG is irrelevant, so is post-2005 Autodesk usage of DWG.

[3] In fact, the decisions Autodesk cites in support of its motion are entirely inapposite. Not one references the Internet or discusses websites that are globally available to Internet users, and several of the decisions pre-date widespread availability of the Internet. *See, e.g.*, *Carcione v. The Greengrocer, Inc.*, 205 U.S.P.Q 1075 (E.D. Cal. 1979); *Seiko Sporting Goods USA, Inc. v. Kabushiki Kaisha Hattori Tokeiten*, 545 F. Supp. 221 (S.D.N.Y. 1982); *Anheuser-Busch Inc. v. Stroh Brewery Co.*, 750 F.2d 631 (8th Cir. 1984).

the United States public may be relevant to discern United States consumer impression of a proposed mark."); *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 969 (Fed. Cir. 2007) ("Information originating on foreign websites or in foreign news publications that are accessible to the United States public may be relevant to discern United States consumer impression of a proposed mark."); *In re Remacle*, 2002 WL 31563187, at *2 n.5 (TTAB 2002) (Board found that professionals in certain fields, such as medicine, engineering, computers and telecommunications would be likely to monitor developments in their fields without regard to national boundaries, and that the internet facilitates such distribution of knowledge, so evidence from an English language website in Great Britain held admissible); *In re Cell Therapeutics, Inc.*, 2003 WL 21979838, *3-4 (TTAB 2003); *In re Telechat Network, Inc.*, 2006 WL 1404223, *2-3 (TTAB 2006); *In re Sourcefire, Inc.*, 2008 WL 4803895, *1, n.1  (TTAB 2008).

Accordingly, it is beyond dispute that the evidence Autodesk seeks to exclude is relevant to the claims of this case, and Autodesk's motion to exclude such evidence therefore should be denied.

**2. Autodesk's Assertions Regarding the Extent of Circulation of the Internet Sites in Issue Go to Weight, Not Admissibility**

*Second*, Autodesk's assertions regarding the extent of circulation of the Internet sites in issue is misdirected. SolidWorks does not argue that these Internet sites alone establish that DWG is a generic or weak term.  SolidWorks does argue, however, that these Internet sites are probative of the issues: This is an Internet source confusion case, and the websites Autodesk's seeks to exclude are English-language Internet sites, readily available to Internet users everywhere. They indicate that DWG is being used extensively by third parties.  Indeed, their probative value is readily apparent when they are viewed.  (*See* Roberts Decl., Exs. 23-25.)

Further, any argument regarding the extent of circulation of these Internet sites goes to the weight, not their admissibility.   In *Bayer*, for instance, the Federal Circuit held that evidence which originated in foreign publications was of "some probative value with respect to prospective consumer perception in the United States," noting "the growing availability and use of the internet as a resource for news, medical research results, and general medical information." 488 F.3d at

969. Here, similarly, Autodesk can attempt to minimize the probative weight of these Internet sites, but that are of some probative value is certain.

### III. CONCLUSION

For the reasons stated above, SolidWorks respectfully requests that the Court deny Autodesk's motion *in limine* to preclude evidence of post-2005 and foreign use of DWG.

DATED: December 22, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/
Claude M. Stern
Attorneys for Defendant Dassault Systèmes SolidWorks Corporation.