QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Claude M. Stern (Bar No. 96737)
  Evette D. Pennypacker (Bar No. 203515)
  Andrea Pallios Roberts (Bar No. 228128)
  Zachary M. Fabish (Bar No. 247535)
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California  94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

Attorneys for Defendant Dassault Systèmes
SolidWorks Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| AUTODESK, INC., | CASE NO. 3:08-cv-04397-WHA |
|---|---|
| Plaintiff, | |
| vs. | **DEFENDANT SOLIDWORKS' MOTION *IN LIMINE* 1 TO EXCLUDE TESTIMONY AND ALL OTHER EVIDENCE AND ARGUMENT BY PLAINTIFF AUTODESK, INC. CONCERNING INSTANCES OF ACTUAL CONSUMER CONFUSION** |
| DASSAULT SYSTÈMES SOLIDWORKS CORPORATION | |
| Defendant. | |

**Issue to be addressed: Exclusion of testimony and all other evidence and argument by Autodesk concerning instances of actual confusion.**

Defendant Dassault Systèmes SolidWorks Corporation ("SolidWorks"), hereby moves *in limine* for an order excluding testimony and all other evidence and argument by Plaintiff Autodesk, Inc. ("Autodesk") concerning instances of actual consumer confusion, as Autodesk has thus far failed to identify any such relevant instances, and as such instances as have been identified are inadmissible hearsay under Federal Rules of Evidence 801-802, irrelevant and have no bearing on any issues remaining in this lawsuit, and would be prejudicial to SolidWorks and/or a waste of the jury's time under Federal Rules of Evidence 401-403.  This motion *in limine* is supported by the Declaration of Maureen Pettibone Ryan, filed herewith.

## I. PRELIMINARY STATEMENT OF RELEVANT FACTS

Through this motion SolidWorks respectfully requests that the court exclude from trial any evidence—testimonial, documentary, or otherwise—or any argument by Autodesk regarding any instances of actual consumer confusion regarding any of the marks at issue in this action. Autodesk witnesses—including its topical 30(b)(6) witness—have testified that they are unaware of any relevant instances of actual consumer confusion stemming from SolidWorks alleged activities. In addition, despite the fact that SolidWorks propounded an interrogatory specifically seeking identification of instances of actual consumer confusion, Autodesk failed—in either its initial responses or *seven* subsequent supplemental responses—to identify a single relevant instance of actual consumer confusion. As such, Autodesk should be precluded from seeking to introduce any such evidence now.

## II. ARGUMENT

### A. Because Autodesk's Witnesses Universally Testified that they were Unaware of Any Instances of Actual Consumer Confusion, Autodesk Should Be Precluded from Introducing Such Evidence Now

Every Autodesk witness deposed by SolidWorks, when asked whether they were aware of any instances of actual consumer confusion concerning the marks at issue in this action and the actions of SolidWorks, testified that they were unaware of any such instances. Most importantly, however, both of the 30(b)(6) witnesses offered by Autodesk on topics relevant to the question[1] testified that they did not have any knowledge of instances of actual consumer confusion. For example, in response to the question "[d]o you know of any situation where an Autodesk customer came to the conclusion that a product that was offered by SolidWorks was sourced, endorsed,

---

[1] *See* Ryan Decl. Ex. 2, Bradshaw Depo. 16:13-14 (noting that Bradshaw was designated "to testify on the marketing of DWG"); Ryan Decl. Ex. 4, Gilmour Depo. 33:15-35:3 (noting that Gilmour was designated to testify as a witness on topics 1-4 of SolidWorks' 30(b)(6) Deposition Notice); Ryan Decl. Ex. 4, Gilmour Depo. Ex. 1001, SolidWorks' 30(b)(6) Deposition Notice at 3-4 (showing that topics 1-4 concern, in pertinent part, Autodesk's use of DWG, SolidWorks' use of DWG, compatibility between SolidWorks' DWGseries products with AutoCAD, and instances of actual consumer confusion stemming from the DWGseries web pages).

affiliated or in any other way connected to Autodesk?," Autodesk 30(b)(6) witness Christopher Bradshaw responded simply "I don't." Ryan Decl. Ex. 2, Bradshaw Depo. 232:10-16. Likewise, although Autodesk's 30(b)(6) witness Shawn Brady Gilmour stated that he thought there might be four or five individuals that were confused, this was merely an inference based on his testimony that those four or five individuals contacted Autodesk concerning issues with Autodesk and SolidWorks products—not instances of actual consumer confusion. *See* Ryan Decl. Ex. 4, Gilmour Depo. 128:24-129:15.[2] Instead, he testified that he was ultimately unaware of whether any actual instances of consumer confusion existed:

> Q: Are you aware of any person or company that has told Autodesk that they acquired any of the DWG Series products believing that those products were published by Autodesk?"
>
> A: Yes. I'm not going to change my answer. There's product support logs showed that that person thought the product came from Autodesk because they came to us for help.
>
> Q: **But did those people tell Autodesk we believe you sold us or gave us this product?**
>
> A: **No, they did not.**
>
> Q: Ah. **Do you know any person who actually made that statement, namely, we believe you, Autodesk, gave us this product?**
>
> A: **No, I do not.**

*Id.* at 132:18-133:7 (emphasis added).

Nor was the testimony of Bradshaw and Gilmour in error; numerous other witnesses confirmed Autodesk's lack of knowledge as to any instances of actual consumer confusion. For example, Dominique Hanssens, Autodesk's expert retained to opine on the marketing of both Autodesk and SolidWorks' products, answered "No" in response to the question "Have you seen any evidence other than the Jay or Ford surveys concerning the extent to which anyone who went

---

[2] Not only is this particular piece of testimony a speculative inference (*see id.* at 146:1-20, explaining that Gilmour's inference depended on information that Autodesk did not possess as to whether the four or five individuals had also contacted SolidWorks), it is inadmissible hearsay, in that Gilmour was merely testifying as to what he thought others had said in contacting Autodesk. *See* FED. R. EVID. 802.

1  on the DWG Gateway or DWG Editor or DWG Viewer websites thought they were on an
2  Autodesk website?"  Ryan Decl. Ex. 6, Hanssens Depo. 156:2-14.[3]  Percipient witnesses testified
3  identically: "Q: [W]ere you given any evidence or did you know of any evidence on your own of
4  an actual consumer being confused by what SolidWorks was doing? . . . A: No" (Ryan Decl. Ex.
5  3, Farrell Depo. 43:20-44:1); "Q: And you're not aware through your work at Autodesk, hearing
6  through the grapevine by the water cooler, of anybody ever being confused by SolidWorks DWG
7  series Web pages, are you? A: I don't think I've heard of people being confused by the Web site"
8  (Ryan Decl. Ex. 5, Ginty Depo. 223:20-25);[4] "Q: And do you have any knowledge of any user
9  being confused by SolidWorks' use of the term 'DWG' in its product names? A: I don't have any
10 direct knowledge. Q: Do you have any indirect knowledge? A: No" (Ryan Decl. Ex. 7, Hurley
11 Depo. 282:15-24); "Q: Did you ever hear—did you ever recall hearing from anybody in the
12 organization—and when I say hearing, seeing a document, hearing through the spoken word, in
13 any way getting information indicating that Autodesk customers are confused about what
14 SolidWorks offers—offers and vice versa? A: I don't recall that."(Ryan Decl. Ex. 9, Reilly Depo.
15 179:6-16).

16       Accordingly, because Autodesk and its witnesses have repeatedly testified as to the
17 absence of instances of actual consumer confusion, Autodesk should be precluded from
18 prejudicing SolidWorks and these proceedings by raising such evidence—should it exist—in the
19 first instance now, long after the close of discovery.  *See VNUS Medical Technologies, Inc. v.*
20 *Diomed Holdings, Inc.*, No. C-05-2972 MMC, 2007 WL 3096586, at *2 (N.D. Cal. Oct. 22, 2007)
21 (new evidence and theories could not be admitted where a 30(b)(6) witness was questioned but
22 "did not provide any opinion on the issue" at deposition); *see also* Supplemental Order to Order
23 Setting Case Management Conference, Docket No. 11, ¶ 23(c) (noting that if an organization fails

---

[3] Tellingly, Professor Hanssens further noted "I don't testify that there has been confusion.  I explain why there could have been confusion."  Ryan Decl. Ex. 6 at 163:13-15.

[4] Similarly: "Q: And are you aware of any customer being confused by SolidWorks use of the letters DWG in the names of some of its products like DWGnavigator, DWGgateway? A: I don't know. Q: You don't have any knowledge of that? A: No." Ryan Decl. Ex. 5 at 278:18-24.

to produce a 30(b)(6) witness knowledgeable about a topic, "the organization may not present case-in-chief evidence at trial or summary judgment on that topic from any witness . . . .").[5]

### B. Autodesk's Failure to Identify Any Relevant Instances of Actual Consumer Confusion in Response to an Interrogatory Precludes It From Offering Such Evidence Now

SolidWorks propounded an interrogatory seeking identification of "every instance of actual consumer confusion between any action on the part of SolidWorks and [Autodesk's] claimed trademarks and/or trade dress." Ryan Decl. Ex. 12 at 2 (Autodesk's Supplemental Interrogatory Responses, including Shawn Gilmour Verification). Despite serving an initial response and *seven* supplemental responses to this set of interrogatories, Autodesk has failed to identify even a single relevant instance of actual consumer confusion. The great bulk of the materials identified consist of entirely irrelevant documents: Autodesk's likelihood of confusion survey materials,[6] materials appearing to be survey responses by AutoCAD LT to questions about how to improve AutoCAD LT, unrelated email threads, and some of Autodesk's secondary meaning survey materials, among other documents. This material is at best irrelevant—the materials related to the likelihood of confusion and secondary meaning do not concern *actual* confusion, and the other documents do not suggest or reference confusion at all—and is moreover hearsay, consisting of survey responses and email threads. *See* FED. R. EVID. 402, 802. Accordingly, it should be excluded from trial as concerns the issue of actual confusion.

However, even the small minority of identified materials most relevant to the issue of evidence of instances of actual consumer confusion fail to rise to the level of materials admissible

---

[5] Indeed, Autodesk does not appear to identify a single allegedly misled or confused person in its list of trial witnesses. *See* Ryan Decl. Ex. 11, Autodesk's Federal Rule of Civil Procedure 26(a)(3) Disclosure.

[6] SolidWorks of course notes that such survey evidence may generally speaking provide proof of likelihood of confusion in the trademark or trade dress context, as can evidence of instances of actual confusion; however, courts in the Ninth Circuit recognize that these are nonetheless different types of proof. *See Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1404 n.14 (9th Cir. 1997) (noting the distinction between "evidence of actual confusion" and "survey evidence" as proof of likelihood of confusion); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1040 (C.D. Cal. 1998) (same).

for trial.  For example, in Autodesk's Third Supplemental Interrogatory Responses (Ryan Decl. Ex. 13 at 2 (Autodesk's Third Supplemental Interrogatory Responses, including Shawn Gilmour Verification)), Autodesk points to a thread in an Autodesk user group where an individual seeks information concerning DWGgateway and AutoCAD.  Ryan Decl. Ex. 15, SW0001637-38.  However, in this thread, the consumer plainly refers to "**SolidWorks** DWGgateway," indicating no confusion as to the source of the software.  *Id.* (emphasis added).  Likewise, in Autodesk's Fourth Supplemental Interrogatory Responses (Ryan Decl. Ex. 14 at 2-3 (Autodesk's Fourth Supplemental Interrogatory Responses, including Shawn Gilmour Verification)), Autodesk identified two similar email threads involving an individual contacting *SolidWorks* about the interaction between DWGeditor and AutoCAD, which in no way indicates any sort of source-confusion.  *See* Ryan Decl. Ex. 16, SW0027333; Ryan Decl. Ex. 17, SW0027335.[7]  Additionally, Autodesk identified two instances in which a Hong Kong customer contacted Autodesk concerning interoperation between SolidWorks and Autodesk products; however, nothing about the identified documents indicates confusion as to source.  *See* Ryan Decl. Ex. 18, ADSK0015097-102; Ryan Decl. Ex. 19, ADSK0022991-93.[8]  Finally, Autodesk refers to an email sent by a Mr. Jim Griffeth to SolidWorks, in which Jim Griffeth purportedly references some comments he saw on an Autodesk thread about DWGgateway.  Ryan Decl. Ex. 20, SW0011764-65.  Besides the fact that the document is inadmissible double hearsay,[9] actually visiting the referenced thread demonstrates that there was absolutely no confusion at play: the commenter on the thread quoted from an *Autodesk* statement discussing products like "DWGgateway, which *are*

---

[7] This material is of course also hearsay, being third-party email.  FED. R. EVID. 802.

[8] Moreover, Autodesk's own 30(b)(6) deposition testimony confirms that the mere act of Autodesk customers contacting Autodesk concerning the interoperation of SolidWorks and Autodesk products is *not* evidence of confusion.  *See* Ryan Decl. Ex. 4, Gilmour Depo. 144:25-146:20 (Autodesk did not know whether any party who may have contacted Autodesk with questions concerning interoperation between SolidWorks and Autodesk products also contacted SolidWorks, and that such information would be relevant in indicating whether or not a customer was actually confused as to the source of a product).

[9] *See* FED. R. EVID. 802, 805.  The document identified by Autodesk in relevant part contains a statement about what some *other* document might be saying.

1   *not created or supported by Autodesk*." Ryan Decl. Ex. 21,

2   http://discussion.autodesk.com/forums/thread.jspa?threadID=388519, at 3 (emphasis added).[10]

3         Accordingly, because Autodesk has presented no evidence of instances of actual consumer

4   confusion, it should be precluded from raising any such evidence now.

5   **III.   CONCLUSION**

6         Any of the above evidence, or argument associated with it, would be irrelevant, prejudicial

7   and confusing to the jury in this case.  For the aforementioned reasons, SolidWorks requests that

8   the Court grant this motion *in limine*, and enter an order excluding testimony and all other

9   evidence and argument by Autodesk concerning the any instances of actual consumer confusion

10  stemming from SolidWorks' alleged activities.

12  DATED: December 14, 2009            QUINN EMANUEL URQUHART OLIVER &
                                         HEDGES, LLP

14                                       By  /s/
                                            Claude M. Stern
15                                          Attorneys for Defendant Dassault Systèmes
                                            SolidWorks Corporation.

---

[10] Indeed, Autodesk is well aware of this, having produced in this action a copy of this very thread—albeit one in which the portions indicating a total lack of consumer confusion failed to be reproduced.  *See* Ryan Decl. Ex. 22, ADSK0040189-93.