MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
J. THOMAS MCCARTHY (CA SBN 034728)
TMcCarthy@mofo.com
DAVID E. MELAUGH (CA SBN 219477)
DMelaugh@mofo.com
LYNN M. HUMPHREYS (CA SBN 168062)
LHumphreys@mofo.com
JACQUELINE BOS (CA SBN 243938)
JBos@mofo.com
NATHAN B. SABRI (CA SBN 252216)
NSabri@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Plaintiff
AUTODESK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DASSAULT SYSTÈMES SOLIDWORKS CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No. 3:08-cv-04397-WHA<br><br>**AUTODESK'S OPPOSITION TO SOLIDWORKS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING INSTANCES OF ACTUAL CONSUMER CONFUSION**<br><br>Date: December 30, 2009<br>Time: 9:00 a.m.<br>Place: Courtroom 9, 19th Floor<br>Judge: Hon. William H. Alsup |

I.  **INTRODUCTION**

SolidWorks mischaracterizes the testimony of Autodesk's witnesses as well as documents that clearly evidence actual consumer confusion. Because SolidWorks has objected to this evidence based on (1) a fundamental misunderstanding of the law related to consumer confusion and (2) the weight that should be ascribed to such evidence, and not on actual concerns of prejudice or relevance, its Motion in Limine No. 1 should be denied.

II.  **ARGUMENT**

A.  **Autodesk Should be Allowed to Present Evidence on Actual Consumer Confusion Pertaining to SolidWorks' Use of the DWG Mark Because the Record Demonstrates that Autodesk's 30(b)(6) Witness on the Subject of Actual Consumer Confusion Testified to Instances of Actual Confusion**

SolidWorks argues that "[e]very Autodesk witness deposed by SolidWorks . . . testified that they were unaware of any [instances of actual consumer confusion concerning SolidWorks' use of the DWG mark]." (SolidWorks' Mot. in Limine No. 1 ("Mot.") at 2.)

In support, SolidWorks first states that "Autodesk 30(b)(6) witness Christopher Bradshaw" was unaware of any instances of actual consumer confusion. (*Id*. at 2-3.) SolidWorks omits, however, that Mr. Bradshaw was not designated to testify about consumer confusion pertaining to SolidWorks' products, but rather on *an entirely different subject*, Autodesk's marketing of its own products. Because counsel for SolidWorks insisted on questioning Mr. Bradshaw about consumer confusion pertaining to SolidWorks' products, counsel for Autodesk properly objected to the scope of the questioning and was even forced to remind the questioning attorney "[Mr. Bradshaw] is not our witness on confusion." (Declaration of Jacqueline Bos in Support of Autodesk's Opp'n to Mot. in Limine No. 1 ("Bos. No. 1 Opp. Decl.") ¶ 2, Ex. 1 (Bradshaw Dep. Tr.) at 316:5-6.) Nevertheless, Mr. Bradshaw did testify, in his personal capacity, that he was aware of "a customer who said SolidWorks has a banner that has lots of DWG in it, that you cannot tell from the banner that it's Autodesk or SolidWorks or anybody. And when you click on it, you land in a SolidWorks page. And that his heads-up to her was this is -- this is confusing and they're using the same coloring." (*Id*. at 307:9-19.)

Shawn Gilmour was Autodesk's actual designee on the topic of "any instances or reports of actual, potential or possible confusion by consumers or other based on SOLIDWORKS' use of the letter string 'DWG' in any way, shape or form." (Bos No. 1 Opp. Decl. ¶ 3, Ex. 2 (Gilmour Dep. Tr.) at 34:18-24 (confirming testimony on 30(b)(6) topic 2); ¶ 8, Ex. 7 (SolidWorks' 30(b)(6) notice).) He testified that there were multiple instances of actual consumer confusion.

> Q. [I]t's your reading of that person's conclusions in this survey that was submitted to the TTAB . . . . [¶] [t]hat there were people who obtained DWG Editor, DWG Navigator, DWG Viewer and DWG Gateway, and those persons or companies actually believed that the company that was publishing them was Autodesk?
>
> A. That along with the support cases of where people had contacted us to help them with DWG Gateway.
>
> Q. Okay. I'm not asking about inferences. I'm asking about -- maybe -- let me be very specific. These questions are not asking for opinions, they're asking for facts.
>
> A. I think it is a fact. They came to us saying we have a problem with DWG Gateway and they wanted us to fix it. So if they thought that we owned the product then why would they come? If they didn't think we owned the product, why would they come to us asking us for help?
>
> Q. So you're asking that question, right, Mr. Gilmour? Under oath you're asking that question because you -- you're actually drawing a conclusion. I'm asking a very specific question. I want you to listen again. The jury is going to see I'm repeating this question to you.
>
> Are you aware of any person or company that has told Autodesk that they acquired any of the DWG Series products believing that those products were published by Autodesk?
>
> A. Yes. I'm going to not change my answer. There's product support logs showed that that person thought the product came from Autodesk because they came to us for help.

(Bos. No. 1 Opp. Decl. ¶ 3, Ex. 2 (Gilmour Dep. Tr.) at 131:14-132:25.) Though Mr. Gilmour was asked if any of the consumers discussed above told "Autodesk we believe you *sold us or gave us* this product," and answered that "they did not" (*id*. at 133:1-3 (emphasis added)), this question is not dispositive of whether there was actual consumer confusion. It is well-settled, both by the explicit language of the Lanham Act and Ninth Circuit precedent, that confusion as to "affiliation, connection, or association" of one party with another, or "the origin, sponsorship, or approval of his or her goods," and not simply confusion as to the seller/maker of a product, is actionable. 15 U.S.C.

§ 1125(a)(1)(A); *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 806-07 (9th Cir. 2003) ("Trademark law aims to protect trademark owners from the false perception that they are associated with or endorse a product. Generally, to assess whether a defendant has infringed on a plaintiff's trademark, we apply a 'likelihood of confusion' test that asks whether use of the plaintiff's trademark by the defendant is 'likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association' of the two products").

As such, it is clear that Mr. Gilmour did in fact testify as to instances of actual consumer confusion concerning SolidWorks' products and whether there was an affiliation, connection, or association with Autodesk. *See also* Bos No. 1 Opp. Decl. ¶ 3, Ex. 2 (Gilmour Dep. Tr.) at 143:18-146:20. Though SolidWorks also contends that Mr. Gilmour's testimony is hearsay, this objection should more properly be raised at trial, and in any case does not apply to Mr. Gilmour's testimony regarding customer statements because such statements are not being offered for the truth of the matters asserted. *See Ultrapure Sys., Inc. v. Ham-Let Group*, 921 F. Supp. 659, 663 (N.D. Cal. 1996) (customer statements displaying confusion not hearsay, as they were not offered for truth of matter). While SolidWorks may dispute the interpretation of Mr. Gilmour's testimony, it is the jury's province to determine the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from the evidence. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). SolidWorks' motion in limine improperly seeks to invade that province and should be denied.

Finally, SolidWorks selectively, and inappositely, quotes a handful of witnesses to demonstrate that these witnesses did not know of instances of actual consumer confusion as to SolidWorks' products. Not only are the quotations ambiguous (at best), SolidWorks fails to establish any foundation for why the witnesses they selected should have been knowledgeable on this subject.

The first witness, Autodesk's marketing expert Dr. Dominique Hanssens, was not retained to provide an opinion on actual confusion. SolidWorks' deposition excerpt quotes the following question asked of Dr. Hanssens: "Have you seen any evidence other than the Jay or Ford surveys concerning the extent to which anyone who went on the DWG Gateway or DWG Editor or DWG Viewer websites thought they were on an Autodesk website?" (Mot. at 3-4; Ryan Decl. Ex. 6.) Not only did the question require Dr. Hanssens to disregard two primary sources of evidence of consumer

1  confusion, it also failed to ask about confusion as to Autodesk's potential endorsement of, or
2  connection to, the DWGseries of products, instead limiting its inquiry into whether Dr. Hanssens had
3  seen evidence of consumers who believed that they were on an Autodesk website rather than a
4  SolidWorks website. Besides ignoring the fact that Dr. Hanssens was not retained to provide an
5  opinion on actual confusion, SolidWorks' question was fundamentally flawed.

6        The second quoted witness, Amy Farrell of Goodman Marketing, is not an Autodesk
7  employee and is identified by SolidWorks in its initial disclosures as a third party with "[k]nowledge
8  of Autodesk's DWG marketing strategy." (Bos. No. 1 Opp. Decl. ¶ 4, Ex. 3 (Fourth Supp. Initial
9  Disclosures) at 9.) SolidWorks subpoenaed Goodman Marketing to testify at deposition, and
10 included a list of topics for examination, which notably did not include consumer confusion
11 pertaining to SolidWorks' products. (*See* Bos. No. 1 Opp. Decl. ¶ 5, Ex. 4 (Goodman Mktg. Partners
12 Subpoena).) As such, it is unsurprising that Ms. Farrell answered "No" to an ambiguous question
13 regarding whether she knew of any evidence "of an actual consumer being confused by what
14 SolidWorks was doing." (Mot. at 4; Ryan Decl. Ex. 3.)

15       The third quoted witness, Maura Ginty, is identified by SolidWorks in its initial disclosures as
16 "[p]urportedly ha[ving] knowledge of Autodesk's claims of unfair competition and SolidWorks'
17 display and use of 'AutoCAD' on the Internet." (Bos. No. 1 Opp. Decl. ¶ 4, Ex. 3 at 9.) Besides
18 failing to explain why it believes Ms. Ginty should have knowledge of actual consumer confusion,
19 SolidWorks also cites only to a single deposition question regarding confusion about "SolidWorks
20 DWG series Web pages," rather than SolidWorks' use of the DWG mark. (Mot. at 4; Ryan Decl.
21 Ex. 5.) Again, Ms. Ginty's testimony does not support SolidWorks' claim that she lacked knowledge
22 about instances of actual consumer confusion.

23       The fourth quoted witness, Shaan Hurley, is identified by SolidWorks in its initial disclosures
24 as having "[k]nowledge of Autodesk's DWG marketing strategy and fidelity of ODA libraries."
25 (Bos. No. 1 Opp. Decl. ¶ 4, Ex. 3 at 12.) Besides failing to explain why it believes Mr. Hurley should
26 have knowledge of actual consumer confusion pertaining to SolidWorks' products, SolidWorks also
27 cites only to two deposition questions regarding confusion about "'DWG' in [SolidWorks'] product
28 names," rather than SolidWorks' use of the DWG mark more broadly. (Mot. at 4; Ryan Decl. Ex. 7.)

1 Again, Mr. Hurley's testimony does not support SolidWorks' claim that he lacked knowledge about
2 instances of actual consumer confusion.

3 The fifth quoted witness, Megan Reilly, is identified by SolidWorks in its initial disclosures
4 as having "[k]nowledge of Autodesk's DWG marketing strategy." (Bos. No. 1 Opp. Decl. ¶ 4, Ex. 3
5 at 19.) Besides failing to explain why it believes Ms. Reilly should have knowledge of actual
6 consumer confusion pertaining to SolidWorks' products, SolidWorks also cites only to a single
7 deposition question regarding whether "Autodesk customers are confused about what SolidWorks
8 offers," rather than whether any consumers were confused by SolidWorks' use of the DWG mark.
9 (Mot. at 4; Ryan Decl. Ex. 9.) As above, Ms. Reilly's testimony does not support SolidWorks' claim
10 that she lacked knowledge about instances of actual consumer confusion.

11 It should be noted that SolidWorks' Motion in Limine No. 1 does not concern the expert
12 testimony of Dr. Gerald L. Ford, nor the likelihood of confusion survey he conducted in conjunction
13 with his expert declaration. Besides failing to raise any argument as to Dr. Ford's qualifications or
14 methodology, SolidWorks did not even mention Dr. Ford except for in passing in a quote from a
15 deposition. Accordingly, SolidWorks has provided no basis on which to exclude evidence from
16 Dr. Ford.

17 SolidWorks' citation to *VNUS Medical Technologies, Inc., v. Diomed Holdings, Inc.*,
18 No. C-05-2972 MMC, 2007 WL 3096586 (N.D. Cal. Oct. 22, 2007), is also unavailing. Unlike the
19 plaintiff there, who "did not provide any opinion on the issue," Autodesk has provided relevant
20 testimony on the subject of actual consumer confusion. *Id*. at *2. Even if SolidWorks is correct that
21 the non-30(b)(6) witnesses that it decided to depose did not know of instances of actual consumer
22 confusion pertaining to SolidWorks' use of the DWG mark, SolidWorks' strategic decisions should
23 not limit Autodesk's ability to present evidence regarding this subject. Accordingly, the Court should
24 deny SolidWorks' motion in limine no. 1.

25 **B.  Autodesk Should not Be Precluded from Offering as Evidence any Documents Identified During Discovery Evidencing Instances of Actual Consumer Confusion**
26

27 SolidWorks argues that Autodesk "failed to identify even a single relevant instance of actual
28 consumer confusion." (Mot. at 5.) Curiously, SolidWorks admits immediately thereafter that there is

a "small minority of identified materials [that is] most relevant to the issue of evidence of instances of actual consumer confusion," but that SolidWorks considers these documents inadmissible at trial as hearsay. (*Id.* at 5-6.) As SolidWorks acknowledged, Autodesk, and SolidWorks itself, have produced documents reflecting actual consumer confusion.[1]  Contrary to SolidWorks' contention, Autodesk identified these documents in response to an interrogatory seeking identification of instances of actual consumer confusion.

For example, SolidWorks produced a document from a user group forum in which a user displayed confusion about SolidWorks' DWGgateway product, stating "oops — I get it now — it's not an Autodesk supported product. Right?" (Bos No. 1 Opp. Decl. ¶ 6, Ex. 5 (Autodesk customer forum).) This document was listed in Autodesk's response to SolidWorks' interrogatories. (Bos No. 1 Opp. Decl. ¶ 7, Ex. 6 (Autodesk's Fourth Supp. Responses to SolidWorks' First Set of Interrogs.) at 2-3 & Attach. A.) While SolidWorks contends that an identical copy of this document (Ryan Decl. Ex. 15) does not show "confusion as to the source of the software" because one user refers to the software as "SolidWorks DWGgateway," this statement has no bearing on the clear statement of confusion above from a different user. (Mot. at 6.) Neither document constitutes hearsay because Autodesk does not intend to offer the statement above for the truth of the matter asserted. The matter in question — whether DWGgateway is an Autodesk-supported product — is not even in dispute. The statement's relevance is to show a customer's confused state-of mind. This type of actual confusion evidence has repeatedly been confirmed as non-hearsay by district courts in the Ninth Circuit. *See, e.g.*, *SafeWorks, LLC v. Spydercrane.com, LLC*, No. 08-cv-0922-JPD, 2009 WL 3169151, at *6 n.1 (W.D. Wash. Sept. 29, 2009) (evidence of consumer calling one party looking for parts produced by other party not hearsay "[b]ecause it is not offered for the truth of the matter asserted . . .. The evidence is offered to demonstrate the lack of truth (or confusion) of the caller"); *Ultrapure Sys.*, 921 F. Supp. at 663 (customer statements displaying confusion not hearsay,

---

[1] Autodesk recently discovered further evidence of customer confusion in an Autodesk discussion forum. A customer there stated: "Try using DWGgateway. It is a free download from Autodesk." (Bos No. 1 Opp. Decl. ¶ 9, Ex. 8 at 2.) As discussed herein, this statement is not hearsay because it is not offered for the truth of the matter asserted — it is offered to show a customer's confused state of mind.

1  as they were not offered for truth of matter); *see also CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F.
2  Supp. 2d 1051, 1074-75 (E.D. Cal. 2009) (noting majority of circuit courts hold consumer confusion
3  testimony not hearsay, as it is not offered for truth and "is evidence of consumers' then-existing state
4  of mind (confusion)").

5  Autodesk also produced an email chain in which a consumer displayed confusion as to the
6  connection between Autodesk and DWGgateway because he contacted Autodesk's customer support
7  to request advice on the installation of DWGgateway. (Ryan Decl. Ex. 18 (ADSK0015097-102).)
8  This document was also listed in Autodesk's response to SolidWorks' interrogatories. (Bos No. 1
9  Opp. Decl. ¶ 7, Ex. 6 at 2-3, Attach. A.) SolidWorks claims that "nothing about the identified
10 document indicates confusion as to source," yet this ignores the plain fact that a consumer of
11 DWGgateway sought customer support from Autodesk for a SolidWorks product. While SolidWorks
12 may dispute the interpretation of this evidence, it is the jury's province to evaluate the evidence. *See*
13 *Jackson,* 443 U.S. at 319. Again, this document does not constitute hearsay because Autodesk does
14 not intend to offer it for the truth of the matter asserted. The e-mail does not even contain an
15 assertion. It is offered simply to show the fact that a confused consumer contacted Autodesk
16 customer support seeking advice on DWGgateway. As in *SafeWorks* and the other cases cited above,
17 "the evidence is offered to demonstrate the lack of truth (or confusion)" of the customer. *Safeworks*,
18 2009 WL 3169151, at *6 n.1; *see also Ultrapure Sys.*, 921 F. Supp. at 663.

19 Because SolidWorks concedes that Autodesk produced documents evidencing actual
20 consumer confusion pertaining to SolidWorks' use of the DWG mark, and because these documents
21 were identified in response to SolidWorks' interrogatory seeking such information, the Court should
22 not preclude Autodesk from using such documents at trial.

23 **III. CONCLUSION**

24 For the reasons stated above, the Court should deny SolidWorks' Motion in Limine No. 1.

25 Dated: December 22, 2009      MORRISON & FOERSTER LLP

26                               By:  /s/ *Michael A. Jacobs*
                                       MICHAEL A. JACOBS
27
                                 Attorneys for Plaintiff AUTODESK, INC.
28

AUTODESK'S OPPOSITION TO SOLIDWORKS' MOTION IN LIMINE NO. 1                             7
CASE NO. 3:08-CV-04397-WHA
sf-2782180