MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
J. THOMAS MCCARTHY (CA SBN 034728)
TMcCarthy@mofo.com
DAVID E. MELAUGH (CA SBN 219477)
DMelaugh@mofo.com
LYNN M. HUMPHREYS (CA SBN 168062)
LHumphreys@mofo.com
JACQUELINE BOS (CA SBN 243938)
JBos@mofo.com
NATHAN B. SABRI (CA SBN 252216)
NSabri@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Plaintiff
AUTODESK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DASSAULT SYSTÈMES SOLIDWORKS CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No.   3:08-cv-04397-WHA<br><br>**AUTODESK'S OPPOSITION TO SOLIDWORKS' MOTION IN LIMINE NO. 2 PRECLUDING TESTIMONY ON WHICH AUTODESK'S RULE 30(B)(6) WITNESSES WERE UNPREPARED TO TESTIFY**<br><br>Date:    December 30, 2009<br>Time:    9:00 a.m.<br>Place:   Courtroom 9, 19th Floor<br>Judge:   Hon. William H. Alsup |

## I. INTRODUCTION

SolidWorks' second motion in limine seeks to bar testimony regarding which SolidWorks incorrectly asserts that Autodesk failed to provide 30(b)(6) testimony. This bar is unwarranted.

## II. ARGUMENT

SolidWorks' scattershot motion seeks to preclude testimony on **37** separate topics (that are in effect, 37 separate motions), purportedly because Autodesk Rule 30(b)(6) witnesses were unprepared to speak to them. Autodesk provided five 30(b)(6) witnesses who testified over six days, and a total of ten percipient witnesses. This motion fails for at least the following reasons:

First, the Federal Rules and the Court's rules make clear that 30(b)(6) topics must be drafted with "reasonable particularity" and not cover "wide-ranging topics." (Supp. CMC Order (D.I. 11) ¶ 23.) Ignoring that, the topics quoted in the motion make clear what a hodge-podge SolidWorks threw at Autodesk — the 4 listed topics contain 59 commas, semi-colons, conjunctives, or disjunctives and cover almost 30 years. (SolidWorks' Mot. in Limine No. 2 ("Mot.") at 2.) There is therefore no basis for preclusion, especially on subjects that, as discussed below, bear at most a tangential relationship with even the broad-ranging language of the noticed topics.

Second, Autodesk did provide witnesses who were prepared to, and did, testify at length on each of the 30(b)(6) topics noticed by SolidWorks. The authorities cited by SolidWorks do not stand for the proposition that Autodesk's 30(b)(6) witness must be prepared to answer every question regarding SolidWorks' 30(b)(6) topic; they require only that the witnesses be prepared generally on SolidWorks' topics. Even were the caselaw otherwise, Autodesk specifically provided testimony on many of the questions regarding which SolidWorks claims Autodesk did not provide testimony. Indeed, SolidWorks' motion at various points grossly misrepresents the state of testimony.[1] For example, SolidWorks asserts that Autodesk's witness Mr. Bradshaw was unprepared to testify about

---

[1] SolidWorks also incorrectly asserts (without support) that (i) Autodesk said it would rely exclusively on expert testimony for topic 7 (Mot. at 3); and (ii) that Autodesk has no evidence of anyone being misled by SolidWorks' false statements (*id.* at 3, n.2). In fact, Autodesk always maintained that Mr. Gilmour had responded properly regarding topic 7 and stated it would *also* provide expert testimony. *See* Decl. of Jacqueline Bos in Support of Autodesk's Opp'n to SolidWorks' Mot. in Limine No. 2 ("Bos No. 2 Opp. Decl."), Ex. 1 (Bos Aug. 3, 2009 Ltr.). In addition, Mr. Gilmour testified that *no one had told him* that they had been misled: he was never asked whether Autodesk had evidence. (*Id.*, Ex. 2 (Gilmour Dep. Tr.) at 336:24-337:4.)

the differences between Autodesk's RealDWG and ObjectDBX licensing programs, but neglects to mention that this was the subject of a separate full-day 30(b)(6) deposition (*see* # 4, below).

Third, many of the topics as to which SolidWorks claims Autodesk did not provide testimony fell outside their topics. For example, Mr. Bradshaw testified on DWG marketing, yet SolidWorks complains he was unprepared to testify about third-party licenses, a concept outside his topic.

Fourth, Autodesk provided information to SolidWorks on many of the topics listed in its motion in the form of interrogatory responses, documents, and in testimony by other witnesses.

Finally, for many of SolidWorks' 37 subtopics, SolidWorks' counsel asked only limited foundational questions, but never proceeded to ask Autodesk's witnesses about the actual topics.

Not having been described with "reasonable particularity" in SolidWorks' 30(b)(6) notice, each of the 37 topics in SolidWorks' motion is an impermissible expansion of that notice. Because Autodesk's witnesses were prepared to testify on SolidWorks' noticed topics generally, SolidWorks' contention that a witness' purported inability to answer a particular question should somehow preclude any testimony on an entire subject lacks merit. Autodesk additionally responds as follows:

**1. Why "DWG" was not listed as a trademark in Autodesk's trademark guidelines or other documents and the person responsible for maintaining the list ([Ryan Dec.] Ex. 4 - Gilmour Depo. at 85:24-86:11, 87:10-15; [Ryan Dec.] Ex. 2 - Bradshaw Depo., 56:7-21)[2]**

Despite listing the specific (overbroad) subtopics which SolidWorks intended topic 1 to cover (Mot. at 2), SolidWorks did not include Autodesk's trademark guidelines: this question was out of scope.

**2. When Autodesk began having a person exercise control over trademark usage ([Ryan Dec.] Ex. 4 - Gilmour Depo., 105:8-22)**

Contrary to SolidWorks' assertion, Mr. Gilmour responded to this, providing a date of "probably around" 2005. (Bos No. 2 Opp. Decl., Ex. 2 at 105:8-106:1.) Mr. Bradshaw also testified that *no single person* polices use of DWG in advertising. (*Id.*, Ex. 4 (Bradshaw Dep. Tr.) at 45:17-23.)

**3. Why Autodesk did not claim trademark rights in the letters "DWG" when it first began to market DWG Unplugged ([Ryan Dec.] Ex. 2 - Bradshaw 75:6-12)**

Mr. Bradshaw's topic was Autodesk's marketing of DWG (Mot. at 3), not decisions to claim trademark rights over DWG: this question was out of scope.

---

[2] Bolded statements 1 - 37 and citations are copied from SolidWorks' Motion in Limine No. 2.

4. **The differences in capabilities between Autodesk's ObjectDBX and RealDWG programs ([Ryan Dec.] Ex. 2 - Bradshaw Depo., 74:14-23)**

The RealDWG program was the subject of a separate full-day 30(b)(6) deposition at which Autodesk's witness compared the ObjectDBX and RealDWG programs in depth. (*See, e.g.*, Bos No. 2 Opp. Decl. Ex. 3 (Bittner Dep. Tr.) at 36:9-13 ("ObjectDBX is a technical name for . . .RealDWG. . . [they are the] same").) This is also outside Mr. Bradshaw's topic – DWG marketing.

5. **[D]etails of Autodesk's effort to examine its branding (Ex. 4 – Gilmour Depo., 114:9-16)**

Autodesk provided Mr. Bradshaw to supplement Mr. Gilmour's DWG-marketing testimony. SolidWorks had the opportunity to ask Mr. Bradshaw this question and failed to do so. Autodesk cannot be precluded from providing testimony on questions that SolidWorks failed to ask. Further, SolidWorks is simply incorrect: Autodesk witnesses did testify about examination of its branding. (*See, e.g.*, Bos No. 2 Opp. Decl. Ex. 4 (Bradshaw Dep. Tr.) at 58:19-76:18; 90:7-98:3.)

6. **Who decides whether to police third party uses of "DWG" in product or company names ([Ryan Dec.] Ex. 4 - Gilmour Depo., 175:16-22)**

SolidWorks' assertion is not supported by its citation in which Mr. Gilmour was asked to "identify the *chief person* [who decides] *whether to take a position* regarding the third-party use of DWG," (emphasis added). It was not a general question about policing third-party uses of DWG.

7. **How much money is spent protecting the purported "DWG" mark (id., 181:6-16)**

SolidWorks' citation does not support its assertion. The question posed to Mr. Gilmour was how much money is allocated each year to try to protect the DWG mark, not how much is spent.

8. **All of Autodesk's attempts to police the use of "DWG" after 2005 (id., 294:2-10)**

SolidWorks' citation does not support its assertion. In the cited testimony, Mr. Gilmour discussed legal action taken against the ODA since 2005. In addition, Autodesk described post-2005 and other enforcement of its DWG rights in its summary judgment opposition brief. (D.I. 175 at 5, n.12.)

9. **Whether there are any fonts, colors, or design elements prohibited with respect to use of the "DWG logo" ([Ryan Dec.] Ex. 2 - Bradshaw Depo., 53:16-53:24);**
12. **The development of the DWG file icon, including . . . why the letters DWG were first added . . . in 2004 and changes made to the icons in 2005 and 2006 (*id.*, 118:12-119:11);** and
14. **The development of Autodesk's DWG design/logo (*id.*, 136:17-23)**

Contrary to SolidWorks' assertions, Mr. Bradshaw testified at length about Autodesk's DWG logo. (*See, e.g.*, Bos No. 2 Opp. Decl. Ex. 4 (Bradshaw Dep. Tr.) at 109:23-110:1, 116:3-126:4.)

Mr. Gilmour also testified on this topic. (*Id.,* Ex. 2 (Gilmour Dep. Tr.) at 205:10-207:6; 317:3-22.)

**10. When Autodesk began providing instructions to field representatives regarding how to use "DWG" ([Ryan Dec. Ex. 2 - Bradshaw], 53:25-54:11)**

Despite listing the specific (overbroad) subtopics which SolidWorks intended topic 1 to cover (Mot. at 2), SolidWorks' list did not include field representative use of DWG: this was out of scope.

**11. Whether Autodesk offered to license its technology to the OpenDWG Alliance, the ODA, or any company that uses "DWG" in their product names ([Ryan Dec. Ex. 2 - Bradshaw], 103:9-105:1)**

Mr. Bradshaw's topic was Autodesk's marketing of DWG (Mot. at 3), not licensing of DWG – this question was out of scope for Mr. Bradshaw and SolidWorks did not ask other Autodesk witnesses.

**13. The Marketing and capabilities of TrustedDWG, DWG TrueView, DWG TrueConvert, DWGExtreme ([Ryan Dec. Ex. 2 - Bradshaw], 126:16-20, 127:12-128:22, 136:24-137:25)**

Contrary to SolidWorks' assertion, Mr. Gilmour and Mr. Oak testified at length about these topics. (Bos No. 2 Opp. Decl. Ex. 2 (Gilmour Dep. Tr.) at 262:12-266:4, 138:3-9; Ex. 5 (Oak Dep. Tr.) at 150:25-151:21.) Product capability is outside the scope of Mr. Bradshaw's "DWG marketing" topic.

**15. Whether there was ever a DWG-centered Autodesk website or product center ([Ryan Dec. Ex. 2 - Bradshaw], 194:15-20, 251:4-5, 260:15-25)**

Contrary to SolidWorks' assertion, Mr. Bradshaw testified that information pages had been developed around DWG, although he had not heard of them referred to them as a "DWG Center." (Bos No. 2 Opp. Decl., Ex. 4 at 195:1-3.) Autodesk produced copies of, (Bos No. 2 Opp. Decl. Ex. 6), and its witnesses testified about components of, DWG-centered websites (*see* responses ## 4, 13.)

**16. Whether Autodesk ran Autodesk-generated technical papers about DWG ([Ryan Dec. Ex. 2 - Bradshaw], 205:2-10)**

Mr. Bradshaw's topic was Autodesk's use of DWG as a mark and its marketing and branding of DWG (Mot. at 3), not technical aspects of DWG: this technical question was out of scope.

**17. What DWG technology from Autodesk is ([Ryan Dec. Ex. 2 - Bradshaw], 251:19-22)**

SolidWorks' assertion is incorrect: Autodesk witnesses, Messrs. Oak and Gilmour testified on this topic; it was, however, outside the scope of Mr. Bradshaw's topic. (*See, e.g.*, Bos No. 2 Opp. Decl. Ex. 5 (Oak Dep. Tr.) at 36:14 – 37:8; 83:11-93:16; and Ex. 2 (Gilmour Dep. Tr.) at 50:17-52:19.)

18. **Fleishman-Hillard's role in Autodesk's DWG marketing ([Ryan Dec. Ex. 2 - Bradshaw], 265:14-24)**

This assertion is unsupported by the cited testimony.  The cited testimony shows only that Mr. Bradshaw was unaware of Fleishman-Hillard's role in *March of 2006*, not generally.

19. **Autodesk's "aggressive online campaign targeting SolidWorks quality and performance issues" (*id*., 276:8-278:21); and**
20. **The results of an online survey regarding SolidWorks user satisfaction referenced in Exhibit 1195 to the Bradshaw deposition (*id*., 279:17-281:22)**

Again, as Mr. Bradshaw's topic was Autodesk's DWG marketing (Mot. at 3), not *SolidWorks'* quality and performance issues or user satisfaction; these questions were out of scope.

21. **Whether anyone at Autodesk advised Megan Reilly, Goodman Marketing, or Clear Ink that Autodesk did not need to "reclaim" DWG ([Ryan Dec. Ex. 2 - Bradshaw], 301:25-303:2)**

In addition to discussing Megan Reilly, Goodman Marketing, and Clear Ink with Messrs. Gilmour and Bradshaw, SolidWorks also received documents from and deposed all three witnesses for a day each.  SolidWorks cannot claim surprise about issues relating to these three.  In addition, Autodesk produced Megan Reilly's performance report which discussed the problems with her presentations, and SolidWorks' counsel questioned Ms. Reilly about that report.

22. **Whether anyone has found SolidWorks' statement that "DWGgateway is the first free data translation plug that lets AutoCAD users work easily with DWG files created by any version of AutoCAD software" to be misleading ([Ryan Dec.] Ex. 4 - Gilmour, 336:24-337:4); 23. Whether anyone has found SolidWorks' statement that "DWGnavigator will save DWG files to any version of AutoCAD software" to be misleading (*id*., 337:5-23); 24. Whether anyone has been misled by the statement that any SolidWorks product will "save DWG files to any version of AutoCAD. . ." (*id*., 338:11-15); and 25. Whether "Through SolidWorks' use of numerous DWG-based product names and Web sites, SolidWorks has misled [customers] that SolidWorks products also offer authentic DWG technology" (*id*., 339:4-340:12.)**

Contrary to SolidWorks' assertion, Mr. Gilmour testified that there was "current research that's going on" regarding # 25, (Bos No. 2 Opp. Decl. Ex. 2 at 337:5-14; 339:4-15); and Mr. Oak, the designee on the related subject of bug reports "relating to users' inability to open, edit, or save 'DWG' files . . . when using . . . DWGSERIES products," provided additional testimony on the capabilities of SolidWorks' products and the falsity of SolidWorks' advertising.  (*See id.,* Ex. 5 at 180:19-183:14; Ex. 11 (Oak 10/27/09 Dep. Tr.) at 438:4-440:12.)  SolidWorks also produced evidence of falsity.

26. **The amount of money Autodesk spent to address SolidWorks' use of the terms "AutoCAD" and "DWG" on their DWGseries webpages (id., 327:17-328:19); and**

**27. Whether Autodesk has used the names of any competitors in its advertising (id., 329:8-10)**

Topic 4 is *SolidWorks'* use of the term AutoCAD. *Autodesk's* expenditure is not directly relevant to this topic, especially as the parties noticed damages as separate topics. In addition, Autodesk provided this information in multiple documents. (*See, e.g.*, Bos No. 2 Opp. Decl. Ex. 7 (ADSK0050942-3).) Similarly, *Autodesk's* use of names of competitors is out of scope for this topic.

**28. Any keyword cloud density analyses performed by Autodesk relating to the use of competitor names on websites describing interoperable products ([Ryan Dec, Ex. 4 – Gilmour], 329:17-330:8)**

Autodesk witness Maura Ginty testified about keyword cloud analyses from Autodesk's complaint (as listed in Topic 4). (*See, e.g.*, Bos No. 2 Opp. Decl. Ex. 8 (Ginty Dep. Tr.) at 179:13-184:19.) SolidWorks' counsel did not ask Mr. Gilmour anything more than narrow foundational questions that at most showed that he had not read certain documents, not that he was unprepared to testify, and did not ask Mr. Gilmour about the cloud analyses. (*Id.*, Ex. 2 (Gilmour Dep. Tr.) at 329:17-330:8.)

**29. Whether any companies purchased SolidWorks products because the word "AutoCAD" or "Autodesk" was used on SolidWorks' website ([Ryan Dec, Ex. 4 – Gilmour], 330:16-22)**

Despite listing the specific subtopics topic 4 was intended to cover, SolidWorks' list did not include whether any companies purchased SolidWorks' products because the word AutoCAD or Autodesk was used on SolidWorks' website. (Mot. at 3.) This question was therefore out of scope.

**30. Any damages suffered by Autodesk as a result of SolidWorks' alleged conduct ([Ryan Dec, Ex. 4 – Gilmour], 331:2-332:12, 333:11-17)**

The noticed topic was harm or lost profits suffered by Autodesk *as a result of SolidWorks' alleged conduct*. Autodesk's 30(b)(6) witness was prepared to, and did, testify on damages relating to SolidWorks' conduct. Autodesk's witness testified that Autodesk's damages and loss theory included SolidWorks' "leveraging of the DWG brand to [attract customers], . . . upgrade revenue, subscription revenue, potential loss of our own customers moving to our [Autodesk products], money spent on marketing [to counteract SolidWorks' conduct]." (*Id.* Ex. 2 (Gilmour Dep. Tr.) at 45:19-46:5.) Mr. Gilmour discussed Autodesk's damages in several other places. (*See, e.g.*, *id*. at 43:8-18, 324:8-14, and 327:21-328:6.) In addition, Autodesk provided specific revenue and sales figures (Bos No. 2 Opp. Decl. Ex. 9 (Sept. 18, 2009 email)) and Autodesk's interrogatory responses described Autodesk's damages. (*Id.* Ex. 10 (Aug. 17, 2009 Resp. to SolidWorks' Interrog. No. 11).)

**31. The financial condition of Autodesk ([Ryan Dec, Ex. 4 – Gilmour], 36:20-22)**

When asked whether he was in a position to testify about what market forces or other causes may have resulted in either revenue losses or increases for Autodesk over the last four years, Mr. Gilmour said that he was.  (Bos No. 2 Opp. Decl., Ex. 2 (Gilmour Dep. Tr.) at 37:6-11.)  However, after asking only whether he had reviewed a non-exhaustive list of documents to prepare for the deposition, and without determining whether he had other information, SolidWorks' counsel declined to ask further about this topic.  Autodesk also produced SEC reports that include this information.

**32. Autodesk's profits ([Ryan Dec, Ex. 4 – Gilmour], 37:12-15); and**

**33. Sales of Autodesk products or their profitability (*id.*, at 37:16-38:1)**

Autodesk provided its sales and profit numbers to SolidWorks in detailed disclosures as part of the parties' mutual exchange of this data, after Mr. Gilmour's deposition.  (*See* response to # 30, above.)

**34. Autodesk losses as a result of SolidWorks' DWGseries products ([Ryan Dec, Ex. 4 – Gilmour], at 44:1-9); 35. How many customers, prospects, or leads have been lost due to the DWGseries products (*id.*, at 45:2-11); and 37. How much Autodesk spent in marketing money to combat SolidWorks' DWGseries products (*id.*, at 327:21-328:21.)**

As discussed in #30 and #32, Autodesk provided details of its damages (including those described in #34, #35, and #37) through witness testimony, interrogatory responses, and actual financial numbers.

**36. The value of the purported "DWG" brand or Autodesk's market share attributable to it ([Ryan Dec, Ex. 4 – Gilmour], at 48:23-49:25)**

Topic 7 requested testimony on damages suffered by Autodesk as a result of SolidWorks' alleged conduct, and Autodesk responded as described in # 34, above.  The value of the DWG brand is a specific subtopic question that is only peripherally, if at all, relevant to this topic.

### III.   CONCLUSION

For the reasons stated above, the Court should deny SolidWorks' Motion in Limine No. 2. Autodesk also requests that any ruling prohibiting Autodesk from testifying about any topics on which its witnesses were not prepared to respond be reciprocal:  SolidWorks' testimony on the numerous topics on which its 30(b)(6) witness was unprepared to testify should also be precluded.

Dated: December 22, 2009            MORRISON & FOERSTER LLP

By:  /s/ *Michael A. Jacobs*
  MICHAEL A. JACOBS

Attorneys for Plaintiff AUTODESK, INC.