QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Claude M. Stern (Bar No. 96737)
  Evette D. Pennypacker (Bar No. 203515)
  Andrea Pallios Roberts (Bar No. 228128)
  Zachary M. Fabish (Bar No. 247535)
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California  94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

Attorneys for Defendant Dassault Systèmes SolidWorks Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DASSAULT SYSTÈMES SOLIDWORKS CORPORATION, a Delaware corporation,<br><br>Defendant. | CASE NO. 3:08-cv-04397-WHA<br><br>**DEFENDANT SOLIDWORKS' MOTION *IN LIMINE* #3 TO PRECLUDE DR. DANIEL J. SLOTTJE FROM GIVING TESTIMONY ABOUT CAUSATION AND DAMAGES** |

**Issue to be addressed: Exclusion of testimony and all other evidence by Dr. Daniel J. Slottje regarding causation and damages.**

Pursuant to Federal Rules of Evidence 401, 402, 403, 702, *Daubert v. Merrell Dow Pharm's, Inc.*, 509 U.S. 579 (1993), Federal Rule of Civil Procedure 12(h)(3), and 28 U.S.C. § 1331, Defendant and Counterclaimant Dassault Systèmes SolidWorks Corporation ("SolidWorks Corp.") respectfully moves to preclude Autodesk and/or its expert, Dr. Daniel J. Slottje, from offering testimony on the following subjects:  (1) DWGseries products drove sales of SolidWorks software; (2) damages pertaining to Autodesk's false advertising allegations; and (3) SolidWorks Corp.'s wholly foreign profits earned from sales of SolidWorks software made outside the United States.

I.  **STATEMENT OF RELEVANT FACTS**

    A.  **SolidWorks Corporation's Computer Aided Design Products**

SolidWorks is a 3D CAD software program used by design professionals that integrates a broad range of mechanical CAD, design validation, product data management, design communication, and CAD productivity tools in a single software package that runs in upwards of $4,000. SolidWorks software has never been accused of anything by Autodesk in this case.

In addition to its SolidWorks 3D software product, SolidWorks Corp. develops and markets four 2D software tools that it calls its DWGseries products. Those tools are named DWGgateway, DWGeditor, DWGnavigator, and DWGviewer, and they are the subject of Autodesk's false designation of origin and false advertising allegations based on SolidWorks Corp.'s use of "DWG" in those tools' names. With the exception of DWGeditor, all the DWGseries products are available as a free download from the DWGseries.com website. DWGeditor is also available as a free 30-day download, but one must purchase a license for SolidWorks after 30-days to continue using DWGeditor.

    B.  **Dr. Slottje's Damages Report**

Autodesk's damages expert, Dr. Daniel J. Slottje, opines that if SolidWorks were found liable to Autodesk for the "misleading marketing and misuse of Autodesk trademarks"—i.e., the "DWG" in SolidWorks Corp.'s 2D DWGseries products—the appropriate damages sales base for the period from August 2004 through August 2009 would be the total *worldwide revenues for SolidWorks Corp.'s SolidWorks 3D software product*, not revenue generated from any DWGseries product. Dr. Slottje justified his opinion on the ground that there were SolidWorks documents that stated SolidWorks Corp. hoped that giving away free DWGseries products would drive SolidWorks sales.

Dr. Slottje also performed a profit apportionment analysis for DWGeditor and DWGgateway in his rebuttal report, but not DWGnavigator or DWGviewer (*see* Ex. 30 at 20-22[1]):

---

[1] All exhibit references are to the Declaration of Maureen Pettibone Ryan in Support of SolidWorks' Motions *In Limine* 1-7 filed herewith.

1.      Regarding DWGgateway, Dr. Slottje cited and relied on a November 2005 survey of *current* SolidWorks users who also use DWG gateway. (*Id.* at 20-21.) The study found that 33% of SolidWorks users knew about DWGgateway, and 30% of those customers used DWGgateway once a week. (*Id.*; *see also* Ex. 31 at SW0000921-22.) Based on this data, reduced by another 20% as the maximum value of "DWG" in DWGgateway, Dr. Slottje postulated that the "DWG" in the free DWGgateway download was responsible for approximately $29.2 million of the total worldwide SolidWorks sales revenue. (*See* Ex. 30 at 20-21.)

2.      Regarding DWGeditor, Dr. Slottje estimated that $10 million of the total worldwide SolidWorks sales revenue from August 2004 through August 2009 can be attributed to the "DWG" portion of DWGeditor. Dr. Slottje took the ratio of DWGeditor registrations to the total number of SolidWorks licenses, again reduced by the 20% maximum value of "DWG" in DWGeditor, to come up with his $10 million damages figure. (*Id.* at 21-22.)

However, Dr. Slottje testified that he could not point to any evidence where a DWGseries product led to a sale of SolidWorks software. (*See* Ex. 10, Slottje Tr. 78:21-81:10, 84:25-85:4,167:22-168:1, 171:14-22.) In addition, he could not identify any survey, learned treatise, or empirical study demonstrating any relationship between free product downloads and company revenue. (*See* Ex. 10, Slottje Tr. 35:4-10, 35:13-17, 74:6-14.)

Finally, Dr. Slottje has never attempted to quantify the injury to Autodesk based on SolidWorks' purported false advertising or the unauthorized use of the words "Autodesk" or "AutoCAD" on its website. (*See* Ex. 10, Slottje Tr. 130:25-131:12 and 131:23-132:15.)

**II.    ARGUMENT**

    **A.    Dr. Slottje Must Not Be Permitted to Testify that the DWGSeries Products Drove SolidWorks Sales**

Federal Rule of Evidence 702 provides that an expert may testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue." First, however, the Supreme Court casts trial judges in the role of "gatekeeper[s] in determining whether to admit or exclude expert evidence[ ]" in accordance with

Rule 702.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Rule of Evidence 702 permits a witness to give expert testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.  As interpreted by the Supreme Court in *Daubert*, there is a two-part inquiry under Rule 702 for determining the admissibility of proffered expert opinion testimony.  Expert testimony must be "not only relevant, but reliable."  *Daubert*, 509 U.S. at 589, 592-93.

The court need not admit an expert opinion that is connected to the underlying data "only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). It may exclude such testimony if it determines "that there is simply too great an analytical gap between the data and the opinion proffered."  *Id.*

In *Sundance Image Technology, Inc. v. Cone Editions Press, Ltd.*,  2007 W L 935703, 3-4 (S.D. Cal. 2007), the court struck an expert's opinion concerning causation on relevance grounds because he did not provide any objective, measurable foundation for the opinion that the statements about which the plaintiffs complained in that case had a negative impact on plaintiffs' revenues.  *See also Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319-20 (7th Cir. 1996)(expert excluded where it failed to establish how nicotine overdose can precipitate a heart attack in person with heart disease).

Similarly here, Dr. Slottje's inability to point to any source that reliably supports his conclusions that the 2D DWGseries products drove 3D SolidWorks software sales renders his statements merely personal opinion.  (*See* Exs. 29 and 30 at *passim.*; Ex. 10, Slottje Tr. 78:21-81:10; 84:25-85:4; 167:22-168:1; 171:14-22.)  Moreover, there is no scientific survey, learned treatise, or empirical data reflecting an understanding in the relevant scientific or economic community that by offering free downloads, merely knowing/using a particular product, or even registering a particular product leads to revenues—(*see* Ex. 10, Slottje Tr. 35:4-10, 35:13-17, 74:6-14)—never mind revenues derived from a separate product containing different functionalities.

02966.51459/3251105.1

-3-   Case No. :08-cv-04397-WHA

Further, the foundation upon which Dr. Slottje attempts to build this connection is shaky at best. He cites a 2005 survey of *current* SolidWorks "users," 33% of which "knew about DWGgateway," and 30% of those users used DWGgateway at least once a week. (Ex. 30 at 20; Ex. 31 at SW0000921-22.) However, Dr. Slottje acknowledge that the survey respondents were already SolidWorks owners and were not looking for SolidWorks products. (*See* Ex. 10, Slottje Tr. 48:4-10.) Indeed, Dr. Slottje admits that the only thing the DWGgateway survey tells us about the survey respondents is that they knew about DWGgateway. (*Id.,* Slottje Tr. 71:13-19.) He does not know how many of those respondents purchased SolidWorks after becoming acquainted or having used DWGgateway. (*Id.*, Slottje Tr. 74:24-75:18.)

In addition, Dr. Slottje conceded that the only thing DWGeditor registrations indicated was that the registering user went to the trouble of registering the product and intended to use it. (*See id.*, Slottje Tr. 97:10-16, 104:3-19.)

Dr. Slottje's opinions suffer from the same "fit" problem as the polygraph test: although a polygraph test can reliably measure a person's heart rate, blood pressure, and breathing, it is inadmissible to show that person's veracity. *See, e.g.*, *United States v. Ramirez-Robles*, 386 F.3d 1234, 1247(9th Cir. 2004) (affirming district court exclusion of polygraph testimony, citing its "highly influential nature"). Similarly here, there is no link between free 2D DWGseries downloads/knowledge/use/registration and 3D SolidWorks software sales.

Because of this lack of scientific and objective evidentiary support, the Court can not conclude Dr. Slottje's opinion is based upon scientifically valid principles and sufficient facts and data. Therefore, causation testimony by Dr. Slottje must be excluded under *Daubert* and Rule 702.

**B.    Dr. Slottje Must Not Be Permitted to Testify About Purported Damages Relating to Autodesk's False Advertising Claims**

To prevail on a false advertising claim under § 43 of the Lanham Act, a plaintiff must establish that it "has been or is likely to be injured as a result of the [false advertisements] either ***by direct diversion of sales from itself to defendant***, or by ***lessening of the good will which its products enjoy with the buying public***." *In re Century 21-RE/MAX Real Estate Advertising*

1  *Claims Litigation* , 882 F.Supp. 915 (C.D. Cal. 1994)(citing *Cook, Perkiss and Liehe, Inc. v.
2  Northern California Collection Service*, 911 F.2d 242, 244 (9th Cir. 1990)(emphasis added).

3  Failure to provide a reasonably certain estimate of damages under the Lanham Act renders an expert opinion inadmissible. *See Rolex Watch U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999) (affirming a district court's exclusion of an expert's testimony in damages because he failed to show with reasonable certainty what portion of the defendant's sales were attributable to altered and infringing "Rolex" watches).

Because Autodesk's counsel has affirmatively represented that this is not a lost profits case (*see* Ex. 32 at 1, 2), Autodesk must show that SolidWorks Corp.'s purported false advertising lessened the good will its products enjoy with the buying public, and this proof must come from an expert, if anyone. *See In re Century 21*, 911 F.2d at 244; Fed. R. Evid. 702.

Autodesk, however, declined to make available any Rule 30(b)(6) or percipient witness on damages purportedly sustained by Autodesk. (*See* Exs. 24-27.)  In addition, Dr. Slottje testified that he did not perform an analysis to determine whether the alleged false statements on SolidWorks Corp.'s web site led to the sale of SolidWorks software. (*See* Ex. 10, Slottje Tr. 130:25-131:12 and 131:23-132:15.)  Thus, Dr. Slottje's simple identification of the worldwide revenues for SolidWorks software is unrelated to the false adverting claims and does not meet the reasonably certain standard.

### C. Autodesk is Not Entitled to SolidWorks Corp.'s Worldwide Profits

"[A] federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002)*; see also* Fed. R. Civ. Pro. 12(h)(3).  The plaintiff in a Lanham Act case bears the burden "both of making an initial, prima facie showing of jurisdictional facts at the pleading state and of proving those facts by a preponderance at trial." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1997) (citing authorities).

The Lanham Act's coverage of foreign activities is analyzed under the test for extraterritorial application of the federal antitrust laws set forth in *Timberlane Lumber Co. v. Bank of America National Trust & Savings Ass'n*, 548 F.2d 597 (9th Cir. 1967); *see also Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393 (9th Cir. 1985) (affirming motion to limit the

scope of the plaintiff's relief under the Lanham Act to exclude evidence of wholly foreign commerce because, *inter alia*, there was potential to create a conflict with international law where there was a co-pending trademark cancellation proceeding). In order for the court to have jurisdiction over extraterritorial Lanham Act claims, the plaintiff must show that: (1) there must be some effect on American foreign commerce; (2) the effect must be sufficiently great to present a cognizable injury to plaintiffs under the federal statute; and (3) the interests of and links to American foreign commerce must be sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority.[2] *Id.* at 1395.

In *Star-Kist Foods*, for example, the district court granted the defendant's motion to limit the scope of the plaintiff's relief under the Lanham Act to exclude evidence of wholly foreign commerce because "application of the Lanham Act to wholly foreign Philippine commerce could create a conflict with Philippine patent and trademark law" where there was co-pending trademark cancellation proceedings in the Philippines. *Star-Kist Foods*, 769 F.2d at 1396; *see also*, *Zenger-Miller, Inc. v. Training Team, Gmbh*, 757 F.Supp. 1062, 1071 (N.D. Cal. 1991)(requiring additional facts including, *inter alia*, whether plaintiff had a foreign trademark registration to determine the degree of conflict with United States law before applying the Lanham Act extraterritoriality); *Ocean Garden, Inc. v. Markettrade Co., Inc.*, 953 F.2d 500, 503-504 (9th Cir. 1991)(applying Lanham Act where there was *no* finding of pending proceedings, quoting "[a]bsent a determination by the [foreign] court that [the defendant] has a legal right to use the marks, and that those marks do not infringe [the plaintiff's] mark, we are unable to conclude that it would be an affront to [the foreign country's] sovereignty or law….")

---

[2] Third element of the test is analyzed by looking at seven additional factors: The degree of conflict with foreign law or policy, the nationality or allegiance of the parties and the location or principal places of business of corporations, the extent to which enforcement by either state can be expected to achieve compliance, the relative significance of effects on the United States as compared with those elsewhere, the extent to which there is explicit purpose to harm or affect American commerce, the foreseeability of such effect, and the relative importance to the violations charged of conduct within the United States as compared with conduct abroad. *Timberlane*, 549 F.2d at 614.

1   Here, Autodesk and SolidWorks are currently involved in DWG related trademark
2   registration and cancellation proceedings throughout the world, with evidence at least that the
3   European Union refused to recognize Autodesk's purported right to claim DWG as its own in July
4   2008. (*See* Ex. 33 at ADSK0030965.)  Autodesk has since converted its European Union
5   application to national applications for Benelux, France, Germany, Ireland, Italy, Spain and the
6   United Kingdom (*see id*. at ADSK0030964), but Autodesk has not provided any evidence or
7   identified any witness to testify about whether there would be a conflict with United States law,
8   including the degree of conflict depending on the various countries' trademark registration and
9   enforcement laws. (*See* Ex. 34.)

10   In addition, the third *Timberline* element cannot be met here because Autodesk has not
11   provided any evidence, nor has it identified any witnesses, to explain the extent to which
12   enforcement by either the United States or a foreign country can be expected to achieve trademark
13   infringement compliance, the relative significance of the effect on United States commerce as
14   compared to effect on commerce elsewhere, or the relative importance to the alleged acts within
15   the United States as compared with conduct abroad.  *See Timberlane*, 549 F.2d at 614.

16   In light of the above, testimony by Dr. Slottje about profits made by SolidWorks outside of
17   the United States must be excluded because Autodesk cannot establish the necessary jurisdictional
18   facts for the extraterritorial application of the Lanham Act.

## III. CONCLUSION

20   For all the reasons stated above, SolidWorks Corp. respectfully requests that the Court
21   grant this motion *in limine*.

22   DATED:  December 14, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By ___/s/_____
    Claude M. Stern
    Attorneys for Defendant Dassault Systèmes
    SolidWorks Corporation.