```
MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
J. THOMAS MCCARTHY (CA SBN 034728)
TMcCarthy@mofo.com
DAVID E. MELAUGH (CA SBN 219477)
DMelaugh@mofo.com
LYNN M. HUMPHREYS (CA SBN 168062)
LHumphreys@mofo.com
JACQUELINE BOS (CA SBN 243938)
JBos@mofo.com
NATHAN B. SABRI (CA SBN 252216)
NSabri@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
```

Attorneys for Plaintiff
AUTODESK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DASSAULT SYSTÈMES SOLIDWORKS CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No.   3:08-cv-04397-WHA<br><br>**AUTODESK'S OPPOSITION TO SOLIDWORKS' MOTION IN LIMINE NO. 3 TO PRECLUDE DR. DANIEL J. SLOTTJE FROM GIVING TESTIMONY ABOUT CAUSATION AND DAMAGES**<br><br>Date:    December 30, 2009<br>Time:    9:00 a.m.<br>Place:   Courtroom 9, 19th Floor<br>Judge:   Hon. William H. Alsup |

## I. INTRODUCTION

SolidWorks's third of seven motions in limine seeks to bar damages testimony (i) on Autodesk's' trademark infringement claim; (ii) on Autodesk's false advertising claim; and (iii) as to foreign damages. None of these bars is warranted.

SolidWorks' first argument ignores the manner in which the Lanham Act allocates burdens. The burden on Autodesk and its expert and percipient witnesses is simply to show the revenue associated with SolidWorks' acts of infringement. SolidWorks must then show that this revenue did *not* result from its infringement. Because Autodesk will easily carry its burden, it is not appropriate to exclude any of Autodesk's or Dr. Slottje's testimony.

SolidWorks' second argument again ignores Lanham Act burden allocation. And it is essentially a motion for summary judgment in disguise. What SolidWorks is actually asserting is that Autodesk cannot make out the "likelihood of harm" element of its false advertising claims. As discussed below, Autodesk has ample evidence of harm here.

Finally, SolidWorks' third argument also misses the mark. SolidWorks cites cases considering whether to impose jurisdiction over wholly foreign commerce. It does not cite any case involving a United States entity exporting products abroad. Indeed, under the logic of the cases SolidWorks does cite, reaching such revenue poses no jurisdictional problems at all, and therefore excluding it here is in appropriate.

## II. ARGUMENT

### A. Dr. Slottje Easily Satisfies the Burdens Imposed by the Lanham Act, and SolidWorks Ignores the Burdens it Bears

SolidWorks' Motion In Limine No. 3 is an improper effort to shift the burdens of proof established by the Lanham Act. Autodesk and Dr. Slottje's opening burden is straightforward. Autodesk seeks SolidWorks' profits. Autodesk's opening burden is merely to show "defendant's sales." 15 U.S.C. § 1117. It is then *SolidWorks'* burden to "to prove that sales were demonstrably not attributable to the infringing mark," *Nintendo of Am. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) (internal quotation and citation omitted), and to show "all elements of cost or deduction claimed," 15 U.S.C. § 1117(a)(3). Where a defendant fails to carry that burden, an award

of *all* of the defendants' sales is appropriate. *Nintendo*, 40 F. 3d at 1012; *see also* Ninth Circuit Model Civil Jury Instructions, Instruction 15.26 ("The defendant has the burden of proving the expenses [and the portion of the profit attributable to factors other than use of the infringed trademark] by a preponderance of the evidence. Unless you find that a portion of the profit from the sale of the [*specify goods*] using the trademark is attributable to factors other than use of the trademark, you shall find that the total profit is attributable to the infringement."). SolidWorks' motion never mentions this allocation of burden. (Tellingly, this portion of SolidWorks' motion does not cite a single Lanham Act case.)

Actually meeting the plaintiff's burden here is equally straightforward. Autodesk contends SolidWorks has infringed its trademarks in the naming and advertising of four SolidWorks products. Three of the products — DWGgateway, DWGviewer, and DWGnavigator — are offered to the worldwide public by SolidWorks for free download. As Dr. Slottje will testify, *reams* of documents confirm that SolidWorks' purpose in offering these products for free was to generate sales and leads so that SolidWorks could sell its eponymous flagship product, "SolidWorks."[1] The facts are even plainer as to the remaining DWGseries product — DWGeditor. That product is *included with* the SolidWorks product. That alone should satisfy Dr. Slottje's opening, basic burden to link the sales of the SolidWorks product to SolidWorks' infringing activities.

On the basis of the above, Dr. Slottje identified SolidWorks' revenue from its "SolidWorks" product as the relevant body of "defendant's sales." The way the Lanham Acts sets up the parties' burdens, *that is all Dr. Slottje must do*. What SolidWorks appears to believe is that Autodesk must show affirmatively what portion of SolidWorks' sales were caused by its infringement. The law is

---

[1] Declaration of Jacqueline Bos in Support of Autodesk's Opposition to SolidWorks' Mot. in Limine No. 3 ("Bos No. 3 Opp. Decl."), filed herewith, ¶ 2, Exs. 1 (SW0035938) (DWGseries advertising, cross-promoting SolidWorks product); ¶ 3, Ex. 2 (SW0000830) (setting goal to "[s]tart converting Gateway users to [SolidWorks]")' ¶ 4, Ex. 3 (Q3 2005 Dassault Systèmes Earnings Conference Call – Final," Voxant FD (Fair Disclosure) Wire, 10/25/05) (CEO on earning conference call, stating that DWGgateway "should ultimately help to bias the purchasing process in favor of SolidWorks"); ¶ 5, Ex. 4 (SW0000926) (noting development of lead system to migrate DWGseries users to SolidWorks); ¶ 6, Ex. 5 (SW0037313, SW0037316) (wargame meeting notes, describing DWGeditor as a product to "encourage the [c]ustomer to purchase [SolidWorks] [s]ubscription [s]ervices" and help SolidWorks "get . . . foot back in the door" with Autodesk customers); ¶ 7 Ex. 6 (SW0033885) (describing "Autodesk attack campaign to promote DWGgateway and generate leads among AutoCAD users").

1  instead clear that it *SolidWorks'* burden to show what portion of the SolidWorks product sales were *not* caused by its trademark infringement and what deductions of costs are appropriate from revenue to derive profits. *See, e.g., Nintendo*, 40 F.3d at 1012; 15 U.S.C. § 1117(a)(3).

Courts confirm that this allocation of burden to the defendant is especially appropriate where the defendant has taken no steps to separate out sales caused by infringing activities and sales distinct from such activities. *Cosmos Jewelry, Ltd. v. Po Sun Hon Co.*, No. 06-56338, 2009 U.S. App. LEXIS 6187, at *6 (9th Cir. 2009) (finding plaintiff "entitled to the award of the total amount of profits from the infringing period" because "'to hold otherwise would give the windfall to the wrongdoer'" rewarding defendant for failing to "isolate his profits from the sales of [infringing] jewelry" (quoting *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 207 (1942))). Those are precisely the facts here. SolidWorks has not adduced any percipient or expert evidence demonstrating that SolidWorks separately tracks which "SolidWorks" product sales resulted from leads or goodwill generated by its infringing DWGseries products and which did not. Because SolidWorks is in the unique position to collect, track, and analyze such information, it is manifestly unfair to propose punishing Autodesk for not doing so.

SolidWorks hopes to carry its considerable burden at trial with the testimony of its expert, Mr. Stephen Clarke. (Notably, Mr. Clarke offers no opinion in support of this motion.) Dr. Slottje's rebuttal expert reports have detailed the myriad deficiencies in Mr. Clarke's testimony, which Autodesk will address at trial. In place of Mr. Clarke's analysis, Dr. Slottje suggested a method by which the defendant here might plausibly carry its burden to apportion sales and deduct costs, arriving at the figures reported in SolidWorks' Motion. That Dr. Slottje intends to offer this testimony is not to suggest any alteration in the burdens; it simply to illustrate how Mr. Clarke might have offered a defensible estimate of SolidWorks' infringing profit.

### B.  Dr. Slottje Can Testify About Lanham Act Damages from SolidWorks' False Advertising

SolidWorks is correct that as a threshold matter, to prevail on Autodesk's false advertising claim, Autodesk will need to show that it is at least "likely" that SolidWorks' false advertising will harm will come to Autodesk. (Solidworks' No. 3 Mot. in Limine at 4-5.) Autodesk will introduce

percipient testimony and documentary evidence regarding the likelihood of such harm.[2]  Indeed, Autodesk anticipates that the jury will see documents demonstrating that SolidWorks *intended* its DWGseries products to cause Autodesk tens of millions of dollars of harm — hurting Autodesk was one of the products' primary purposes.[3]  Autodesk will therefore easily meet its burdens on its false advertising claims.

SolidWorks is also correct that Autodesk does not measure the false advertising damages it seeks by the profits Autodesk has lost.  (Solidworks' No. 3 Mot. in Limine at 5.)  Instead, Autodesk intends to proceed in measuring its damages as the Lanham Act provides by seeking SolidWorks' profits.  That analysis will proceed in the fashion describe above in Section II.A.  Namely, Autodesk will argue, through Dr. Slottje and other witnesses and evidence, that SolidWorks misled the public about the capabilities of its DWGseries products to generate additional downloads of those products, to in turn generate sales leads for its "SolidWorks" product — the repeatedly stated objective for the DWGseries products.  Autodesk and Dr. Slottje will therefore identify the "SolidWorks" product revenue as its opening burden under the Lanham Act, and the burden will then shift to SolidWorks to show what revenue is not attributable to its false advertising.

### C. Autodesk is Entitled to SolidWorks' Worldwide Profits

SolidWorks claims Autodesk cannot seek profits SolidWorks earned on products SolidWorks sold outside the United States.  (Solidworks' No. 3 Mot. in Limine at 5-7.)  As a basic matter, the Supreme Court has confirmed that the Lanham Act can reach products distributed abroad.  In *Steele v. Bulova Watch Co.*, 344 U.S. 280, 281 (1952), the Court considered "whether a United States District Court has jurisdiction to award relief to an American corporation against acts of trademark infringement and unfair competition consummated in a foreign country by a citizen and resident of

---

[2] SolidWorks suggests that likelihood of harm evidence can only come through expert testimony.  (Solidworks' No. 3 Mot. in Limine at 5.)  It is unclear what case SolidWorks claims supports this argument; SolidWorks combines the name for one case (*In re Century 21-RE/MAX Real Estate Advertising Claims Litigation*, 882 F. Supp. 915 (C.D. Cal. 1994)) and the citation for another (*Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service*, 911 F.2d 242, 244 (9th Cir. 1990)).  (Solidworks' No. 3 Mot. in Limine at 5 (citing "*In re Century 21*, 911 F.2d at 244").)  *Neither* case says anything about the likelihood of harm analysis being limited to expert testimony.

[3] Bos No. 3 Opp. Decl. ¶ 8, Ex. 7 (SW0013581) (SolidWorks internal presentation estimating DWGseries caused Autodesk to lose $53-$89 million).

the United States." The Court held "[i]n the light of the broad jurisdictional grant in the Lanham Act, we deem its scope to encompass" such jurisdiction — specifically, the sale, in Mexico, of products infringing the plaintiff's trademark. *Id.* at 286.

Against that backdrop, SolidWorks cited cases considering whether a court has jurisdiction over activities (typically by foreign nationals) occurring *wholly* abroad. Such caselaw is inapposite. Here, the defendant SolidWorks is based in Concord, Massachusetts. The question is simply whether to impose Lanham Act liability on SolidWorks for only those infringing products it sells here, or whether to also impose liability on the products it exports from the United States abroad. This is therefore *not* a case in which the Court is grappling with "wholly foreign commerce" that potentially implicates the Court's jurisdiction.

SolidWorks' lead case — *Star-Kist Foods, Inc. v. P. J. Rhodes & Co.*, 769 F.2d 1393 (9th Cir. 1984) — is illustrative of the distinction SolidWorks' motion fails to grasp. There, the plaintiff appealed an order *limiting* its remedy to profits attributable to products sold in *or exported from* the United States. There was *no dispute* that revenue from products originating from the United States was appropriately within the plaintiff's remedy. Instead, the dispute centered on whether "shipments to the Philippines from other foreign nations" should be counted — i.e., whether the plaintiff could recover on products created in one foreign country and shipped to another foreign country. *Id.* at 1394.

Here, there is no dispute that the "SolidWorks" product is designed and produced in the United States. This case therefore bears no resemblance to SolidWorks' cases — this is not a circumstance in which SolidWorks has some product designed in Paraguay and sold in Australia. SolidWorks' caselaw is therefore of no help: *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1070 (N.D. Cal. 1991), concerns whether to assert jurisdiction over a German national whose allegedly infringing activities were confined to Germany. *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406 (9th Cir. 1997), likewise involved foreign activity by a German national. And the Ninth Circuit's opinion in *Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500 (9th Cir. 1991), when read in its entirely, actually favors Autodesk, not SolidWorks. There, the products at issue were created in Mexico and sold only in the Far East. *Id.* at 502. The court went through the

"*Timberlane*" analysis (advocated by SolidWorks here) and concluded jurisdiction was appropriate. The Court also held, *as an independent basis for jurisdiction*, that the simple fact that the defendants' products — again, made and sold exclusively abroad — passed through a U.S. free trade zone was sufficient to render such activity subject to U.S. jurisdiction. *Id.* at 504. If those facts are enough to subject foreign trade to liability, surely the facts here are likewise sufficient.

In the end, SolidWorks can point to no case excluding infringing products created in the United States from a Lanham Act measure of damages, and on that basis this Court should deny this portion of SolidWorks' motion.

### III.  CONCLUSION

For the reasons stated above, the Court should deny SolidWorks' Autodesk's Motion in Limine No. 3.

Dated: December 22, 2009

MICHAEL A. JACOBS
J. THOMAS MCCARTHY
DAVID E. MELAUGH
LYNN M. HUMPHREYS
JACQUELINE BOS
NATHAN B. SABRI
MORRISON & FOERSTER LLP

By:  /s/ *Michael A. Jacobs*
          MICHAEL A. JACOBS

Attorneys for Plaintiff
AUTODESK, INC.