1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Claude M. Stern (Bar No. 96737)
2    Evette D. Pennypacker (Bar No. 203515)
     Andrea Pallios Roberts (Bar No. 228128)
3    Zachary M. Fabish (Bar No. 247535)
   555 Twin Dolphin Drive, Suite 560
4  Redwood Shores, California  94065
   Telephone:  (650) 801-5000
5  Facsimile:  (650) 801-5100

6
   Attorneys for Defendant Dassault Systèmes
7  SolidWorks Corporation

8

9                      UNITED STATES DISTRICT COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11                          SAN FRANCISCO DIVISION

12 | AUTODESK, INC., a Delaware corporation, | CASE NO. 3:08-cv-04397-WHA
13 | Plaintiff, | **DEFENDANT SOLIDWORKS' MOTION *IN LIMINE* #4 TO PRECLUDE DR. DOMINIQUE M. HANSSENS FROM TESTIFYING ABOUT LIKELIHOOD OF CONFUSION AND SOLIDWORKS' PURPORTED BRAND APPROPRIATION**
14 | vs. |
15 | DASSAULT SYSTÈMES SOLIDWORKS CORPORATION,  a Delaware corporation, |
16 | |
17 | Defendant. |

18       **Issue to be addressed: Exclusion of testimony and all other evidence by Dr.**

19 **Dominique Hanssens concerning likelihood of confusion and/or Autodesk's "brand image"**

20 **purportedly "appropriated" by SolidWorks.**

21       Pursuant to Federal Rules of Evidence 401, 402, 403, 702, and *Daubert v. Merrell Dow*

22 *Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Defendant Dassault Systèmes SolidWorks

23 Corporation ("SolidWorks") will, and hereby does, move the Court *in limine* for an order

24 prohibiting Plaintiff Autodesk, Inc. ("Autodesk") and its counsel from calling Dr. Dominique

25 Hanssens to offer expert testimony concerning likelihood of confusion and/or Autodesk's "brand

26 image" purportedly "appropriated" by SolidWorks.  SolidWorks also seeks an order precluding

27 Autodesk, its counsel, and its witnesses from offering, eliciting, or mentioning evidence

28 concerning same.

## I. INTRODUCTION

Autodesk has asserted various claims against SolidWorks under the Lanham Act for false designation of origin, false advertising, and trademark infringement. One claims relates to DWG, the other relates to SolidWorks' use of the two words "AutoCAD" and "Autodesk" on its website, and the third is a false advertising claim focused on two alleged specific representations on SolidWorks' DWGseries website. In support of these claims, Autodesk intends to offer the testimony of Dr. Dominique M. Hanssens to opine, not about the issues that are in this case, but instead on, *inter alia*, the value and importance of the collective brand "soup" that makes up Autodesk's "brand image," as well as unspecified harm to that brand image because of SolidWorks' purported "appropriation" of that amorphous "brand image." (Ex. 35 at 3-4, 8-20.[1])

Dr. Hanssens' opinions and testimony do not meet the admissibility standards under Federal Rules of Evidence 403, 702 and *Daubert* for at least two reasons.

First, as conceded at his deposition, the opinions he offers, pertain to the issue of trademark <u>*dilution*</u> and are not relevant to the claims asserted against SolidWorks.

Second, Dr. Hanssens' global "brand image" analysis and testimony do not relate to any of the specific "DWG" or other remaining issues in the case, but rather is at most linked to Autodesk's recently adjudicated and rejected "Real" trade dress claims.

Accordingly, the Court should prohibit Dr. Hanssens from testifying about the purported "appropriation" by SolidWorks of Autodesk's "brand image," and any testimony concerning likelihood of confusion.

## II. STATEMENT OF RELEVANT FACTS

Dr. Hanssens submitted his initial expert report on September 25, 2009 ("report" or "initial report"). Dr. Hanssens provides three opinions concerning Autodesk's "brand image":

> Autodesk's trademarks (which include AutoCAD®, DWG™, RealDWG™, and the "Experience if Before it's Real" slogan), and Autodesk's trade dress are significant elements of Autodesk's **brand image**;

---

[1] All exhibit references are to the Declaration of Maureen Pettibone Ryan in Support of SolidWorks' Motions In Limine 1-7 filed herewith.

> The association in consumers' minds of the less-than-satisfactory performance of SolidWorks's DWG-designated products with Autodesk's **brand image** is likely to have a detrimental impact on Autodesk's brand, including but not limited to its trademarks; and
>
> If a likelihood of confusion is proven there will be harm to Autodesk's **brand name, trademarks, and other brand elements, and to the good will and reputation** that Autodesk enjoys in the marketplace.

(Ex. 35 at 4 (emphasis added).)

As seen in his conclusions, Dr. Hanssens indiscriminately throws each of Autodesk's disparate "brand elements" (his term) into one big soup in order to arrive at his opinions concerning Autodesk's global "brand image." (*See also id.* at 9 ("**The Autodesk brand image** comprises not only the intrinsic cues I referred to above – cues that are associated with Autodesk's product features – but also extrinsic cues such as the AutoCAD® brand name and trademark, the DWG technology, Autodesk's other trademarks, including the RealDWG™ name and the slogan "Experience it Before it's Real," and Autodesk's trade dress").) Dr. Hanssens' report also provides the sources of harm to Autodesk's global "brand image" he believes is at issue in this litigation:

> 44. All of the above-mentioned claims involve, singly or in combination, elements of **the Autodesk brand**. As noted above, **brand image** can be damaged by unauthorized use of brand elements by a company other than the owner of the brand. [footnote omitted] In the instant case, the sources of harm to **Autodesk's brand image** are twofold: the first source of harm is SolidWorks's general marketing strategy and tactics that involve a **series of appropriations** of Autodesk's brand elements; the second source of harm occurs via SolidWorks's specific misrepresentation of its DWG-designed products. **As a practical matter, these two sources operate in tandem and affect Autodesk's brand image**.

(*Id.* at 21 (emphasis added).) However, this case does not concern any sort of amorphous "Autodesk brand image." It concerns SolidWorks' use of the words "DWG," "Autodesk" and "AutoCAD."

Dr. Slottje next performed a mutated, unfocused *Sleekcraft* analysis whereby he mixes and matches the various Autodesk "brand elements" under each of the seven main *Sleekcraft* factors to support his opinion that SolidWorks' purported "appropriations" of the various brand elements caused harm to Autodesk's global "brand image." (*Id.* at 25-36.) For example, he focuses exclusively on AutoCAD for the strength of the mark factor (*id.* at 26-17), AutoCAD and DWG

for proximity of the goods factor (*id.* at 27-28), AutoCAD, DWG and the now adjudicated "Real" claim elements for the similarity of the marks factor (*id.* at 28-20), AutoCAD and DWG for marketing channels used factor (*id.* at 30-31), DWG and unidentified "Autodesk products" under the types of goods and the degree of care likely to be exercised by the purchaser factor (*id.* at 31), and AutoCAD and DWG under the defendant's intent in selecting the mark factor. (*Id.* at 31-35.) If Dr. Hanssens was to do a *Sleekcraft* test in this case, however, he should have done a separate analysis on each of the words at issue.

Dr. Hanssens attempted to justify this piecemeal analysis and methodology by stating he was asked to perform "a *holistic analysis* as opposed to an element by element analysis" because of his knowledge and expertise is in brand strategy. (Ex. 6, Hanssens Tr. 57:22-58:9.) Dr. Hanssens conceded that he has "no particular opinion on trademarks because it's outside" of his expertise, and that his analysis is based on the "totality of the brand image created by Autodesk." (*Id.*, Hanssens Tr. 52:7-14, 86:6-87:9.)

Making matters worse, during the deposition, Dr. Hanssens began to make clear that his opinion in this case was not that anyone had been confused—or was likely to be confused—by SolidWorks' use of the words, "DWG," "AutoCAD" or "Autodesk. SolidWorks' counsel asked Dr. Hanssens point blank if, instead of having conducted a conventional confusion-as-to-source *Sleekcraft* test—which is what Dr. Hanssens should have done in this case—what he had actually performed was a trademark *dilution* analysis. Dr. Hanssens stated that while he would not comment on dilution because he thought it was a legal term, "the spirit of dilution, which is the effect on the brand image," is certainly something that is in his report. (*Id.*, Hanssens Tr. 176:15-20, 221-222.) Dr. Hanssens justified his approach by stating that it would be "artificial" to separate the brands when performing his analysis. (*Id.*, Hanssens Tr. 256:20-22.)

Although Dr. Hanssens acknowledges that the *Sleekcraft* test is performed to evaluate likelihood of confusion in trademark infringement matters, **he conceded he had not been asked to provide such an opinion**. (*See* Ex. 35 at 26.)

## III. ARGUMENT

### A. Legal Standard for Admissibility Under *Daubert* and Rule 702

Before allowing expert testimony to be presented to the trier of fact, the Court must ensure that it is both relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The standard for fit under rule 702 and the *Daubert* test is also more stringent than that of bare relevance under Rule 402. *See Redfoot v. B.F. Ascher & Co.*, 2007 WL 1593239, *4 (N.D. Cal. Jun. 1, 2007) ("The standard for fit is higher than bare relevance.")(citation omitted).

This inquiry is not merely a reiteration of the relevancy inquiry: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (citation and quotation signals omitted). Autodesk has the burden to show by a preponderance of the evidence that Dr. Hanssens testimony is admissible. *Redfoot*, 2007 WL 1293239 at *3.

### B. Dr. Hanssens Must Not be Permitted to Testify About His Mutated Likelihood of Confusion Opinions and/or SolidWorks' Appropriation of Autodesk's Brand Image Opinions Because Such Testimony Does Not "Fit" the Allegations in Autodesk's First Amended Complaint and Are Legally Irrelevant

A court must exclude evidence that relates to erroneous or inapplicable legal theories. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059-1060 (9th Cir. 2008) (excluding expert testimony about a legal theory that the court ruled was not applicable).

Under Ninth Circuit law, to succeed on a trademark infringement claim, a claimant must prove two things: (1) that the claimant holds a protectable mark, and (2) the alleged infringer's imitating mark is likely to cause confusion. 15 U.S.C. 1125(a)(1)(A); *see also Survivor Media, Inc. v. Survivor Productions,* 406 F.3d 625,630 (9th Cir. 2005).[2] This is the applicable law pertaining to the allegations in Autodesk's First Amended Complaint.

---

[2] To determine the likelihood of confusion, the court must look to the eight factor test laid out in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) which includes: (1) strength of the
(footnote continued)

Trademark dilution under §43(c), on the other hand, focuses on "dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. 1125(c). Dilution by tarnishment is found when there is an "association arising from the similarity between a mark or trade name and a famous mark that *harms the reputation* of the famous mark." 15 U.S.C. 1125(c)(2)(C) (emphasis added). Tarnishment and dilution concern impacts on the reputation of a famous mark, not the likelihood of confusion that may result between two marks. Autodesk has not alleged trademark dilution, in any form, in this action.

In *Nationwide Transport Finance*, the Ninth Circuit affirmed the district court's decision to restrict the scope of an expert's testimony on the ground it related to an erroneous legal theory put forth by the party offering the expert testimony. 523 F.3d at 1060. The Ninth Circuit stated that, "[a]s we have previously noted, a party is not entitled to present evidence on an erroneous or inapplicable legal theory to the jury, even if the evidence might have been relevant in some conceivable manner." *Id.* at 1063. Thus, the Ninth Circuit held that the probative value of any reference to the erroneous legal principle was substantially outweighed by the risk of misleading or confusing the jury. *Id.*

Like the expert in *Nationwide Transport*, Dr. Hanssens' proffered testimony is irrelevant here because it does nothing to prove the false designation of origin, false advertising and trademark infringement claims; instead, his opinions are strictly tied to a dilution by tarnishment theory not a part of this case.

As to whether Autodesk has a protectable mark which is required to prove trademark infringement, Dr. Hanssens he has "no particular opinion on trademarks because it's outside of my expertise." (Ex. 6, Hanssens Tr. 86:6-87:9.) When asked about determining the strength of the Autodesk marks, Dr. Hanssens admitted that he had not heard of the four types of classifications

---

mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id*. at 348-349.

that a trademark could be labeled.  (*Id.,* Hanssens Tr. 179:7-11.)  Even when Dr. Hanssens uses the term "mark" in his report, he concedes is not referring to *any* trademark that Autodesk allegedly has an interest in, or even any trademark in a legal sense.  (*Id.*, Hanssens Tr. 119:12-120:9.)

Dr. Hanssens' testimony is equally irrelevant with regards to likelihood of confusion under the *Sleekcraft* factors.  Dr. Hanssens explicitly states that he has "not been asked to provide an opinion on the likelihood of confusion."  (Ex. 35 at 26.)  Instead, the scope of Dr. Hanssens expert opinions deal almost exclusively with the disparate and amorphous Autodesk "brand elements" that make up Autodesk's entire "brand image."  (Ex. 35 at *passim.*)  The mix-and-match approach Dr. Hanssens applies when analyzing AutoCAD, DWG, "Experience it before it's real," and the orange frame under the *Sleekcraft* factors is entirely unfocused and confusing and has the potential to mislead the jury because there is no indication that any mark, standing alone, is likely to cause confusion among the purchasing public.  (*See id.* at 25-36.)

That Dr. Hanssens' holistic approach is more suited for a trademark dilution theory is further confirmed by his deposition testimony where he stated that "[t]he spirit of [] dilution, which is the effect on the brand image, is certainly something that is in my report," and that it would be "artificial" to separate the brands when performing his *Sleekcraft* analysis.  (Ex. 6, Hanssens Tr. 176: 15-20 and 256:20-22.)  Dr. Hanssens' report also closely mirrors the standard for tarnishment whereby he states that SolidWorks' marketing strategies operate to "affect Autodesk's brand image" and to "*undermine Autodesk's brand image*"—a shorthand for the reputational injury which is what dilution or tarnishment is all about—by becoming "unauthorized extensions of the high-quality Autodesk brand."  (Ex. 35 at 21.)  He also concludes that that if a likelihood of confusion is established, "there will be harm to [the]… reputation that Autodesk enjoys in the marketplace."  (*Id.* at 36.)  This is all well and good for a dilution analysis, bit has no place in this case.

Not only are Dr. Hanssens' opinions concerning Autodesk's "brand image" irrelevant, the global "brand image" soup Dr. Hanssens created by mixing together both "brand elements" which are still a part of this litigation (*i.e.*, AutoCAD, DWG, Autodesk) and those that are not (*i.e.*, the

"Real" and orange frame claims) has effectively been made unreliable because of this Court's Order granting summary judgment in favor of SolidWorks. In *Stoebner Holdings, Inc. v, Automobili Lamborghini S.P.A.*, 2007 WL 4230878, *5, (D. Hawai'i Nov. 30, 2007), for example, the court precluded testimony from plaintiff's expert because his damages opinion included and relied upon facts and damages theories that were no longer part of the litigation. The court reasoned that the expert's "depreciation determination based on all of the Murcielago's problems [no longer] 'fit' the present issues in this case…. Indeed, allowing this testimony would likely mislead the jury concerning what damages are actually at issue in this action." *Id.* at *5 (*citing Daubert II*, 43 F.3d at 1321 n. 17).

Similarly here, Dr. Hanssens' opinions concerning the value and harm to Autodesk's global "brand image" because of SolidWorks' purported "appropriations" heavily relies upon the "distinctive" orange frame and "Experience it before it's real" slogan rejected by the Court. (*See* Ex. 35 at 3-4,17-21, 29-30.)  Dr. Hanssens' provides no guidance as to the relative importance of any single "brand element"—*i.e.*, AutoCAD *vs.* DWG *vs.* RealDWG *vs.* "Experience it before it's real"—nor does he attempt to value any one of them standing alone. As such, his opinions concerning SolidWorks' purported misappropriation of the overall Autodesk brand image no longer "fits" the remaining issues in this case. *See Stoebner Holdings, Inc. v. Automobili Lamborghini S.P.A.*, 2007 WL 4230878 at *5.

## IV.  CONCLUSION

In light of the above, SolidWorks respectfully requests that the Court grant this motion *in limine*.

DATED: December 14, 2009          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By  /s/
Claude M. Stern
Attorneys for Defendant Dassault Systèmes SolidWorks Corporation.