MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
J. THOMAS MCCARTHY (CA SBN 034728)
TMcCarthy@mofo.com
DAVID E. MELAUGH (CA SBN 219477)
DMelaugh@mofo.com
LYNN M. HUMPHREYS (CA SBN 168062)
LHumphreys@mofo.com
JACQUELINE BOS (CA SBN 243938)
JBos@mofo.com
NATHAN B. SABRI (CA SBN 252216)
NSabri@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Plaintiff
AUTODESK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DASSAULT SYSTÈMES SOLIDWORKS CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No.   3:08-cv-04397-WHA<br><br>**AUTODESK'S OPPOSITION TO SOLIDWORKS' MOTION IN LIMINE NO. 4 TO PRECLUDE DR. DOMINIQUE M. HANSSENS FROM TESTIFYING ABOUT LIKELIHOOD OF CONFUSION AND SOLIDWORKS' PURPORTED BRAND APPROPRIATION**<br><br>Date:    December 30, 2009<br>Time:   9:00 a.m.<br>Place:   Courtroom 9, 19th Floor<br>Judge:  Hon. William H. Alsup |

## I. INTRODUCTION

SolidWorks' Motion *in limine* No. 4 asks the Court to prohibit expert testimony from Dr. Dominique Hanssens "concerning likelihood of confusion and/or Autodesk's 'brand image' purportedly 'appropriated' by SolidWorks." (SolidWorks' Mot. in Limine No. 4 ("Mot.") at Cover Page.) Then SolidWorks brazenly asks the Court for "an order precluding Autodesk, its counsel, and its witnesses from offering, eliciting, or mentioning evidence concerning same." (*Id.*) SolidWorks' suggestion that Autodesk should somehow not be allowed to offer evidence regarding likelihood of confusion - the crux of this case - from *any* witness is ridiculous. Likewise, its request to exclude Dr. Hanssens' testimony is unfounded because it mischaracterizes Dr. Hanssens' opinions. Moreover, certain of SolidWorks' criticisms apply equally or more so to opinions from its own marketing expert, Mr. Peter Sealey. Accordingly, if any restrictions are made, the same rules should apply to both experts.

## II. RELEVANT FACTUAL BACKGROUND

Dr. Dominique M. Hanssens is the Bud Knapp Professor of Marketing at UCLA Anderson School of Management, where he has served on the faculty for over thirty years. He has frequently consulted on marketing issues for companies in a variety of industries. ( Expert Report of Dominique M. Hanssens ("Hanssens Rpt.")) ¶ 1 & Ex. 1 (attached as Ex. 35 to Ryan Decl.).) Here, Dr. Hanssens was asked to provide opinions regarding the marketing of Autodesk products, as well as certain marketing strategies and tactics used by SolidWorks. (Hanssens Rpt. at 2.) Because SolidWorks had taken a "holistic" approach to copying Autodesk marks and branding, Dr. Hanssens applied a similar holistic approach to his analysis. He concluded:

> a) Autodesk's trademarks (which include AutoCAD®, DWG™. RealDWG™ and the "Experience it Before it's Real" slogan) and Autodesk's trade dress are significant elements of Autodesk's brand image.
>
> b) The association in consumers' minds of the less-than-satisfactory performance of SolidWorks' DWG-designated products with Autodesk's brand image is likely to have a detrimental impact on Autodesk's brand, including but not limited to its trademarks.

> c) If a likelihood of confusion is proven then there will be harm to Autodesk's brand name, trademarks and other brand elements, and to the goodwill and reputation that Autodesk enjoys in the marketplace.

(Hanssens Rpt. ¶ 6.)

Nonetheless, his report does address specific elements of Autodesk's claims and does not, as SolidWorks contends, "heavily rel[y] upon" the orange frame and Real claims. (Mot. at 7.) For example, in connection with Autodesk's infringement and false designation of origin claims, Dr. Hanssens offers testimony about each of the *Sleekcraft* factors, including the factors relating to strength of the AutoCAD mark, similarity of the DWG and SolidWorks' DWGseries marks, proximity of the goods, marketing channels used, types of goods and the degree of purchaser care, and defendant's intent. (Hanssens Rpt. ¶¶ 50-79.) Although Dr. Hanssens does, at various points, explain how a particular *Sleekcraft* factor might apply to the orange frame, his testimony regarding the factors' application to DWG and AutoCAD does not hinge on the orange frame allegations, as SolidWorks suggests. In addition, Dr. Hanssens provides an analysis of SolidWorks' false advertising and how, if such statements are in fact literally false or misleading (a fact to be established by a different Autodesk expert), there will be a detrimental impact on Autodesk's brand image. (*Id.* ¶¶ 46-49.)

SolidWorks also offers an expert report from a marketing consultant, Dr. Peter Sealey, in which Dr. Sealey, among other things, purported to "[a]nalyze whether Autodesk has established a brand in 'dwg.'" (Decl. of Jacqueline Bos in Support of Autodesk's Opp'n to SolidWorks' Mot. in Limine No. 4 ("Bos No. 4 Opp. Decl"), filed herewith, ¶ 2, Ex. 1 (Expert Testimony of Peter Sealey, dated October 9, 2009 ("Sealey Report.") at 1). In his report, Dr. Sealey emphasizes his concern about the effect of a DWG trademark on competition: "It appears that only when SolidWorks' DWG series products became a business threat did Autodesk decide to mount a challenge to the use of 'dwg.' My conclusion, therefore, is that Autodesk is acting to stifle competition and not to build a brand." (Sealey Rpt. ¶ 38.) He then tries to draw a comparison with the competition between Apple and Microsoft:

> Apple and Microsoft aggressively compete on the functionality and attributes of their respective iWord and Office suite of products. Apple markets the unique features of iWorks as does Microsoft with respect to Microsoft Office. Apple stresses this cross platform

capability in marketing iWorks.  <u>But they do not compete by blocking or limiting the cross platform usability of the file format indicators</u>.

(Sealey Report ¶ 44 (emphasis in the original).)

### III.    ARGUMENT

**A.    Dr. Hanssens' Testimony is Entirely Consistent With Autodesk's Legal Theories of Infringement and False Advertising.**

SolidWorks is correct in that part of Autodesk's burden at trial will be to prove likelihood of confusion in connection with its DWG trademark claim by reference to the *Sleekcraft* factors.  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).[1]  SolidWorks is wrong, however, when it claims that Dr. Hanssens' proffered testimony "is irrelevant here because it does nothing to prove the false designation of origin, false advertising and trademark infringement claims." (Mot. at 5.)  First, SolidWorks' position suggests that unless Autodesk uses Dr. Hanssens' testimony to prove each and every element of likelihood of confusion, none of his testimony is admissible.  Furthermore, SolidWorks then seems to ask the Court to preclude *Autodesk* from offering evidence of likelihood of confusion in any other way.  SolidWorks offers no legal authority for such an absurd proposition.

Second, Dr. Hanssens' testimony is relevant to both Autodesk's trademark claims and its false advertising claims.  Dr. Hanssens states explicitly in his report:

> In the instant case, the sources of harm to Autodesk's brand image are twofold: the first source of harm is SolidWorks's general marketing strategy and tactics that involve **a series of appropriations of Autodesk's brand elements**; the second source of harm occurs via SolidWorks's specific **misrepresentations** of its DWG-designated products.  As a practical matter, these two sources operate in tandem and affect Autodesk's brand image.

(Hanssens Rpt. ¶ 44 (emphasis added).)  As noted above, in his report, he applies his marketing expertise to provide an analysis of each of the *Sleekcraft* factors, as well as an entire section regarding SolidWorks' false advertising and the resulting harm.  (*Id.* ¶¶ 46-49.)  Such harm to Autodesk's goodwill in the marketplace is relevant to Autodesk's false advertising claim.  *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003) (citing *Cook, Perkiss & Liehe, Inc. v. N. Cal.*

---

[1] As the Court made clear in its summary judgment order, however, *Sleekcraft* does not apply to Autodesk's trademark infringement claim regarding its AutoCAD® mark.  Instead, SolidWorks there bears the burden of proving nominative fair use.  (MSJ Order (D.I. 195) at 17.)

AUTODESK'S OPPOSITION TO SOLIDWORKS' MOTION IN LIMINE NO. 4
CASE NO. 3:08-cv-04397-WHA
sf-2782302

3

*Collection Serv.*, 911 F.2d 242, 244 (9th Cir. 1990) (per curiam). Dr. Hanssens' testimony will be helpful to the jury's understanding of all of these issues.

SolidWorks tries to argue that "[Dr. Hanssens'] opinions are tied to a dilution by tarnishment theory" and that "Dr. Hanssens' holistic approach is more suited for a trademark dilution theory." (Mot. at 6.) In fact, Dr. Hanssens does not refer whatsoever to dilution; nor does he frame his opinions in the context of "trademark dilution theory." Indeed, he states in his deposition testimony that "if you look at what I was asked to do, the word "dilution" is not in [my report]." (Bos No. 4 Opp. Decl. ¶ 3, Ex. 2 (Hanssens Dep. Tr.) at 176:21-177:3.) Further, he emphasizes that his focus is on SolidWorks' *appropriation* of Autodesk's brand image. (*Id.* at 221:25-222:13.) Dr. Hanssens' testimony is therefore entirely consistent with Autodesk's false designation of origin and trademark infringement claims. Interpreting his opinions relating to SolidWorks' appropriation of Autodesk's brand image as a predicate to a theory of trademark dilution is misleading.

SolidWorks' motion further claims that Dr. Hanssens was asked "point blank" by SolidWorks' counsel if "what he had actually performed was a trademark *dilution* analysis." (Mot. at 3 (emphasis in original).) The relevant passage from Dr. Hanssens deposition states:

> [Q.] I take it you have no opinion that what my client did caused any dilution to any Autodesk brand?
>
> A. Dilution, I believe, is a legal term. And if I have used it somewhere, then I would like to see where so I can provide you with a precise answer. And I'm not a legal expert. The spirit of the dilution, which is the effect on the brand image, is certainly something that is in my report.
>
> Q. Okay. But you would agree that you haven't been asked to provide an opinion about the extent to which anything my client did diluted any Autodesk brand?
>
> . . . .
>
> THE WITNESS: One -- once again, if you look at what I was asked to do, the word "dilution" is not in there.

(Bos No. 4 Opp. Decl. ¶ 3, Ex.2 at 176:12 - 177:3.) To infer from this testimony that what Dr. Hanssens "actually" performed was a trademark dilution analysis strains credibility, particularly in light of his focus on the *Sleekcraft* factors.

### B. Dr. Hanssens Properly Did Not Provide An Ultimate Conclusion Regarding Likelihood of Confusion Itself.

SolidWorks tries to take Dr. Hanssens to task because he had "not been asked to provide an opinion on the likelihood of confusion." (Hanssens Rpt. ¶ 50). SolidWorks cites to no authority, however, for its suggestion that Dr. Hanssens was required to provide an opinion on the ultimate issue of likelihood of confusion. Indeed, the law is to the contrary. In *YKK Corp. v. Jungwoo Zipper Co., Ltd.*, 213 F. Supp. 2d 1195, 1203 (C.D. Cal. 2002), for example, on a motion for summary judgment, the court rejected the defendants' expert's conclusion, based upon his application of the *Sleekcraft* factors, that there was no likelihood of confusion between the two trademarks:

> By opining on the likelihood of confusion based on the *Sleekcraft* factors, the Anson Report draws a legal conclusion. While Fed. R. Evid. Rule 704 abolished the so-called "ultimate issue" rule, "in general, testimony about a legal conclusion, or the legal implications of evidence is inadmissible under Rule 704." 4 Weinstein's Federal Evidence § 704.04[1] . . .; *see also United States v. Weitzenhoff*, 1 F.3d 1523, 1531 (9th Cir. 1993), *modified on other grounds,* 35 F.3d 1275 (9th Cir. 1994); Advisory Committee Note to Rule 704. The expert's legal conclusions are unhelpful because they "supply the jury with no information other than the witness's view of how the verdict should read." 4 Weinstein's Federal Evidence § 704.04[2][a] at 704-12.

Therefore, the court held that it would "not consider Anson's legal conclusions, although his opinions on the individual foundational facts, *i.e.* the individual *Sleekcraft* factors are admissible and will be considered." *Id.*; *see also Playboy Enters., Inc. v. Terri Welles Inc.*, 78 F Supp 2d 1066, 1081-1082 (S.D. Cal. 1999) *aff'd in part and rev'd in part* 279 F.3d 796, 805 (9th Cir. 2002) (on a motion for summary judgment, "the court will assume as true Mr. Sterne's expert opinion on what is the state of affairs regarding each *Sleekcraft* factor, but the court will *not* allow Mr. Sterne to render a legal opinion on whether, based on all the *Sleekcraft* factors, there is a likelihood of confusion").

Likewise here, Dr. Hanssens' testimony regarding the Sleekcraft factors is appropriate, relevant and admissible.

### C. Even Without The Orange Frame Claim, Dr. Hanssens' Testimony Still "Fits" the Issues In This Case.

Finally, SolidWorks' objects that Dr. Hanssens' opinions regarding the value and harm to Autodesk's global brand image should be excluded because the court has dismissed Autodesk's trade

dress claims based on the orange frame. Contrary to SolidWorks' assertion, however, Dr. Hanssens has provided guidance vis-à-vis the relative importance of the brand elements in the Hanssens Report; he states without ambiguity:

> The evidence shows that DWG is uniquely associated with AutoCAD®, the brand name, and together they have been **the most lasting extrinsic cues** that have contributed to Autodesk's brand associations in the CAD consumers' minds.

(Hanssens Rpt. ¶ 41(c) (emphasis added).)

Moreover, SolidWorks' implication that expert testimony is entirely inadmissible if a portion is inappropriate or rendered moot by summary judgment is not the state of the law in the Ninth Circuit. Even in the case cited by SolidWorks, *Nationwide Transp. Fin. v. Cass. Info. Sys.*, 523 F.3d 1051, 1056 (9th Cir. 2008), the defendant moved to strike one expert report entirely, and the district court only struck specific portions of the report. Likewise, in the other case cited, *Stoebner Holdings, Inc. v. Automobili Lamborghini S.P.A.*, No. 06-00446 JMS/LEK, 2007 WL 4230878, at *5-6 (D. Haw. Nov. 30 2007), the court held that the expert's opinion was inadmissible "*to the extent* it addresses problems with the vehicle that are not at issue in this action" following a ruling on summary judgment. *Id*. The court noted, however, that the expert "did provide some admissible testimony," and thus could testify as to that. *Id*.

Here, Dr. Hanssens' report offers significant testimony, such as regarding the individual *Sleekcraft* factors and SolidWorks' false advertising, which is entirely unrelated to the orange frame claims. Dr. Hanssens should be permitted to testify on all of the issues in his report other than the orange frame.

### D. The Court Should Preclude Testimony by SolidWorks' Marketing Expert

Just as the Court's summary judgment ruling removed Autodesk's orange frame claim, it also put to rest the idea that Autodesk's actions in claiming trademark rights in DWG are somehow anti-competitive. The Court stated very clearly that "there is no concern that plaintiff will obtain a monopoly over the .dwg file extension and prevent its use in the industry." (MSJ Order (D.I. 195) at 7-8.)

Yet SolidWorks' marketing expert, Dr. Sealey, has expressed just such concerns in his report and deposition testimony:

> Q: If you were satisfied that Autodesk was not seeking, through the protection of DWG, to stop other companies from using DWG as a file extension, where they were, in fact, offering DWG files, would that change your opinion?
>
> . . . .
>
> The Witness: It's -- the issue is, can SolidWorks use that three letter string to indicate compatibility with its software products. I think they have a right to do that. And I think the prevention of that is monopolistic and anticompetitive. It's not fighting it out on how good DWGeditor is versus Autodesk AutoCAD LT, but rather let me deny you the ability to communicate to consumers the file format your software operates on.
>
> Q: So the answer is no to my question.
>
> A: I think the answer is no.

(Bos No. 4 Opp. Decl. ¶ 4, Ex. 3 (Sealey Dep. Tr.) at 50:14-51:6 (testimony reflects correction by errata).) In light of the clear message from the Court's ruling, SolidWorks' expert should be precluded from offering any testimony or opinion claiming that Autodesk's behavior is monopolistic or anti-competitive.

## IV. CONCLUSION

For the reasons stated above, the Court should deny SolidWorks' Motion in Limine No. 4, and preclude testimony from SolidWorks' expert regarding alleged anticompetitive effects.

Dated: December 22, 2009

MICHAEL A. JACOBS
J. THOMAS MCCARTHY
DAVID E. MELAUGH
LYNN M. HUMPHREYS
JACQUELINE BOS
NATHAN B. SABRI
MORRISON & FOERSTER LLP

By: /s/ *Michael A. Jacobs*
     MICHAEL A. JACOBS

Attorneys for Plaintiff
AUTODESK, INC.