QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Claude M. Stern (Bar No. 96737)
  Evette D. Pennypacker (Bar No. 203515)
  Andrea Pallios Roberts (Bar No. 228128)
  Zachary M. Fabish (Bar No. 247535)
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Defendant Dassault Systèmes SolidWorks Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DASSAULT SYSTÈMES SOLIDWORKS CORPORATION, a Delaware corporation,<br><br>Defendant. | CASE NO. 3:08-cv-04397-WHA<br><br>**DEFENDANT SOLIDWORKS' MOTION *IN LIMINE* 5 TO PRECLUDE TESTIMONY AND EVIDENCE BY DR. E. DEBORAH JAY** |

**Issue to be addressed: Exclusion of testimony and all other evidence by Dr. E. Deborah Jay.**

Defendant Dassault Systèmes SolidWorks Corporation ("SolidWorks") hereby moves *in limine* for an order excluding testimony and all other evidence and argument by Plaintiff Autodesk, Inc. ("Autodesk") concerning Dr. E. Deborah Jay's survey under Fed. R. Evid. 401, 402, 403, 602, and 702(1). This motion *in limine* is supported by the declaration of Maureen Pettibone Ryan filed herewith (Ryan Dec.).

## I. PRELIMINARY STATEMENT OF RELEVANT FACTS

Through this motion SolidWorks respectfully requests that the Court exclude from trial any evidence – testimonial, documentary, or otherwise – or any argument by Autodesk regarding Dr. E. Deborah Jay's secondary meaning survey for three distinct reasons.

First, the survey is not relevant because it fails to distinguish between consumer association of .dwg the file format with Autodesk, as compared to DWG as a trademark for Autodesk's alleged proprietary technology. Autodesk has already "expressly disavow[ed]" ownership of "'any arguably functional use of DWG'" which includes "the use of DWG as a file extension." Dkt. No. 195 at p. 7. Hence, the extent to which the consuming CAD public associates dwg *as a file format* with Autodesk is irrelevant to the determination of the extent to which the consuming CAD public associates DWG as a trademark with Autodesk.

Second, and in the alternative, because the Jay survey is exclusively a secondary meaning survey, and as such does not test genericness or non-genericness, the survey is only relevant if Autodesk first meets its burden to prove that DWG is not generic.

Third, any testimony that Dr. Jay might wish to present to the effect that the survey subjects *were* responding to DWG as a mark for technology instead of as a file extension lacks foundation and is improper expert testimony or opinion. As Dr. Jay did not permit the survey subjects to inform her of *why* they associated DWG with Autodesk, she lacks personal knowledge and an appropriate factual basis to testify as to what was in the minds of those consumers.

Accordingly, these opinions should be excluded pursuant to Federal Rules of Evidence 401, 402, 403, 602 and 702. Dr. Jay's report is also speculative and contains hearsay.

## II. ARGUMENT

### A. Dr. Jay Should Not Be Permitted to Testify Regarding Her Survey as it is Irrelevant, and Would Tend to Confuse the Issues and Mislead the Jury

Dr. Jay's survey is irrelevant in its entirety because it fails to distinguish between .dwg as a functional file format, which Autodesk has disclaimed any right to, and DWG as a brand for Autodesk's alleged proprietary technology. Dr. Jay admitted during deposition that the purpose of her survey was to measure "whether those three initials *that appear after the dot* [—referring to

02966.51459/3242435.3                                     -2-                      Case No. 3:08-cv-04397-WHA
                                                  MOTION *IN LIMINE* 5 CONCERNING DR. E. DEBORAH JAY

1  the file format .dwg—] are an indicator of source or not an indicator of source." Ryan Dec., Ex. 8,
2  Jay Depo. Tr. 124:6-10 (emphasis added). Later in her deposition, when asked whether she would
3  have changed the design of her survey if Autodesk "did not consider the use of DWG as a file
4  name to be protectable," Dr Jay responded that (1) she did not know the significance of what the
5  deposing attorney was asking, (2) she did not understand a follow-up question along the same
6  lines, and (3) a trademark "can have some functional aspects and still obtain trademark
7  protection." Ex. 8 at 193:22-195:16, *see also id.* at 127:10-130:18.

8  Dr. Jay's statement that she did not understand the question was telling. Autodesk's
9  counsel, Prof. McCarthy, has stated in his treatise that those asserting a trademark are not entitled
10 to the secondary meaning that flows from a consumer's association with a functional feature of a
11 product with a given producer. *See* 2 McCarthy § 15:23. Here, any AutoCAD user would see
12 ".dwg" after the name of their drawing file whenever they open, saved, or closed that drawing file.
13 If the reason they associate "DWG" with AutoCAD is because of the *file extension*, not because of
14 Autodesk's advertising and branding efforts, this is known as *de facto secondary meaning*, and
15 *cannot* be used to obtain trademark protection. Prof. McCarthy elaborates:

> Public association of a functional feature as an indication of origin is not determinative of rights in functional features. Preservation of the freedom to copy unpatented functional features controls. Any consumer recognition which attaches to functional features is called "de facto secondary meaning." Thus, the rule against protection for functional shapes and features prevails over judicial recognition accorded consumers' mental associations of the feature with a single source.

20 *Id.* (footnotes and quotation omitted).

21  Here, Dr. Jay drew no distinction between consumers surveyed who recognized ".dwg"
22 because it is functional as opposed to those who recognized DWG because it appeared on
23 packaging or in advertisements—that is to say, because it appeared as a use in commerce.

24  This distinction is crucial. Notably, in *The Straumann Company v. Lifecore Biomedical*
25 *Incorporated,* 278 F. Supp. 2d 130, 137-138 (D. Mass. 2003), the court was addressing the extent
26 to which a secondary meaning survey to show acquired distinctiveness was appropriate where it
27 was clear the survey failed to filter out functional features of the claimed mark. The court plainly
28 held that a secondary meaning survey that fails to filter out functional features is ***an invalid*** survey

for secondary meaning.  *A fortiori*, the failure to filter out functional features or attributes is especially inappropriate for genericness.  *The Straumann Company,* 278 F. Supp. 2d at 137-138.

Under Federal Rule of Evidence 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Even relevant evidence will be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403; *see also Monotype Corp. PLC v. International Typeface Corp.*, 43 F.3d 443, 448 (9th Cir. 1994).  Because the survey does not distinguish between consumer's recognition of .dwg as a functional file extension and "DWG" as an alleged mark, it therefore (1) does not tend to make the existence of any fact that is of consequence to the determination of this action more probable or less probable than it would be without the evidence and (2) poses a danger of confusing or misleading the jury and prejudicing SolidWorks.

Remarkably, the U.S.P.T.O. already rejected the Jay survey because it does not distinguish between functional and non-functional uses of dwg.  Ex. 8, Ex. 1454 to Jay Deposition.  But despite the fact that Autodesk and Dr. Jay knew about this rejection in 2007, they did nothing to redo the survey or correct its deficiencies.  Thus, testimony, argument and any evidence concerning Dr. Jay's survey should be excluded from trial.

**B.    The Jay Survey is only Relevant if Autodesk Proves Non-Genericness**

Dr. Jay's survey is also irrelevant because secondary meaning is only at issue in the case if "DWG" is not generic.  *See* 2 McCarthy § 12:46; *see also, e.g., Big Island Candies, Inc. v. The Cookie Corner,* 269 F. Supp. 2d 1236, 1250-1251 (D. Haw. 2003).  Recently, Dr. Jay made very clear that she understands the difference between a genericness survey—which Dr. Jay did not conduct—and a secondary meaning survey, which she did:

> Brand association and source identification questions may help establish acquired distinctiveness or secondary meaning for a mark.  However, according to Professor J. Thomas McCarthy, "'Secondary meaning' *is out of place* in a genericness enquiry," and "'Secondary meaning' *is not synonymous with 'trademark*

> *significance,' especially in cases where genericness is the issue*." As one court opined, "[T]he type of survey used to test for genericness differs from the type of survey used to test for distinctiveness."

Ex. 8, Ex. 1453 to the Jay Deposition at 1145 (citations omitted; emphasis added).

In her deposition, Dr. Jay attempted to distance herself from the analysis quoted in her article, stating that in the article "I did not just quote authorities that I agreed with." Ex. 8 at 76:15-16. SolidWorks submits that the article speaks for itself. And in any event, Prof. McCarthy's statement of the law is correct. *See, e.g., Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938).

The proper test for genericness is either a *Teflon* survey or a *Thermos* survey. *See id.*, *see also* Ex.8, Ex. 1453 at 1127-32 (collecting cases). Dr. Jay has done genericness surveys before, and acknowledges that *Teflon* surveys are "the preferred method" for testing genericness, but chose not to do such a survey, presumably because she knew what results she would obtain. Ex. 8 at 74:11-16, 89:2-13. Furthermore, Dr. Jay admitted that she was not focused on genericness at the time she designed the survey, and that she did not "know how I would conduct a genericness survey" for this case if asked to do so. Ex. 8 at 70:5-11, 72:12-15, 74:3-10.

The Dr. Jay survey certainly shows that, among dwg file formats, Autodesk's may be the best known or most popular. But the fact that there may be a particular company within a genre—"Coke" within the "cola" genre—which is most popular, and whose name is most associated with the genre does not make it any less of a genre. This case is not a popularity contest: even if Autodesk's dwg is the most well known dwg file format among all the others, this does not prevent dwg from being a genre. And Dr. Jay's survey tells us nothing about genericness.

This is precisely the result that the court adopted in *Steak N Shake Co. v. Burger King Corp.,* 323 F. Supp. 2d 983, 989, 993 (E.D. Mo. 2004). There, the court rejected a secondary meaning study when considering the question of genericness, ruling "I do not agree with [Plaintiffs] argument that the [Plaintiff's Experts'] surveys show the non-genericness of the term 'steakburger.'. . . At most, the [Plaintiff's First Expert's] study is directed ***at consumer awareness of the term and consumer familiarity with Steak n Shake***, which advertises heavily that it is

'Famous for Steakburgers.' . . . [Plaintiff's First Expert] asked whether respondents 'most often' associated the term with one company or more than one company. 'Steakburger' was highly associated with Steak n Shake in the markets tested, but this fails to advance an understanding of the public perception of what a steakburger is." *Id.* The decision in *Big Island Candies*, 269 F. Supp. 2d at 1250-1251, is in accord. The court rejected a survey where respondents were shown a Big Island Candies brand cookie wrapped in cellophane branded with "Big Island Candies" and where 16.9% to 29.4% of respondents answered that the cookie was made by Big Island. The survey was held to be irrelevant because it did not test for genericness: "The survey asked the 'Who are you?' question. That method cannot possibly test whether respondents view the BIC Cookie as answering the question 'Who are you?' (rather than answering the question 'What are you?'). The court reasoned that "[Plaintiff] misunderstands what percentage of respondents must respond in a certain way to establish nongenericness . . . suggest[ing] that, if more than 15% of survey respondents identified [Plaintiff] after viewing the BIC Cookie, that percentage was 'sufficient to support a summary judgment finding of distinctiveness, so it is more than sufficient to show that the dress is not generic.' . . . ***That argument is incorrect because (1) the type of survey used to test for genericness differs from the type of survey used to test for distinctiveness, and (2) for a genericness survey, "majority usage controls."*** *Id.* (emphasis added). The court concluded "[f]or a term to be held nongeneric, the seller must prove that the 'primary significance of the term in the minds of the consuming public is not the product but the producer.'" *Id.*

Equally compelling, as numerous authorities hold, for a party in Autodesk's position to prevail, it must show that the primary significance of DWG is non-generic. *See* 2 McCarthy 12:6 (collecting cases). As the court in *Big Island Candies* and other courts have observed, this is where "majority rule" controls. Dr. Jay concedes that her survey showed that 43% of those polled in the surveyed group found an association between DWG and Autodesk, AutoCAD or a single, unnamed source. Dkt. No. 140 ¶4. Even ignoring the fact that this result does not filter for functional use, this is ***below a majority rule***. That is , if Dr, Jay is to be believed, 57% of the surveyed audience found the letters DWG not to be associated with Autodesk, AutoCAD or a single, unnamed source.

Because the survey is only relevant if Autodesk can prove that dwg is not generic, such evidence should only be admitted if that fact is proven true. Until that point it both does not tend to make the existence of any fact that is of consequence to the determination of this action more probable or less probable than it would be without the evidence and poses a danger of confusing or misleading the jury and prejudicing SolidWorks.

### C. Dr. Jay Lacks Personal Knowledge or Sufficient Facts to Testify that Consumers Associated "DWG" the Claimed Mark With Autodesk Instead of .dwg the Functional File Format

Federal Rule of Evidence 702 provides that an expert may testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue." But the rule also requires that the testimony must be "based upon sufficient facts or data." Fed. R. Evid. 702(1). A reasonable jury cannot credit testimony that fails to reflect reality. *See, e.g., Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F.Supp.2d 1031, 1040-42 (N.D. Cal. 2001) (rejecting expert testimony that "contains entirely too many assumptions and simplifications that are not supported by real-world evidence").

Here, although Dr. Jay may speculate, as she did during deposition, that if users associated dwg with Autodesk for functional reasons, they would have associated it with other companies instead, she has no basis for this assumption, particularly as Autodesk has 71% of the 2D CAD market share. Ex. 8 at 129:14-130:18. She also concedes she has no prior experience with the CAD market. Ex. 8 at 36:9-23. For the same reason, her testimony would lack foundation as she has no personal knowledge regarding why users associated DWG with Autodesk. Fed. R. Evid. 602. Thus, testimony, argument and any evidence concerning Dr. Jay's survey should be excluded from trial. Parts of Dr. Jay's testimony are also speculative and based on hearsay, and should also be excluded. Fed. R. Evid. 802.

### III. CONCLUSION

For all the reasons stated above, SolidWorks respectfully requests that the Court grant this motion *in limine*.

| | | |
|---|---|---|
| 1 | DATED:  December 14, 2009 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP |
| 2 | | |
| 3 | | |
| 4 | | By  /s/ |
| 5 | | Claude M. Stern<br>Attorney for Defendant Dassault Systèmes SolidWorks Corporation. |