MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
J. THOMAS MCCARTHY (CA SBN 034728)
TMcCarthy@mofo.com
DAVID E. MELAUGH (CA SBN 219477)
DMelaugh@mofo.com
LYNN M. HUMPHREYS (CA SBN 168062)
LHumphreys@mofo.com
JACQUELINE BOS (CA SBN 243938)
JBos@mofo.com
NATHAN B. SABRI (CA SBN 252216)
NSabri@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Plaintiff
AUTODESK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DASSAULT SYSTÈMES SOLIDWORKS CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No.   3:08-cv-04397-WHA<br><br>**AUTODESK'S OPPOSITION TO SOLIDWORKS' MOTION IN LIMINE NO. 6 TO PRECLUDE EVIDENCE OF ALLEGEDLY FALSE STATEMENTS NOT SPECIFICALLY PLED AND OF OTHER COLLATERAL CONDUCT**<br><br>Date:      December 30, 2009<br>Time:     9:00 a.m.<br>Place:    Courtroom 9, 19th Floor<br>Judge:   Hon. William H. Alsup |

## I. INTRODUCTION

Ignoring the clear language of the First Amended Complaint as well as the crystallization of Autodesk's false advertising claims through discovery and in Autodesk's summary judgment briefing, SolidWorks now suggests that it was unaware of false advertising claims to which it has responded during discovery and in its motion practice. SolidWorks also contends, without legal basis, that evidence of its intentional copying and infringement of the DWG mark cannot be presented to the jury. Because both of these arguments lack factual and legal merit, the Court should deny SolidWorks' Motion in Limine no. 6.

## II. ARGUMENT

### A. Because SolidWorks has Long Since been Aware of the False Advertising Statements at Issue, it Should not be Allowed to Preclude Such Statements as Not Having been Specifically Pled in the Complaint

SolidWorks contends that Autodesk "should be precluded from offering evidence of any allegedly false advertising statements not specifically pled in [the] complaint because SolidWorks has had no notice of any such statements and thus no opportunity to prepare a defense as to them." (SolidWorks' No. 6 Mot. in Limine at 2.) The Court should not preclude Autodesk from using at trial false advertising statements uncovered by Autodesk — and revealed to SolidWorks — during discovery.

In the First Amended Complaint, Autodesk provided SolidWorks with notice of the fact that its product websites, including DWGseries.com and DWGgateway.com, contained multiple instances of false advertising. (First Am. Compl. (D.I. 37) at ¶ 21.) Having attached printouts from those websites as exhibits to the First Amended Complaint, Autodesk also provided examples of the false advertising, "such as DS SolidWorks' software tools will allow [users] to . . . '[s]ave DWG files to any version of AutoCAD software,'" to give notice of its claims. (*Id*. at ¶ 48.)

Now, as in its Motion to Dismiss (D.I. 13), SolidWorks contends that Autodesk was required to specifically plead every allegedly false advertising statement made by SolidWorks. The Court has already rejected this argument. "SolidWorks acknowledges that neither the Ninth Circuit nor this Court has addressed the extent to which Rule 9(b) applies to Lanham Act claims. Because

1  SolidWorks has not provided any persuasive authority for its argument that a false advertising claim
2  is subject to a heightened pleading standard, this order declines the invitation to impose one." (Order
3  Granting in Part and Denying in Part Def.'s Mot. to Dismiss & to Strike (D.I. 29) at 6.)

4  Again, SolidWorks has failed to provide any authority from the Ninth Circuit or the Northern
5  District of California to support its contention, and instead relies solely on factually distinguishable
6  cases. *See, e.g.*, *Pestube Sys., Inc. v. HomeTeam Pest Def., LLC*., No. CIV-05-2832-PHX-MHM,
7  2006 WL 1441014, at *5 (D. Ariz. May 24, 2006) ("Plaintiff offers *nothing* regarding the specific
8  details surrounding its Lanham Act claim") (emphasis added). Contrary authority does exist,
9  however. *See Sigma Dynamics, Inc. v. E.Piphany, Inc.*, No. C 04-0569MJJ, 2004 WL 2533220,
10 at *4 (N.D. Cal. Nov. 8, 2004) (finding no requirement of "a heightened pleading standard for
11 Lanham Act false advertising violations. Again, all that is required is that a pleading contain "a short
12 and plain statement of the claim showing that the pleader is entitled to relief") (citation omitted);
13 *Summit Tech., Inc. v. High-Land Med. Insts., Co.,* 933 F. Supp. 918, 937 (C.D. Cal. 1996) (noting
14 that Rule 8(a), in the context of a false advertising claim, does not require the plaintiff to set forth
15 specific allegations or evidentiary facts).

16 Throughout the course of discovery, Autodesk has clarified the false advertising statements at
17 issue in this litigation. Indeed, recognizing that it was unnecessary for Autodesk to have enumerated
18 every instance of false advertising in its complaint, SolidWorks requested in an interrogatory the
19 identification of such statements as well as the documents reflecting such statements. In response,
20 Autodesk identified documents containing four additional false advertising statements:

21  1) "DWGgateway solves these problems by enabling you to open DWG files created by
22     AutoCAD versions R14 through the latest version, and then edit them and save them
23     as any version of AutoCAD, from R2.5 to the latest version";
24  2) "DWGeditor software lets you maintain legacy data without the expense of AutoCAD
25     software upgrades";

      3)      "DWGseries is a set of FREE software tools created for current and former AutoCAD software users who need to open, edit, create, and share DWG more effectively with others";[1] and

      4)      "DWGeditor is a standalone editing tool for SolidWorks users and their colleagues, who occasionally need to create, share, and edit native DWG files."

All four statements were originally disclosed in a single, 5-page document (a printout from www.dwgseries.com), which was attached as Exhibit B to the First Amended Complaint. (Declaration of Jacqueline Bos in Support of Opposition to Def.'s Mot. in Limine No. 6 ("Bos No. 6 Opp. Decl.") ¶ 2, Ex. 1 (D.I. 37, Ex. B) at 2, 4, 5.)  Subsequently, these exact same documents were identified as being responsive to SolidWorks' interrogatory.  (*See* Bos No. 6 Opp. Decl. ¶ 3, Ex. 2 (Autodesk's Third Supp. Resps. to SolidWorks' First Set of Interrogs.) No. 7 at 11 (identifying http://web.archive.org/web/20060208022110/www.dwgseries.com/)); *Id*. ¶ 4, Ex. 3 (Autodesk's Sixth Supp. Resps. to SolidWorks' First Set of Interrogs.) No. 7 at 8-9 (incorporating responsive documents identified in response no. 6 including www.dwgseries.com printouts bearing Bates numbers ADSK0015293-298, and incorporating by reference information learned during expert discovery).)

      During expert discovery, SolidWorks' proffered expert Vajrang Parvate even included a portion of the DWGseries website, containing statements nos. 2 and 3, as an exhibit to his expert report, and testified at length about the statements in that exhibit as well as in the remainder of the website as disclosed in Exhibit B to the First Amended Complaint.  Mr. Parvate was asked about the veracity of statement no. 1 above, and testified that it was not true.

      Q.  The claim here states that DWGgateway enables a user to open DWG files created by AutoCAD through the latest version.  Do you see that?

      . . .

      THE WITNESS: That's correct.

---

[1] Autodesk acknowledges that this statement is very similar to another statement the Court has ruled constitutes inactionable "puffery." (Order Granting in Part and Denying in Part Plaintiff's and Defendant's Motions for Summary Judgment (D.I. 195) at 20-21.)  This statement adds the key word "create."  If the Court concludes on this motion that this addition does not distinguish this statement, Autodesk will not pursue this statement as false advertising at trial.

Q. A user encountering this would likely believe that the latest version of AutoCAD is 2010, and that DWGgateway enables them to open the files created by that program; is that correct?

. . .

THE WITNESS: Possibly. Again, it is subjective.

Q. And that statement would not be true. Isn't that correct?

. . .

THE WITNESS: It would not be true today. Six months ago it was, and one year ago when -- this is the relevance of this case -- it was true one year ago.

(Bos. No. 6 Opp. Decl. ¶ 5, Ex. 4 (Parvate 10/28/09 Dep. Tr.) at 102:6-25.) Mr. Parvate was also asked about DWGeditor's ability to maintain legacy data and the veracity of statement no. 2 above, and testified that in many situations, it was not true:

MR. AHN: Q. And if the line weights were wrong, DWGeditor would have failed to maintain that DWG file; is that correct?

. . .

THE WITNESS: Yes. Only if there is no work-around to fix that problem.

(*Id.* at 48:15-21.) During Mr. Parvate's expert deposition, it also became apparent that DWGeditor's ability to *create* DWG files was at issue, and that any advertising statements to that effect, such as statements nos. 3 and 4 above, were not true. Mr. Parvate testified that "[DWG]Editor is meant to maintain legacy data" and to allow users to make minor edits. (*Id.* at 50:17; 51:19-22.)

Q. Let me rephrase it.

Is there any specific language on Page 48 that informs a user that DWGeditor is only intended to allow them to make minor edits?

A. Maintaining legacy data is typically understood what that correlates to.

Because you are maintaining that legacy data; you are not making new designs; you are not doing any -- you know, you are not making new designs with our software. If you are maintaining legacy data, you are making minor edits.

(*Id.* at 54:12-22).) Mr. Parvate was also given an opportunity to explain the discrepancy between SolidWorks' conflicting advertising regarding maintaining legacy data on one hand, and creating new files on the other:

> Q. Does this change your opinion about whether or not DWGeditor is only intended for making minor edits to existing DWG files?
>
> A. No, it does not. Because it is not just -- minor edits does not need creation, clearly. But the bigger claim of maintaining legacy data do need, sometimes -- occasionally, of course -- the need to create files . . . .

(*Id.* at 131:4-11.) Based on this testimony, it became apparent that SolidWorks' advertising claims pertaining to the "creation" of files was indeed false.

Though SolidWorks limited itself to disputing three false advertising statements in its summary judgment motion, it is clear from the record that SolidWorks has long since been on notice of the four additional statements listed above. SolidWorks' decision to move for summary judgment on only three false advertising statements does not mean that there are no other statements at issue. Indeed, Autodesk affirmed in its opposition to SolidWorks' summary judgment motion that there are "three *sets* of SolidWorks advertising statements at issue in this litigation," and referenced all four additional statements above. (Autodesk's Opp'n to SolidWorks' Mot. for Summ. J. or Summ. Adjudication ("MSJ Opp'n") (D.I. 143) at 26 (emphasis added).) SolidWorks did not contend in its reply briefing that these statements were not at issue, and even directly addressed statement no. 3 above as not being literally false. (Def.'s Reply in Support of Mot. for Summ. J. (D.I. 157) at 14.)

SolidWorks thus has no basis to claim that it has had no notice of statements that were disclosed with the complaint, consistently referenced throughout discovery, referenced in Autodesk's summary judgment briefing, and addressed in SolidWorks' summary judgment briefing. Accordingly, the Court should deny SolidWorks' motion to preclude these statements. To the extent necessary, Autodesk will seek leave to amend the First Amended Complaint to conform it to the proof presented at trial.

**B.   The Court Should Also Deny SolidWorks' Motion Because Evidence of Copying of Autodesk's Advertising and Marketing is Directly Relevant to the Issue of Intentional Copying and Infringement of the DWG Mark**

SolidWorks argues that "Autodesk should be precluded from offering evidence of collateral conduct, including evidence [of] any alleged copying in marketing campaigns or advertisements that are not in issue" because such evidence would prejudice SolidWorks. (SolidWorks' No. 6 Mot. In Limine at 4.) The only specific evidence mentioned in SolidWorks' vague motion is that connected

to Autodesk's trade dress claim regarding its orange frame and "Real" slogan, as well as excerpts from the depositions of two of SolidWorks' witnesses. Because the Court granted summary judgment to SolidWorks on Autodesk's trade dress claim regarding the orange frame and "Real" slogan, Autodesk does not intend to offer at trial any evidence in support of this claim.

However, the deposition testimony of SolidWorks' witnesses pertaining to SolidWorks' pattern of copying Autodesk's advertisements and marketing campaigns is directly relevant to this lawsuit and the question of intentional copying of the DWG mark. As noted in Autodesk's opposition to SolidWorks' Motion for Summary Judgment, SolidWorks' witnesses described their own advertising and marketing as having been "created with an AutoCAD look-and-feel circa 1999," appearing too similar to Autodesk advertisements, and being influenced by Autodesk marketing videos. (*See* MSJ Opp'n (D.I. 143) at 19 n. 30.)

SolidWorks' contention is, in essence, that this evidence is not relevant because it is not direct evidence of intentional copying of the DWG mark. SolidWorks does not, however, provide any authority for such a broad assertion. In analogous circumstances, courts have held that evidence of a related pattern of conduct by a party is relevant to the question of whether copying is intentional. *See, e.g., Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834, 852 (E.D. Va. 1998) (finding that party's attempts to force retailers to place its products near competitor's products and use of "an assumed name to get updated information about the [competitor's product] line" comprised a "pattern of conduct [that] establishes intentional and direct copying that leads this Court to presume secondary meaning absent any effective rebuttal at trial"); *see also Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1181 (N.D. Cal. 2007) (recognizing that both direct and circumstantial evidence can be used to support secondary meaning analysis); *cf. Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 638-639 (6th Cir. 2002) ("Circumstantial evidence of copying, particularly 'the use of a contested mark with knowledge of the protected mark at issue,' is sufficient to support an inference of intentional infringement where direct evidence is not available") (citation omitted); *Nautilus Group, Inc. v. Icon Health & Fitness, Inc.*, 308 F. Supp. 2d 1208, 1213 (W.D. Wash. 2003) (same). Because evidence of SolidWorks' pattern of copying Autodesk's

advertising and marketing campaigns is relevant to the question of whether SolidWorks' copying of the DWG mark was intentional, Autodesk should be allowed to introduce this evidence to the jury.

SolidWorks' citation to cases concerning the exclusion of "collateral conduct" is also unavailing, as none of those cases shares any factual similarity with the present case. *See, e.g.*, *Lifshitz v. Walter Drake & Sons, Inc.*, 806 F.2d 1426, 1432 (9th Cir. 1986) (excluded evidence "relating to the validity of [plaintiff's] patent, which was no longer an issue in this case"); *Westmont Tractor Co. v. Touche Ross & Co.*, No. 87-4242, 1988 WL 126273, at *2 (9th Cir. Nov. 10, 1988) (the excluded evidence was of "limited probative value" because the financial account in question "was not among those" that were at issue); *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1335 (9th Cir. 1985) ("The district court concluded this evidence did 'nothing except generally show defendant in a bad light'"). Furthermore, SolidWorks' argument that "copying is proper and is encouraged" misses the mark. While there may be circumstances in which copying is not discouraged by the law, the present case is not one of them. SolidWorks' selective quotation of *McCarthy on Trademarks and Unfair Competition*, for example, fails to note the proper context in which copying may not be discouraged: copying may be allowed "unless a competitor who copies these attractive features transgresses the law—for example, by confusing customers as to the source of goods." *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 1:28 (4th ed. 2009). Because evidence of SolidWorks' pattern of copying Autodesk's advertisements and marketing campaigns is directly relevant to the issue of intentional copying of the DWG mark, Autodesk should be permitted to present this evidence to the jury.

### III. CONCLUSION

For the reasons stated above, the Court should deny SolidWorks' Motion in Limine No. 6.

Dated: December 22, 2009               MORRISON & FOERSTER LLP

                                       By:  /s/ *Michael A. Jacobs*
                                            MICHAEL A. JACOBS

                                       Attorneys for Plaintiff AUTODESK, INC.