MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
J. THOMAS MCCARTHY (CA SBN 034728)
TMcCarthy@mofo.com
DAVID E. MELAUGH (CA SBN 219477)
DMelaugh@mofo.com
LYNN M. HUMPHREYS (CA SBN 168062)
LHumphreys@mofo.com
JACQUELINE BOS (CA SBN 243938)
JBos@mofo.com
NATHAN B. SABRI (CA SBN 252216)
NSabri@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Plaintiff
AUTODESK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DASSAULT SYSTÈMES SOLIDWORKS CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No. 3:08-cv-04397-WHA<br><br>**AUTODESK'S OPPOSITION TO SOLIDWORKS' MOTION IN LIMINE NO. 7 TO PRECLUDE REFERENCE TO SOLIDWORKS' FOREIGN PARENT OWNER**<br><br>Date: December 30, 2009<br>Time: 9:00 a.m.<br>Place: Courtroom 9, 19th Floor<br>Judge: Hon. William H. Alsup |

## I. INTRODUCTION

Autodesk does not anticipate that SolidWorks' corporate parent will play a substantial role at trial. Nevertheless, because it is likely that the existence of the parent will come up naturally in several contexts, an order precluding such reference is unwarranted.

For example, in order for the jury to understand the competitive landscape in the CAD industry and to appreciate the dynamic between SolidWorks and Autodesk, it must be allowed to hear factual information pertaining to SolidWorks' French parent corporation and sibling companies, some of which are active in the CAD industry. Because SolidWorks' own witnesses have offered testimony on the relevance of such information and produced related documents, SolidWorks cannot now argue that this information is irrelevant or unduly prejudicial.

Likewise, SolidWorks has signaled its intention to characterize itself at trial through testimony or argument as "David" to Autodesk's "Goliath." While SolidWorks standing on its own has roughly one-tenth the number of Autodesk's employees and one-fifth its revenue, its corporate parent is comparable in size and revenue to Autodesk. Should SolidWorks compare itself unfavorably in these or similar respects to Autodesk, Autodesk should be permitted to correct any jury misapprehension as to any alleged disadvantage faced by SolidWorks by virtue of its size or resources. Accordingly, the Court should deny SolidWorks' Motion in Limine No. 7.

## II. ARGUMENT

### A. References to SolidWorks' Corporate Parent and Related "Brands" are Admissible Because they are Necessary to Describe the CAD Industry and Relevant to Key Issues in this Case

Dassault Systemes, S.A. ("Dassault") is the French parent corporation of SolidWorks, and is itself a CAD software provider. Dassault houses a number of CAD "brands," including Delmia, Catia, and SolidWorks. (Declaration of Jacqueline Bos in Support of Autodesk's Opp'n to SolidWorks' Motion in Limine No.7 ("Bos No. 7 Opp. Decl.") ¶ 2, Ex. 1 (Dassault website).) Delmia is marketed as software designed to assist with digital manufacturing and production. (*Id.*) Catia is Dassault's "pioneer brand" (*id.*), and was described by a SolidWorks witness as a "3D design

1  product that Dassault Systeme[s] sells to clients such as automotive and aerospace." (Bos No. 7 Opp.
2  Decl. ¶ 3, Ex. 2 (Kelly 9/25/09 Dep. Tr.) at 217:24-218:2.)

3      Identification and factual description of Dassault, its corporate structure, its place in the CAD
4  industry, and its subsidiaries are both necessary background information to this case and relevant to
5  several key issues that will be presented to the jury. Indeed, SolidWorks' own witnesses referenced
6  Dassault and its multiple brands in their testimony regarding the DWG mark.

7      For example, on the issue of whether DWG is generic, SolidWorks' proffered industry expert
8  Joel Orr discussed the Open Design Alliance and its reverse engineering of the DWG format to
9  demonstrate that "the file extension DWG does not mean that [a file] came from any one source."
10 (Bos No. 7 Opp. Decl. ¶ 4, Ex. 3 (Orr Expert Rpt.) ¶ 38.) Dr. Orr went on to list two Dassault
11 subsidiaries, SolidWorks and Delmia Corporation, as members of the Open Design Alliance, and
12 thereby highlighted an additional Dassault entity's activities as supporting SolidWorks' contention
13 that DWG is generic. (*Id*. at Appendix C, pps. 46, 49, 50.) Subsequently, in his discussion of
14 advertising materials for various CAD companies, Dr. Orr specifically made mention of "CATIA,
15 another Dassault company product." (Bos No. 7 Opp. Decl. ¶ 5, Ex. 4 (Orr Dep. Tr.) at 117:12-17.)

16     Likewise, SolidWorks employee Aaron Kelly testified to generally recalling that there were
17 discussions regarding putting DWGeditor, one of the alleged infringing products in this case, into the
18 Catia line of products, but that the plan did not go forward because "the CATIA community . . .
19 didn't want it." (Bos No. 7 Opp. Decl. ¶ 3, Ex. 2 (Kelly 9/25/09 Dep. Tr.) at 218:15-219:16.)
20 Moreover, various market reports that have been produced in this litigation consistently mention
21 Dassault and its brands to provide background on the CAD industry and to provide a basis for
22 comparison with AutoCAD. For example, a report by Jon Peddie Research notes: "Our estimate of
23 AutoCAD users is considerably more than the number of people using EDS products . . . and the
24 number of people using Dassault's products, which include Catia, Enovia, and SolidWorks." (Bos
25 No. 7 Opp. Decl. ¶ 6, Ex. 5 (Peddie Rpt.) at ADSK0020926).)

26     Because SolidWorks has repeatedly placed the parties' market share at issue despite asserting
27 that SolidWorks was "number 1 . . . [f]or 3D" and number 2 for 2D software, Dassault's full line up
28 of CAD brands and products will need to be identified and described to provide a complete, accurate

1  picture of the competitive landscape in the CAD industry.  (Bos No. 7 Opp. Decl. ¶ 3, Ex. 2 (Kelly
2  9/25/09 Dep. Tr.) at 91:7-20.)

3        SolidWorks' corporate structure and its relationship to Dassault are relevant to another issue.
4  In its counterclaims, SolidWorks attempted to justify its use of "reverse-engineered versions" of
5  DWG by contending that Autodesk "does not allow certain of its competitors to join its RealDWG
6  licensing program, having denied SolidWorks' request for admission in the program." (SolidWorks'
7  Answer & Countercl.to First Am. Compl. (D.I. 38) ¶ 15 of counterclaims.)  SolidWorks omitted the
8  fact that the RealDWG licensing negotiations that took place had also involved Dassault.  Both
9  SolidWorks and Autodesk have produced correspondence recognizing this fact.  SolidWorks
10 produced a 2006 letter in which Autodesk noted "that SolidWorks and Dassault declined at that time
11 to enter into reciprocal licenses with Autodesk.  If that has changed and SolidWorks and Dassault are
12 now interested in engaging in discussions for the reciprocal license of file format technology, we
13 would be happy to meet with you to discuss how to improve interoperability for our customers."
14 (Bos No. 7 Opp. Decl. ¶ 7, Ex. 6.)  Similarly, Autodesk produced a 2009 letter in which Autodesk
15 mentioned that "Autodesk and Dassault Systemes SolidWorks have previously discussed the
16 possibility of entering into a similar agreement.  I would like to revisit Autodesk's earlier proposal.
17 Autodesk is willing to license its RealDWG™ toolkit to Dassault Systemes and its subsidiary, DS
18 SolidWorks, as part of an interoperability agreement . . . Such an exchange would improve
19 interoperability between our primary proprietary design products, including . . . SolidWorks® and
20 Catia® file formats."  (Bos No. 7 Opp. Decl. ¶ 8, Ex. 7.)  Because SolidWorks has demonstrated its
21 intention to argue that its actions were the result of Autodesk's "deni[al] [of] SolidWorks' request for
22 admission into the [RealDWG] program," Autodesk should be allowed to make reference to Dassault
23 and its subsidiaries to provide a complete, accurate factual record to the jury.  (SolidWorks'
24 Answer & Countercl. to First Am. Compl. (D.I. 38) ¶ 15 of counterclaims.)

25       **B.**    **None of the Decisions Cited by SolidWorks Supports its Argument**

26       SolidWorks also fails to support its contention with any meritorious argument or legal
27 precedent.  Beyond generally claiming that Dassault is a foreign, French corporation, knowledge of
28 which will somehow "inflame patriotic sentiments in the jury," SolidWorks does not provide any

explanation of why this is so. As courts have previously recognized, mention of foreign parent corporations is not prejudicial in and of itself. In *Walton v. Bridgestone/Firestone, Inc.*, No. CV-05-3027-PHX-ROS, 2009 WL 2778441, at *9 (D. Ariz Jan 16, 2009), the court denied a motion in limine and permitted "[r]eferences to Firestone Defendants' Japanese parent company and Japanese employees [because] [t]he mere mention of a Japanese corporation or employees is unlikely to produce prejudice." Other courts have recognized the "contextual" nature of references to "foreign status" of parties and have reserved ruling on motions in limine so that objections to such references could be "dealt with on an issue by issue basis at trial." *In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2005 WL 3164254, at *1 (E.D. La. Nov. 21, 2005). The importance of analyzing and understanding the context in which such references arise is critical to the success of this genre of motions in limine, yet any such analysis is absent from SolidWorks' motion.

SolidWorks' reliance on *Gearhart, M.D. v. Uniden Corp. of America*, 781 F.2d 147 (8th Cir. 1986) is misplaced. There, the Eighth Circuit found that the references to the defendant's foreign parent corporation were inappropriate because such information was irrelevant to the issue presented: punitive damages under Missouri law. *Id*. at 153. In addition, the court concluded that it was "*repeated* references to Far Eastern parent corporations and 'foreign goods' or 'foreign products' . . . [that] could prejudicially appeal to xenophobia and *the current United States-Japanese trade imbalance*." *Id*. (emphasis added). Neither of these concerns is present here, where references to Dassault are directly relevant to issues in the case, and where SolidWorks has failed to argue that there is contextual evidence of current xenophobia against France.

*Foster v. Crawford Shipping Co.*, 496 F.2d 788 (3d Cir. 1974), is similarly inapposite. There, the statements at issue were clearly designed to inflame the jury and had no probative value: "one of these foreign steamship companies is going to come into our port and ruin one of our citizens . . . these foreign operators come into this port and destroy one of our citizens . . ." *Id*. at 792; *see also N.Y. Cent. R.R. Co. v. Johnson*, 279 U.S. 310, 319 (1929) (statements at issue included "the railroad had 'come into this town' and that witnesses and records had been 'sent on from New York'"). These statements are different in kind from those that Autodesk intends to offer at trial to describe the CAD industry, Autodesk's ownership of DWG, and negotiations that took place between Autodesk,

SolidWorks, and Dassault. Because information pertaining to Dassault and its subsidiaries is directly relevant to the issues in this litigation and indispensible as background information on the CAD industry, the Court should deny SolidWorks' Motion in Limine No. 7.

      **C.**    **References to SolidWorks' Corporate Parent May Be Necessary To Properly Characterize the Size and Scope of SolidWorks' Resources**

Finally, SolidWorks has signaled its intention to characterize itself at trial through testimony or argument as "David" to Autodesk's "Goliath." Courts have consistently recognized that such characterization unfairly plays on the sympathies of the jury, and on that basis have excluded such evidence or argument. *See High Tech. Careers v. San Jose Mercury News*, Civ. No. 90-20579 SW, 1995 WL 115480, at *4 (N.D. Cal. Mar. 14, 1995) (on motion for new trial, finding no error in decision to exclude evidence of high profits because it raised the "danger of prejudice, unfair confusion, and misleading the jury . . . [and] could have [been] used . . . to play on 'David versus Goliath' sympathies"); *Apple, Inc. v. Psystar Corp.*, No. C 08-03251 WHA, 2009 WL 3112080, at *5 (N.D. Cal. September 23, 2009) (granting motion for protective order regarding evidence of Apple's profit margins because such evidence had "little, if any, evidentiary value" to the claim at issue, and quoting *High Tech. Careers* on the danger of playing to "'David versus Goliath' sympathies"); *Shaw v. Lindheim*, 809 F. Supp. 1393, 1401 (C.D. Cal. 1992) (conditionally granting motion for new trial where defendant had argued in part that plaintiff's closing statement using "'David and Goliath' analogies . . . constituted prejudicial misconduct"); *cf. McKesson Info. Solutions Inc. v. Bridge Med., Inc.*, Civ. No. S-02-2669 FCD KJM, 2006 WL 2583025, at *11 (E.D. Cal. Sept. 6, 2006) (denying aware of fees because the "case was not a 'David versus Goliath' contest as insinuated by Bridge. Bridge is not a small competitor of McKesson; during the majority of this action, Bridge was a wholly owned subsidiary of . . . one of the largest pharmaceutical service companies in the United States").

These concerns are particularly justified here, where these is no factual basis for any such comparison. Though SolidWorks standing on its own has roughly one-tenth the number of Autodesk's employees and one-fifth its revenue, Dassault is comparable in size and revenue to Autodesk. (*See* Bos No. 7 Opp. Decl. ¶ 6, Ex. 5 (Peddie Rpt.) at ADSK0020928 (showing market

share); ¶ 9, Ex. 8 at ADSK0059422 (Autodesk Form 10-K excerpt showing 7,800 employees as of January 31, 2009); ¶ 10, Ex. 9 at ADSK0060870 (Dassault Systemes Form 20-F showing 7,459 employees as of December 31, 2007).)  Should SolidWorks compare itself unfavorably in these or similar respects to Autodesk, Autodesk should be permitted to correct any jury misapprehension as to any alleged disadvantage faced by SolidWorks by virtue of its size or resources.  Alternatively, should the Court grant SolidWorks' motion to preclude any mention of Dassault, Autodesk requests that the Court also preclude SolidWorks from presenting any evidence or argument suggesting in any way that SolidWorks is a "David" or that Autodesk is a "Goliath."

Dated: December 22, 2009

MICHAEL A. JACOBS
J. THOMAS MCCARTHY
DAVID E. MELAUGH
LYNN M. HUMPHREYS
JACQUELINE BOS
NATHAN B. SABRI
MORRISON & FOERSTER LLP

By: /s/ *Michael A. Jacobs*
    MICHAEL A. JACOBS

Attorneys for Plaintiff AUTODESK, INC.