1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Claude M. Stern (Bar No. 96737)
2    Evette D. Pennypacker (Bar No. 203515)
     Andrea Pallios Roberts (Bar No. 228128)
3    Zachary M. Fabish (Bar No. 247535)
   555 Twin Dolphin Drive, Suite 560
4  Redwood Shores, California  94065
   Telephone:  (650) 801-5000
5  Facsimile:  (650) 801-5100

6

7  Attorneys for Defendant Dassault Systèmes
   SolidWorks Corporation

8

9                    UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12  AUTODESK, INC., a Delaware corporation,      CASE NO. 3:08-cv-04397-WHA

13                    Plaintiff,                 **DEFENDANT SOLIDWORKS'**
                                                 **MEMORANDUM OF LAW IN SUPPORT**
14          vs.                                  **OF ITS PROPOSED JURY**
                                                 **INSTRUCTIONS**
15  DASSAULT SYSTÈMES SOLIDWORKS
    CORPORATION,  a Delaware corporation,        Date:      January 5, 2010
16
                      Defendant.                 District Judge William H. Alsup
17

18        Defendant Dassault Systèmes SolidWorks Corporation ("SolidWorks") submits this

19  memorandum of law in support of its proposed jury instructions.

20  **I.    INTRODUCTION**

21        The principal distinction between SolidWorks' proposed jury instructions and those

22  proposed by Autodesk, Inc. ("Autodesk"), is this:  SolidWorks proposed separate instructions for

23  each of Autodesk's three remaining claims for relief, while Autodesk conflated two of its claims.

24  SolidWorks' approach takes into account that no two of Autodesk's claims involves more than one

25  overlapping issue.  Conflating substantially unrelated claims will confuse the jury, complicate the

26  jury's task, and create the potential for a result unfairly prejudicial to SolidWorks.  Accordingly,

27  SolidWorks respectfully requests that the Court distinguish Autodesk's claims by providing

28  separate instructions for each of them.

**A.      Disputed Instruction No. 1 Re Preliminary Instructions—Trademark**

*First*, SolidWorks' instruction properly frames the remaining claims of this case by indicating that Autodesk seeks damages for "false designation of origin, for false advertising, and for trademark infringement."  (Proposed Jury Instructions ("PJI") at 9:5-6.)  Remaining to be tried are the claims that SolidWorks (1) unfairly competed by falsely designating the origin of its products through use of an unregistered trademark, DWG (Autodesk's First Amended Complaint ("FAC") at 15-16, ¶¶ 39-46), (2) unfairly competed by making false advertising statements (*id.* at 16-17, ¶¶ 47-52), and (3) infringed Autodesk's registered trademark, AUTOCAD (*id.* at 17-18, ¶¶ 53-60).  SolidWorks' instruction thus indicates that only these three claims remain to be tried.

SolidWorks objects to Autodesk's proposed instruction because it is misleading, confusing, and argumentative.  Autodesk's proposed instruction indicates it seeks damages "for [1.] trademark infringement, [2.] unfair competition, [3.] false designation of origin, and [4.] false advertising." (PJI at 5:5-7.)  But, as noted, only three of Autodesk's claims survived summary judgment.

*Second*, SolidWorks objects to Autodesk's proposed instruction because it omits relevant portions of the Ninth Circuit's model instruction, including the portions of the model that instruct regarding "Trademark Interests," "Trademark Registration," and "The Plaintiff's Burden of Proof." *See* 3 Hon. Robert E. Jones & Hon. Gerald E. Rosen*, Federal Civil Trials & Evidence*, § 15:102 (The Rutter Group 2009) ("[T]he existence of a circuit's model instruction may be enough reason to *reject* a party's proposed alternative instruction."). Those portions of the model are clearly relevant to the jury's deliberations.

*Third*, SolidWorks objects to Autodesk's proposed instruction because it improperly and unnecessarily modifies the model instruction.  Autodesk inserts language into the model indicating that "[t]rademark right can also be obtained [by] usage by the industry or public and other forms of consumer association of a mark with a company."  (PJI AT 5:20-21.)  This is an unnecessary and confusing modification, particularly as the preceding line in the model states, when unmodified, that "[r]ights in a trademark are obtained **only** through commercial use of the mark." (Ninth Circuit Model Civil Jury Instructions, Instruction 15.0 (October 2009 edition) (emphasis added) (hereinafter "Model").

**B.      Disputed Instruction No. 2 Re Trademark Liability—Theories and Policies**

The parties agree that the language of this instruction should be provided to the jury. (*See* PJI at 7:6:17.)  SolidWorks only proposes a separate instruction (as do the Model Instructions) because it does not stipulate to Autodesk's proposed instruction no. 1, where Autodesk has placed this language within its instructions, for the reasons stated above.

**C.      Disputed Instruction No. 3 Re Autodesk's First Claim—False Designation of Origin—Elements and Burden of Proof—Trademark**

*First*, SolidWorks objects to Autodesk's proposed instruction because it is misleading, confusing, and argumentative.  The proposed instruction conflates two distinct claims— Autodesk's first (DWG) and third (AUTOCAD) claims for relief—that involve substantially different issues. Validity (distinctiveness/secondary meaning) and ownership (senior user) are not at issue with respect to AUTOCAD, but they are with respect to DWG.  Nominative fair use is not at issue with respect to AUTOCAD, but is with respect to DWG.  Indeed, the only issue potentially relevant to both claims is likelihood of confusion—and Autodesk argues it does not have to establish likelihood of confusion with respect to its AUTOCAD claim (see PJI at (15:7-14; 38-39.).  Accordingly, SolidWorks requests that the jury receive separate instructions regarding these two distinct claims.

*Second*, because Autodesk does not seek only injunctive relief, Autodesk must establish that it was damaged by SolidWorks' alleged infringement.  *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, 30:2 (4th ed. 2007) ("It is not necessary for plaintiff in a trademark or unfair competition case to prove any past or present actual damages since one of the major benefits of injunctive relief is that it can be obtained prior to actual damage so as to prevent that damage from occurring.").

**D.      Disputed Jury Instruction No. 4 Re Infringement—Elements—Validity— Unregistered Mark—Distinctiveness**

*First*, SolidWorks made two substantive modifications to the model instruction, both of which are pertinent to this case and well supported in controlling decisions. SolidWorks modified the instruction (PJI 26:2) to indicate that "majority" usage is determinative of genericness.  This standard is consistent with the statutory text, which indicates that the "primary significance"

SOLIDWORKS' MEMORANDUM IN SUPPORT OF ITS PROPOSED JURY INSTRUCTIONS

1   controls, *see* 15 U.S.C. § 1064(3) ("The primary significance of the registered mark to the relevant

2   public rather than purchaser motivation shall be the test for determining whether the registered

3   mark has become the generic name of goods or services on or in connection with which it has been

4   used."), and also with the Ninth Circuit's interpretation of that statutory text.  *See Freecycle*

5   *Network, Inc. v. Oey*, 505 F.3d 898, 905 (9th Cir. 2007) ("Where the *majority* of the relevant

6   public appropriates a trademark term as the name of a product (or service), the mark is a victim of

7   'genericide' and trademark rights generally cease." (emphasis added)); *see also* 2 McCarthy, *supra,*

8   § 12.6  ("The standard most often applied to determine whether a term is generic is not whether it

9   has *some* significance to the public as the name of an article, but whether that is its *principal*

10  significance.  However, the Supreme Court turned this statement around and said that for a seller

11  to prove trademark significance in a term challenged as generic, it must be proven that the

12  '*primary* significance of the term in the minds of the consuming public is *not* the *product* but the

13  *producer.'*  But both word formulations arrive at the same result from different directions:

14  Majority usage of the word is controlling."); *Anti-Monopoly, Inc. v. Gen'l Mills Fun Group, Inc.*,

15  684 F.2d 1316, 1322 (9th Cir. 1982) ("Even if only one producer-Parker Brothers-has ever made

16  the MONOPOLY game, so that the public necessarily associates the product with that particular

17  producer, the trademark is invalid unless source identification is its primary significance." (citation

18  and quotation marks omitted)).

19          SolidWorks also modified the instruction (PJI 26:5-9) to indicate that an association with a

20  particular producer is not sufficient to infuse a generic term with trademark significance.  This is

21  also well supported by controlling decisions.  *See, e.g.*, *Anti-Monopoly,*  684 F.2d at 1322 (9th Cir.

22  1982) ("Even if only one producer-Parker Brothers-has ever made the MONOPOLY game, so that

23  the public necessarily associates the product with that particular producer, the trademark is invalid

24  unless source identification is its primary significance." (citation and quotation marks omitted));

25  *id.* at 1322-23. ("It is not, of itself, enough that over 55% of the public has come to associate the

26  product, and as a consequence the name by which the product is generally known, with Parker

27  Brothers."); 2 McCarthy, *surpra*, § 12:11 ("That a company is widely known was the leading

28  manufacturer of a product or that that company is called to mind by many buyers when prompted

SOLIDWORKS' MEMORANDUM IN SUPPORT OF ITS PROPOSED JURY INSTRUCTIONS

by the product name is not sufficient to infuse a generic name with trademark significance."); *see*

*also E. Airlines, Inc. v. New York Air Lines, Inc.*, 559 F. Supp. 1270, 1275 (S.D.N.Y. 1983)

("Even if the word "shuttle" were found to be descriptive instead of generic, the mark would not

be entitled to trademark protection as the survey made by EAL failed to show that it has acquired a

secondary meaning. Only 10 per cent of the individuals surveyed identified the word "Air-Shuttle"

with EAL. Not only is this percentage too insignificant to establish that the primary significance of

the term is the producer and not the product, but the mere fact that a respondent mentioned

'Eastern' when he heard the word 'shuttle'" does not suggest that 'shuttles'" are identified with

Eastern. All that it demonstrates is that a likely response to any generic word is the name of the

best known producer or manufacturer of that product. This evidence further demonstrates that the

term 'shuttle' is generic.").

**E.** **Disputed Jury Instruction No. 5 Re Infringement—Generic Terms—Burden of Proof**

*First*, each of the propositions in SolidWorks' proposed instruction is well supported by

authority.

- **Generic terms are not valid or protectable trademarks.** *See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove*, 419 F.3d 925, 928 (9th Cir. 2005) ("Generic marks lack any distinctive quality, and therefore are not entitled to trademark protection. Therefore, when a defendant raises the defense of genericness in an infringement case involving an unregistered mark, the plaintiff has the burden of proof to show that the mark is valid and not generic. Even a registered mark may become generic and subject to cancellation. Generic terms are not registrable, and a registered mark may be canceled at any time on the grounds that it has become generic. Competitors may use a term that was once distinctive if it has become generic over time." (citations and quotation marks omitted));

- **They are not protected by trademark law because allowing a company to use a generic term as a trademark would make it difficult for competitors to market their own products**. *See Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609 (7th Cir. 1986) (Posner, J.) ("To allow a firm to use as a trademark a generic word, or a descriptive word still understood by the consuming public to describe, would make it difficult for competitors to market their own brands of the same product. Imagine being forbidden to describe a Chevrolet as a 'car' or an 'automobile' because Ford or Chrysler or Volvo had trademarked these generic words, or an after-shave lotion as 'bracing' because the maker of one brand of aftershave lotion had trademarked this descriptive word.").

- **In the previous instruction, Instruction Number 4, you were instructed that a term may be classified as generic if it refers to, or has come to refer to, the**

**general name of a product. A generic term is never protected by trademark law. A company cannot take a generic term and develop trademark rights in that term.** *See* 2 McCarthy, *supra*, § 12:11 ("Words currently used as generic names cannot be trademarks. The doctrine of generic names means that words proven to be currently recognized as a generic name cannot be taken by a seller and used as a trademark for that article or service.").

- **Similarly, if a term that is not generic becomes generic, that term can no longer be a valid and protectable trademark. A term becomes generic when the majority of relevant consumers come to understand the term to refer to the general name of a product.** *See Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 905 (9th Cir. 2007) ("Where the majority of the relevant public appropriates a trademark term as the name of a product (or service), the mark is a victim of 'genericide' and trademark rights generally cease."); 2 McCarthy¸ *supra*, 12.6 ("The standard most often applied to determine whether a term is generic is not whether it has *some* significance to the public as the name of an article, but whether that is its *principal* significance. However, the Supreme Court turned this statement around and said that for a seller to prove trademark significance in a term challenged as generic, it must be proven that the '*primary* significance of the term in the minds of the consuming public is *not* the *product* but the *producer.'* But both word formulations arrive at the same result from different directions: Majority usage of the word is controlling.").

- **Generic terms answer the question "What is the product being sold?" If the primary significance of a term is to describe the type of product rather than the producer, the term is generic.** *See Yellow Cab Co. of Sacramento*, 419 F.3d 925 at 929 ("We have often determined whether a mark is generic using the 'who-are-you/what-are-you' test: A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the generic name of the product answers the question 'What are you?'" (citations and quotation marks omitted)).

- **On the other hand, a generic term may be associated with a particular producer, but that is not sufficient to give a generic term with trademark significance. For instance, that a company is widely known as the leading producer of a product is not sufficient to give a generic term trademark significance.** *See* 2 McCarthy, *supra*, § 12:11 ("That a company is widely known was the leading manufacturer of a product or that that company is called to mind by many buyers when prompted by the product name is not sufficient to infuse a generic name with trademark significance."); *Anti-Monopoly, Inc. v. Gen'l Mills Fun Group, Inc.* 684 F.2d 1316, 1322 (9th Cir. 1982) ("Even if only one producer-Parker Brothers-has ever made the MONOPOLY game, so that the public necessarily associates the product with that particular producer, the trademark is invalid unless source identification is its primary significance." (citation and quotation marks omitted)); *Id.* at 1322-23. ("It is not, of itself, enough that over 55% of the public has come to associate the product, and as a consequence the name by which the product is generally known, with Parker Brothers."); *E. Airlines, Inc. v. New York Air Lines, Inc.*, 559 F. Supp. 1270, 1275 (S.D.N.Y. 1983) ("Even if the word "shuttle" were found to be descriptive instead of generic, the mark would not be entitled to trademark protection as the survey made by EAL failed to show that it has acquired a secondary meaning. Only 10 per cent of the individuals surveyed identified the word "Air-Shuttle" with EAL. Not only is this percentage too insignificant to establish that the primary significance of the term is the producer and not the product, but the mere fact that a respondent mentioned 'Eastern' when he heard the word 'shuttle'" does not suggest that 'shuttles'" are

1  identified with Eastern. All that it demonstrates is that a likely response to any
2  generic word is the name of the best known producer or manufacturer of that
   product. This evidence further demonstrates that the term 'shuttle' is generic.");

3  • **The plaintiff must prove by a preponderance of the evidence that the primary
   significance of the term "DWG" is not generic.** *See Vallavista Corp. v.*
4  *Amazon.com, Inc.*, 2008 WL 5210949, *3 (N.D. Cal. Dec. 11, 2008) (Alsup, J)
   ("The parties dispute who has the burden of proving genericness. This order finds
5  that Vallavista has the burden of proving that the unregistered TAXI WALLET
   word mark is not generic. When a plaintiff pursues a trademark action involving a
6  properly registered mark, that mark is presumed valid, and the burden of proving
   that the mark is generic rests upon the defendant. *However, if the disputed term has*
7  *not been federally registered, and the defendant asserts genericness as a defense,*
   *the burden shifts to the plaintiff to show that the mark is nongeneric.*" (citations and
8  quotation marks omitted; emphasis added)); *Yellow Cab Co. of Sacramento*, 419
   F.3d at 927 ("[I]f the disputed term has not been federally registered, and the
9  defendant asserts genericness as a defense, the burden shifts to the plaintiff to show
   that the mark is nongeneric."); *id.* at 928 ( "Yellow Cab of Sacramento argues that
10 the district court misallocated the burden of proof, claiming that a trademark
   challenger [i.e., the defendant] must establish that the term was generic prior to the
11 proponent's [i.e., the plaintiff's] use before the burden of proof can be shifted to the
   mark's proponent [i.e., the plaintiff]. We have not recognized such a rule, and it is
12 not supported by trademark theory."); *id.* ("Thus, Yellow Cab of Sacramento's
   argument that the plaintiff should not have to assume the burden of proof until the
13 defendant proves that the term in question was generic prior to the plaintiff's use
   runs counter to trademark theory, and we must reject it.").

14

15  *Second*, and accordingly, SolidWorks objects to Autodesk's proposed instruction because it

16  misstates the law.  The instruction indicates the jury must consider whether DWG was generic at

17  the time SolidWorks began to use its DWG-based product names.  (PJI 28:11-13.)  Trademark

18  rights can be lost if a mark becomes generic.  *See Freecycle Network, Inc. v. Oey*, 505 F.3d 898,

19  905 (9th Cir. 2007) ("Where the majority of the relevant public appropriates a trademark term as

20  the name of a product (or service), the mark is a victim of 'genericide' and trademark rights

21  generally cease.").  Accordingly, if DWG is now a generic term, Autodesk has no rights in it and

22  SolidWorks therefore cannot be liable for false designation of origin.

23  *Third*, SolidWorks objects to Autodesk's proposed instruction because it indicates that the

24  burden of proof shifts based on when a mark became generic.  (PJI 28:11-12.)  That is inaccurate.

25  The burden of proof on genericness is based on whether the term is registered or unregistered, not

26  on when it became generic.  Because DWG is unregistered, Autodesk <u>always</u> bears the burden of

27  proving that the primary significance of the mark is not generic.  *See Vallavista Corp. v.*

28  *Amazon.com, Inc.*, 2008 WL 5210949, *3 (N.D. Cal. Dec. 11, 2008) (Alsup, J) ("The parties

1    dispute who has the burden of proving genericness. This order finds that Vallavista has the burden

2    of proving that the unregistered TAXI WALLET word mark is not generic. When a plaintiff

3    pursues a trademark action involving a properly registered mark, that mark is presumed valid, and

4    the burden of proving that the mark is generic rests upon the defendant. *However, if the disputed*

5    *term has not been federally registered, and the defendant asserts genericness as a defense, the*

6    *burden shifts to the plaintiff to show that the mark is nongeneric*." (citations and quotation marks

7    omitted; emphasis added)); *Yellow Cab Co. of Sacramento*, 419 F.3d at 927 ("[I]f the disputed

8    term has not been federally registered, and the defendant asserts genericness as a defense, the

9    burden shifts to the plaintiff to show that the mark is nongeneric."); *id.* at 928 ( "Yellow Cab of

10   Sacramento argues that the district court misallocated the burden of proof, claiming that a

11   trademark challenger [i.e., the defendant] must establish that the term was generic prior to the

12   proponent's [i.e., the plaintiff's] use before the burden of proof can be shifted to the mark's

13   proponent [i.e., the plaintiff]. We have not recognized such a rule, and it is not supported by

14   trademark theory."); *id.* ("Thus, Yellow Cab of Sacramento's argument that the plaintiff should not

15   have to assume the burden of proof until the defendant proves that the term in question was

16   generic prior to the plaintiff's use runs counter to trademark theory, and we must reject it.").

17          **F.    Disputed Jury Instruction No. 6 Re Infringement—Elements—Validity—**
               **Distinctiveness—Secondary Meaning**

18

19          *First*, SolidWorks made two substantive modifications to the model instruction, both of

20   which are pertinent to this case and well supported in controlling decisions.  SolidWorks modified

21   the model instruction to indicate that actual confusion is only relevant to distinctiveness if "among

22   a significant number of consumers."  (PJI 34:7-8.)  That is the applicable legal standard.  *One*

23   *Indus., LLC v. Jim O'Neal Distrib., Inc*., 578 F.3d 1154 (9th Cir. 2009) ("[I]f a party produces

24   evidence from which a reasonable jury could surmise that *an appreciable number of people* are

25   confused about the source of the product, then it is entitled to a trial on the likelihood of

26   confusion-although it will not necessarily prevail at that trial." (quoting *Thane Int'l, Inc. v. Trek*

27   *Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir. 2002)); *Playboy Enters. v. Netscape Commc'ns Corp.*,

28   354 F.3d 1020, 1026 (9th Cir. 2004) ("[A] showing of actual confusion among significant

numbers of consumers provides strong support for the likelihood of confusion."); *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir. 2002) ("If enough people have been actually confused, then a likelihood that people are confused is established. This is not to say that evidence of actual confusion will always compel a jury to find likelihood of confusion. In some cases, a jury may properly find actual confusion evidence de minimis and thus "unpersuasive as to the ultimate issue . . . ." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1150 (9th Cir. 2002). But if a party produces evidence from which a reasonable jury could surmise that an "appreciable number" of people are confused about the source of the product, then it is entitled to a trial on the likelihood of confusion-although it will not necessarily prevail at that trial. *Id.* at 1151 (emphasis in original).") (Note: The ellipse in this quote is included in the original.)

SolidWorks also modified the model instruction to indicate that survey evidence is relevant to secondary meaning.  (PJI 34:9.)  Again, that is the applicable legal standard.  A lack of survey evidence is probative.  *See, e.g.*, *Playboy Enters. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1026 (9th Cir. 2004) ("Surveys are commonly introduced as probative evidence of actual confusion."); *Morrison Entm't Group Inc. v. Nintendo of Am., Inc.*, 56 Fed. Appx 782, 785 (9th Cir. 2003) ("Although Morrison is not required to conduct a survey in order to demonstrate actual confusion, such surveys are often used by plaintiffs to bolster their cases. The absence of such a survey is somewhat telling here, where there is an actual confusion survey in the record conducted by Nintendo showing that children in the target age-group are unlikely to confuse the two trademarks.); *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir. 2002) ("Trek did not present direct evidence of actual confusion, such as the testimony of actual customers. It did, however, present extensive survey evidence of actual confusion. Survey evidence may establish actual confusion."); *Oregon Arms, Inc. v. Oregon Arms Ltd.*, 2000 WL 1763249, 2 (9th Cir. Nov. 27, 2000) ("Rogue provided no consumer surveys demonstrating confusion.);  *see  Merriam-Webster, Inc. v. Random House, Inc.*, 35 F .3d 65, 72 (2d Cir. 1994) ("The lack of survey evidence counts against finding actual confusion."); *Natural Organics, Inc. v. Nutraceutical Corp.*, 271 Fed. Appx 89, 90 (2d Cir. Mar. 27, 2008) ("The district court decided that Natural Organics' failure to present a consumer confusion survey weighed *against* a finding that consumer confusion is

1    likely.").

2        *Second*, SolidWorks made one modification to indicate that the Court already determined,

3    and Autodesk conceded, that anyone can use the .dwg file extension and develop software that

4    opens, saves, or otherwise works with a .dwg file; and that, accordingly, any association between

5    the .dwg file extension and any producer of it is irrelevant to the determination of secondary

6    meaning. (PJI 32:15-19.)

7        *Third*, SolidWorks objects to Autodesk's proposed instruction because it misstates the law.

8    The instruction states that "Autodesk need not have taken legal action to stop low-level users of

9    DWG."  (PJI 31:19-24.)  Whether Autodesk had a duty to stop low-lever users of DWG is

10   irrelevant to the jury's secondary meaning inquiry.  That third-parties used the term DWG is the

11   focus of the exclusivity requirement: "Use by others of a similar mark will tend to dilute any

12   consumer recognition and association of that mark with the alleged owner. Such use is therefore

13   relevant to the issue of secondary meaning."  2 McCarthy, *supra*, § 15:27 (also noting that

14   "[w]here purchasers are faced with more than one independent user of a term, this is evidence that

15   distinctiveness is lacking."); *M2 Software, Inc. v. Madacy Ent'mt,* 421 F.3d 1073, 1087-88 (9th

16   Cir. 2005) ("The district court excluded evidence of M2 Software's legal fees in defending its

17   mark against other alleged infringers because such evidence was irrelevant to the case at hand.

18   Moreover, notwithstanding the district court's ruling, M2 Software was still able to elicit some

19   testimony regarding its enforcement efforts at trial. Accordingly, the district court did not abuse its

20   discretion in excluding this evidence, and error, if any, was harmless.  The district court permitted

21   Madacy to present limited evidence of existing third-party marks in the relevant field which were

22   similar to M2 Software's to demonstrate that it was less likely that M2 Software's customers would

23   associate M2 Software's products with those of Madacy's, as opposed to other third parties. The

24   district court, however, did not permit Madacy to introduce non-probative evidence of third-party

25   marks in unrelated fields or of music albums that merely contained an 'M2' in the title.  Use of

26   similar marks by third-party companies in the relevant industry weakens the mark at issue.");

27   *Secular Orgs. for Sobriety, Inc. v. Ullrich*, 213 F.3d 1125, 1130 (9th Cir. 2000) ("[Plaintiff's] use

28   of the mark did not establish secondary meaning because it was not sufficiently lengthy nor was it

1    exclusive, given the mark's use by [defendant's] predecessors.").  That Autodesk had no

2    affirmative duty to stop low-level users is irrelevant to the relevant fact that these users existed in

3    the market.  *See* 1 Gilson, *Trademark Protection and Practice*, § 2.09[5][e] ("To the extent that

4    third parties are using the claimed mark in association with the same or related goods or services,

5    its impact on the public consciousness is likely to be less and the public is less likely to associate it

6    with a single source of products." (emphasis added)); 2 J. Thomas McCarthy, *McCarthy on*

7    *Trademarks and Unfair Competition,* § 11:88 (4th ed.) ("Evidence of third party use of similar

8    marks on similar goods is admissible and relevant to show that the mark is relatively weak and

9    entitled to only a narrow scope of protection."); 6 J. Thomas McCarthy, § 31:157 ("Similarly,

10   defendant's claim that plaintiff has failed to sue other infringers (with title inferior to plaintiff), is

11   not jus tertii, but rather a claim that the strength of plaintiff's mark has been weakened by

12   widespread use."); *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d

13   1083, 1091 (C.D. Cal. 2003) ("Even an arbitrary mark may be classified as weak where there has

14   been extensive third party use of similar marks on similar goods." (citation and quotation marks

15   omitted)).

16   ### G.    Disputed Jury Instruction No. 7 Re Infringement—Elements—Ownership—
17   ### Generally

18        This proposed instruction does not deviate substantively from the model

19   instruction, though it does incorporate language from the comment to the model suggesting it

20   should be incorporated in cases, like this case, where the validity of the trademark is a result of its

21   acquiring secondary meaning.

22   ### H.    Disputed Jury Instruction No. 8 Re Infringement—Likelihood of Confusion—
23   ### Sleekcraft Test

24        *First*, SolidWorks made two substantive modifications to the model instruction, both of

25   which are well supported by controlling authority.  SolidWorks modified the instruction (PJI

26   42:17-18) to indicate that the similarity of marks must be considered in light of the way the marks

27   are encountered in the marketplace and circumstances surrounding the purchase of products.  That

28   is the proper legal standard.  *See, e.g., Reno Air-racing Ass'n, Inc. v. McCord*, 452 F.3d 1126,

1    1137 (9th Cir. 2006) ("However, similarity of the marks is but one factor in the Sleekcraft test,

2    albeit an important one, and a court does not consider the similarity of the marks in the abstract,

3    but rather in light of the way the marks are encountered in the marketplace and the circumstances

4    surrounding the purchase."); *Lindy Pen Co. Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir.

5    1984) ("The two marks viewed in isolation are indeed identical, but their similarity must be

6    considered in light of the way the marks are encountered in the marketplace and the circumstances

7    surrounding the purchase of the [products]."); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir.

8    2002) ("First, although the parties superficially use the identical slogan as a trademark, consumers

9    will actually encounter the trademarks differently in the marketplace."); 3A Louis Altman & Malla

10   Pollack, *Callmann on Unfair Competition, Trademark & Monopoly* § 21:15 (4th Ed.) ("In an

11   infringement litigation the parties' marks should be considered in the commercial context in which

12   they are used.").

13        SolidWorks also modified the model instruction to indicate (PJI 44:16-17) that defendant's

14   intent is relevant only if the defendant had an "intent to deceive consumers."  That is also the

15   proper legal standard.  *See, e.g.*, *One Indus. v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1163 (9th

16   Cir. 2009) ("While an intent to confuse consumers is not required for a finding of trademark

17   infringement, intent to deceive is strong evidence of a likelihood of confusion." (quoting

18   *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002)); *Kendall-Jackson*

19   *Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1052, n.11 (9th Cir. 1998) ("[I]n

20   *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 844-45 (9th Cir. 1987), this court

21   stated that proof of *intent to cause confusion* is entitled to great weight, not that it creates a

22   presumption of confusion that shifts the burden of proof to the other party." (emphasis added)).

23        *Second*, SolidWorks objects to Autodesk's proposed instruction because it is misleading,

24   confusing, and argumentative.  This proposed instruction gives both the *Sleekcraft* test and the

25   nominative fair use test.  Conflating these two tests will mislead and confuse the jury.  Autodesk's

26   first (DWG) and third (AUTOCAD) claims for relief involve substantially different issues.

27   Validity (distinctiveness/secondary meaning) and ownership (senior user) are not at issue with

28   respect to AUTOCAD, but they are with respect to DWG.  Nominative fair use is not at issue with

1   respect to AUTOCAD, but is with respect to DWG.  Indeed, the only issue that is potentially

2   relevant to both claims is likelihood of confusion—and Autodesk argues it does not have to

3   establish likelihood of confusion with respect to its AUTOCAD claim.  Accordingly, SolidWorks

4   requests that the jury receive separate instructions regarding these two claims.

5          *Third*, SolidWorks objects to this instruction because it is misleading, confusing, and

6   argumentative.  Autodesk's proposed instruction does not properly state the nominative fair use

7   test.  It leaves out that portion of the test which requires that a defendant use a mark in connection

8   with a plaintiff's products when those products are not readily identifiable without use of the

9   trademark.  This is improper.  The jury should be given the full test, instructed that the court has

10  determined as a matter of law that the first element is satisfied, and be asked to decide the

11  remaining questions.  Without a complete instruction, the jury will improperly wonder why

12  SolidWorks used the AUTOCAD mark, to the unfair prejudice of SolidWorks.

13         *Fourth*, SolidWorks objects to this proposed instruction because it misstates the law.  The

14  instruction indicates that, because SolidWorks has raised the nominative fair use defense,

15  Autodesk does not have to establish any likelihood of confusion for its AUTOCAD claim.  (PJI

16  15:5-14.)  That is incorrect.  A plaintiff must always establish a prima facie case before the

17  defendant bears any burden on an affirmative defense.  *See KP Permanent Make-Up, Inc. v.*

18  *Lasting Impression I, Inc.*, 543 U.S. 111, 120 (2004) ("If a plaintiff succeeds in making out a

19  prima facie case of trademark infringement, including the element of likelihood of consumer

20  confusion, the defendant may offer rebutting evidence to undercut the force of the plaintiff's

21  evidence on this (or any) element, or raise an affirmative defense to bar relief even if the prima

22  facie case is sound, or do both. But it would make no sense to give the defendant a defense of

23  showing affirmatively that the plaintiff cannot succeed in proving some element (like confusion);

24  all the defendant needs to do is to leave the factfinder unpersuaded that the plaintiff has carried its

25  own burden on that point. A defendant has no need of a court's true belief when agnosticism will

26  do. Put another way, it is only when a plaintiff has shown likely confusion by a preponderance of

27  the evidence that a defendant could have any need of an affirmative defense, but under Lasting's

28  theory the defense would be foreclosed in such a case. '[I]t defies logic to argue that a defense may

not be asserted in the only situation where it even becomes relevant.' *Shakespeare Co. v. Silstar Corp.*, 110 F.3d at 243. Nor would it make sense to provide an affirmative defense of no confusion plus good faith, when merely rebutting the plaintiff's case on confusion would entitle the defendant to judgment, good faith or not."); *id.* at 124 ("In sum, a plaintiff claiming infringement of an incontestable mark must show likelihood of consumer confusion as part of the prima facie case, 15 U.S.C. § 1115(b), while the defendant has no independent burden to negate the likelihood of any confusion in raising the affirmative defense that a term is used descriptively, not as a mark, fairly, and in good faith, § 1115(b)(4)."); 4 McCarthy, *supra*, § 23:11 (4th ed. 2009) ("To the extent that the Ninth Circuit implied that the defendant has the burden of negating a likelihood of confusion by proving the three elements of nominative fair use, that view cannot survive the Supreme Court's decision in [*KP Permanent Make-Up*], which emphasizes that the plaintiff always has the burden of proving infringement by a likelihood of confusion."); *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 221 (3d Cir. 2005) ("In addition, the approach of the Court of Appeals for the Ninth Circuit would relieve the plaintiff of the burden of proving the key element of a trademark infringement case-likelihood of confusion-as a precondition to a defendant's even having to assert and demonstrate its entitlement to a nominative fair use defense. The Supreme Court in KP Permanent Make-Up clearly established that it was plaintiff's burden in a classic fair use case to prove likelihood of confusion. There, the Court noted the difference between fair use and other trademark infringement claims, opining, as we stated above, that likelihood of confusion and fair use can coexist. This does not mean that we should remove the need for finding confusion in the first instance. Instead, once the plaintiff proves likelihood of confusion, defendant only had to show that defendant's use, even if confusing, was "fair".").

*Fifth*, SolidWorks also objects because relevant portions of the model instruction are omitted.  (*Compare* PJI 40:13-26 *with*  Model Instruction 15:16 ("As you consider whether the trademark used by the defendant creates for consumers a likelihood of confusion with the plaintiff's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of

1   sales, but only a few isolated instances of actual confusion you may find that there has not been

2   substantial actual confusion.").

### I.       Disputed Jury Instruction No. 9 Re Unfair Competition—False Advertising— Elements and Burden of Proof

5          This instruction is a correct statement of the applicable law.  *See Rice v. Fox Broad.Co.*,

6   330 F.3d 1170, 1180 (9th Cir. 2003) ("In order to prove a claim for false advertising under the

7   Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a claimant must establish: 1) in advertisements,

8   defendant made false statements of fact about its own or another's product; 2) those

9   advertisements actually deceived or have the tendency to deceive a substantial segment of their

10  audience; 3) such deception is material, in that it is likely to influence the purchasing decision; 4)

11  defendant caused its falsely advertised goods to enter interstate commerce; and 5) plaintiff has

12  been or is likely to be injured as the result of the foregoing either by direct diversion of sales from

13  itself to defendant, or by lessening of the goodwill which its products enjoy with the buying

14  public."); Ninth Circuit Manual of Model Jury Instructions, Instruction 15:4, comment (October

15  2009 edition) ("The statute requires that the mark be either (1) used in commerce or (2) placed on

16  goods intended to be used in commerce. 15 U.S.C. § 1114(1). Because the 'commerce' requirement

17  is jurisdictional, that element need not go to the jury.").

### J.       Disputed Jury Instruction No. 10 Re Unfair Competition—False Advertising—Elements

20         Each of the propositions in SolidWorks' proposed instruction is well supported by

21  authority.

22  - **When determining whether a statement is false or misleading, the statement must always be analyzed in its full factual context. Falsity is measured by referenced to objective industry standards. If a plaintiff cannot show falsity and instead relies on a claim that the statement is misleading, the plaintiff must prove by extrinsic evidence the challenged advertisements tend to mislead or confuse consumers.** *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) ("When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context."); *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 336 (N.D. Cal. 1995) ("While the determination whether an advertising claim is misleading to consumers is evaluated from the public's perspective, "[i]n order to determine whether a claim is literally false courts have looked to objective industry standards . . . ." (alteration in original)); *In re Century 21*, 882 F. Supp. at 922-23 ("If a plaintiff cannot show

literal falsity and instead relies on a claim of an implied falsehood, the plaintiff must prove, by extrinsic evidence the challenged [advertisements] tend to mislead or confuse consumers." (quotation marks and citations omitted));

- **If the statements at issue in this claim constitute mere "puffery" that does not go to the inherent quality or characteristics of the product, they do not support a claim of unfair competition.  Puffing is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and does not support a false advertising claim.**  *See Southland Sod Co.*, 108 F.3d at 1145 ("Puffing is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable under § 43(a)." (citation and quotation marks omitted)).

- **To establish that it has been or is likely to be injured as the result of the defendant's conduct, the plaintiff  must provide more than its mere subjective belief that it will be injured.  The plaintiff must submit proof which provides a reasonable basis for that belief, and must prove a logical causal connective between the alleged false advertising and its own injury.**  *See In re Century 21-RE/MAX Real Estate Advert. Claims Litig.,* 882 F. Supp. 915, 924 (C.D. Cal. 1994) ("Finally, to prevail under the Lanham Act, a plaintiff must demonstrate that 'plaintiff has been or is likely to be injured as a result' of the false advertisements. C*ook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 244 (9th Cir. 1990). '[A] plaintiff [under the Lanham Act] must provide more than his "mere subjective belief" that he will be injured . . ." *Walt Disney Prods. v. Filmation Associates*, 628 F.Supp. 871, 880 (C.D. Cal. 1986). The plaintiff 'must submit proof which provides a reasonable basis for that belief.' *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 316 (2nd Cir. 1982); *Walt Disney Prods.*, 628 F. Supp. at 880 ('proof of a reasonable likelihood of injury is sufficient')" (alterations in original)).

### K.   Disputed Jury Instruction No. 11 Re Autodesk's Third Claim—Infringement—Elements and Burden of Proof—Trademark

As noted above, Autodesk's first (DWG) and third (AUTOCAD) claims should not be conflated, as this is likely to confuse and mislead the jury and unfairly prejudice SolidWorks.

### L.   Disputed Jury Instruction No 12 Re Infringement—Likelihood of Confusion—Factors—Sleekcraft Test

Because Autodesk must establish that SolidWorks' use of AUTOCAD is likely to cause confusion, this instruction is proper.  *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 120 (2004) ("If a plaintiff succeeds in making out a prima facie case of trademark infringement, including the element of likelihood of consumer confusion, the defendant may offer rebutting evidence to undercut the force of the plaintiff's evidence on this (or any) element, or raise an affirmative defense to bar relief even if the prima facie case is sound, or do both. But it would make no sense to give the defendant a defense of showing affirmatively that the

plaintiff cannot succeed in proving some element (like confusion); all the defendant needs to do is to leave the factfinder unpersuaded that the plaintiff has carried its own burden on that point. A defendant has no need of a court's true belief when agnosticism will do. Put another way, it is only when a plaintiff has shown likely confusion by a preponderance of the evidence that a defendant could have any need of an affirmative defense, but under Lasting's theory the defense would be foreclosed in such a case. '[I]t defies logic to argue that a defense may not be asserted in the only situation where it even becomes relevant.' *Shakespeare Co. v. Silstar Corp.*, 110 F.3d, at 243. Nor would it make sense to provide an affirmative defense of no confusion plus good faith, when merely rebutting the plaintiff's case on confusion would entitle the defendant to judgment, good faith or not."); *id.* at 124 ("In sum, a plaintiff claiming infringement of an incontestable mark must show likelihood of consumer confusion as part of the prima facie case, 15 U.S.C. § 1115(b), while the defendant has no independent burden to negate the likelihood of any confusion in raising the affirmative defense that a term is used descriptively, not as a mark, fairly, and in good faith, § 1115(b)(4)."); 4 McCarthy, *supra*, § 23:11 (4th ed. 2009) ("To the extent that the Ninth Circuit implied that the defendant has the burden of negating a likelihood of confusion by proving the three elements of nominative fair use, that view cannot survive the Supreme Court's decision in [*KP Permanent Make-Up*], which emphasizes that the plaintiff always has the burden of proving infringement by a likelihood of confusion."); *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 221 (3d Cir. 2005) ("In addition, the approach of the Court of Appeals for the Ninth Circuit would relieve the plaintiff of the burden of proving the key element of a trademark infringement case-likelihood of confusion-as a precondition to a defendant's even having to assert and demonstrate its entitlement to a nominative fair use defense. The Supreme Court in *KP Permanent Make-Up* clearly established that it was plaintiff's burden in a classic fair use case to prove likelihood of confusion. There, the Court noted the difference between fair use and other trademark infringement claims, opining, as we stated above, that likelihood of confusion and fair use can coexist. This does not mean that we should remove the need for finding confusion in the first instance. Instead, once the plaintiff proves likelihood of confusion, defendant only had to show that defendant's use, even if confusing, was "fair.").

**M.**   **Disputed Jury Instruction No. 13 Re Defenses—Nominative Fair Use**

*First,* SolidWorks modified the model instruction to indicate that whether the defendant affirmatively disavowed any sponsorship or endorsement by the plaintiff through a statement disclaiming any connection to the plaintiff is relevant to the nominative use inquiry.  That proposition is well supported in the case law.  *See, e.g.*, *Playboy Enters., Inc. v. Welles,* 279 F.3d 796, 803 (9th Cir. 2002) ("In addition to doing nothing in conjunction with her use of the marks to suggest sponsorship or endorsement by PEI, Welles affirmatively disavows any sponsorship or endorsement. Her site contains a clear statement disclaiming any connection to PEI. Moreover, the text of the site describes her ongoing legal battles with the company."); *Consumers Union of United States, Inc. v. General Signal Corp.*,  724 F.2d 1044, 1053 (2d Cir. 1983) ("Disclaimers are a favored way of alleviating consumer confusion as to source or sponsorship."); *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 231 (3d Cir. 2005) ("Far from unimportant, such a disclaimer must be considered in determining whether the alleged infringer accurately portrayed the relationship that existed between plaintiff and defendant.").

*Second*, for the reasons stated in section H, above, SolidWorks objects to Autodesk's statement of the nominative fair use test.

**N.**   **Disputed Jury Instruction No. 14 Re Affirmative Defense—Unclean Hands**

SolidWorks has articulated facts sufficient to support this proposed instruction, and will offer evidence at trial to support it.  Moreover, this instruction is a correct statement of the applicable law.  *See Metro-Goldwyn-Mayer Studios, Inc. v. Grosser, Ltd.*, 518 F. Supp. 2d 1197, 1222-23 (C.D. Cal. 2007) ("To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant." (citation and quotation marks omitted)); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,  826 F.2d 837, 847 (9th Cir. 1987) ("Unclean hands is a defense to a Lanham Act infringement suit. To prevail, the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims. Equity requires that those seeking its protection

1    shall have acted fairly and without fraud or deceit as to the controversy in issue." (citations,

2    brackets, and quotation marks omitted)).

3    **O.      Disputed Jury Instruction No. 15 Re Affirmative Defense—Estoppel**

4         SolidWorks has articulated facts sufficient to support this proposed instruction, and will

5    offer evidence at trial to support it.  Moreover, this instruction is a correct statement of the

6    applicable law.  *See Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1399 (C.D.

7    Cal. 1990) ("Four elements must coalesce to make out an equitable estoppel defense to a copyright

8    infringement claim: (1) the plaintiff must know the facts of the defendant's infringing conduct; (2)

9    the plaintiff must intend that his conduct be acted on or must so act that the defendant has a right

10   to believe that it is so intended; (3) the defendant must be ignorant of the true facts; and (4) the

11   defendant must detrimentally rely on the plaintiffs conduct.").

12   **P.      Disputed Jury Instruction No. 16 Re Affirmative Defense—Waiver**

13        SolidWorks' proposed instruction is a proper statement of the applicable law.  *See A&M*

14   *Records v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) ("Waiver is the intentional

15   relinquishment of a known right with knowledge of its existence and the intent to relinquish it."

16   (quoting *United States v. King Features Entm't, Inc.*, 843 F.2d 394 399 (9th Cir. 1988)).

17   **Q.      Disputed Jury Instruction No. 17 Re Defenses—Abandonment—Affirmative
         Defense—Defendant's Burden of Proof**

18

19        SolidWorks has articulated facts sufficient to support this proposed instruction, and will

20   offer evidence at trial to support it.  Moreover, Autodesk had notice that the facts relevant to

21   SolidWorks' abandonment defense were in issue.  That SolidWorks pled waiver put Autodesk on

22   notice that the issues relevant to abandonment were at issue.  *See, e.g.*, *Ellipse Commc'ns, Inc. v.*

23   *Caven*, 2009 WL 3398709, *7 (N.D. Tex. 2009) ("'Waiver' is the intentional relinquishment of a

24   known right which, in the trademark context, is essentially the same as abandonment."); *Alaska*

25   *Airlines v. United States*,  399 F. Supp. 906, 910 (N.D. Cal. 1975) ("A Waiver, as defined by

26   Webster as well as Black's Law Dictionary and others, constitutes an abandonment of a right, with

27   no reservations for future use, which is a unilateral thing.").  And the course of this litigation has

28   provided Autodesk such  notice.  In its Counterclaims, SolidWorks alleged that Autodesk's

1  attempt to claim ownership of DWG was inconsistent with its past conduct, including its decision

2  to abandon applications for composite marks that contained DWG, namely, DWG Unplugged and

3  Max DWG, and to disclaim DWG in those applications prior to abandonment.  Counterclaims,

4  para. 12.  Autodesk also failed to claim DWG as a trademark on its trademark listings until after

5  SolidWorks filed applications for DWG-based marks.  *Id.*, para. 14.  In answers to interrogatories,

6  SolidWorks repeatedly focused on Autodesk's failure to police its claimed "DWG" mark, or to

7  prevent third parties from using it, or to treat it as a mark in any way, shape, or form.  See

8  SolidWorks Responses to Interrogatory 11, 12, and Supplemental Responses to Interrogatories 9,

9  10, and 11.  In addition, SolidWorks deposed an Autodesk witness about Autodesk's RealDWG

10  licensing program, who admitted that Autodesk does nothing to police its licensees' use of

11  "DWG" or the quality of applications with respect to which the term is used.  In any event, if

12  necessary, SolidWorks will seek leave of the Court to amend its complaint to conform to proof.

13        SolidWorks' modification of the model instruction is a proper statement of the applicable

14  law.  *See Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 595-96 (9th Cir.

15  2002) ("It is *well*-established that a trademark owner may grant a license and remain protected

16  provided quality control of the goods and services sold under the trademark by the licensee is

17  maintained. But uncontrolled or 'naked' licensing may result in the trademark ceasing to function

18  as a symbol of quality and controlled source. Consequently, where the licensor fails to exercise

19  adequate quality control over the licensee, "a court may find that the trademark owner has

20  abandoned the trademark, in which case the owner would be estopped from asserting rights to the

21  trademark." (citations and quotation marks omitted)).

22      **R.**      **Disputed Jury Instruction No. 18 Re Defenses—"Classic" Fair Use**

23        SolidWorks has articulated facts sufficient to support this proposed instruction, and will

24  offer evidence at trial to support it.

25      **S.**      **Disputed Jury Instruction No. 19 Re Trademark Damages—Wrongful Intent**

26        This instruction is proper because Autodesk seeks an accounting of SolidWorks' profits but

27  has no evidence of actual damages and does not seek SolidWork's profits as a measure of its own

28  damages.  *See, e.g.*, *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407-09 (9th Cir. 1993)

1   ("The present case simply does not involve willful infringement. Evidence taken at the damages

2   proceeding shows that Lindy in general, and its Auditor's line in particular, was experiencing an

3   overall business decline. The trial court also found that any knowledge that Bic may have had of

4   Lindy's mark stemming from the 1965 interchange was conducted by outside counsel, thereby

5   implying that Bic's knowledge of Lindy's interest was attenuated at best. *Lindy Pen*, 550 F. Supp.

6   at 1059. The district court also determined that Lindy's mark was weak and that there was no

7   evidence of actual confusion. *Id.* at 1058-60. Based on these facts, it was reasonable for the district

8   court to conclude that Bic's actions were not "willfully calculated to exploit the advantage of an

9   established mark," *Bandag, Inc.*, 750 F.2d at 921, and that Bic's conduct did not rise to the level of

10  willfulness which would have mandated an award."); *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988

11  (9th Cir. 1995) ("Adray argues on appeal that the district court erred in instructing the jury that it

12  must find willful infringement before awarding defendant's profits to Adray. An instruction that

13  willful infringement is a prerequisite to an award of defendant's profits may be error in some

14  circumstances (as when plaintiff seeks the defendant's profits as a measure of his own damage,

15  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407-09 (9th Cir. 1993)), but was appropriate on

16  the record in this case. Adray conceded that he did not seek to recover Adry-Mart's profits as a

17  measure of his own lost sales, since he disclaimed any intent to seek damages based on lost

18  sales."); *Vallavista Corp. v. Amazon.com, Inc.*, 2008 WL 5210949, at *6 (N.D. Cal. Dec. 11, 2008)

19  ("Target also contends that there is no evidence of willful infringement and, thus, Vallavista

20  cannot recover Target's profits. Willful infringement is required when the plaintiff seeks the

21  defendant's profits.").

22        **T.**     <u>**Disputed Jury Instruction No. 20 Re Trademark Damages—Defendant's**</u>
<u>**Profits**</u>

23

24        SolidWorks made one substantive modification to the model instruction to indicate that

25  only profits established with reasonable certainty and attributable to the conduct at issue in this

    case are recoverable.   That is the proper legal standard.   See, e.g., *Jerry's Famous Deli, Inc. v.*

26  *Papanicolaou*, 383 F.3d 998, 1004-05 (9th Cir. 2004) ("Under established law, once gross profits

27  *related to the infringement are established*, [infringer] has the burden of documenting any

28

02966.51459/3255380.2

legitimate offsets. On review we *must consider whether the link between the profits and the violations* underlying the contempt order is legally sufficient. " (emphasis added; citation omitted)); *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999) ("It was [plaintiff's] burden to show with reasonable certainty [defendant's] gross sales from counterfeit altered 'Rolex' watches."); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993) ("[A]n accounting is intended to award profits only on sales that are *attributable to the infringing conduct.*" (emphasis added)); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989) ("Here, as defendants argue, Harper House presented no evidence of any injury causally related to the defendants' deception. The district court noted that "there is no evidence of lost profits by the plaintiff."); *Id.* ("In a suit for damages under section 43(a), however, actual evidence of some injury resulting from the deception is an essential element of the plaintiff's case. We agree with the district court that Harper House failed to present any evidence of injury resulting from defendants' deception. The district court should have granted defendants' motion for judgment notwithstanding the verdict on the unfair competition claims."); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 513 (9th Cir. 1985) ("Although uncertainty as to the amount of damages will not preclude recovery, uncertainty as to the fact of damages may. It was the fact of damages that concerned the district court. The court found that *plaintiffs failed to establish any damages attributable to the infringement*. This finding is not clearly erroneous." (emphasis added; citations and quotation marks omitted)); *Oyster* Software*, Inc. v. Forms Processing, Inc.* 2001 WL 1736382, 9 (N.D. Cal. Dec. 6, 2001) ("Under the approach taken by the Ninth Circuit, an accounting is intended to award profits only on sales that are attributable to the infringing conduct." (citations and quotation marks omitted)).

1   DATED:  December 23, 2009          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
2

3
                                       By        /s/        Claude M. Stern
4                                          Claude M. Stern
                                           Attorneys for Defendant Dassault Systèmes
5                                          SolidWorks Corporation.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SOLIDWORKS' MEMORANDUM IN SUPPORT OF ITS PROPOSED JURY INSTRUCTIONS