MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
J. THOMAS MCCARTHY (CA SBN 034728)
TMcCarthy@mofo.com
DAVID E. MELAUGH (CA SBN 219477)
DMelaugh@mofo.com
LYNN M. HUMPHREYS (CA SBN 168062)
LHumphreys@mofo.com
JACQUELINE BOS (CA SBN 243938)
JBos@mofo.com
NATHAN B. SABRI (CA SBN 252216)
NSabri@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Plaintiff
AUTODESK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DASSAULT SYSTÈMES SOLIDWORKS CORPORATION, a Delaware Corporation,<br><br>Defendant. | Case No. 3:08-cv-04397-WHA<br><br>**AUTODESK, INC.'S MEMORANDUM OF LAW IN SUPPORT OF DISPUTED JURY INSTRUCTIONS**<br><br>Judge:      Hon. William H. Alsup<br>Trial Date:  January 5, 2010 |

# TABLE OF CONTENTS

I.  GENERAL OBJECTIONS ...................................................................................... 1

    A.  Use of "Consumers" Instead of "Purchasers." ....................................................... 1

    B.  Use of Party Names Instead of "Plaintiff" and "Defendant" ................................. 1

II. OBJECTIONS TO SPECIFIC INSTRUCTIONS.................................................... 1

    A.  Disputed Jury Instructions No. 1 re Preliminary Instruction ............................... 1

    B.  Disputed Jury Instructions No. 2 re Trademark Liability
       Theories and Policies .............................................................................................. 5

    C.  Disputed Jury Instructions No. 3 re Elements and Burden of
       Proof of Trademark Infringement and False Designation of
       Origin ...................................................................................................................... 5

    D.  Disputed Jury Instruction No. 4 re Infringement—
       Elements—Validity—Unregistered Marks—
       Distinctiveness ........................................................................................................ 6

    E.  Disputed Jury Instruction No. 5 re Infringement—Generic
       Terms—Burden of Proof ........................................................................................ 7

    F.  Disputed Instruction No. 6 re Infringement—Elements—
       Validity—Distinctiveness—Secondary Meaning ................................................. 9

    G.  Disputed Jury Instruction No. 7 re Infringement—
       Elements—Ownership—Generally....................................................................... 12

    H.  Disputed Jury Instruction No. 8 re Likelihood of
       Confusion—Factors—*Sleekcraft* Test and Nominative Fair
       Use ........................................................................................................................ 13

    I.  Disputed Jury Instruction No. 9 re Unfair Competition—
       False Advertising—Elements and Burden of Proof.............................................. 16

    J.  Disputed Instruction No. 10 re Affirmative Defense to
       Unfair Competition and False Advertising—Puffery .......................................... 17

    K.  Disputed Jury Instruction Nos. 11 and 12 re Burden of
       Proof for and Application of Sleekcraft to AutoCAD Claim................................ 19

    L.  Disputed Jury Instruction No. 13 re Nominative Fair Use
       AutoCAD Claim ................................................................................................... 20

    M.  Disputed Jury Instruction No. 14 re Affirmative Defense of
       Unclean Hands ...................................................................................................... 20

    N.  Disputed Jury Instruction No. 15 re Affirmative Defense of
       Estoppel................................................................................................................. 22

1

O.  Disputed Jury Instruction No. 16 re Affirmative Defense of
    Waiver ................................................................................................. 22

2

P.  Disputed Jury Instruction No. 17 re Affirmative Defense of
    Abandonment ...................................................................................... 23

3

4

Q.  Disputed Jury Instruction No. 18 re Defenses—Classic Fair
    Use ....................................................................................................... 27

5

R.  Disputed Jury Instruction No. 19 re Wrongful Intent ........................ 29

6

S.  Disputed Jury Instruction No. 20 re Damages—
    Defendant's Profits............................................................................. 31

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*A&M Records v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001)...................................................................23

*Adidas Am., Inc. v. Payless Shoesource, Inc.*,
   546 F. Supp. 2d 1029 (D. Or. 2008) ..................................................22, 23

*AMF, Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979).....................................................................13

*Atlas Supply Co. v. Atlas Brake Shops, Inc.*,
   360 F.2d 16, 18 (6th Cir. 1966)..................................................................24

*Banjo Buddies, Inc. v. Renosky*,
   399 F.3d 168 (3d Cir. 2005).......................................................................30

*Big Blue Products Inc. v. International Business Machines Corp.*,
   1991 TTAB LEXIS 9, 19 U.S.P.Q.2d 1072 (TTAB Apr. 8, 1991) .........2

*Brookfield Communs. v. W. Coast Entm't Corp.*,
   174 F.3d 1036, 1060 (9th Cir. 1999)..........................................................15

*Canfield v. Health Communs., Inc.*,
   2008 U.S. Dist. LEXIS 28662, (C.D. Cal. Apr. 1, 2008)...................28, 29

*Chance v. Pac-Tel Teletrac Inc.*,
   242 F.3d 1151 (9th Cir. 2001)..................................................................2, 3

*Coca-Cola Co. v. Overland, Inc.*,
   692 F.2d 1250 (9th Cir. 1982)....................................................................21

*Committee for Idaho's High Desert v. Yost*,
   92 F.3d 814 (9th Cir. 1996).........................................................................3

*Compaq Computer Corp. v. Packard Bell Elecs., Inc.*,
   163 F.R.D. 329 (N.D. Cal. 1995)...............................................................17

*Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Svc. Inc.*,
   911 F.2d 242 (9th Cir. 1990)......................................................................18

*Cumulus Media, Inc. v. Clear Channel Comm., Inc.*,
   304 F.3d 1167 (11th Cir. 2002)..................................................................24

*Duncan v. Office Depot*,
   973 F. Supp. 1171 (D. Or. 1997) ...............................................................23

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
    1989 U.S. Dist. LEXIS 7950 (E.D. Cal. 1989) ............................................................ 11, 14

*Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*,
    458 F.3d 931 (9th Cir. 2006)........................................................................................ 8, 24

*Emachines, Inc. v. Ready Access Memory, Inc.*,
    2001 U.S. Dist. LEXIS 13904 (C.D. Cal. Mar. 5, 2001) ................................................ 25

*Entrepreneur Media, Inc. v. Smith*,
    279 F.3d 1135 (9th Cir. 2002)........................................................................................ 16

*Fifty-Six Hope Rd. Music, Ltd. v. Mayah Collection*,
    2007 U.S. Dist. LEXIS 43012 (D. Nev. June 11, 2007) ................................................ 24

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*,
    198 F.3d 1143 (9th Cir. 1999)........................................................................................... 8

*FTC v. Nat'l Urological Group, Inc.*,
    645 F. Supp. 2d 1167 (N.D. Ga. 2008) ......................................................................... 18

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
    826 F.2d 837 (9th Cir. 1987).......................................................................................... 20

*Gaylord Entm't Co. v. Gilmore Entm't Group, LLC*,
    187 F. Supp. 2d 926 (M.D. Tenn. 2001) ....................................................................... 6, 7

*Grocery Outlet Inc. v. Albertsons, Inc.*,
    2008 U.S. Dist. LEXIS 101999 (N.D. Cal. Dec. 16, 2008) ...................................... 24, 25

*Groves  v. Prickett*,
    420 F.2d  1119 (9th Cir. 1970)....................................................................................... 23

*Haagen-Dazs, Inc. v. Frusen Gladje, Ltd.*,
    493 F. Supp. 73 (S.D.N.Y. 1980).................................................................................... 21

*In Hyuk Suh v. Choon Sik Yang*,
    987 F. Supp. 783 (N.D. Cal. 1997) .................................................................................. 8

*In re Century 21-RE/MAX Real Estate Advert. Claims Litig.*,
    882 F. Supp. 915 (C.D. Cal. 1994)............................................................................ 17, 18

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
    11 F.3d 1460 (9th Cir. 1993).......................................................................................... 27

*Johnny Blastoff Inc. v. Los Angeles Rams Football Co.*,
    1998 U.S. Dist. LEXIS 11919 (W.D. Wis. June 24, 1998) .............................................. 2

*La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*,
    495 F.2d 1265 (2d Cir. 1974)........................................................................................... 2

*Lindy Pen Co. v. Bic Pen Corp.*,
    982 F.2d 1400 (9th Cir. 1993)...........................................................................................29

*Mattel Inc. v. Walking Products*,
    353 F.3d 792 (9th Cir. 2003)........................................................................................5, 15

*MGM Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) .............................................................................20

*Morrison v. Mahoney*,
    399 F.3d 1042 (9th Cir. 2005)............................................................................................24

*Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*,
    874 F.2d 95 (2d Cir. 1989)...................................................................................................8

*Nat'l Cable Television Ass'n v. American Cinema Editors*,
    937 F.2d 1572 (Fed. Cir. 1991)...........................................................................................3

*Newcal Indus., Inc. v. Ikon Office Solution*,
    513 F.3d 1038 (9th Cir. 2008), *cert.denied,* 129 S. Ct. 2788 (U.S. 2009) ...........................19

*Nintendo of America, Inc. v. Dragon Pacific Int'l,*,
    40 F.3d 1007 (9th Cir. 1994)..............................................................................................31

*Nora Beverages, Inc. v. Perrier Group of Am., Inc.*,
    164 F.3d 736 (2d Cir. 1998)..................................................................................................9

*Novell, Inc. v. Weird Stuff, Inc.*,
    1993 U.S. Dist. LEXIS 21483, (N.D. Cal. Aug. 2, 1993)..............................................22, 23

*Official Airline Guides v. Goss*,
    6 F.3d 1385 (9th Cir. 1993)................................................................................................16

*Playboy Enters., Inc. v. Welles*,
    279 F.3d 796 (9th Cir. 2002)........................................................................................13, 20

*Pom Wonderful LLC v. Purely Juice, Inc.*,
    2008 U.S. Dist. LEXIS 55426 (C.D. Cal. 2008).................................................................30

*Premier Nutrition, Inc. v. Organic Food Bar, Inc.*,
    327 Fed. Appx. 723 (9th Cir. 2009).....................................................................................8

*ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy* P.C.,
    314 F.3d 62, 70 (2d Cir. 2002)...........................................................................................11

*Prudential Ins. Co. v. Gibraltar Financial Corp.*,
    694 F.2d 1150 (9th Cir. Cal. 1982) ....................................................................................25

*Quick Techs., Inc. v. Sage Group PLC*,
    313 F.3d 338 (5th Cir. 2003)..............................................................................................30

*R&R Partners, Inc. v. Tovar*,
   2007 U.S. Dist. LEXIS 29819 (D. Nev. Apr. 23, 2007) ........................................ 30

*Rice v. Fox Broadcasting Co.*,
   330 F.3d 1170 (9th Cir.2003)............................................................................. 16, 18

*Rudolf Rudolph Int'l, Inc. v. Realys, Inc.*,
   482 F.3d 1195 (9th Cir. 2007)................................................................................... 6

*Sara Lee Corp. v. Kayser-Roth Corp.*,
   81 F.3d 455 (4th Cir. 1996)..................................................................................... 11

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997).................................................................................. 17

*Starsight Telecast v. Gemstar Dev. Corp.*,
   1995 U.S. Dist. LEXIS 22006 (N.D. Cal. Aug. 11, 1995) ...................................... 22

*Synergistic Intern., LLC v. Korman*,
   470 F.3d 162, n.13 (4th Cir. 2006) .......................................................................... 30

*Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*,
   282 F.3d 23 (1st Cir. 2002) ...................................................................................... 30

*Transgo, Inc. v. AJAC Transmission Parts Corp.*,
   768 F.2d 1001 (9th Cir. 1985) .................................................................................. 11

*Trump v. Caesars World, Inc.*,
   645 F. Supp. 1015 (D.N.J. 1986), *aff'd*, 819 F.2d 1135 (3d Cir. 1987)................... 6

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
   522 F. Supp. 1238 (D. Ariz. 1981) .......................................................................... 22

*United States v. Anvwest Surety Ins. Co.*,
   54 F. 3d 601 (9th Cir. 1995)..................................................................................... 23

*University of Georgia Athletic Ass'n v. Laite*,
   756 F.2d 1535 (11th Cir. 1985)................................................................................ 14

*Vallavista Corp. v. Amazon.com, Inc.*,
   2008 U.S. Dist. LEXIS 100058 (N.D. Cal. Dec. 11, 2008) .................................... 29

*Volkswagen A.G. v. Thermo-Chem Corp.*,
   185 U.S.P.Q. 561 (TTAB 1975) ................................................................................. 2

*Weight Watchers Int'l, Inc. v. Stouffer Corp.*,
   744 F. Supp. 1259 (S.D.N.Y. 1990)................................................................... 14, 15

*Worden & Co. v. California Fig Syrup Co.*,
   187 U.S. 516 (1903)................................................................................................. 20

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
    419 F.3d 925 (9th Cir. 2005)..................................................................................... 6, 8, 9

**STATUTES**

15 U.S.C. § 1117 .............................................................................................................. 29

15 U.S.C. § 1125(a)(1)(A) ............................................................................................ 5, 15

Fed. R. Civ. P. 8(c)......................................................................................................... 24

**OTHER AUTHORITIES**

1 J. THOMAS MCCARTHY, TRADEMARKS & UNFAIR COMPETITION § 7:18 (4th ed. 2009).............. 2

2 J. THOMAS MCCARTHY, TRADEMARKS & UNFAIR COMPETITION § 11:45 (4th ed. 2008).......... 27

2 J. THOMAS MCCARTHY, TRADEMARKS & UNFAIR COMPETITION § 12:14 (4th ed. 2009)........... 6

3 J. THOMAS MCCARTHY, TRADEMARKS & UNFAIR COMPETITION § 17:18 (4th ed. 2009) .......... 26

*Fletcher, Anthony L. and David J. Kera, Annual Review*,
    85 TRADEMARK REP. 607, 724–25 (1995) ............................................................. 25

*Ninth Circuit Manual of Model Jury Instructions – Civil* (2009)
    § 15.4.......................................................................................................................... 16
    § 15.9.......................................................................................................................... 6
    § 15.16........................................................................................................................ 13
    § 15.20.................................................................................................................... 24, 26
    § 15.26........................................................................................................................ 31

1    Pursuant to the Court's Guidelines for Trial and Final Pretrial Conference in Civil Jury

2   Cases, Autodesk, Inc. ("Autodesk") submits this Memorandum of Law in support of the disputed

3   jury instructions.

4   **I.    GENERAL OBJECTIONS**

5           **A.  Use of "Consumers" Instead of "Purchasers."**

6           SolidWorks inconsistently mixes "purchasers" with "consumers" in its proposed

7   instructions (a point on which the Model Instructions are not entirely consistent either). *See, e.g.,*

8   Disputed Instruction Nos. 11, 17.  Autodesk submits that the term "consumers" more accurately

9   describes the relevant audience here, as some of the infringing products offered by SolidWorks are

10  not "purchased" but instead downloaded for free (which SolidWorks hopes will prompt such

11  consumers to later become purchasers of the "SolidWorks" software).

12          **B.  Use of Party Names Instead of "Plaintiff" and "Defendant"**

13          SolidWorks inconsistently uses the party names and "plaintiff" and "defendant." *See, e.g.,*

14  Disputed Instruction Nos. 10, 11.  Autodesk submits that the consistent use of party names will best

15  instruct the jury.

16  **II.   OBJECTIONS TO SPECIFIC INSTRUCTIONS**

17          **A.  Disputed Jury Instructions No. 1 re Preliminary Instruction**

18              **1.  SolidWorks' Improperly Omits Autodesk's Claim of
                        Unfair Competition.**
19

20          In the first sentence of the Preliminary Instruction and in the discussion of burden of proof,

21  SolidWorks omits Autodesk's cause of action for unfair competition.  Autodesk objects that this is

22  a material omission and that the jury would be best advised as to the names of all of Autodesk's

    claims.
23

24              **2.  SolidWorks' Proposed Language Inaccurately Explains
                        How Trademark Rights Are Obtained.**
25          SolidWorks has proposed language for Disputed Jury Instruction No. 1 that defines use

26  sufficient to establish trademark rights too narrowly and improperly emphasizes the affirmative

27  defense of abandonment.

28

1    Under the subheading, "How a Trademark Is Obtained," SolidWorks' proposed language

2 for Disputed Jury Instruction No. 1 states:

3           A person acquires the right to exclude others from using a trademark
            by being the first to use it in the marketplace. Rights in a trademark
4           are obtained only through commercial use of the mark. The owner of
            a trademark has the right to exclude others unless the trademark has
5           been abandoned.

6    This proposed language for Disputed Instruction No. 1 improperly restricts the multitude of

7 ways a party may obtain trademark rights.  The narrow interpretation that rights are obtained "only

8 through commercial use" is incorrect, particularly given that the Ninth Circuit has acknowledged it

9 favors a "more flexible" approach than some other circuits.  *Chance v. Pac-Tel Teletrac Inc.*,

10 242 F.3d 1151, 1159 (9th Cir. 2001) (citing in support of its "totality of the circumstances"

11 approach to trademark use *La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*,

12 495 F.2d 1265, 1274 n.11 (2d Cir. 1974) (balance of equities important in deciding whether use is

13 sufficient to warrant trademark protection)).  The ultimate question in trademark law is whether a

14 given mark "identifies a company or its product in the eyes of the public," regardless of whether the

15 company itself has used the mark in any particular, formalistic way.  1 J. THOMAS MCCARTHY,

16 TRADEMARKS & UNFAIR COMPETITION § 7:18 (4th ed. 2009) ("It is public use that will set the stage

17 for confusion, which is the evil to be remedied in trademark cases.").  SolidWorks would have the

18 Court and jury believe that even if the public and relevant customers overwhelmingly associate a

19 term with a specific party as an indication of source, that party only has rights in the term as of the

20 first date it used the term by itself on a physical package.  That is not logical, equitable, nor an

21 accurate statement of the law.

22    For example, in *Big Blue Products Inc. v. International Business Machines Corp.*,

23 No. 81,697, 1991 TTAB LEXIS 9, at *5-6, 19 U.S.P.Q.2d 1072, 1074 (TTAB Apr. 8, 1991), IBM

24 acknowledged that it had not used the trademark "BIG BLUE" itself until 1988, which was after

25 another party's first use in 1984.  However, the TTAB held that if the public had come to associate

26 BIG BLUE with IBM prior to 1984, IBM may still have priority, stating that sometimes, "even if a

27 company itself has not made use of a term, it may have a protectable property right in the term if

28

1   the public has come to associate the term with the company or its goods or services." *Id.* at *5-6

2   (internal quotations omitted); *see also Johnny Blastoff Inc. v. L.A. Rams Football Co.*, No. 97-C-

3   155-C, 1998 U.S. Dist. LEXIS 11919, at *44-48 (W.D. Wis. June 24, 1998) (association of mark

4   with party by public enough to establish prior trademark rights) (citing *Big Blue*, 1991 TTAB

5   LEXIS 9, at *5-6; *Volkswagen A.G. v. Thermo-Chem Corp.*, 185 U.S.P.Q. 561, 562 (TTAB 1975)

6   (party acquired trademark rights in term "BUG" in automotive field "even though it has never used

7   the term 'BUG' as a mark on automobiles")).

8       Similarly, advertising combined with other non-sales activity may be sufficient to establish

9   trademark rights. *Chance*, 242 F.3d at 1158; *cf. Nat'l Cable Television Ass'n v. Am. Cinema

10  Editors*, 937 F.2d 1572, 1578 (Fed. Cir. 1991) (use analogous to trademark use, such as use "in

11  advertising, use as a grade mark, use as the salient or distinguishing feature of a trade name, use of

12  an acronym or the initial letters of a corporate name" sufficient to establish priority in cancellation

13  proceeding despite being insufficient to meet technical statutory requirements of registration).

14      Furthermore, the language stating that a party acquires rights in a trademark by being "the

15  first to use it in the marketplace" is ambiguous. As the Court held in its order on the parties'

16  respective summary judgment motions, it is only necessary for Autodesk to show that it has

17  trademark rights superior to *SolidWorks*, not that Autodesk is first as against the entire world. A

18  third party's prior use of a trademark is not a defense in a trademark infringement action. (Dkt.

19  No. 195, Dec. 8, 2009, Order Granting in Part and Den. In Part Pl.'s and Defs.' Mots. for Summ. J.

20  at 10-11) (citing *Committee for Idaho's High Desert v. Yost*, 92 F.3d 814, 820 (9th Cir. 1996)).[1]

21      Finally, SolidWorks' placement of the affirmative defense of abandonment into the

22  definition of trademark rights will mislead and confuse the jury. As acknowledged by SolidWorks'

23  own proposed jury instruction, trademark abandonment is an affirmative defense on which

24

25  _____

26      [1] Hereafter, all references to the Court's December 8, 2009 Order Granting in Part and
    Denying in Part Plaintiff's and Defendant's Motions for Summary Judgment will be referred to as
27  "MSJ Order."

28

SolidWorks bears the burden.  SolidWorks has in fact proposed a separate jury instruction on abandonment.  Autodesk's arguments against that instruction — including that SolidWorks waived this defense — are presented in response to the separate instruction.  Including this affirmative defense in the definition of trademark rights is duplicative and will mislead the jury into believing that Autodesk must carry the burden of proving it has not abandoned trademark rights.

The above complexities of trademark rights are most easily addressed with a simple instruction incorporated into Autodesk's Proposed Jury Instruction No. 1:

> A company acquires the right to exclude others from using a trademark by being the first to use it in the marketplace.  Rights in a trademark are obtained through commercial use of the mark.  Trademark rights can also be obtained based on usage by the industry or public and other forms of consumer association of a mark with a company.  In this case, you should only consider which party - Autodesk or SolidWorks - was the first to obtain rights to the trademark.  The owner of a trademark has the right to exclude others from using that trademark.

SolidWorks also inaccurately states that the burden for all of its affirmative defenses is "by a preponderance of the evidence."  In some instructions, SolidWorks' burden is by a preponderance of the evidence.  In others, it is by clear and convincing evidence.

### 3. Discussion on Trademark Registration Would More Appropriately Be Addressed in the Instruction Regarding the Elements of Trademark Infringement.

Autodesk contends that a discussion of registered and unregistered trademarks is best introduced to the jury in Instruction No. 3, which addresses the elements of an infringement claim.  SolidWorks places this discussion, titled "Trademark Registration" within the Preliminary Instruction.  Autodesk believes that it is premature to address the issue of whether a trademark is registered or unregistered within the Preliminary Instruction, and contends that they jury should consider this issue once the jury has been instructed that they must make a finding as to the validity of a trademark.  Additionally, Autodesk objects that such a discussion must be tailored to the facts in this case, which it has done in its proposed Instruction No. 3.

For the above reasons, Autodesk respectfully submits that its suggested language should be adopted with respect to Disputed Jury Instruction No. 1.

### B. Disputed Jury Instructions No. 2 re Trademark Liability Theories and Policies

There is not much real dispute here.  Autodesk believes this instruction can be easily combined into Instruction No. 1 and that doing so will help the jury by reducing the number of instructions and by improving instruction flow.  SolidWorks believes that it must be read as a separate instruction and has given no reason why that must be so.

### C. Disputed Jury Instructions No. 3 re Elements and Burden of Proof of Trademark Infringement and False Designation of Origin

Again, the dispute here turns primarily on instruction flow.  Autodesk believes the background law regarding Autodesk's infringement claims regarding DWG is best introduced to the jury alongside the law regarding Autodesk's AutoCAD infringement claims.  Rather than "conflate" the claims, as SolidWorks has argued this does during meet and confer, discussing these claims together provides a natural place to explain to the jury the differences between unregistered marks and registered marks (instructions on which the parties largely agree).

Beyond that, the primary difference in actual language appears to be that Autodesk seeks to modify the Model Instruction elements to make clear that the relevant confusion in this case is confusion as to "source, sponsorship, affiliation, or approval of the goods among ordinary consumers who use, download, or purchase these goods."  *Mattel Inc. v. Walking Products*, 353 F.3d 792, 806-07 (9th Cir. 2003), uses similar language:

> Trademark law aims to protect trademark owners from the false perception that they are associated with or endorse a product. Generally, to assess whether a defendant has infringed on a plaintiff's trademark, we apply a 'likelihood of confusion' test that asks whether use of the plaintiff's trademark by the defendant is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of the two products.

Indeed, the Lanham Act itself phrases this in the same way.  15 U.S.C. § 1125(a)(1)(A) ("likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association . . . or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities").  Addition of this language is therefore helpful and appropriate to clarify for the jury the nature of the "confusion" at issue.

### D.  Disputed Jury Instruction No. 4 re Infringement—Elements—Validity—Unregistered Marks—Distinctiveness

There are three issues in dispute.  First, in its proposed Jury Instruction No. 4, SolidWorks improperly deviates from the Model Instruction.  SolidWorks' desired language is, "If the *majority of relevant* consumers would identify the term with all such similar products, regardless of the manufacturer, the term is generic. . ."  Autodesk's proposed language is, "If the *average* consumer would . . ."  Autodesk's proposal is consistent with the Model Instruction, which reads, "If the average [relevant] consumer would . . ."  *Ninth Circuit Manual of Model Jury Instructions – Civil* § 15.9, Comment (2009).

The Ninth Circuit has explained that where "buyers understand the term as being identified with a particular producer's goods or services, it is not generic.  But if the word is identified with all such goods or services, regardless of their suppliers, it is generic."  *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 929 (9th Cir. 2005) (internal quotations and citations omitted).  That case, cited by SolidWorks in support of its instruction, speaks in terms of "buyers" generally, rather than of a "majority of buyers."  As the Court noted in its summary judgment order, the issue is whether the primary significance of the mark is to describe the product or the producer.  (Dkt. No. 195, MSJ Order at 5) (citing *Rudolph Int'l, Inc. v. Realys, Inc.,* 482 F.3d 1195, 1198 (9th Cir. 2007)).  There is no basis for modifying the Model Instruction.

Second, SolidWorks seeks to add a paragraph, beginning "On the other hand, a generic term may be associated with a particular producer, but that is not sufficient to infuse a generic term with trademark significance . . ."  SolidWorks' proposed instruction is misleading because it improperly suggests that evidence regarding consumer association is irrelevant to an initial genericness determination.  "[S]urveys that test for secondary meaning . . . may yield relevant results that point towards or away from trademark significance.  For example, if there is strong evidence of secondary meaning, then that is evidence that those surveyed perceive the designation as a trademark."  2 J. THOMAS MCCARTHY, TRADEMARKS & UNFAIR COMPETITION § 12:14 (4th ed. 2009); s*ee also Trump v. Caesars World, Inc.*, 645 F. Supp. 1015, 1020-21 (D.N.J. 1986), *aff'd*, No. 86-5666, 1987 U.S. App LEXIS 6988, (3d Cir. May 14,1987); *Gaylord Entm't Co. v. Gilmore*

1   *Entm't Group, LLC*, 187 F. Supp. 2d 926, 934-44 (M.D. Tenn. 2001).  SolidWorks' proposed

2   language should be excluded.

3          Finally, Autodesk proposes a paragraph that frames the specific genericness dispute in this

4   case:  "SolidWorks contends that DWG is a generic term and hence entitled to no trademark

5   protection.  Autodesk contends that DWG is not generic because it does not name a category of

6   products; instead, contends Autodesk, it identifies Autodesk's proprietary computer-aided design

7   (or "CAD") file format and files and software that conform to that format."  Nothing about this

8   statement mischaracterizes SolidWorks' position.  And it accurately reflects Autodesk's position.

9   This paragraph will assist the jury in understanding the issue in dispute.  Autodesk requests that the

10  Court include its proposed language in the jury instruction.

11          **E.   Disputed Jury Instruction No. 5 re Infringement—Generic
               Terms—Burden of Proof**

12          The Model Instructions do not contain a proposed instruction on "genericness," but both

13  parties appear to agree that, because this seems to be SolidWorks' main attack on Autodesk's case,

14  the jury would benefit from additional instructions clarifying the nature of "genericness" and the

15  parties' respective burdens.

16          There appear to be two principal differences between the parties' proposals, one thematic

17  and one legal.  First, Autodesk believes the jury would benefit from an instruction that is tailored to

18  the facts and arguments of this case.  The term in dispute on this instruction — "DWG"— is a term

19  Autodesk applies to technology and features manifested in its proprietary CAD file format.  The

20  relevant question to put before the jury is therefore:  Does "DWG" refer to a *class* of CAD file

21  formats from multiple sources (and is therefore generic) or does it refer to a *particular* CAD file

22  format associated with one source (and is therefore not generic)?  Putting the question thusly

23  phrased to the jury will help them sift through the application of what might otherwise be

24  confusingly abstract legal concepts.  For this reason, Autodesk's instruction is better suited to

25  educating the jury as to their charge, in place of SolidWorks' generally-phrased instruction.

26          The parties also differ as to who bears the burden to prove or disprove genericness.  This

27  case does not resemble the typical cases in which a claimed trademark fails as generic.  Cases like

28

1   *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 327 Fed. Appx. 723, 724 (9th Cir. 2009), and

2   *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999),

3   involve attempts to trademark a term that the relevant segment of the public already uses, in

4   common English parlance, to apply to a class of goods — "organic food bar" to refer to food bars

5   made from organic elements or "Filipino yellow pages" to telephone directories aimed at the

6   Filipino community.  Under those facts, Autodesk acknowledges that the plaintiff bears the burden

7   of disproving genericness.  *See, e.g., Filipino Yellow Pages*, 198 F. 3d at 1146.

8         Instead, this case resembles the rarer circumstance in which something outside common

9   parlance is claimed to have been appropriated by the relevant public to refer to a class of goods.

10  More specifically, there is no claim here that, prior to Autodesk's first use of "DWG" in 1982, the

11  term was a generic name for a class of CAD file formats.  Accordingly, what SolidWorks instead

12  claims is that the relevant public has come to associate "DWG" not with Autodesk's proprietary file

13  format but with a class of file formats because of the effect of third-party use in the market.  In

14  those circumstances, the Second Circuit has held that the *defendant* bears the burden to show

15  genericness.  *Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 101 (2d Cir. 1989)

16  ("We . . . hold that where the public is said to have expropriated a term established by a product

17  developer, the burden is on the defendant to prove genericness.").  The Ninth Circuit has considered

18  this approach but has not yet decided whether to adopt it.  *Yellow Cab Co. of Sacramento v. Yellow*

19  *Cab of Elk Grove, Inc.*, 419 F.3d 925, 928-29 (9th Cir. 2005) (citing *Murphy Door Bed* but

20  declining to reach question after concluding case did not turn on allocation of burden).  However, at

21  least one Northern District of California court has held that "Defendant has the burden of

22  establishing that the terms . . . have become generic through public use."  *In Hyuk Suh v. Choon Sik*

23  *Yang*, 987 F. Supp. 783, 788-89 (N.D. Cal. 1997) (citing *Murphy Door Bed,* 874 F.2d 95).  Placing

24  the burden with the defendant makes intuitive sense.  Rephrased, the defendant's argument on these

25  facts is that the plaintiff originally had a valid (*i.e.*, non-generic) trademark but that the mark was

26  later invalidated by the public using it generically.  Such a claim bears a close resemblance to

27  *abandonment*, an affirmative defense that the defendant bears a burden of "strictly" proving.

28  *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 935 n.2 (9th Cir. 2006).

One final point:  the relevant time period for evaluating whether a term is generic is the period surrounding the defendant's first allegedly infringing use of the term.  *Yellow Cab Co. of Sacramento,* 419 F.3d at 928 ("The crucial date for the determination of genericness is the date on which the alleged infringer entered the market with the disputed mark or term."); *see also Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 744 (2d Cir. 1998) (finding that "appropriate date for judging distinctiveness is the date . . . Perrier introduced the allegedly infringing bottles").  The jury should be told this to focus their attention on late 2004 and early 2005, when SolidWorks began releasing its DWGseries products and infringing Autodesk's DWG trademark.

## F.  Disputed Instruction No. 6 re Infringement—Elements— Validity—Distinctiveness—Secondary Meaning

Autodesk and SolidWorks agree on the majority of the language to be submitted to the jury on the topic of secondary meaning, Disputed Jury Instruction No. 6.  However, Autodesk objects to (1) SolidWorks' addition of confusing language that misapplies the Court's holding on functionality, (2) SolidWorks' improper addition of an eighth factor addressing likelihood of confusion to the Ninth Circuit's seven-factor secondary meaning test, and (3) SolidWorks' unsupported addition of the vague phrase "among a significant number of consumers" to the portion of the instruction addressing actual confusion.  Autodesk also submits that the "exclusivity" element of the Ninth Circuit's secondary meaning test requires a short paragraph of explanation to clarify for the jury the well-settled law that Autodesk may pick its battles and need not take legal action against everyone to maintain exclusive rights in the DWG mark.

First, Autodesk's objects to the following language in SolidWorks' proposed language for Disputed Jury Instruction No. 6:

> The Court has determined, and Autodesk has conceded, that anyone can develop a .dwg file extension or software that opens a .dwg file. Autodesk, however, claims that DWG is associated with Autodesk apart from Autodesk's use of the .dwg file extension.  Therefore, in determining whether DWG has secondary meaning, you must not consider the extent to which CAD users associate 'DWG' with a specific file extension.

The Court has held that functional uses of DWG are not at issue in this lawsuit. (Dkt. No. 195, MSJ Order at 6-9). SolidWorks may use the letters .dwg in a functional manner at the end of a file. However, this doctrine and the Court's holding have nothing to do with secondary meaning. The Court's holding determined only that certain uses of DWG by SolidWorks that are not at issue in this lawsuit are non-actionable through the doctrine of functionality. Including this argument in a jury instruction on secondary meaning is out of place and will serve only to confuse the jurors.

The language created by SolidWorks is also misleading and overstates the Court's order. For example, the language "you must not consider the extent to which CAD users associate 'DWG' with a specific file extension" is based on neither case law nor any part of the Court's holding. It also suggests that even if CAD users view DWG as a specific proprietary file format controlled by Autodesk, as opposed to a general category of CAD file formats, that association is irrelevant to the analysis, even though this is in fact a large part of the dispute between the parties on genericness, as evidenced by the arguments on summary judgment. Accordingly, Autodesk submits that the above-quoted language proposed by SolidWorks should not be included in Disputed Jury Instruction No. 6.

Second, Autodesk objects to SolidWorks' addition to the secondary meaning analysis of the language "Survey Evidence. Whether survey evidence indicates that confusion is likely." SolidWorks cites no authority for the proposition that a likelihood of confusion survey should be considered by the jury as a factor in the secondary meaning analysis. None of SolidWorks' cited authorities even address surveys in the secondary meaning context, much less surveys on likelihood of confusion in the secondary meaning context. Accordingly, Autodesk submits that the Court should not add SolidWorks' proposed 8th factor addressing likelihood of confusion surveys to Disputed Jury Instruction No. 6.

Third, SolidWorks has added the phrase "among a significant number of consumers" to secondary meaning factor 7, "actual confusion." There is no basis to add this vague phrase, which does not appear in the Model Instruction. There is no minimum threshold of confused consumers that Autodesk must cross for this factor, but the addition of the undefined term "significant" will suggest to the jury that there may be such a minimum. SolidWorks can argue to the jury that a

1   handful of confused consumers would not show that its use of DWG has led to actual confusion,

2   and Autodesk can argue that a handful of confused consumers would suggest there are significant

3   other instances of unreported confusion.

4       Instead, Autodesk has proposed a modification to secondary meaning factor 7 that simply

5   explains what the relevant type of confusion is:  "Whether SolidWorks' use of Autodesk's DWG

6   trademark has led to actual confusion among consumers about the source or sponsorship or

7   approval of SolidWorks' DWGseries software."  Autodesk submits that its proposed language on

8   this factor conforms more closely to the Model Instruction and will not confuse the jury.

9       Finally, Autodesk submits that factor 5 ("Exclusivity.  Whether Autodesk's use of the DWG

10  mark was exclusive") is misleading without explanation.  Jurors are likely to believe that in order to

11  show exclusivity of use to support its argument of secondary meaning, Autodesk must have taken

12  legal action against even low-level users of DWG.  That is not the law.  *Sara Lee Corp. v. Kayser-*

13  *Roth Corp.*, 81 F.3d 455 (4th Cir. 1996) ("[T]he owner 'has no obligation to sue until the likelihood

14  of confusion looms large.'"); *Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001,

15  1018 n.1 (9th Cir. 1985) ("An owner is not required to act immediately against every possible

16  infringing use to avoid a holding of abandonment.  Such a requirement would unnecessarily clutter

17  the courts."); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 1989 U.S. Dist. LEXIS 7950, *75-76 (E.D.

18  Cal. 1989) ("[S]enior user is not required to object to a junior user's practice until the respective

19  marks have had substantial exposure in common channels of trade so as to pose a real threat of

20  potential confusion." (internal citations omitted)).  As the Second Circuit has explained, "[a]ny

21  other rule would require each trademark owner to sue first and ask questions later, and would foster

22  meritless litigation."  *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical*

23  *Therapy* P.C., 314 F.3d 62, 70 (2d Cir. 2002) (internal citations omitted).  Accordingly, Autodesk

24  submits that the following explanatory language should be added to factor 5:

25              With respect to whether Autodesk's use of DWG was exclusive under
              item 5, Autodesk need not have taken legal action to stop low-level
26            users of DWG.  Rather, use by others is only relevant to this factor if
              their use of DWG meant that the likelihood of confusion loomed
27            large.  Likewise, Autodesk need not have taken action against those
              who properly used DWG to describe their products' interoperability

with Autodesk's file format or those whose only impact on DWG was outside the US.

### G. Disputed Jury Instruction No. 7 re Infringement—Elements— Ownership—Generally

As with its language for Disputed Jury Instruction No. 1, SolidWorks has proposed language for Disputed Jury Instruction No. 7 that defines too narrowly the use sufficient to establish trademark rights.  Furthermore, this instruction is unnecessary and duplicative in light of Disputed Jury Instruction No. 1.

SolidWorks' proposed language for Disputed Jury Instruction No. 7 states:

> The law entitles the trademark owner to exclude others from using that trademark. A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace.
>
> If DWG is not inherently distinctive, but Autodesk has shown that the term is descriptive and that it has acquired secondary meaning, Autodesk has the burden of showing by a preponderance of the evidence that DWG had gained secondary meaning before SolidWorks first began to use DWG.
>
> A trademark is "used" for purposes of this instruction when it is transported or sold in commerce and the trademark is attached to the product, or placed on its label or container.
>
> If you find by a preponderance of the evidence that the plaintiff has not shown that the plaintiff used DWG before the defendant's use of DWG, then you cannot conclude that the plaintiff is the owner of the trademark for purposes of Instruction 3.

Autodesk's arguments as to Disputed Jury Instruction No. 1 apply equally to the language in SolidWorks' Disputed Jury Instruction No. 7.  Autodesk's suggested language for Disputed Jury Instruction No. 1 sufficiently instructs the jury on the issue of trademark ownership and obviates the need for a separate instruction on ownership such as Disputed Jury Instruction No. 7.  Accordingly, Autodesk has not proposed language for Disputed Jury Instruction No. 7.

However, if the Court decides to give Disputed Jury Instruction No. 7 to the jury, it should be modified to excise the first paragraph ("The law entitles the trademark owner to exclude others from using that trademark.  A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace."), which is entirely duplicative of Disputed Jury

Instruction No. 1 and addressed by Autodesk's suggested language for that instruction.  The

language, "A trademark is 'used' for purposes of this instruction when it is transported or sold in

commerce and the trademark is attached to the product, or placed on its label or container," should

also be excised, as it suggests an unduly narrow interpretation of use sufficient to give rise to

trademark rights, as explained above in the argument addressing Disputed Jury Instruction No. 1.

For the above reasons, Autodesk respectfully submits that Disputed Jury Instruction No. 7 is

duplicative of Disputed Jury Instruction No. 1 and thus will confuse, and should not be submitted

to, the jury.  In the alternative, if the Court agrees with SolidWorks that Disputed Jury Instruction

No. 7 is warranted, the Court should excise the two legally incorrect portions of Disputed Jury

Instruction No. 7.

### H.  Disputed Jury Instruction No. 8 re Likelihood of Confusion—Factors—*Sleekcraft* Test and Nominative Fair Use

#### 1.  Only Nominative Fair Use Applies to the AutoCAD® Claim

The parties disagree on the required elements regarding confusion for Autodesk's claim for

trademark infringement of its AutoCAD® mark.  For its DWG claim, Autodesk agrees with

SolidWorks, as a general matter, that Autodesk must show a likelihood of confusion based on the

*Sleekcraft* factors.  *Ninth Circuit Manual of Model Jury Instructions – Civil* § 15.16, Comment

(2009); *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  SolidWorks further

contends, however, that the same *Sleekcraft* analysis is required for Autodesk's claim regarding its

AutoCAD® mark, notwithstanding SolidWorks' claimed defense of nominative fair use.

SolidWorks' position completely ignores the Court's rulings on summary judgment:

> When a nominative fair use is raised, however, the fair-use analysis
> replaces the likelihood-of-consumer confusion analysis set forth in
> *Sleekcraft*.  *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 801 (9th
> Cir. 2002) (stating that "[i]n cases in which the defendant raises a
> nominative [fair] use defense, the [nominative fair use] test should be
> applied instead of the test for likelihood of confusion set forth in
> Sleekcraft" because it "better evaluates the likelihood of confusion in
> nominative [fair] use cases").  Thus, as plaintiff contends, the
> *Sleekcraft* analysis is not applicable in this context.

1   (Dkt. No. 195, MSJ Order at 17.)  In the very next sentence, the Court explained:  "To establish a

2   nominative fair-use defense, *defendant* must prove the following three elements: . . ." (*Id.* at 17).

3   The Court then granted SolidWorks' summary judgment with respect to the first prong of the test.

4   (*Id.* at 18.)  Autodesk's proposed jury instructions regarding its AutoCAD® claim are consistent

5   with the Court's Order:  SolidWorks bears the burden of proving nominative fair use, but must only

6   prove the second and third prong of that test.  Autodesk also includes an example of nominative fair

7   use — a Volkswagen repair shop — to illustrate the concept for the jury.  Autodesk respectfully

8   requests that the Court adopt its instructions on this issue.

9          **2.   SolidWorks' Modifications to the Nominative Fair Use
                   Instruction**

10          Notwithstanding the Court's ruling on summary judgment that SolidWorks had established

11  the first prong, they include an instruction:  "A product is not readily identifiable without use of the

12  trademark when there are no equally informative words describing the product."  This language is

13  unnecessary in light of the Court's earlier ruling.

14          SolidWorks also proposes adding the following language to the Model Instruction:  "You

15  may also consider whether the defendant affirmatively disavowed any sponsorship or endorsement

16  through a statement disclaiming any connection to the plaintiff or through statements disparaging

17  plaintiff's products.  A use of a plaintiff's trademark does not suggest sponsorship or endorsement

18  of the defendant's product when the defendant disclaims any connection to the plaintiff or

19  disparages plaintiff's products."  SolidWorks has provided Autodesk with no authority for this

20  modification.  Indeed, case law is to the contrary.  *E. & J. Gallo Winery v. Gallo Cattle Co.*, 1989

21  U.S. Dist. LEXIS 7950, at *77 (E.D. Cal. June 19, 1989) (noting that in some cases disclaimer may

22  itself cause consumer confusion); *see also University of Georgia Athletic Ass'n v. Laite*, 756 F.2d

23  1535, 1547 (11th Cir. 1985) (holding relatively inconspicuous disclaimer ineffective); *Weight*

24  *Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F. Supp. 1259, 1277 (S.D.N.Y. 1990) (holding disclaimer

25  ineffective in part because of relative location and size).  Assuming for the sake of argument that it

26  can even prove the existence of any such disclaimer or disparagement, SolidWorks may try to argue

27  to the jury that such actions do not suggest sponsorship or endorsement.  It is not, however, entitled

28

1    to an instruction that conclusively states that to be the case.  SolidWorks' proposed modification

2    should be denied.

3          Finally, Autodesk has also proposed two clarifying sentences to the *Sleekcraft* test in

4    Disputed Jury Instruction No. 8.  As with Disputed Jury Instruction No. 3, Autodesk has added the

5    terms "sponsorship, affiliation, or approval" after "likelihood of confusion about the source" to

6    clarify for the jury what is meant by "confusion about the source."  This is the same language used

7    in the Ninth Circuit and the Lanham Act.  15 U.S.C. § 1125(a)(1)(A) ("likely to cause confusion, or

8    to cause mistake, or to deceive as to the affiliation, connection, or association  . . . or as to the

9    origin, sponsorship, or approval of his or her goods, services, or commercial activities"); *Mattel*

10   *Inc. v. Walking Products*, 353 F.3d 792, 806-07 (9th Cir. 2003) (likelihood of confusion test asks

11   "whether use of the plaintiff's trademark by the defendant is likely to cause confusion or to cause

12   mistake, or to deceive as to the affiliation, connection, or association of the two products").

13   Similarly, Autodesk has added a sentence to the "degree of care" factor noting that the cost of a

14   product, such as a free giveaway, can be considered in analyzing the purchaser's degree of care.

15   *Brookfield Communs. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999) ("[W]hen

16   dealing with inexpensive products, customers are likely to exercise less care, thus making

17   confusion more likely.")  Without such clarifying language, the jury may be confused applying a

18   factor that discusses a "reasonably prudent purchaser" to SolidWorks' free downloadable

19   DWGseries products.

20

21                    **3.  SolidWorks' Modifications to the Sleekcraft Factors**

22          Although the parties agree generally on the applicability of the *Sleekcraft* factors to

23   Autodesk's DWG claim, Autodesk objects to certain of SolidWorks' proposed modifications from

24   the Model Instructions.

25          First, with respect to the factor regarding similarity of the marks, SolidWorks seeks to add a

26   sentence to the Model Instruction:  "Similarity must be considered in light of the way the marks are

27   encountered in the marketplace and the circumstances surrounding the purchase of the products."

28   This proposed addition is redundant of the language in the Model Instruction that says "if the

1    overall impression created by the plaintiff's trademark *in the marketplace* is similar to that created

2    by the defendant's trademark. . ."  The second proposed clause, namely "the circumstances

3    surrounding the purchase of the products," is more properly addressed by a different *Sleekcraft*

4    factor that relates to marketing and advertising channels and whether the parties' goods are likely to

5    be sold in the same or similar stores or outlets.  SolidWorks' proposed instruction is inappropriate.

6         Second, with respect to the element of Defendant's intent, the Model Instruction (which

7    Autodesk's proposed instruction tracks) states:  "*Knowing use by defendant of the plaintiff's*

8    *trademark to identify similar goods* may strongly show an intent to derive benefit from the

9    reputation of the plaintiff's mark, suggesting an intent to cause a likelihood of confusion."  (Model

10   Inst. 15.16 (d) (emphasis added)).  SolidWorks' proposed instruction replaces the italicized

11   language and makes the instruction circular.  By saying, "If the defendant adopted a mark similar to

12   the plaintiff's *with the intent to deceive consumers*, . . .," SolidWorks instruction would require

13   Autodesk to prove what the Model Instruction allows one to infer, namely SolidWorks' "intent to

14   cause a likelihood of confusion."  SolidWorks' own cited authority contradicts this position:

15   "Where an alleged infringer chooses a mark he knows to be similar to another, one can infer an

16   intent to confuse."  *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002), citing

17   *Official Airline Guides v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993).  SolidWorks' proposed

18   modification to the instruction regarding intent should be denied.

19             **I.  Disputed Jury Instruction No. 9 re Unfair Competition—False**
                    **Advertising—Elements and Burden of Proof**
20
21        The parties are very close to agreement on this instruction.  Though there is no Model

21   Instruction here, both parties take their elements from *Rice v. Fox Broadcasting Co.*, 330 F.3d

22   1170, 1180 (9th Cir. 2003), because this language was endorsed by the Model Instructions.  *See*

23   *Ninth Circuit Manual of Model Jury Instructions – Civil* § 15.4, Comment (2009)  The minor

24   difference is that Autodesk applies the elements to the facts here, stating that for deception to be

25   material, it must be "likely to influence the consumer's decision to purchase, use or download

26   SolidWorks' products."  As that is what is at issue here — the purchase, use, or download of

27   SolidWorks products — it is appropriate to tailor the instruction to those facts.

28

### J.   Disputed Instruction No. 10 re Affirmative Defense to Unfair Competition and False Advertising—Puffery

As noted immediately above, Autodesk and SolidWorks essentially agree on the elements of unfair competition and false advertising.  SolidWorks adds to those elements, however, material that finds no support in the case law.

#### 1.   SolidWorks' proposed paragraph titled "Definition of Falsity" misstates the law.

Regarding the "Definition of Falsity" language, Autodesk objects that it misstates the law and will confuse the jury.  SolidWorks' proposal states:

> When determining whether a statement is false or misleading, the statement must always be analyzed in its full factual context. Falsity is measured by referenced [sic] to objective industry standards. If a plaintiff cannot show falsity and instead relies on a claim that the statement is misleading, the plaintiff must prove by extrinsic evidence the challenged advertisements tend to mislead or confuse consumers.

The first sentence is incorrect because SolidWorks instructs the jury to consider whether the statement in question is either false or misleading, but then instructs the jury on a standard that only applies to falsity.  Autodesk asserts that SolidWorks' statements are both false *and* misleading.  According to the cases cited by SolidWorks, "[e]ven if an advertisement is not literally false relief is available under the Lanham Act §43(a) if it can be shown that the advertisement has misled, confused, or deceived the consuming public." *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139, 1140 (9th Cir. 1997) (explaining that full context is relevant only to evaluate whether a claim is literally false); *In re Century 21-RE/MAX Real Estate Advert. Claims Litig.,* 882 F. Supp. 915, 922-24 (C.D. Cal. 1994) (plaintiff can show that while the advertisement is not literally false, it is "likely to mislead or confuse consumers").

This language is also incorrect because it instructs that falsity is measured by "objective industry standards."  Of the cases which SolidWorks cites in support of this standard, only one supports this standard, and it does so by applying non-controlling Third Circuit law.  *See Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 336 n.17 (N.D. Cal. 1995) (explaining that "Third Circuit law is controlling in the underlying action, which is venued in a

district court within that circuit," citing only Third Circuit authority regarding false advertising discussion).

### 2. SolidWorks' proposed paragraph titled "Causally Related Injury" is confusing and unnecessary.

With regard to SolidWorks' proposed paragraph titled "Causally Related Injury," Autodesk objects that this is unnecessary. The stipulated language setting forth the elements provides an appropriate explanation to the jury and does not need to be supplemented with SolidWorks' confusing language. Specifically, the fourth element of the stipulated language addresses causation in plain and simple language, explaining that Autodesk must prove that it "has been or is likely to be injured *as the result* of" the false advertising. *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003) (causation language consists of "plaintiff has been or is likely to be injured as the result of the foregoing"); *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Svc. Inc.*, 911 F.2d 242,244 (9th Cir. 1990) (same); *In re Century 21*, 882 F. Supp. at 922 (same). SolidWorks proposes adding confusing language, such as that Autodesk "must submit proof . . . and must prove a logical causal connective . . ." The jury is unlikely to understand what this means. Worse, the jury may conclude that this language imposes some different or additional burden on Autodesk beyond what the parties agree are the elements of this claim.

### 3. Puffery is an affirmative defense that should be separately stated, and Autodesk's Instruction on this defense is more appropriate.

Finally, Autodesk objects to SolidWorks' proposed paragraph titled "Puffery Does Not Influence Purchasing Decisions" on the grounds that puffery is an affirmative defense to false advertising and therefore should not be included in Disputed Instruction No. 10, which explains the elements of a false advertising claim. Indeed, even SolidWorks has pleaded puffery as an affirmative defense. (Dkt. No. 38, Feb. 13, 2009, Dassault Systèmes SolidWorks Corp.'s Answer and Counterclaims to Autodesk Inc.'s First Am. Compl., at 20 (listing "Statements of Opinion or Puffery" as SolidWorks' "Sixteenth Affirmative Defense").) *See FTC v. Nat'l Urological Group, Inc.*, 645 F. Supp. 2d 1167, 1188 (N.D. Ga. 2008) ("the court will address the defendants' defense that much of the advertising constitutes non-actionable puffery."). Accordingly, Autodesk proposes

1    that this stand on its own as an instruction under the title "Defense to Unfair Competition and False

2    Advertising—Puffery."  Autodesk also objects to SolidWorks' proposed instruction regarding

3    puffery and proposes new language that is clearer.

4         First, Autodesk proposes that the Court insert an introductory sentence explaining to the

5    jury that "SolidWorks has raised the affirmative defense of puffery, arguing that Autodesk's claims

6    of false advertising against SolidWorks are barred."  Second, Autodesk proposes that the Court add

7    extra language to balance SolidWorks' proposed language.  As it currently stands, SolidWorks'

8    proposed language does not explain how to distinguish non-actionable puffery from misleading

9    statements, as its proposal only explains statements that constitute puffing.  Autodesk proposes

10   adding: "If a statement is measurable, if it can be tested, or if it makes a claim as to the specific or

11   absolute characteristics of a product, then it is not puffery. If a statement can induce consumer

12   reliance, then it is not puffery."  *See* Dkt. No. 195, MSJ Order at 19 ("Because a measurable

13   statement could induce customer reliance when evaluating defendant's product, it cannot be

14   deemed puffery" and "a measurable and testable claim upon which a reasonable consumer could

15   rely" is not puffery); *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir.

16   2008) (a statement which is not "a quantifiable claim and does not describe (or misdescribe) any

17   specific or absolute characteristic" is not mere puffery), *cert. denied*, 129 S. Ct. 2788 (U.S. 2009).

18        Third, Autodesk proposes adding a charging instruction, advising the jury that if they

19   determine that no reasonable consumer could rely on the statement at issue, then the defense of

20   puffery applies.  On the other hand, if the jury determines that a reasonable consumer could rely on

21   the statement, then they may consider that statement in evaluating whether SolidWorks has engaged

22   in unfair competition or false advertising.  *See* Dkt. No. 195, MSJ Order at 18 ("A statement is

23   puffery if it is extremely unlikely to induce consumer reliance.").

24              **K.  Disputed Jury Instruction Nos. 11 and 12 re Burden of Proof for
                    and Application of Sleekcraft to AutoCAD Claim**

25        In Instruction Nos. 11 and 12, SolidWorks contends that Autodesk must show a likelihood

26   of confusion under *Sleekcraft* in support of Autodesk's AutoCAD infringement claim.  SolidWorks

27   is wrong.

28

1    AutoCAD is a registered, incontestable mark, the use of which SolidWorks seeks to excuse

2    primarily by way of a nominative fair use defense.  In these circumstances, "the [nominative fair

3    use] test should be applied instead of the test for likelihood of confusion set forth in *Sleekcraft*"

4    because it "better evaluates the likelihood of confusion in nominative [fair] use cases."  *Playboy*

5    *Enters., Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002).   The Court's order on the motions for

6    summary judgment reflects precisely that principle.  (MSJ Order at 17.)

7         The Court should therefore reject Instruction Nos. 11 and 12.   What Autodesk and

8    SolidWorks must prove in connection with the AutoCAD infringement claim is appropriately

9    summarized in Autodesk Disputed Instruction Nos. 3 and 8.

10                **L.  Disputed Jury Instruction No. 13 re Nominative Fair Use**
                          **AutoCAD Claim**
11
12        Again, Autodesk contends that it would benefit the jury to hear instructions regarding the

13   DWG and AutoCAD-based claims together, and so it has addressed this content in Autodesk

14   Disputed Instruction No. 8.  The legal differences between SolidWorks' approach and Autodesk's

     approach are addressed above in the context of that Instruction.
15
16                **M. Disputed Jury Instruction No. 14 re Affirmative Defense of**
                          **Unclean Hands**
17        Autodesk objects to the inclusion of *any* unclean hands instruction, as SolidWorks has no

18   such defense here.  Neither of the two cases cited in SolidWorks' instruction actually found any

19   unclean hands.  In *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007), a

20   copyright case, the court rejected the unclean hands defense as a matter of law where the defendant

21   claimed the plaintiff's refusal to share proprietary information about song artists and title pairings

22   was inequitable.  In *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987),

23   the court affirmed the refusal to give an unclean hands instruction because, even if Fuddruckers lied

24   that its hamburgers were "ground steak," such deception was not a material part of trade dress at

25   issue.

26        The citations in those cases do, in turn, point to facts that might make out an unclean hands

27   defense.  These cases make clear that, essentially, the trademark in question needs to be a lie.

28   *Worden & Co. v. California Fig Syrup Co.*, 187 U.S. 516, 533-34 (1903) ("Syrup of Figs

1    unprotectable where product contains no figs); *Haagen-Dazs, Inc. v. Frusen Gladje, Ltd.*, 493 F.

2    Supp. 73, 76 (S.D.N.Y. 1980) (Scandinavian marketing theme for ice cream unprotectable where

3    plaintiff deceptively implied product was of Scandinavian origin).

4         SolidWorks alleges nothing like that here.  Autodesk has asked SolidWorks the basis for

5    this defense in an interrogatory.  Over a series of supplemental sets of responses, SolidWorks

6    provided roughly five pages of narrative explaining why it believes there is a viable unclean hands

7    defense here.  (SolidWorks' Third Supp. Resps. and Objections to Autodesk's First Set of

8    Interrogs. at 15-21.)  That narrative appears to boil down to an extended allegation that Autodesk

9    acted inequitably because it is a monopolist trying to "prevent SolidWorks and other competitors

10   from conveying to the CAD market that their software products are compatible or interoperable

11   with .dwg files competitors." *Id.* at 19.  Autodesk is and does nothing of the kind, as this Court has

12   already recognized.  (Dkt. No. 195, MSJ Order at 8 ("[T]here is no concern that plaintiff will obtain

13   a monopoly over the '.dwg' extension and prevent its use in the industry.").)

14        SolidWorks therefore should not be allowed to present this defense to the jury, as its

15   interrogatory response discloses no factual basis to do so.  Indeed, more important than its

16   interrogatory responses, SolidWorks *has not pled* any claim alleging Autodesk "violate[d] the

17   antitrust laws of the United States." (SolidWorks' Third Supp. Resps. And Objections To

18   Autodesk's First Set of Interrogs. at 16.)  Such a claim has discrete and legally-defined elements,

19   which SolidWorks cannot meet, and would be subject to dispositive motions.  SolidWorks should

20   not be allowed to "sneak in" such a claim by way of an equitable defense. *See, e.g., Coca-Cola

21   Co. v. Overland, Inc.*, 692 F.2d 1250, 1257 (9th Cir. 1982) (granting summary judgment on "make

22   weight" antitrust counterclaim and unclean-hands defense where defendant could not make out

23   elements of Sherman Act violation).

24        However, should the Court allow SolidWorks to present this defense to the jury, Autodesk

25   proposes adding one sentence to SolidWorks' instruction:

26        The defense of unclean hands is reserved for egregious conduct only.
          SolidWorks must prove Autodesk engaged in such conduct by clear
27        and convincing evidence.

28

This language is important to clarify for the jury that it is insufficient for SolidWorks to simply show that Autodesk did something "unfair" for Autodesk to forfeit its claims. SolidWorks must point to *egregious, unconscionable* conduct. *See, e.g., U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F. Supp. 1238, 1255 (D. Ariz. 1981) ("[C]ourts are reluctant to apply the unclean hands doctrine in all but the most egregious situations. It will be applied only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." (internal citation and quotation marks omitted)); *see also Starsight Telecast v. Gemstar Dev. Corp.*, Case No. C 93-20777 RMW (EAI), 1995 U.S. Dist. LEXIS 22006, *11 (N.D. Cal. Aug. 11, 1995) (citing *U-Haul*, quoting above language).

## N. Disputed Jury Instruction No. 15 re Affirmative Defense of Estoppel

Autodesk has no objection to SolidWorks' instruction as a statement of estoppel law. Autodesk objects instead that SolidWorks has not made out a case for estoppel here and that therefore no instruction on this defense should be read to the jury. Additionally, SolidWorks does not provide a clear explanation of how to apply the defense of waiver to the facts in this case. Autodesk proposes that introductory and concluding sentences be added to the instruction that inform the jury to which facts and to which claims this particular defense may apply.

## O. Disputed Jury Instruction No. 16 re Affirmative Defense of Waiver

Autodesk contends it is not necessary to provide an instruction on waiver instruction, as SolidWorks has not articulated facts sufficient to support such an affirmative defense. In the alternative, if the Court offers such an instruction, Autodesk contends its proposed instruction provides a more accurate statement of law on the defense of waiver and asks that the actual instruction be further tailored to what proof SolidWorks purports to offer at trial in support of this affirmative defense

Autodesk's proposed language follows established case law regarding the defense of waiver, which emphasizes that the crux of the waiver defense is the unequivocal and intentional relinquishment of a known right. *See Adidas Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1074 (D. Or. 2008) ("Although mere silence can be a basis for a claim of estoppel when a

legal duty to speak exists, waiver must be manifested in an unequivocal manner"). "Failure to act, without more, is insufficient evidence of plaintiff's intent to waive its right to claim infringement." *Id.* (quoting *Novell, Inc. v. Weird Stuff, Inc.*, No. C92-20467, 1993 U.S. Dist. LEXIS 21483, 0094 WL 16458729, at *12-13 (N.D. Cal. Aug. 2, 1993)). SolidWorks' proposed language does not explain this crucial requirement.

Waiver exists where there is "clear, decisive and unequivocal conduct which indicates a purpose to waive the legal rights involved." *United States v. Anwest Surety Ins. Co.*, 54 F.3d 601, 602-03 (9th Cir. 1995) (quoting *Groves v. Prickett*, 420 F.2d 1119, 1125 (9th Cir. 1970) ("an implied waiver of rights will be found where there is 'clear, decisive and unequivocal' conduct which indicates a purpose to waive the legal rights involved"); *Adidas Am.*, 546 F. Supp. 2d at 1074 (because defendant did not proffer evidence of a "clear, decisive and unequivocal" intent by plaintiff to relinquish any of its trademark or trade dress rights, there was no waiver) (quoting *Duncan v. Office Depot*, 973 F. Supp. 1171, 1177 (D. Or. 1997)). Autodesk's proposed instruction informs the jury that for the defense of waiver to apply, Autodesk must have indicated a clear, decisive and unequivocal intent to waive its trademark rights.

SolidWorks' proposed language incorrectly instructs the jury that waiver may be merely "voluntary" in addition to "intentional." The single case to which SolidWorks cites does not support this proposition. *See A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) ("waiver or abandonment of copyright 'occurs *only if there is an intent* by the copyright proprietor to surrender rights in his work.'") (emphasis added) (citations omitted). Additionally, SolidWorks does not provide a clear explanation of how to apply the defense of waiver to the facts in this case. Autodesk proposes that introductory and concluding sentences be added to the instruction that will inform the jury to which facts and to which claims this particular defense may apply.

### P. Disputed Jury Instruction No. 17 re Affirmative Defense of Abandonment

Autodesk objects to the inclusion of a jury instruction regarding the affirmative defense of abandonment on the grounds that (a) SolidWorks waived this affirmative defense long ago when it chose not to include abandonment among its list of *twenty* affirmative defenses listed in its Answer

1   to the First Amended Complaint, and (b) to include it now would prejudice Autodesk.

2   Nevertheless, should the Court conclude that this affirmative defense has not been waived,

3   Autodesk objects to SolidWorks' proposed instruction on the grounds that it is legally incorrect

4   because it misstates the standard of proof as "a preponderance of the evidence," rather than the

5   "clear and convincing" standard.

6          The Federal Rules of Civil Procedure clearly state that "a party must affirmatively state an

7   avoidance or affirmative defense" in a party's responsive pleading.  Fed. R. Civ. P. 8(c);

8   *Morrison v. Mahoney*, 399 F.3d 1042, 1046-47 (9th Cir. 2005) (affirmative defenses must be raised

9   in first responsive pleading to avoid waiver).  It is undisputed that SolidWorks' theory of

10  abandonment is an affirmative defense for which SolidWorks has the burden of proof – indeed, it is

11  characterized as such in SolidWorks' own proposed jury instructions and in the Model Instructions.

12  *See* SolidWorks' Proposed Jury Instruction No. 18; *Ninth Circuit Manual of Model Jury*

13  *Instructions – Civil* §§ 15.20, Comment (2009) (titled "Defenses—Abandonment—Affirmative

14  Defense—Defendant's Burden of Proof"); *see also Electro Source, LLC v. Brandess-Kalt-Aetna*

15  *Group, Inc.*, 458 F.3d 931, 935 n.2 (9th Cir. 2006) (trademark abandonment is defense that must be

16  "strictly prove[n]" by defendant).  By failing to plead abandonment, SolidWorks has waived this

17  defense.  *See, e.g.*, *Fifty-Six Hope Rd. Music, Ltd. v. Mayah Collection*, 2007 U.S. Dist. LEXIS

18  43012, at *30-31 (D. Nev. June 11, 2007) (defendant waived affirmative defense of abandonment

19  by failure to plead; general allegations that plaintiffs were not lawful owners of alleged mark were

20  insufficient to preserve affirmative defense of abandonment) (citing *Atlas Supply Co. v. Atlas Brake*

21  *Shops, Inc.*, 360 F.2d 16, 18 (6th Cir. 1966) ("Abandonment of a trademark is an affirmative

22  defense which must be pleaded, otherwise it is deemed waived.")).  "Because a finding of

23  abandonment works an involuntary forfeiture of rights, federal courts uniformly agree that

24  defendants asserting an abandonment defense face a 'stringent,' 'heavy,' or 'strict' burden of

25  proof." *Cumulus Media, Inc. v. Clear Channel Comm., Inc.*, 304 F.3d 1167, 1175 (11th Cir. 2002);

26  *Grocery Outlet Inc. v. Albertsons, Inc.*, 2008 U.S. Dist. LEXIS 101999, *16 (N.D. Cal. Dec. 16,

27  2008) (J. White) (quoting same passage from *Cumulus Media*, 304 F.3d at 1175).

28

1    Furthermore, to allow SolidWorks to suddenly include a new affirmative defense at this late

2    stage would work an unfair prejudice against Autodesk.  Had SolidWorks properly pled the

3    abandonment defense, or timely amended its answer to include this affirmative defense, Autodesk

4    could have conducted discovery relevant to the elements of trademark abandonment and considered

5    moving for summary judgment on this point (as Autodesk did on SolidWorks' affirmative defense

6    of laches).  SolidWorks' creation of an entire paragraph emphasizing the doctrine of "naked

7    licensing" highlights how improper and prejudicial it would be for SolidWorks to be allowed to add

8    this unpled affirmative defense now.  For example, because SolidWorks did not plead

9    abandonment, Autodesk had no reason to propound interrogatories on the issue of abandonment,

10   which would likely have revealed that SolidWorks intended to pursue a theory of naked licensing.

11   Autodesk did not have the opportunity to conduct follow-up discovery to further explicate this

12   naked licensing theory.  Most importantly, Autodesk did not have the opportunity to move for

13   summary judgment against this theory, as SolidWorks does not have evidence sufficient to create a

14   material dispute of fact on this point such that it could carry its burden.  SolidWorks should not be

15   permitted to introduce this defense for the first time, mere weeks before trial.[2]

16   In the alternative, should the Court determine that it will instruct the jury as to the

17   affirmative defense of abandonment, Autodesk objects to SolidWorks' proposed language on the

18   basis that it misstates SolidWorks' burden of proof as "a preponderance of the evidence."

19   *Prudential Ins. Co. v. Gibraltar Financial Corp.*, 694 F.2d 1150, 1156 (9th Cir. Cal. 1982)

20   ("Abandonment of a trademark, being in the nature of a forfeiture, must be strictly proved.");

21   *Emachines, Inc. v. Ready Access Memory, Inc.*, 2001 U.S. Dist. LEXIS 13904, *16 (C.D. Cal.

22   Mar. 5, 2001) ("[A]bandonment must be shown by clear and convincing evidence.").  The

23

24   _____

25       [2] At the parties' meet-and-confer meeting on December 20, 2009, counsel for SolidWorks suggested that Autodesk was on notice of this affirmative defense because SolidWorks' expert reports imply abandonment.  Requiring Autodesk to infer a whole new defense from expert reports

26   is not sufficient to plead an affirmative defense.  Even if it were, expert reports were not exchanged until after the close of fact discovery, so even this purported "notice" does not remedy the prejudice

27   against Autodesk.

28

Comment to the Model Instruction explains that while the Ninth Circuit has not spoken directly to this issue, "scholars note that except the Federal Circuit, 'all' courts follow a clear and convincing standard of proof of abandonment." *Ninth Circuit Manual of Model Jury Instructions – Civil* §§ 15.20 Comment (2009) (citing 3 J. THOMAS MCCARTHY, TRADEMARKS & UNFAIR COMPETITION § 17:18 (4th ed. 2009); Fletcher, *Anthony L. and David J. Kera, Annual Review*, 85 TRADEMARK REP. 607, 724–25 (1995)); *see also Grocery Outlet*, 2008 U.S. Dist. LEXIS 101999, at *16 (N.D. Cal. Dec. 16, 2008) ("the majority of courts applying that standard have found that evidence of abandonment must be clear and convincing").

In addition, if the Court is inclined to allow SolidWorks to raise this unpled affirmative defense, SolidWorks should not be permitted to insert an entirely new paragraph discussing the third type of abandonment (naked licensing):

> A trademark owner may grant a license and remain protected provided quality control of the goods and services sold under the trademark by the licensee is maintained. But uncontrolled or 'naked' licensing may result in the trademark ceasing to function as a symbol of quality and controlled source. Where someone claiming to be a trademark holder fails to exercise adequate quality control over the licensee, the party claim to be a trademark owner has abandoned the trademark, in which case the owner would be prohibited from asserting rights to the trademark. Such abandonment is purely an 'involuntary' forfeiture of trademark rights, for it need not be shown that the trademark owner had any subjective intent to abandon the mark.

The Model Instruction adequately sets out the basic theory of trademark abandonment and then briefly explains three ways by which a trademark may be abandoned: discontinuance with intent not to resume, primary meaning becoming the product itself and not the producer, and failure to exercise adequate quality control over goods sold by licensees. This approach is simple, clear, and sufficient. Adding an entire paragraph into the middle of the introductory language devoted solely to the third type of abandonment serves no purpose and will only confuse the jury.

SolidWorks should not be permitted to introduce this defense for the first time in its jury instructions mere weeks before trial. However, if the Court does permit SolidWorks to introduce this affirmative defense now, the correct "clear and convincing" burden of proof should be stated,

1   and the additional paragraph proposed by SolidWorks and quoted above should be excised from the

2   instruction.

3                      **Q.  Disputed Jury Instruction No. 18 re Defenses—Classic Fair Use**

4         SolidWorks has offered Jury Instruction No. 18, based on the Model Instruction, for the

5   affirmative defense, "Classic Fair Use."  Autodesk does not take issue with the proposed language

6   as a statement of the law.  Autodesk's objection is that the defense of "Classic Fair Use" has no

7   application to the facts in this case.  If a "Classic Fair Use" instruction is given to the jury, it should

8   be tailored to the facts in this case so that the jurors will understand how to apply the defense and so

9   they do not confuse it with SolidWorks' nominative fair use defense (confusion that, as discussed

10  below, we believe SolidWorks itself is making in proposing this defense at all).  However, since

11  there are no facts in this case to which this defense can legally apply, it is an inappropriate jury

12  instruction.

13        The Classic (or Statutory) Fair Use defense presumes that a descriptive designation is a

14  valid trademark.  A defendant making this argument must show that it is not using the plaintiff's

15  descriptive designation in a trademark sense, but rather only to describe *the defendant's* own goods

16  or services.  For example, United Airlines would be permitted to say, "United is an American

17  airline," notwithstanding that the term "American Airlines" is a registered trademark of its

18  competitor.  *See, e.g.*, 2 J. THOMAS MCCARTHY, TRADEMARKS & UNFAIR COMPETITION § 11:45

19  (4th ed. 2009) ("A junior user is always entitled to use a descriptive term in good faith in its

20  primary, descriptive sense *other than as a trademark*.") (emphasis added).

21        The Ninth Circuit explained classic fair use in *In re Dual-Deck Video Cassette Recorder*

22  *Antitrust Litig.*, 11 F.3d 1460, 1462 (9th Cir. 1993).  There, the plaintiff sold a videocassette

23  recorder, which had two decks in one machine, under the trademark "VCR-2."  The defendant sold

24  receivers and other machines to which two videocassette recorders could be attached and labeled

25  the relevant terminals on the backs of its machines "VCR-1" and "VCR-2." *Id.*  Thus, the defendant

26  used the mark "VCR-2" only to describe its own products, to which any second VCR could be

27  attached, and not at all to describe the plaintiff's product or any other particular VCR.

28

1    Accordingly, the classic fair use analysis was appropriate:  "[t]he uses were descriptive, and there is

2    no evidence from which an inference of bad faith could be drawn."  *Id*. at 1467.

3        In SolidWorks' proposed Jury Instruction No. 18, SolidWorks contends that this defense

4    applies both to its use of AutoCAD® and DWG.  Claiming classic fair use with respect to the

5    AutoCAD® mark is absurd.  The term AutoCAD® is in no way a descriptive term like VCR-2.

6    AutoCAD® is a fanciful word coined by Autodesk and a valid, registered trademark that identifies

7    Autodesk's software.  It only has meaning as a trademark, and thus the appropriate fair use analysis

8    can only be nominative fair use.  SolidWorks has not identified — because it cannot — any even

9    arguably descriptive use it has made of the word AutoCAD outside of its trademark sense solely to

10   describe SolidWorks' own products.  Rather, all of the uses of the AutoCAD® mark at issue in this

11   lawsuit are references to Autodesk's software.  SolidWorks argued precisely that in its motion for

12   summary judgment and the Court agreed, granting summary judgment to SolidWorks on the first

13   element of *nominative fair use*.  That is not, however, classic fair use.  *See e.g.*, *Canfield v. Health*

14   *Communs., Inc*., No. CV08-890 SVW (JTLx), 2008 U.S. Dist. LEXIS 28662, at *13-15 (C.D. Cal.

15   Apr. 1, 2008) (where defendant's reference is a reference to the plaintiff's mark, statutory fair use

16   does not apply).

17       Likewise, while Autodesk disputes that DWG is a descriptive term at all, none of the uses of

18   DWG by SolidWorks at issue in this litigation qualify as a descriptive use of that term only to

19   describe SolidWorks' products.  For example, the jury instruction makes clear that the defendant's

20   use must be "*other than as a trademark*."  SolidWorks' use of the DWG mark in its own product

21   names, such as DWGgateway, DWGeditor, and DWGnavigator, is clearly *use as a trademark*.  It

22   does not matter that SolidWorks coupled the DWG mark with other terms in SolidWorks'

23   DWGseries product names.  Were it otherwise, any company could use another party's trademark

24   combined with a second term, *e.g.* IPODgateway or IPODeditor, and claim to not be using the mark

25   as a trademark.  That cannot be right.

26       Moreover, in reviewing the websites and advertising at issue in this case, Autodesk can find

27   no examples where SolidWorks has used the term DWG in a descriptive sense to describe

28   SolidWorks' own products, as opposed to referring to Autodesk's proprietary CAD file format.

1   Indeed, the evidence is to the contrary — SolidWorks' use of "DWG" makes clear it is referring to

2   Autodesk DWG, not some other purported DWG.  *See, e.g.*, www.dwggateway.com ("Open DWG

3   files created by any version of AutoCAD software.  Save DWG files to any version of AutoCAD

4   software.")  Where the meaning of SolidWorks' use is "directly related" to Autodesk's DWG mark,

5   classic fair use does not apply – nominative fair use is the appropriate analysis.  *Canfield*,

6   2008 U.S. Dist. LEXIS 28662, at *13-15 .

7          During the parties' discussions regarding the jury instructions, counsel for Autodesk asked

8   for an explanation of how this defense would apply.  SolidWorks' counsel responded by reiterating

9   their (unsuccessful) arguments on functionality from their summary judgment papers, namely that

10   DWG is a file format and thus is entirely functional.  SolidWorks' counsel also cited footnote 2 and

11   associated text in the Court's summary judgment order as supporting a supposed Classic Fair Use

12   defense.  It does not.  Instead, it is clear that the Court is referring to *nominative* fair use when it

13   suggests that "the DWG mark could still be used by competitors under the doctrine of fair use."

14   (Dkt. No. 195, MSJ Order at 9.)

15          SolidWorks' proposed Jury Instruction No. 18 should be refused.

16              **R.  Disputed Jury Instruction No. 19 re Wrongful Intent**

17          Autodesk contends no willfulness instruction is necessary here.  Autodesk acknowledges it

18   faces an uphill battle on this instruction:  this Court has recently held that to recover profits a

19   trademark plaintiff must show willfulness.   *Vallavista Corp. v. Amazon.com, Inc.*, No. C 07-05360

20   WHA, 2008 U.S. Dist. LEXIS 100058, at *16 (N.D. Cal. Dec. 11, 2008) ("Willful infringement is

21   required when the plaintiff seeks the defendant's profits.").  In so holding, the Court relied on *Lindy

22   Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407-09 (9th Cir. 1993).  There is, however, no mention

23   of willfulness as a requirement in the sections of the Lanham Act at issue here.   Indeed, other

24   courts have questioned whether *Lindy* remains good law in light of a 1999 amendment to 15 U.S.C.

25   § 1117.  That amendment explicitly made willfulness a requirement to recover profits under a

26   *different* Lanham Act section (§ 1125(c)), but *excluded* any willfulness requirement to recover

27   profits in connection with a "violation of any right of the registrant of a mark registered in the

28

1   Patent and Trademark Office" or a "violation under section 1125 (a) or (d)" — the violations at

2   issue here.

3          The Ninth Circuit has not yet addressed the effect of this amendment on the damages

4   burden.  Other courts in this circuit have held that willfulness is no longer required to recover

5   profits.  *R&R Partners, Inc. v. Tovar*, No. 03:04-CV-00145-LRH-PAL, 2007 U.S. Dist. LEXIS

6   29819, at *4-5 (D. Nev. Apr. 23, 2007) ("The plain language of this amendment indicates that

7   Congress intended to condition monetary awards for *Section 43(c)* violations on a finding of

8   willfulness, but not *Section 43(a)* violations."); *Pom Wonderful LLC v. Purely Juice, Inc.*, No. CV-

9   07-02633 CAS (JWJx), 2008 U.S. Dist. LEXIS 55426, *39 (C.D. Cal. Jul. 17, 2008) ("[A]n award

10  of defendant's profits under 15 U.S.C. 1117(a) for a violation of 15 U.S.C. § 1125(a) is not

11  dependent upon a showing that the violation was 'willful.'").  So, too have other circuit courts,

12  which refer to willfulness as a sufficient but not necessary factor when weighing whether to award

13  profits.  *See, e.g., Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168 (3d Cir. 2005) (holding that

14  willfulness is only a factor, not an indispensable prerequisite); *Quick Techs., Inc. v. Sage Group*

15  *PLC*, 313 F.3d 338, 349 (5th Cir. 2003) ("In accordance with our previous decisions, and in light of

16  the plain language of § 1117(a), however, we decline to adopt a bright-line rule in which a showing

17  of willful infringement is a prerequisite to an accounting of profits."); *cf. Synergistic Intern., LLC v.*

18  *Korman*, 470 F.3d 162, 175 n.13 (4th Cir. 2006) ("[W]e agree that willfulness is not an essential

19  prerequisite for a [sic] damages award, but that it remains a highly pertinent factor.").  This is

20  especially so where the parties are competitors, as the parties are here.  *See, e.g., Tamko Roofing*

21  *Prods., Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 36 (1st Cir. 2002) ("[I]t has been this circuit's

22  rule that an accounting of defendant's profits where the products directly compete does not require

23  fraud, bad faith, or palming off.").

24         If the Court does elect to offer this instruction, it should excise "a knowing use of a

25  trademark in the belief that there no confusion is likely is not bad faith," as no case SolidWorks

26  cites suggests such a rule; otherwise, competitors would always claim that their use was believe not

27  to be confusing.

28

### S.   Disputed Jury Instruction No. 20 re Damages—Defendant's Profits

SolidWorks makes numerous additions to the Model Instructions, none of which are warranted.  Two merit focus.  First, SolidWorks adds "as opposed to the inherent functionality, qualities, attributes, or features of the product."  This is ambiguous and confusing and there is no support for this additional language in SolidWorks' cited cases.

Second, SolidWorks hopes that its damages will be limited to profits from "the sale of SolidWorks' DWGseries tools."  As SolidWorks contends it gives all of those products away for free, that is the same as suggesting there should automatically be no damages here.  Again, SolidWorks cites no caselaw in support.  The evidence will show that SolidWorks' DWGseries products infringe Autodesk's DWG trademark, and that SolidWorks distributes the DWGseries widely in the hope of getting sales leads to generate revenue from its flagship "SolidWorks" product.  Under such circumstances, it is perfectly appropriate for the jury to consider the "SolidWorks" product profits as attributable to the trademark infringement and false advertising, and they should not be instructed otherwise.  *See Ninth Circuit Manual of Model Jury Instructions – Civil* § 15.26, Comment (2009) (citing cases holding plaintiff entitled to amount of gross sales); *Nintendo of America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) (where infringing and noninfringing elements of work cannot be readily separated, all of defendant's profits should be awarded to plaintiff).

Dated: December 23, 2009

MICHAEL A. JACOBS
J. THOMAS MCCARTHY
DAVID E. MELAUGH
LYNN M. HUMPHREYS
JACQUELINE BOS
NATHAN B. SABRI
MORRISON & FOERSTER LLP

By:   /s/ *Michael A. Jacobs*
         MICHAEL A. JACOBS

Attorneys for Plaintiff
AUTODESK, INC.