MORRISON & FOERSTER LLP
Michael A. Jacobs (Bar No. 111664)
J. Thomas McCarthy (Bar No. 034728)
David E. Melaugh (Bar No. 219477)
Lynn M. Humphreys (Bar No. 168062)
Jacqueline Bos (Bar No. 243938)
Nathan B. Sabri (Bar No. 252216)
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Plaintiff
AUTODESK, INC.

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
Claude M. Stern (Bar No. 96737)
Evette D. Pennypacker (Bar No. 203515)
Andrea Pallios Roberts (Bar No. 228128)
Zachary M. Fabish (Bar No. 247535)
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
Telephone: 650.801.5000
Facsimile: 650.801.5100

Attorneys for Defendant
DASSAULT SYSTÈMES
SOLIDWORKS CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DASSAULT SYSTÈMES SOLIDWORKS CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No. 3:08-cv-04397-WHA<br><br>**JOINT SUMMARY OF MOTIONS IN LIMINE** |

**AUTODESK MOTION IN LIMINE NO. 1**

**Autodesk:** Mr. Howard Marylander performed a supposed "genericness" survey on SolidWorks' behalf. The Court should exclude the testimony of Mr. Marylander for three reasons. First, the Marylander survey's definitions of the key terms "common name" and "brand name" are inaccurate and inconsistent with the law and with likely jury instructions. As a consequence, his survey did not test the central premise of genericness under the facts of this case. A court has previously excluded a Marylander survey for exactly the same reason. *Icon Enters. Int'l, Inc. v. Am. Prods. Co.*, No. CV 04-1240 SVW (PLAx), 2004 U.S. Dist. LEXIS 31080, at *94 (C.D. Cal. Oct. 7, 2004) ("By inaccurately or at the very least misleadingly defining the key terms, Marylander rendered the survey's findings of dubious probative value.").

Second, Mr. Marylander chose confusing control terms – including open standard file formats (*e.g.,* TXT, ASM and IGES) for so-called common names and only product names (Pro/Engineer, MICROSTATION, and DB2) for brand name controls. Notably, respondents could not classify the control terms, making their responses regarding DWG, and hence the survey as a whole, inherently unreliable. Of the 300 respondents, only 2 respondents (less than 1 percent) correctly identified all brand names and common names. 249 respondents (or 83 percent) could not identify or identified incorrectly three or more control names. 184 respondents (almost two-thirds of all respondents) failed to correctly identify at least four of the six control names – two-thirds of the control terms. This inordinate number of errors renders the survey fatally defective.

Third, by combining the "Don't Know" responses with the "Common Name" responses, Mr. Marylander grossly overstates and misrepresents the results regarding DWG. Roughly a third of respondents did not know whether DWG was a brand or common name. Instead of excluding this population, Mr. Marylander improperly added them to the population that felt DWG was a common name.

Granting this motion now will help both sides plan their trial strategy and will clarify what can and cannot be addressed during opening statements.

**SolidWorks:** Autodesk seeks to preclude testimony by Howard Marylander, SolidWorks' survey expert with decades of market research experience, concerning a Teflon-style survey he performed that showed consumers do not consider "DWG" to be a brand name. Consumers were given definitions of brand names and common names, asked to determine whether a battery of practice names were either brand or common, and then tasked with determining whether a set of software product and file format names—including "DWG"—were brand or a control. Only one-third of respondents identified DWG as a brand name. Autodesk points to purported problems with this survey; however, arguments concerning the technical reliability of a survey go to the weight of the evidence, not its admissibility. *Prudential Ins. Co. of America v. Gibraltar Financial Corp. of California*, 694 F.2d 1150, 1155-56 (9th Cir. 1982) (courts should "admit the survey and discount its probative value" despite survey methodology problems).

Autodesk also argues that the definitions of brand name and common name used in the survey were "confusing" or inaccurate. However, the definitions used were short—consisting of a sentence or two of explanation followed by a sentence of examples—and the high 85% accuracy rate for responses to the practice questions indicates that respondents understood correctly. Second, Autodesk argues that because a relatively small number of respondents correctly identified all six control names as either brand or common, the survey must be fatally flawed. However, this ignores the practice section results showing the soundness of the survey, and does not account for the industry-specific nature of the responses. Third, Autodesk argues that the respondents answering "I don't know" to whether DWG is a brand name or a common name should be discounted, but this ignores the fact that proving non-genericness is Autodesk's burden; thus, the survey is correct in counting all respondents who didn't answer that DWG was a brand name. None of these issues are sufficient to preclude admission of the survey. A decision on this issue is necessary before trial because Mr. Marylander's survey will be discussed during opening statements.

**AUTODESK MOTION IN LIMINE NO. 2**

**Autodesk:** SolidWorks' characterization of Autodesk's applications to register DWG, MAX DWG, and DWG UNPLUGGED will likely appear as a theme in SolidWorks' opening statement. The Court should exclude evidence or argument regarding these applications for three reasons. First, the prosecution history of the mark DWG will prejudice Autodesk because of the undue weight the jury will likely accord it. The jury may well view the PTO's preliminary negative opinions as an official government position on whether DWG is generic and whether Autodesk is the source of DWG – the very issues they are to decide. In *Everest Capital v. Everest Funds*, 393 F.3d 755, 764 (8th Cir. 2005), the Eighth Circuit affirmed exclusion of such evidence: "[t]he [PTO] suspension notice had little probative value because it stated a tentative opinion, not an administrative finding of fact based upon an adequate record. But the agency opinion had the potential to unfairly prejudice the defendants if the jury mistakenly viewed it as an official government position on the critical confusion issue that the jury had to decide." SolidWorks cites *no authority* in which a trademark file history was allowed into evidence before a jury.

Second, in its application to register its trademark DWG, Autodesk represented to the PTO that the "First Use Anywhere Date" and the "First Use in Commerce Date" were both "[a]t least as early as 11/28/2005." "Indefinite terms" are acceptable in trademark applications because applicants "may undertake to prove a date earlier than the one stated" if necessary. Trademark Manual of Examining Procedure § 903.06. SolidWorks will claim or imply that 11/28/2005 is the *actual* date of first use. This will likely mislead the jury and confuse the issue of when Autodesk actually first used the DWG mark.

Third, SolidWorks likely will cite Autodesk's disclaimer of DWG thirteen years ago in its applications for MAX DWG and DWG UNPLUGGED to persuade the jury that Autodesk has no rights whatsoever in DWG. These disclaimers have no bearing on Autodesk's underlying rights in the disclaimed term, and any argument to the contrary would be misleading and prejudicial. *See Official Airline Guides, Inc. v. Goss*, 856 F.2d 85, 87 (9th Cir. 1988) ("However, OAG's disclaimer of the phrase 'Travel Planner' in its registration does not deprive it of any common law rights it may have in the disclaimed matter"); 15 U.S.C. § 1056(b).

**SolidWorks:** This Court should deny Autodesk's motion to exclude certain Autodesk trademark prosecution actions because this evidence is relevant and highly probative of numerous issues in the case. First, Autodesk's 1996 disclaimer of "DWG" in its DWG Unplugged and Max DWG applications are relevant because: (1) they are the only trademark applications from Autodesk on file with the PTO at the time DWGeditor was named which included the term "DWG"—and "DWG" was disclaimed; (2) SolidWorks considered these applications before settling on DWGeditor as a name, showing non-willfulness and a lack of intent to confuse; (3) they show Autodesk was not treating "DWG" as a brand or trademark as of 1996; (4) they contradict Autodesk testimony that it was branding DWG in the 1990s; and (5) Autodesk relies on these DWG-named products to claim that it used "DWG" as a trademark.

Second, Autodesk's 2006 first-ever application to register "DWG" as a trademark is probative because Autodesk expressly admits it first used the term as a trademark in commerce on November 28, 2005, *after* SolidWorks release of DWGeditor and DWGgateway. This is relevant on the question of priority of use, a gating issue to Autodesk establishing ownership of a mark. Autodesk directly contradicts this statement in this lawsuit, vaguely claiming an earlier first use.

Third, the PTO's office actions in Autodesk's 2006 application to register "DWG" demonstrate: (1) Autodesk allowing 3rd party unobstructed use of DWG for 24 years, thereby allowing the word to become generic; (2) SolidWorks' conduct was not willful, which is relevant to damages, and to lack of intent to confuse or copy; and (3) Autodesk's awareness of the flaws in the Jay survey Autodesk relies upon in this case.

Finally, Autodesk seeks to be able to use other PTO file histories and actions in the litigation which benefit it, but exclude those that hurt its case.

A decision prior to trial is requested because SolidWorks intends to rely upon evidence subject to this motion *in limine* in its opening statements.

JOINT MOTIONS IN LIMINE SUMMARY
Case No. 3:08-cv-04397-WHA
sf-2783951

2

## AUTODESK MOTION IN LIMINE NO. 3

**Autodesk:** SolidWorks has regularly (1) characterized Autodesk as a monopolist and (2) referenced a 1997 FTC antitrust matter involving Autodesk. This theme and prior matter will likely appear in SolidWorks' opening statement and should be excluded because they are irrelevant and designed to prejudice Autodesk before the jury.

Courts have often decided that characterizing a party as a monopolist is inappropriate, and have granted motions in limine to exclude such references. *See, e.g.*, *Carl Schenck, A.G. v. Nortron Corp.*, 713 F.2d 782, 784 (Fed. Cir. 1983) (noting that a party's characterization of its opponent as a "monopolist" was a "denigration . . . inserted in a vain hope of prejudicing the court"); *S.H. Leggitt Co. v. Fairview Fittings & Mfg.*, No. 1:03-CV-294, 2005 WL 6003549, at *1 (W.D. Mich. May 9, 2005) (granting motion in limine and ordering defendant "not [to] refer to plaintiff's market share as a 'monopoly' at trial").

Similarly, a 1997 consent agreement entered into by Autodesk to settle FTC charges pertaining to Autodesk's attempted acquisition of Softdesk, Inc., which had been developing a competitive product called IntelliCADD, is irrelevant to this trademark case. Referring to it would be designed solely to prejudice Autodesk. The Ninth Circuit affirmed a decision to "exclude[] all reference to a consent decree entered into between IBM and the United States in settlement of antitrust litigation some 20 years ago" because the district court had properly exercised its discretion in assessing the prejudicial impact of such evidence. *Greyhound Computer Corp., Inc. v. IBM Corp.*, 559 F.2d 488, 508 (9th Cir. 1977); *see also Int'l Shoe Mach. Corp. v. United Shoe Mach. Corp.*, 315 F.2d 449, 459 (1st Cir. 1963) ("Whether admitted purely as 'background' evidence or not, evidence of a judicial determination of prior illegal conduct on the part of the defendant [a decree admitting a violation of the antitrust laws] cannot help but have a great emotive impact on a jury . . .").

**SolidWorks:** Autodesk is seeking by this motion *in limine* to prevent SolidWorks from showing or arguing Autodesk's financial dominance in the CAD field. The Court should deny the motion because Autodesk's overwhelming dominance in the CAD field is relevant to support SolidWorks' defenses. This motion must be decided before trial because Autodesk's market share will be discussed during opening statements.

Autodesk accuses SolidWorks of overusing DWG and Autodesk's AutoCAD mark on its website. Yet, it is precisely because of Autodesk's 71% share of the market as the de facto 2D standard that, *inter alia*, SolidWorks can take the benefit of its affirmative defense of nominative fair use when referring to how its products work.

In addition, Autodesk intends to submit a secondary meaning survey for DWG conducted by E. Deborah Jay. SolidWorks contends that the survey is nothing more than a popularity contest, that shows that Autodesk, the far-and-away 71% CAD market leader, is the best known of the DWGs, not the only one.

Autodesk will also accuse SolidWorks of having a single minded obsession with killing the helpless Autodesk. Autodesk's motion *in limine* seeks to ensure that the jury is presented with this distorted view of how SolidWorks must compete with the 71% market leader. Autodesk's market positions relevant to show why SolidWorks targets Autodesk's customers.

Finally, the FTC/Autodesk consent decree is relevant to show Autodesk's continued motive, intent and design to use its monopoly power to stifle competition and prevent customers from moving from Autodesk's dominant AutoCAD 2D product to 3D CAD, such as SolidWorks' software product.

## AUTODESK MOTION IN LIMINE NO. 4

**Autodesk:** Third-party usage of DWG (1) after the date on which SolidWorks began using it, or (2) outside of the United States, is legally irrelevant to the analysis of whether DWG is generic, and should therefore be excluded. SolidWorks will likely refer to some of these usages as examples of genericness in its opening statement.

Autodesk's infringement claims are based on SolidWorks' introduction of DWG-based designations beginning in July/August 2004. SolidWorks claims that DWG was generic by that time. "The crucial date for the determination of genericness is the date on which the alleged infringer entered the market with the disputed mark or term." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005). Nevertheless, in support of its genericness theory, SolidWorks has identified several company or product DWG-based names that came into existence several years after the crucial date. For example, SolidWorks referred to a product called "Planet DWG" released "March 23, 2006." Such company or product names are not probative of whether DWG was generic in July 2004.

SolidWorks has also identified foreign companies and product names containing DWG as evidence that DWG is generic. However, such foreign use is not probative of consumer opinion in the American market. *See, e.g.*, *Anheuser-Busch Inc. v. Stroh Brewery Co.*, 750 F.2d 631, 642 (8th Cir. 1984) ("a term may be generic in one country and suggestive in another"). For example, SolidWorks referred to DWGtool.com, a website which only lists resellers outside of the United States. Because "we deal here with American trademark law, and thus American consumers," foreign usage is not determinative of domestic consumer opinion. *Carcione v. The Greengrocer, Inc.*, 205 U.S.P.Q. 1075, 1077 (E.D. Cal. 1979). Though foreign websites are not entirely discounted in this analysis, the weight given to such evidence is highly dependant on the context and manner of use, and in circumstances similar to those in this case, have been found to be of "limited probative value." *See, e.g.*, *In re King Koil Licensing Co. Inc.*, 79 U.S.P.Q.2d 1048, 1050 (TTAB 2006). Accordingly, evidence of usage abroad should be excluded.

**SolidWorks:** A ruling on this motion *in limine* prior to trial is requested because opening statements will address the issues and facts addressed by this motion.

*First*, evidence of post-2005 third-party usage of DWG is relevant for two reasons. (A) Evidence of concurrent third-party usage is relevant to whether confusion is likely. *See, e.g.*, *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1087-88 (9th Cir. 2005) ("existing third party marks" usage offered to demonstrate that confusion was unlikely). (B) Evidence of current third-party usage is also relevant to whether DWG is currently protectable. *See Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 905 (9th Cir. 2007) ("Where the majority of the relevant public appropriates a trademark term as the name of a product (or service), the mark is a victim of 'genericide' and trademark rights generally cease.").

*Second*, evidence of English-language websites which are accessible to web users in the United States is relevant. *See, e.g., Trademark Manual of Examination Procedures*, § 710.01(b) (6th ed. 2009) ("information originating on foreign websites or in foreign news publications that are accessible to the United States public may be relevant to discern United States consumer impression of a proposed mark"); *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 969 (Fed. Cir. 2007) ("foreign websites or in foreign news publications that are accessible to the United States public may be relevant to discern United States consumer impression"). Moreover, Autodesk's assertions regarding the extent of circulation of the Internet sites in issue is misdirected. This is an Internet source confusion case, and the websites Autodesk seeks to exclude are English-language Internet sites, readily available to Internet users everywhere. Further, any argument regarding the extent of circulation of these Internet sites goes to their probative weight, not their admissibility. In *Bayer*, for instance, the Federal Circuit held that evidence which originated in foreign publications was of "some probative value with respect to prospective consumer perception in the United States," noting "the growing availability and use of the internet as a resource for news, medical research results, and general medical information." 488 F.3d at 969.

## AUTODESK MOTION IN LIMINE NO. 5

**Autodesk:** SolidWorks asserted attorney-client privilege and work product protection when SolidWorks' witnesses were asked about legal advice on issues in the case, including (1) the naming of the DWGseries products, (2) SolidWorks press releases or the DWGseries products generally, and (3) a cease-and-desist letter sent by Autodesk. The Court should therefore exclude such evidence or related argument from trial. SolidWorks will likely try to introduce this evidence in its opening statement as support for its "good faith" in using the DWG mark.

No SolidWorks witness, including its corporate designees, provided testimony on the legal advice the company received in developing and marketing its DWGseries of products. In the deposition of SolidWorks' former general counsel, Holly Stratford, SolidWorks instructed her not to answer questions concerning legal advice on the issues in this litigation. Ms. Stratford thus refused to testify about SolidWorks' legal review of product names and press releases. Likewise, she refused to testify about her legal advice on the DWGseries products, including correspondence between Autodesk and SolidWorks regarding SolidWorks' advertising and websites. Ms. Stratford also acknowledged that she had consulted with outside counsel, yet claimed privilege over such communications. As reflected in SolidWorks' opposition, Ms. Stratford and other SolidWorks witnesses did offer slivers of testimony about some research counsel undertook in providing advice, but the full transcripts make clear that these slivers fell within a much larger set of stonewalling and objections on precisely the same subject matter. Accordingly, SolidWorks should not be allowed to present evidence relating to such legal advice. *See Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9thCir. 2001) (a party asserting the attorney-client privilege in discovery may appropriately be barred from introducing evidence at trial concerning the matters as to which it asserted the claim of privilege); *Memry Corp. v. Ky. Oil Tech., N.V.*, No. C-04-03843 RMW, 2007 WL 4208317, at *9 (N.D. Cal. Nov. 27, 2007) (granting in part motion in limine because witness "should not subsequently be permitted to testify as to . . . anything that the instruction not to answer fairly covered").

**SolidWorks:** Autodesk seeks to exclude relevant factual evidence regarding its use—or lack thereof—of "DWG" as a trademark at the time SolidWorks' DWGeditor entered the market, and Autodesk's failure to object to SolidWorks' use of the term "DWG" in its product names or to SolidWorks' allegedly false statements. Autodesk's motion *in limine* does not acknowledge the subject matters on which SolidWorks' employees did testify with respect to these topics. That testimony is quoted and cited in SolidWorks' opposition to Autodesk's motion.

There is no basis for excluding testimony on subjects disclosed to Autodesk in the course of discovery. That SolidWorks objected to questions about legal advice during Ms. Stratford's deposition does not mean it is precluded from introducing testimony or evidence about facts which Ms. Stratford, and other SolidWorks employees, testified to in deposition. Autodesk cites no cases holding that where a party objects to deposition questions regarding legal advice on privilege, all testimony from that witness is precluded. *See Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001); *Memry Corp. v. Kentucky Oil Technology, N.V.*, 2007 WL 4208317, *9 (N.D. Cal. 2007). In fact, in *Memry*, the court explained that to the extent privilege is not asserted as to some issues, that testimony should not be excluded. *Memry*, 2007 WL 4208317 at *9.

SolidWorks only asserted attorney-client privilege as to certain specific questions asked. SolidWorks allowed Ms. Stratford to testify about the steps she took in connection with naming the DWGseries software tools and whether she is aware of any instances of consumer confusion in connection with the DWGgateway webpage. SolidWorks did not object to Ms. Stratford testifying about Autodesk's April 11, 2005 Autodesk demand letter and the steps SolidWorks took in response thereto, because Autodesk did not question her on those topics. There is no basis for precluding Ms. Stratford or any other SolidWorks witnesses from testifying to such facts at trial.

**SOLIDWORKS MOTION IN LIMINE NO. 1**

**SolidWorks:** Autodesk should be precluded from introducing evidence or argument concerning instances of actual consumer confusion regarding any of the marks at issue in this action for two reasons: (1) Autodesk witnesses—including its topical 30(b)(6) witnesses—have testified that they are unaware of any relevant instances of actual consumer confusion stemming from SolidWorks' conduct; and (2) Autodesk has not in either its first or in *seven* supplemental responses to an interrogatory propounded by SolidWorks seeking identification of instances of actual consumer confusion identified a single relevant instance of actual consumer confusion.

On the first point, Autodesk identified two 30(b)(6) witnesses on relevant topics (the marketing of DWG, SolidWorks' use of DWG, and instances of confusion, among others), and neither could point to instances of actual consumer confusion when asked. When asked if he knew of any instances, Christopher Bradshaw responded simply "I don't." Shawn Gilmour admitted that he did not know of any person who said that a SolidWorks product came from Autodesk, although he testified that individuals had contacted Autodesk concerning issues with SolidWorks and Autodesk products *working together*. This testimony was not a mistake—every single other Autodesk witness asked was unaware of any instances of actual consumer confusion.

On the second point, although Autodesk was specifically tasked via interrogatory with identifying instances of actual consumer confusion, it merely pointed to surveys about *likelihood of confusion*, wholly inapposite emails, emails in which individuals contacted *SolidWorks* concerning SolidWorks products, and a couple of documents where an individual contacted Autodesk concerning interoperating SolidWorks and Autodesk products—the very sort of material Gilmour testified did not evince confusion. In short, Autodesk identified no relevant evidence.

Finally, this issue should be decided as a prophylactic now. Autodesk's position throughout the discovery process has been consistent: it could not identify any instances of actual consumer confusion despite being called upon to do so. Reversing course now, at trial, would severely prejudice SolidWorks because the time to provide this type of information was during discovery so that it could be tested.

**Autodesk:** SolidWorks mischaracterizes Autodesk witness testimony and documents that evidence consumer confusion.

SolidWorks argues that every Autodesk witness it deposed was unaware of instances of actual consumer confusion. But Shawn Gilmour, Autodesk's 30(b)(6) designee on this subject, specifically identified instances from Autodesk's product support logs where people "thought the product came from Autodesk because they came to us for help." Other witnesses, including Christopher Bradshaw, testified regarding "a customer who said SolidWorks has a banner that has lots of DWG in it, that you cannot tell from the banner that it's Autodesk or SolidWorks or anybody…[a]nd that his heads-up to her was this is -- this is confusing…" Moreover, though SolidWorks focuses on confusion testimony as to whether Autodesk "sold" or "gave" consumers SolidWorks' products, the law is clear that confusion may relate to affiliation, connection, association, sponsorship, or approval of goods, and not simply just the origin of a product. 15 U.S.C. § 1125(a)(1)(A); *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 806-07 (9th Cir. 2003). The record does not support SolidWorks' attempt to preclude Autodesk's evidence of these forms of confusion.

SolidWorks also contends that Autodesk failed to identify documents demonstrating actual consumer confusion, but then admits that such documents exist but are inadmissible hearsay. Autodesk did indeed produce such documents (*e.g.*, a user group posting where a user displayed confusion about SolidWorks' DWGgateway product by stating "oops — I get it now — it's not an Autodesk supported product. Right?"), and such documents are not hearsay. *See Ultrapure Sys., Inc. v. Ham-Let Group*, 921 F. Supp. 659, 663 (N.D. Cal. 1996) (customer statements displaying confusion not hearsay, as they were not offered for truth of matter).

**SOLIDWORKS MOTION IN LIMINE NO. 2**

**SolidWorks:** SolidWorks noticed a Rule 30(b)(6) deposition of Autodesk and Autodesk did not object to any noticed topic. Its designees, however, were not prepared to answer questions falling within the noticed topics, including damages. The specific questions and subjects on which Autodesk's designees could not provide testimony on behalf of the company are listed and cited in SolidWorks' motion *in limine*. *On its claimed injury or damages, Autodesk offered no percipient witnesses at all, and declining to produce relevant damage-related documents.*

This Court's Standing Order provides that if an organization does not produce a 30(b)(6) deponent educated on the noticed topics "the organization may not present case-in-chief evidence at trial . . . from any witness it could have so designated." Supplemental Order to Order Setting Initial Case Management Conference, ¶ 23(C). The issues on which Autodesk's designees could not testify fall squarely within SolidWorks' topics. Autodesk had the opportunity to identify new designees, but refused. Under this Court's rules, Autodesk may not present case-in-chief evidence on these issues. *Id.*; *see also Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-5340 JF (RS), 2006 WL 3290402, at *1 (N.D. Cal. 2006).

Further, allowing Autodesk to present testimony on subjects on which its corporate designees could not testify during deposition is prejudicial to SolidWorks. *Vnus Med. Technologies, Inc. v. Diomed Holdings, Inc.*, 2007 WL 3096586, *2 (N.D. Cal. 2007) (granting motion in limine precluding testimony on topics on which corporate designee could not testify during deposition). Autodesk's failure to provide responses or witnesses at all (on damages or injury) inhibited SolidWorks' ability to gather evidence to contradict Autodesk's witnesses' testimony (especially on damages or claimed loss of good will or reputation). Autodesk cannot sandbag SolidWorks by presenting at trial testimony on these issues.

The Court should decide SolidWorks' motion before opening statements so Autodesk may not refer to evidence its Rule 30(b)(6) designees did not provide.

**Autodesk:** SolidWorks' scattershot motion seeks to preclude testimony on **37** separate 30(b)(6) topics, purportedly because Autodesk 30(b)(6) witnesses were unprepared to speak to them. Autodesk provided five 30(b)(6) witnesses who testified over six days, and a total of ten percipient witnesses. This motion fails for at least the following reasons:

First, the Federal Rules and the Court's rules make clear that 30(b)(6) topics must be drafted with "reasonable particularity" and not cover "wide-ranging topics." Ignoring that, the topics quoted in the motion make clear what a hodge-podge SolidWorks threw at Autodesk — the 4 listed topics contain 59 commas, semi-colons, conjunctives, or disjunctives and cover almost 30 years. There is therefore no basis for preclusion, especially on subjects that bear at most a tangential relationship with even the broad-ranging language of the noticed topics.

Second, Autodesk did provide witnesses who were prepared to, and did, testify at length on each of the 30(b)(6) topics noticed by SolidWorks. The authorities cited by SolidWorks do not stand for the proposition that Autodesk's 30(b)(6) witness must be prepared to answer every question regarding SolidWorks' 30(b)(6) topic; they require only that the witnesses be prepared generally on SolidWorks' topics. In fact, Autodesk specifically provided testimony on many of the questions regarding which SolidWorks claims Autodesk did not provide testimony. Indeed, SolidWorks' motion at various points grossly misrepresents the state of testimony.

Third, many of the topics as to which SolidWorks claims Autodesk did not provide testimony fell outside their topics.

Fourth, Autodesk provided information to SolidWorks on many of the topics listed in its motion in the form of interrogatory responses, documents, and in testimony by other witnesses.

Finally, for many of SolidWorks' 37 subtopics, SolidWorks' counsel asked only limited foundational questions, but never proceeded to ask Autodesk's witnesses about the actual topics.

## SOLIDWORKS MOTION IN LIMINE NO. 3

**SolidWorks:** SolidWorks moves *in limine* to preclude Autodesk and/or its expert, Dr. Daniel J. Slottje, from offering testimony on the following subjects: (1) DWGseries products drove sales of SolidWorks software; (2) damages pertaining to Autodesk's alleged wrongful conduct; and (3) SolidWorks Corp.'s wholly foreign profits earned from sales of SolidWorks software made outside the United States. A decision before trial is necessary because it will act as a gating function with regards to the type of evidence and argument Autodesk can offer in its case-in-chief.

Autodesk's damages expert, Dr. Slottje, opines that if SolidWorks were found liable to Autodesk for the "misleading marketing and misuse of Autodesk trademarks"—i.e., the "DWG" in SolidWorks Corp.'s 2D DWGseries software tools—the appropriate damages sales base for the period from August 2004 through August 2009 would be the total worldwide revenues for SolidWorks Corp.'s SolidWorks 3D software product, not revenue generated from any of the accused DWGseries software tools. However, Dr. Slottje testified that he could not point to any evidence where a DWGseries tool led to a sale of SolidWorks software; nor could he could identify any survey, learned treatise, or empirical study demonstrating any relationship between free product downloads and company revenue.

In addition, Dr. Slottje has never attempted to quantify the injury to Autodesk based on SolidWorks' purported false advertising or the unauthorized use of the words "Autodesk" or "AutoCAD" on its website, and Autodesk declined to make available any Rule 30(b)(6) or percipient witness on injury purportedly sustained by Autodesk relating to its false advertising claim.

Finally, Autodesk cannot establish the necessary jurisdictional facts to support the extraterritorial application of the Lanham Act. Autodesk must meet each of the *Timberlane* factors, which it has never attempted to do (including in its opposition to this motion). Thus, Dr. Slottje should not be permitted to testify about SolidWorks' worldwide profits.

**Autodesk:** SolidWorks' motion seeks to bar damages testimony (i) on Autodesk's' trademark infringement claim; (ii) on Autodesk's false advertising claim; and (iii) as to foreign damages. None of these bars is warranted.

SolidWorks' first argument ignores how the Lanham Act allocates burdens. The burden on Autodesk is simply to show the revenue associated with SolidWorks' acts of infringement. It is then SolidWorks' burden to "to prove that sales were demonstrably not attributable to the infringing mark," *Nintendo of Am. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) (internal quotation and citation omitted), and to show "all elements of cost or deduction claimed," 15 U.S.C. § 1117(a)(3). Because Autodesk will carry its burden, it is not appropriate to exclude any of Autodesk's testimony.

SolidWorks' second argument again ignores Lanham Act burden allocations and is essentially a summary judgment motion in disguise. What SolidWorks is actually asserting is that Autodesk cannot make out the "likelihood of harm" element of its false advertising claims. Autodesk has ample likelihood of harm evidence. Indeed, the jury will see documents demonstrating that SolidWorks *intended* its DWGseries products to cause Autodesk tens of millions of dollars of harm — hurting Autodesk was one of the products' primary purposes.

Finally, SolidWorks' third argument also misses the mark. SolidWorks cites cases considering whether to impose jurisdiction over wholly foreign commerce. It does not cite any case involving a United States entity exporting products abroad. Indeed, under the logic of the cases SolidWorks does cite, reaching such revenue poses no jurisdictional problems at all, and therefore excluding it here is inappropriate. *See, e.g., Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 504 (9th Cir. 1991) (holding that fact that defendants' products — made and sold exclusively abroad — passed through U.S. free trade zone was sufficient basis to render activity subject to U.S. jurisdiction).

**SOLIDWORKS MOTION IN LIMINE NO. 4**

**SolidWorks:** In support of its claims of trademark infringement, false designation of origin, false advertising claims, Autodesk intends to offer the testimony of Dr. Dominique M. Hanssens. Dr. Hanssens' testimony is inadmissible under Federal Rules of Evidence 702, 403, and *Daubert* because it fails to "fit" the issues to be decided at trial.

To prevail at trial on a claim of trademark infringement, Autodesk must show that it has a valid, protectable mark, and that there is a likelihood of confusion between the marks used by SolidWorks. However, Dr. Hanssens' opinions are not relevant to either of the elements Autodesk must prove, and instead, concern a completely irrelevant theory of trademark dilution. In addition, Dr. Hanssens' amorphous "brand image" analysis and testimony is so inextricably linked to Autodesk's recently adjudicated and rejected "Real" trade dress claims to render his opinions about the purported value of, and alleged injury to, Autodesk's "brand image" unreliable. Moreover, Autodesk refused to allow any percipient witness to testify as to Autodesk's claimed injury in fact, and provided no damages documents on the subject (opting instead to seek SolidWorks' alleged ill gotten gain), yet has offered Dr. Hanssens on the subject of "likely reputational injury."

It is for these reasons that Dr. Hanssens' testimony should be excluded. His opinions are not supported in fact and will do nothing but confuse the jury. The court should exercise its gate keeping role to exclude this erroneous testimony.

The Court may defer ruling on this motion *in limine* until Dr. Hanssens is called by Autodesk.

**Autodesk:** In their motion, SolidWorks seeks to exclude the testimony of Dr. Dominique Hanssens, a marketing expert, "concerning likelihood of confusion and/or Autodesk's 'brand image' purportedly 'appropriated' by SolidWorks," and then asks the Court for "an order precluding Autodesk, its counsel, and its witnesses from offering, eliciting, or mentioning evidence concerning same." The suggestion of the latter ruling is preposterous. Likewise, its request to exclude Dr. Hanssens' testimony is unfounded because it mischaracterizes Dr. Hanssens' opinions. But if any restrictions are made to Dr. Hanssens' testimony, the same rules should also apply to Dr. Peter Sealey, SolidWorks' marketing expert.

Contrary to SolidWorks' contentions, Dr. Hanssens' testimony is consistent with Autodesk's theories of infringement and false advertising, and not based on what SolidWorks' characterizes as a "trademark dilution" or tarnishment theory. SolidWorks complains that Dr. Hanssens did not provide an opinion on the ultimate issue of likelihood of confusion. Dr. Hanssens, however, properly refrained for offering such an opinion. Instead, his testimony offers helpful guidance to the jury on the *Sleekcraft* factors, but leaves the ultimate conclusion to them. *See YKK Corp. v. Jungwoo Zipper Co.*, Ltd., 213 F. Supp. 2d 1195, 1203 (C.D. Cal. 2002); *Playboy Enters., Inc. v. Terri Welles Inc.*, 78 F. Supp. 2d 1066, 1081-82 (S.D. Cal. 1999) *aff'd in part and rev'd in part* 279 F.3d 796, 805 (9th Cir. 2002).

Even if part of Dr. Hanssens' original testimony has been made irrelevant by the Court's summary judgment ruling on the orange frame design, he should be permitted to testify on the remaining issues. Moreover, any restrictions on his testimony based on the summary judgment ruling should be applied to Dr. Peter Sealey, SolidWorks' expert, who opined that Autodesk's actions in protecting DWG as a trademark were monopolistic. The Court resolved that issue as part of the summary judgment functionality ruling and Dr. Sealey should not be allowed to contradict that ruling at trial.

**SOLIDWORKS MOTION IN LIMINE NO. 5**

**SolidWorks:** SolidWorks seeks to exclude testimony and evidence presented in connection with the survey performed by Dr. Deborah Jay on three distinct grounds. Because this survey is likely to come-up during Autodesk's opening statement, a ruling prior to trial is requested.

First, the Jay survey was improperly designed because it did not distinguish between "DWG" as a brand (from which true "secondary meaning" flows) and .dwg as a file extension (from which "de facto secondary meaning" flows—which means secondary meaning that cannot be used to obtain trademark protection). The impropriety of the owner of a trademark obtaining rights from *de facto* secondary meaning is discussed in learned treatises, including 2 McCarthy § 15:23. This design flaw was brought to Autodesk's attention in 2007, and yet it did not perform any additional analysis or correct the survey. This fundamental error in survey design renders it irrelevant and more prejudicial than probative under Rules 401, 402, and 403.

Second, the survey goes to secondary meaning, not genericness, and the two are different as Dr. Jay's own article and Prof. McCarthy's treatise reveal. Dr. Jay also admitted that she did not "know how I would conduct a genericness survey" for this case if asked to do so. Ryan Decl., Ex. 8 at 70:5-11, 72:12-15, 74:3-10. This shows that the survey is irrelevant and more prejudicial than probative, as it is Autodesk's burden to prove non-genericness, and it fails to do so even if the survey is a proper measure of genericness as fewer than a majority of the total respondents associated it with Autodesk or any single source. *See* Rules 401, 402, and 403.

Finally, the only way for Dr. Jay to give testimony that is relevant would be to speculate about what the survey-takers answers would have been had the survey been properly framed. This gives her license to engage in speculation that is contrary to the real-world evidence in this case. Such testimony should not be permitted as it lacks foundation and is speculative under Rule 602, and is improper expert testimony under Rule 702. SolidWorks also asks the court to prevent Dr. Jay from presenting hearsay testimony, or speculating, as she did during deposition.

**Autodesk:** Dr. Deborah Jay performed a secondary meaning survey in late 2005 and early 2006 to determine whether design software decision makers associate "DWG" with design software from a single company or source, and, if so, whether they associate it exclusively with Autodesk and/or AutoCAD. This time frame is important because it is close to when SolidWorks first introduced its DWGseries products. Dr. Jay found that 43% of decision makers said they associated DWG with design software from a single company or source. In the more relevant industry groups, more than half (54%) of the decision makers associated DWG with design software from a single company or source. (52% said Autodesk and/or AutoCAD exclusively and 2% said they associated it with design software from one company but did not know the company's name.)

Again citing to *trade dress* authority, SolidWorks' arguments that Dr. Jay's survey fails to distinguish between .dwg as a functional file format and DWG as a brand are unavailing. SolidWorks both misstates the Court's summary judgment order on functionality and ignores that consumer recognition can come from any type of exposure, including advertising and use as a file name.

SolidWorks' argument that a secondary meaning survey is irrelevant to a genericness determination is simply wrong. "[S]urveys that test for secondary meaning … may yield relevant results that point towards or away from trademark significance. For example, if there is strong evidence of secondary meaning, then that is evidence that those surveyed perceive the designation as a trademark." 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 12:14 (4th ed. 2009); *see also Trump v. Caesars World, Inc.*, 645 F. Supp. 1015, 1020-21 (D.N.J. 1986), *aff'd*, 819 F.2d 1135 (3d Cir. 1987); *Gaylord Entm't Co. v. Gilmore Entm't Group, LLC*, 187 F. Supp. 2d 926, 934-44 (M.D. Tenn. 2001). Dr. Jay's survey results (namely 54%) demonstrate that the primary significance of DWG is as a trademark.

Finally, as a qualified survey researcher, Dr. Jay is entitled to offer her interpretation of survey results and logical conclusions from them.

**SOLIDWORKS MOTION IN LIMINE NO. 6**

**SolidWorks:** A ruling on this motion *in limine* to exclude alleged false statements not specifically pled and of other, collateral conduct not at issue in the litigation is needed before opening statements because counsel for Autodesk is likely to reference in its opening statement the evidence that should be excluded pursuant to this motion, and the resulting unfair prejudice to SolidWorks could not thereafter be remedied.

First, allegedly false statements not specifically pled should be excluded because SolidWorks has had no notice of them. *See* Fed. R. Civ. P. 8(a); *In re Century 21*, 882 F. Supp. 915, 927 (C.D. Cal. 1994) (holding that because allegedly false statement was not raised in complaint, plaintiff "did not place defendants on notice of the nature of this alleged wrong"); *Caterpillar Tractor Co. v. Int'l Harvester Co.*, 106 F.2d 769, 775 (9th Cir. 1939) ("exhibits attached to the complaint . . . cannot take the place of an allegation"). Autodesk's complaint averred that three of SolidWorks' advertising statements are false. (Compl. ¶¶ 24, 47-52; Summ. J. Order 18.) SolidWorks therefore tested the legal sufficiency of those statements (*see* Summ. J. Order 18-21) and prepared to defend their veracity. But SolidWorks could not prepare to defend any other of its advertising statements, because it had no notice that they were in issue. Accordingly, allegedly false statements not specifically pled should be excluded. *See* Fed. R. Evid. 403.

Second, evidence of collateral conduct—including evidence of alleged copying in marketing campaigns or advertisements not in issue—should be excluded. *See* Fed. R. Evid. 402, 403. Absent a legally defined exclusive right, copying is permissible and encouraged. See 1 McCarthy § 1:28 (absent "a legally defined exclusive right, imitation and copying is permitted"); *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001). Here, Autodesk only attempts to establish a legally defined right in two marks: DWG and AUTOCAD. Evidence of copying of other marks or trade dress elements is therefore irrelevant and likely to mislead the jury. Accordingly, SolidWorks respectfully requests that the Court preclude Autodesk from offering all such evidence (and, without narrowing its motion, requests specifically that evidence or arguments previously marshaled in support of Autodesk's twice-dismissed trade dress claim be excluded. (*See* Summ. J. Opp. 15-19.)

**Autodesk:** Ignoring the crystallization of Autodesk's false advertising claims through discovery and in Autodesk's summary judgment briefing, SolidWorks now suggests that it was unaware of false advertising claims to which it has responded during discovery and motion practice. SolidWorks also contends that evidence of its intentional infringement of the DWG mark cannot be presented to the jury. Because these arguments lack merit, the Court should this motion.

First, SolidWorks has long since been aware of Autodesk's false advertising claims regarding the following four statements, which were not required to be specifically pled: 1) "DWGgateway solves these problems by enabling you to open DWG files created by AutoCAD versions R14 through the latest version, and then edit them and save them as any version of AutoCAD, from R2.5 to the latest version"; 2) "DWGeditor software lets you maintain legacy data without the expense of AutoCAD software upgrades"; 3) "DWGseries is a set of FREE software tools created for current and former AutoCAD software users who need to open, edit, create, and share DWG more effectively with others"; and 4) "DWGeditor is a standalone editing tool for SolidWorks users and their colleagues, who occasionally need to create, share, and edit native DWG files." All four were first identified in an exhibit to the First Amended Complaint, were subsequently identified in documents that were listed as responsive to SolidWorks' interrogatory on this subject, and were specifically referenced in Autodesk's summary judgment briefing. SolidWorks was aware of these statements because its witnesses answered questions regarding them, and it even addressed some of them in its summary judgment briefing.

Autodesk should also be permitted to present evidence of SolidWorks' pattern of copying Autodesk's advertisements and marketing campaigns because it is relevant to the issue of intentional copying of the DWG mark. *See, e.g., Black & Decker v. Pro-Tech Power*, 26 F. Supp. 2d 834, 852 (E.D. Va. 1998) (a related "pattern of conduct establishes intentional and direct copying that leads this Court to presume secondary meaning absent any effective rebuttal at trial").

**SOLIDWORKS MOTION IN LIMINE NO. 7**

**SolidWorks:** SolidWorks respectfully moves to preclude any mention of its parent corporation's status as a French company because Dassault Systèmes, S.A. is not a party to the current suit and any information pertaining to its corporate status is irrelevant to the issues to be decided at trial.

In order for evidence to be admissible, it must have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Even if evidence is relevant and admissible, the court retains the power to exclude such evidence if "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Courts have recognized the prejudicial value of appealing to local or nationalistic sentiments by pointing to the foreign ownership of a party and have excluded such evidence when the corporate parent's status is not relevant to the issues to be decided at trial.

Autodesk chose to bring this action solely against SolidWorks. By doing do, Autodesk has rendered Dassault Systèmes, S.A. and its corporate status irrelevant. The only purpose for mentioning the fact that SolidWorks is a wholly owned subsidiary of a French corporation is to inflame the patriotic sentiments in the jury to decide this case based on emotion instead of the facts. Such evidence is "unduly prejudicial" and must be excluded from trial under Rule 403.

This issue must be addressed before trial because SolidWorks anticipates that Autodesk may refer to SolidWorks' parent during its opening statements.

**Autodesk:** While Autodesk does not anticipate frequently referring to SolidWorks' corporate parent, Dassault Systèmes, S.A., at trial, it is likely that Dassault will naturally come up in several contexts, thereby rendering an order precluding every such reference unwarranted. SolidWorks intends to characterize itself at trial as "David" to Autodesk's "Goliath." While SolidWorks standing on its own has roughly one-tenth the number of Autodesk's employees and one-fifth its revenue, Dassault is comparable in size and revenue to Autodesk. Autodesk should be permitted to correct any jury misapprehension as to any alleged disadvantage faced by SolidWorks by virtue of its size or resources. Alternatively, should the Court grant SolidWorks' motion to preclude any mention of Dassault, Autodesk requests that the Court also preclude SolidWorks from presenting any evidence or argument suggesting in any way that SolidWorks is a "David" or that Autodesk is a "Goliath."

In order for the jury to understand the CAD industry and to appreciate the dynamic between SolidWorks and Autodesk, it should hear factual information pertaining to Dassault and SolidWorks' sibling companies, some of which are active in the CAD industry. Importantly, Autodesk offered a "RealDWG" license to Dassault, which declined such a license. Under that license, SolidWorks would have had authentic DWG library code, and it would have had no need to exaggerate the capabilities of its reverse engineered DWG products. Introducing that evidence requires describing the relationship between SolidWorks and Dassault.

SolidWorks has also failed to explain why having a French parent is prejudicial – "[t]he mere mention of a [foreign] corporation or employees is unlikely to produce prejudice." *Walton v. Bridgestone/Firestone, Inc.*, No. CV-05-3027-PHX-ROS, 2009 WL 2778441, at *9 (D. Ariz. Jan. 16, 2009). None of SolidWorks' authority addresses a situation in which a party simply referred to a foreign parent without additional inflammatory rhetoric.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: December 28, 2009 | MICHAEL A. JACOBS |
| | | J. THOMAS MCCARTHY |
| 3 | | LYNN M. HUMPHREYS |
| | | DAVID E. MELAUGH |
| 4 | | JACQUELINE BOS |
| | | NATHAN B. SABRI |
| 5 | | MORRISON & FOERSTER LLP |
| 6 | | By: */s/ Michael A. Jacobs* |
| | | MICHAEL A. JACOBS |
| 7 | | Attorneys for Plaintiff |
| | | AUTODESK, INC. |
| 8 | | |
| 9 | Dated: December 28, 2009 | CLAUDE M. STERN |
| | | EVETTE D. PENNYPACKER |
| 10 | | ANDREA PALLIOS ROBERTS |
| | | ZACHARY M. FABISH |
| 11 | | QUINN EMANUEL URQUHART |
| | |   OLIVER & HEDGES, LLP |
| 12 | | |
| 13 | | By: */s/ Claude M. Stern* |
| | | CLAUDE M. STERN |
| 14 | | Attorneys for Defendant |
| | | DASSAULT SYSTÈMES |
| 15 | | SOLIDWORKS CORPORATION |

JOINT MOTIONS IN LIMINE SUMMARY
Case No. 3:08-cv-04397-WHA
sf-2783951

13