IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>DASSAULT SYSTEMÈS SOLIDWORKS CORPORATION, a Delaware corporation,<br><br>    Defendant.<br>_____ / | No. C 08-04397 WHA<br><br>**MEMORANDUM OPINION ON THE USE OF "DWG" AS A FILE EXTENSION AND AUTODESK'S DISAVOWAL THEREOF** |

    Software programs almost invariably store data in files. Sometimes a program will use many thousands of files to store various types of information. To ensure that individual data files can be located on a computer or electronic device, each is given a unique name. A file name, at least in the most widely used operating systems, is usually in the form of a prefix and suffix separated by a period (*e.g.*, "smartlaw.abc"), where the prefix usually describes or denotes the contents of the file, and the suffix — also called a file extension or just an extension — denotes the type of data being stored.[1] The function of the extension is, when combined with a prefix, to be part of the unique file name, so that when a computer program calls up the file, it will be uniquely identifiable and locatable. These extensions are handy to group like types of files (*e.g.*, ".jpg" for photos, ".txt" for simple text, ".dat" for numerical data). However, the naming of file

---

[1] The undersigned is aware that the use of file extensions has been supplemented and even replaced in some computing environments. Instead of using a file extension to denote the type of data being stored, some computing environments embed this information within the file data itself. For example, Mac OS X — the current Apple operating system — uses a combination of file extensions and embedded "file attributes" data to serve this function.

extensions is a function employed by the programmer to suit the needs of the software. While industry conventions may exist for the sake of convenience and organization, there is *no* imperative demanding that a programmer use any particular extension with any particular file. Indeed, this is why the ".rpm" file extension is used for both RPM Package Manager packages and RealPlayer Media files, the ".qif" file extension is shared by DESQview fonts, Quicken financial ledgers, and QuickTime pictures, and the ".gba" file extension is shared between GrabIt scripts and Game Boy Advance ROM images. These programs and file formats have *nothing* to do with each other. This is not surprising, since there are only a finite number of permutations available in a conventional three-character file extension.[2] And without doubt, the use of ".abc," ".rpm," or any other file extension is *functional* — that being to name a computer file for the purposes of organization and identification.

When the instant civil action came up for summary judgment, a main issue was whether plaintiff Autodesk, Inc. has a common law trademark in "DWG." Defendant SolidWorks Corporation pointed out that no one can have rights to a trademark that is functional, because trademark law is meant to *promote* competition by protecting a firm's *reputation*, and not to inhibit competition by allowing a trademark owner to control and monopolize a useful and functional product feature. *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 164 (1995). Indeed, without the functionality doctrine, trademarks could be abused to provide the protections of patents, but with potentially limitless duration. Since Autodesk was using ".dwg" as a file extension for its proprietary file format (*i.e.* as a functional use), SolidWorks asserted that no trademark rights were possible. It must be said that there was considerable force to this argument, and that the undersigned was inclined to this view.

At the hearing on the parties' summary judgment motions, however, Autodesk disavowed any such claims against the use of ".dwg" as a file extension, and sought trademark protection only for its use *as a word mark* — namely, to have exclusive use of "DWG" in packaging, advertising, and marketing materials used in connection with the sale of its goods and services.

---

[2] The three (or four) character file extension is no longer a technical restriction imposed by an operating system. However, it is still generally adhered to by convention.

2

In this way, Autodesk took the functionality doctrine off the table. It should be emphasized that this was *not* a casual concession but a calculated strategy alluded to in its briefing. Early on in the hearing, the Court felt obligated to obtain a clear disavowal. In a discussion on the functionality issue, the colloquy between the undersigned and counsel for Autodesk, Mr. Nathan Sabri, went as follows (Tr.10:18–11:18):

> **THE COURT**: I want — you're skating by something that's very important to me. So I want to get a clear answer. All right?
>
> Will you disavow, from here to eternity and for the rest of the universe, that the world has a right to use .dwg as a file extension, and you're not going to try to assert, here or anywhere else, that that use as a file extension violates any law?
>
> **MR. SABRI**: Your Honor, it may be the case it violates patent law. We're not addressing that today. I will state —
>
> **THE COURT**: You will be in trouble if you don't give me — listen. If you are trying to monopolize .dwg, you and your company are in big trouble.
>
> **MR. SABRI**: We absolutely are not, your Honor.
>
> **THE COURT**: Well, then disavow it.
>
> **MR. SABRI**: Autodesk cannot —
>
> **THE COURT**: You're not disavowing it?
>
> **MR. SABRI**: I am disavowing it, your Honor. Autodesk cannot state claims against functional uses of .dwg, and the distinction between a word mark DWG and the functional uses I believe will be very clear by this presentation.
>
> **THE COURT**: I want to hear you say we disavow it.
>
> **MR. SABRI**: We disavow any claims against functional uses of the .dwg, your Honor.
>
> **THE COURT**: Thank you.

3

1  Moments later, Mr. Sabri added to his disavowal by characterizing the use of "DWG" as a file
2  extension as a non-trademark use.[3] Specifically, Mr. Sabri stated to the Court (Tr. 12:16–23)
3  (emphasis added):

> **MR. SABRI:** . . . However, the DWG claims in this case only pertain to word marks. Autodesk is not attempting, as our Honor noted and I addressed a moment ago, Autodesk is not attempting to address any functional uses of DWG. *It's stated nowhere in the complaint that SolidWorks cannot append a .dwg at the end of a file so the computer will recognize that file. This case is only about the use of DWG as a word mark.*

When discussing the entirely different trademark doctrine of genericness, Ms. Jacqueline Bos — another attorney for Autodesk — argued that in the relevant industry, "DWG" refers to Autodesk's file formats. The undersigned again focused on the use of "DWG" as a file extension (Tr. 27:6–13):

> **THE COURT:** You say — is it absolutely clear that everybody, every neutral person, every consumer is going to think that DWG belongs to you and only to you and it identifies only your products, as opposed to just DWG CAD files in general?
>
> **MS. BOS:** In — yes, in the — there — in the CAD industry DWG refers to Autodesk's file formats, and each of the competitors has their own file formats. There are many different types — the evidence has at least 26 different types of CAD file formats. There's — DGN is Bentley, which is one of Autodesk's competitors. SolidWorks has many different types of CAD file formats, SLD DRW. Pro Engineer is another one of Autodesk's big competitors.
>
> **THE COURT:** I thought I just heard your colleague tell me anyone in the world has a right to use DWG as a file extension.
>
> **MS. BOS:** And, in fact, they do. There is interoperability. There are companies that do make file formats — make — that — there are other competitors whose software will save files to the .dwg file format.
>
> **THE COURT:** Why wouldn't the consumer associate DWG with those companies?

---

[3] Unauthorized use of a trademark that does not implicate the "source-identification function that is the [sole] purpose of the trademark" is a "non-trademark use," and is not actionable under the Lanham Act. *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 412 (9th Cir. 1996).

United States District Court
For the Northern District of California

> **MS. BOS:** Because these companies have their own native file format. When they want to save it for the purpose of interacting with an AutoCAD[4] file format, that's when they save it as .dwg.
>
> When they — the use — even when there's interoperability, it's — all of the documents in this case show that all of the — that consumers in the industry still associate that format with Autodesk's format. This is — when we save as DWG, we are saving in Autodesk's format. There are no other formats.

At no time during the hearing did lead counsel or anyone else seek to qualify Autodesk's disavowal. If anything, Ms. Bos' statement reaffirmed it, giving the example of interoperability where anyone's use of the same file extension was to be encouraged. At no time did counsel state that Autodesk reserved the right to claim a protectable trademark interest in a ".dwg" file extension that was not interoperable with Autodesk's proprietary file format.

In the order that issued five days later resolving the pending summary judgment motions, the undersigned ruled for Autodesk, holding that the alleged word mark was immune from the functionality challenge given the disavowal. The order stated (Dkt. No. 195 at 7–8):

> Plaintiff, however, expressly disavows any ownership of "any even arguably functional use of DWG" (Br. 3), including the use of DWG as a file extension. Put differently, anyone is the world is free to use ".dwg" as a file extension as far as Autodesk is concerned. Thus, there is no concern that plaintiff will obtain a monopoly over the ".dwg" extension and prevent its use in the industry.

Having won a major victory against SolidWorks' functionality attack on "DWG," Autodesk now attempts to renege on its disavowal, by claiming that it only disavowed uses of ".dwg" as a file extension *when needed to achieve interoperability with the DWG file format defined by Autodesk* (Dkt. No. 231 at 2). In other words, Autodesk now claims that it did *not* agree at the hearing that "the world has a right to use .dwg as a file extension" (Tr. 10:21–25). Rather, what it meant to say was that the world *only* has a right to put ".dwg" at the end of a computer file when the file format is Autodesk's proprietary technology or completely interoperable therewith. Counsel for Autodesk reiterated this argument at yesterday's final pretrial conference, noting tangentially that the attorney who argued this particular issue at the hearing — Mr. Sabri — was young in age and experience.

---

[4] AutoCAD is Autodesk's software product.

5

To be clear, the undersigned encourages giving young attorneys the opportunity to gain real experience in the courtroom. It is the best way for the next generation to become excellent federal practitioners and to maintain the ongoing public confidence in our federal court system. As counsel knew, it would have been entirely acceptable for more senior counsel to step in and correct any mistaken representation made in argument by a more junior attorney. If senior counsel for Autodesk had wished to "unsay" the disavowal made by its young attorney in the face of pointed questioning, he could have and should have done so at the December 3 hearing. There was plenty of time to do so — it was a long hearing, and the disavowal was made in its opening minutes. Or, counsel might have sent up a written retraction shortly after the hearing. Five days passed, and no such caveat ever came. Then the summary judgment order issued. Counsel let the record stand, let the victory unfold, and only then tried to qualify an otherwise unqualified disavowal on which the Court relied.

Under the doctrine of judicial estoppel, which precludes a party from gaining an advantage by asserting one position and then later — after a tribunal relied on or accepted that position — taking a clear inconsistent position in the same litigation concerning the same dispute, Autodesk cannot wait until the eve of trial to recast the scope of their disavowal. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (9th Cir. 2001). At the summary judgment hearing, Autodesk disavowed any and all ownership of its putative word mark "DWG" with respect to its use *by anyone* as a computer file extension, *regardless of the format of the file in question*. This it cannot unsay.

At least in the judgment of the undersigned, Attorney Sabri, though junior, was both correct and wise to concede the point. Had he not done so, the order would *not* have ruled in Autodesk's favor on the functionality issue. No one has ownership of file extension designations under the Lanham Act because such designations are inherently functional. Any programmer or computer user anywhere is free to designate file extensions as they see fit, without worrying about trademark violations. File extensions are functional, and functional uses *cannot* be trademarked.

6

1  To rule otherwise would invite a clog on commerce, given the millions of software applications.
2  The limited universe of extension permutations would soon be encumbered with claimants and
3  squatters purporting to own exclusive rights to file extensions.
4      Furthermore, Autodesk's arguments raise grave and serious concerns regarding the
5  potential for trademark holders to monopolize the use of file extensions. The purpose of the
6  Lanham Act is to protect consumers against deceptive designations of the origin of goods and,
7  conversely, to enable producers to differentiate their products from those of others. *Int'l Order of*
8  *Job's Daughters v. Lindeburg and Co.*, 633 F.2d 912, 918–19 (9th Cir. 1980). Additionally, the
9  targeted unauthorized use of a trademark must be a use "in connection with a commercial
10 transaction in which the trademark is being used to confuse potential consumers." *Bosley*
11 *Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005). By contrast, the primary
12 purpose of a file extension is to tell *the computer* the type of the file it is handling. A computer is
13 not a consumer. Its "reading" of the file extension is not in connection with a commercial
14 transaction. It doesn't care *who* made the file format it is trying to read. Whether the proper
15 terminology for this use is a "functional use" or "non-trademark use," a file extension is not
16 actionable under trademark law.
17     This remains true even if computer *users* associate a particular file extension with a
18 particular manufacturer (*e.g.* ".xls" with Microsoft, ".pdf" with Adobe, or for argument's sake,
19 ".dwg" with Autodesk). While there is no question that a file extension could serve a tangential
20 purpose of communicating the source of the file or file format, this effect — in the vast majority
21 of instances — would be incidental. The primary function of a file extension to both a computer
22 *and its user* is to identify a file or file type. Even if the function were solely to identify the format
23 in which the contents are stored, that would still be a functional use. Functional uses are not
24 protected under trademark law.
25
26
27
28

7

In sum, Autodesk will not now be allowed to renege on its disavowal. The summary judgment order will stand. Autodesk has that victory. But, Autodesk *must* stand by its disavowal of trademark rights in ".dwg" as a file extension — a disavowal that is binding on Autodesk by this order as well as the summary judgment order.

**IT IS SO ORDERED.**

Dated: December 31, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE